```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
FENDI ADELE S.R.L.; FENDI           :
S.R.L. and FENDI NORTH AMERICA,     :

                Plaintiffs,         :    MEMORANDUM & ORDER

        -against-                   :    06 Civ. 0243 (JES)(MHD)

ASHLEY REED TRADING, INC.; SCOTT    :
RESSLER and JAMES RESSLER           :
                                    :
                Defendants.         :
-----------------------------------x
```

9/8/06

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:

Defendants have moved to stay all discovery against them in this civil trademark infringement case because one of the three defendants, James Ressler, has been indicted in the Northern District of Georgia on fifteen counts charging him with importing counterfeit merchandise that mimicked the trademarked products of Prada S.A. For the reasons that follow, the motion is denied.

Plaintiffs Fendi Adele S.R.L. and Fendi North America are manufacturers and importers of branded Fendi bags. They have sued three defendants, including James Ressler, Scott Ressler and their company -- Ashley Reed Trading -- on claims of having distributed counterfeit Fendi products. Discovery was originally scheduled to end by July 31, 2006, but is still in its early phase, principally as a result of extended foot-dragging by defendants. Indeed, we

1

were required to resolve a number of discovery disputes at an August 15, 2006 conference, principally by directing defendants to provide long-overdue responses to plaintiffs' document requests. (Tr. 25-26).

Following the court's rulings, defendants' counsel alluded to the likelihood that defendants would seek to stay all discovery on the basis that one of the three defendants had been indicted on what he characterized as charges related to the facts in this case. (Tr. 27-28). The current stay motion followed.

The premise for the motion is the fact that James Ressler, who is a Vice President of Ashley Reed, was indicted with a co-defendant on March 1, 2006 for the alleged importation of counterfeit Prada products. Although this lawsuit does not involve Prada, defendants offer an affidavit by James Ressler's criminal defense attorney, David Schoen, Esq., who represents that the Government stated in a sealed court proceeding on August 21, 2006 that it intends to offer into evidence at the criminal trial of James Ressler counterfeit Fendi goods that Ressler also allegedly imported, and that the importation of the infringing pseudo-Fendi goods is "inextricably intertwined" with charged conduct involving the counterfeit Prada bags. (Declaration of David Schoen, Esq., executed Aug. 23, 2006, at ¶ 3).

2

In light of this alleged representation by the prosecutor, defendants assert that it is appropriate to stay this case as against them in order to relieve Mr. Ressler of the need to testify here "as to how he acquired the involved Fendi goods, from whom, how he determined that the goods were genuine and the representations and actions taken during resale to customers . . . ." (Schoen Decl. at ¶ 4). If Ressler is required to so testify, they argue, that testimony "may be used against him in the criminal proceedings in violation of his constitutional rights, and would also provide information concerning his criminal defense and strategies prior to any necessity to divulge such information to the Government." (Id. at ¶ 5). In contrast, they assert, a stay would pose no prejudice to plaintiffs because defendants have informally agreed not to import any more Fendi-type products during the pendency of this lawsuit. (Defts' Memo at 3-4).

There is of course no constitutional right to a stay of a civil case because of the pendency of related criminal charges even if denial of such relief places the movant in the awkward position of either surrendering his Fifth Amendment privilege or running the risk that the invocation of the privilege will be used against him in the civil case. See, e.g., Nosik v. Singe, 40 F.3d 592, 595 (2d Cir. 1994); Beacon Hill Asset Mgt. LLC v. Asset Alliance Corp., 2003 WL 1845208, *1 (S.D.N.Y. March 25, 2003). The decision whether

3

to grant such a stay rests in the discretion of the district court. See, e.g., Nosik, 40 F.3d at 595; Afro-Lecon, Inc. v. United States, 820 F.2d 1198, 1202 (Fed. Cir. 1987); SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1374-75 (D.C. Cir. 1980); Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc., 175 F. Supp.2d 573, 575-76 (S.D.N.Y. 2001). In assessing the question, the court "must make a highly fact-bound inquiry into the 'particular circumstances and competing interests involved in the case", id. at 576 (quoting Fed. Sav. & Loan Ins. Corp. v. Molinaro, 889 F. 2d 899, 902 (9th Cir. 1989)), with a view to determining whether "'the interests of justice seem to require such action.'" Dresser, 628 F.2d at 1375 (quoting United States v. Kordel, 397 U.S. 1, 12 n.27 (1970)). See also Beacon Hill, 2003 WL 1845208 at *1 (citing inter alia Kashi v. Gratsos, 790 F.2d 1050, 1057 (2d Cir. 1986)). Among the concerns at play are the extent to which the defendant's Fifth Amendment rights may be affected, as well as

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not party to the litigation; and (5) the interest of the public in the pending civil and criminal litigation.

Keating v. Office of Thrift Supervision, 45 F.3d 322, 325 (9th Cir. 1995). Accord Sterling Nat'l Bank, 175 F. Supp.2d at 576; Morris v.

4

American Fed. Of State, Country & Munic. Employees, 2001 WL 123886, *2 (S.D.N.Y. Feb. 21, 2001). If the civil suit is brought by a government agency that has administrative responsibility in the area from which the criminal charges have emerged, that fact may also be quite pertinent, both because of the public interest in effective regulation, and because of the potential that the government may be using the lawsuit as a means of gathering information for the criminal case. See, e.g., Kordel, 397 U.S. at 11-12; Gordon v. FDIC, 427 F.2d 578, 580 (D.C. Cir. 1970).[1]

If there is no overlap in the facts involved in the criminal and civil proceedings, plainly no stay is warranted. See, e.g., Sotheby's Int'l Realty, Inc. v. Black, 2006 WL 2370244, * 1-2 (S.D.N.Y. Aug. 14, 2006). Furthermore, even if there is some overlap -- or indeed identity -- between the factual underpinnings of the cases, a stay may justifiably be denied in favor of more limited relief, such as, for example, a protective order postponing the indicted defendant's testimony, whether by deposition or interrogatory, even while permitting other discovery to proceed. See, e.g., Gordon, 427 F.2d at 310. Moreover, if the equities so suggest, the court may simply decline any limitation on discovery,

---

[1] These considerations in the context of an agency lawsuit may cut in opposite directions, since the public interest in effective regulation suggests an appropriate reluctance to stay such a lawsuit, whereas an indication of government overreaching may counsel in favor of a stay.

5

leaving the defendant in question to the alternative remedy of invoking his Fifth Amendment privilege. See, e.g., Gordon v. Miami Nat'l Bank, 406 F.2d 660, 663 (D.C. Cir. 1968).

In this case the first difficulty with defendants' application is that, on its face, the indictment does not address the facts at issue in plaintiffs' lawsuit, that is, the alleged distribution of counterfeit Fendi goods. That is not necessarily the end of the matter, however, since it may well be the case that -- as defendants contend -- Mr. Ressler's asserted trafficking in counterfeit Fendi bags could be used in the prosecution as incriminating evidence under the liberal reach of Fed. R. Evid. 404(b). Whether that is likely to be the case here is not entirely clear on the current record, because the hearing at which the prosecutor purportedly indicated that the Fendi goods were likely to be evidence in the case was not transcribed. Moreover, the tape of the hearing was sealed, apparently at the request of Mr. Ressler's counsel -- a request made one day after the filing of the stay motion. (See Declaration of Anthony Cannatella, executed Aug. 30, 2006, at ¶ 11).

Apart from questions about the relationship between testimony that might be required of Mr. Ressler in this case and the evidence likely to be offered in the criminal case, a still more profound

weakness in defendants' motion is the fact that only one of the three defendants has been indicted. Neither Scott Ressler nor Ashley Reed, of which he is president, have been charged, and these defendants offer no persuasive reason why they should not be required to provide discovery, whether it be in the form of document production, interrogatory answers or deposition testimony. Although defendants suggest that James Ressler is the most knowledgeable individual about the transactions in question, it is entirely likely that Scott Ressler is not ignorant of the pertinent facts, and in any event corporate documents are appropriately discovered regardless of whether they implicate James Ressler or the company in illegal activity.

The weakness of defendants' motion is further underscored by the timing of their stay application and the history of prior discovery efforts. The indictment was returned on March 1, 2006, and yet defendants did not seek any relief in this case for nearly six months. Instead, they have engaged in a series of delaying tactics that have largely stymied discovery efforts by the plaintiffs. The fact that they chose to seek a stay only in the wake of court rulings that required compliance with plaintiffs' demands raises serious questions about the real motivation for this application.

In addition, there is no suggestion in this case that the plaintiffs here are seeking discovery to assist the government in the prosecution of James Ressler. This too weakens the case for a stay of discovery, regardless of whether more limited relief might be appropriate.[2]

We also note that the delays thus far encountered -- all of which preceded the motion for a stay -- have already frustrated the ability of the court to manage pretrial proceedings in this case. Simply putting the case in cold storage until the unpredictable conclusion of the criminal proceeding[3] is simply not a desirable result.

Finally, although plaintiffs themselves do not attempt to demonstrate prejudice, in the absence of a formal injunction against distribution of counterfeit Fendi products there is at least some potential for harm to the public interest from a delay in the case, since defendants are not facing contempt if they

---

[2] In addition, a protective order now in place would limit the use that plaintiffs may make of confidential discovery materials. (Tr. 21).

[3] Defendants suggest no timetable for the completion of the criminal case, and the docket sheet proffered by plaintiffs (Cannatella Decl., Ex. A) offers no further enlightenment. See generally Sotheby's Int'l, 2006 WL 2370244 at *2 (noting "the time-consuming nature of complex white collar criminal litigation").

resume distribution of what may be counterfeit goods.

Given the circumstances, we conclude that the broad-based stay of discovery sought by defendants is entirely unwarranted. Discovery will proceed as previously ordered, including production of documents, deposition of Scott Ressler and, if requested by plaintiffs, a Rule 30(b)(6) deponent for Ashley Reed. Document production is to be completed within seven days. The depositions are to be completed by no later than September 29, 2006. We are not at this time going to preclude a deposition of James Ressler, but we direct that it be taken last, so that if he has any further evidence pertinent to (1) whether Fendi products are within the scope of relevance in the impending criminal prosecution and (2) the likely timing of a trial in the criminal case, he may apply for relief with respect to his deposition.

Dated: New York, New York
       September 8, 2006

_____
MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Memorandum and Order have been mailed today to:

Gerard F. Dunne, Esq.
Law Offices of Gerard F. Dunne, P.C.
156 Fifth Avenue
Suite 1223
New York, New York 10010

Anthony S. Canatella, Ersq.
Pavia & Harcourt LLP
600 Madison Avenue
New York, New York 10022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES COURTHOUSE
500 PEARL STREET
NEW YORK, NEW YORK 10007-1312

CHAMBERS OF
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

M E M O R A N D U M

To:    Margaret Davidson,
       Supervisor, Magistrate Judges Clerk's Office

From:  Theodore H. Katz,
       United States Magistrate Judge

Date:  September 5, 2006

Re:    Criminal Duty Schedule Changes

    Judge Dolinger will be covering criminal duty on Friday, September 8, 2006 after 1:00 p.m. Judge Pitman will be covering criminal duty on Saturday, September 9, 2006. In exchange, I will be covering for Judge Pitman on Saturday, September 30, 2006, and Judge Dolinger on Wednesday, September 20, 2006, after 5:00 p.m.


THK/gd
cc: Judge Dolinger
    Judge Pitman
    Clifford P. Kirsch,
    District Court Executive
    John Gencarello - Courtroom Support Services