UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------- X

FENDI ADELE S.R.L., FENDI S.R.L., and   :
FENDI NORTH AMERICA, INC.,

                                         :

          Plaintiffs,                   Case No.:  06-CV-0243 (RMB)
    -against-                        :

                                 Oral Argument Requested

ASHLEY REED TRADING, INC.,               :
SCOTT RESSLER and
JAMES RESSLER,                           :

          Defendants.            :
--------------------------------------- X

## PLAINTIFFS' CORRECTED MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Richard L. Mattiaccio (RM 4764)
Victor Genecin (VG 9733)
Steven Skulnik (SS 7821)

SQUIRE, SANDERS & DEMPSEY L.L.P.
1095 Avenue of the Americas, 31st floor
New York, NY  10036
(212) 872-9800

*Attorneys for Plaintiffs*
FENDI ADELE S.r.l., FENDI S.r.l., and
FENDI NORTH AMERICA, INC.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ..................................................................... 1

ARGUMENT ................................................................................ 5

POINT I.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT
            HOLDING DEFENDANTS LIABLE FOR TRADEMARK
            COUNTERFEITINGAND FALSE DESIGNATION OF ORIGIN ..................... 6

      A.    Defendants Purchased and Sold Counterfeit Fendi Branded Goods ................... 6

      B.    Defendants' Conduct Constituted Trademark Counterfeiting and False
            Designation of Origin ........................................................ 6

      C.    Defendants' Conduct Constituted Trademark Dilution ........................ 8

POINT II.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT
            HOLDING DEFENDANTS LIABLE UNDER NEW YORK LAW FOR
            TRADEMARK DILUTION AND UNFAIR COMPETITION .......................... 9

      A.    Fendi has Presented Uncontroverted Evidence Establishing Unfair
            Competition Under New York Common Law ..................................... 9

      B.    Plaintiffs have Presented Uncontroverted Evidence Establishing
            Trademark Dilution Under New York Law ...................................... 9

POINT III.  PLAINTIFFS ARE ENTITLED TO ENTRY OF A PERMANENT
            INJUNCTION ................................................................ 10

POINT IV.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT
            DIRECTING DEFENDANTS TO DISGORGE THEIR PROFITS FROM
            THEIR SALES OF COUNTERFEITS ............................................. 12

      A.    Defendants Should be Directed to Disgorge All of Their Profits from
            Their Sales of Fendi Branded Handbags and Small Leather Goods ................. 12

      B.    ARTI's Total Sales Revenue from its Unlawful Sales is the Proper
            Measure of its Profits ...................................................... 13

POINT V.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT FOR
            THREE TIMES DEFENDANTS' PROFITS ...................................................... 15

     A.     Defendants Failed to Maintain, and to Produce in Discovery, Evidence of
            their Purchases and Sales of Fendi Branded Products ........................................ 16

     B.     Defendants Caused their Remaining Inventory, and that of their Customer,
            Big M, Inc., to Vanish after Plaintiffs Sued Them ............................................... 17

     C.     Defendants Refused to Represent to their Customer Filene's Basement
            that Resale of Goods Purchased from Them Would Not Violate Any
            Person's Proprietary Rights .................................................................................. 18

POINT VI.   PLAINTIFFS ARE ENTITLED TO COSTS AND ATTORNEYS' FEES ........ 19

POINT VII.  PLAINTIFFS ARE ENTITLED TO AN AWARD OF PRE-JUDGMENT
            INTEREST ............................................................................................................... 19

POINT VIII. DEFENDANTS' AFFIRMATIVE DEFENSES ARE LEGALLY AND
            FACTUALLY BASELESS ..................................................................................... 20

CONCLUSION ............................................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

**Cases**

*20th Century Wear, Inc. v. Sanmark-Stardust Inc.*,
    1984 U.S. Dist. LEXIS 20527 (S.D.N.Y. 1984) ...................................................... 14

*A.V. by Versace, Inc. v. Gianni Versace S.p.A.*,
    2005 U.S. Dist. LEXIS 925 (S.D.N.Y. Jan. 21, 2005) ........................................... 10

*Ambrit, Inc. v. Kraft, Inc.*,
    812 F.2d 1531 (11th Cir. 1986) ............................................................................ 24

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................. 5

*Apollo Theater Found., Inc. v. W. Int'l Syndication*,
    2005 U.S. Dist. LEXIS 7955 (S.D.N.Y. May 5, 2005) ..................................... 13, 25

*Baker v. Parris*,
    777 F. Supp. 299 (S.D.N.Y. 1991) ........................................................................ 10

*Cartier Int'l B.V. v. Ben-Menachem*,
    2007 U.S. Dist. LEXIS 95366 (S.D.N.Y. Dec. 19, 2007) .................................. 7, 19

*Island Software and Computer Serv., Inc. v. Brunner*,
    413 F.3d 257 (2d Cir. 2005) .................................................................................. 16

*Coca-Cola Co. v. Overland, Inc.*,
    692 F.2d 1250 (9th Cir. 1982) ......................................................................... 10, 11

*Conn. Cmty. Bank v. Bank of Greenwich*,
    578 F.Supp. 2d 405 (D. Conn. 2008) .................................................................... 11

*Conopco, Inc. v. Campbell Soup Co.*,
    95 F.3d 187 (2d Cir. 1996) .................................................................................... 21

*Country Rd. Music, Inc. v. MP3.com, Inc.*,
    279 F.Supp. 2d 325 (S.D.N.Y. 2003) .................................................................... 16

*Dietrich v. Bauer*,
    126 F.Supp. 2d 759 (S.D.N.Y. 2001) .................................................................... 17

*E & J Gallo Winery v. Pasatiempos Gallo S.A.*,
    905 F. Supp. 1403 (E.D. Cal. 1994) ...................................................................... 21

*Elvis Presley Enters., Inc. v. Capece*,
　141 F.3d 188 (5th Cir. 1998) ...................................................................... 24

*Estate of John Lennon v. Screen Creations, Ltd.*,
　939 F. Supp. 287 (S.D.N.Y. 1996) ............................................................ 20

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*,
　2007 U.S. Dist. LEXIS 75812 (S.D.N.Y. Oct. 10, 2007) .............................. 6, 19, 21

*Fendi S.A.S. Di Paola Fendi E Sorelle v. Cosmetic World, Ltd.*,
　642 F. Supp. 1143 (S.D.N.Y. 1986) ................................................. 2, 5, 8, 15, 16

*Fitzpatrick v. Sony-BMG Music Entm't, Inc.*,
　2007 U.S. Dist. LEXIS 91446 (S.D.N.Y. Dec. 7, 2007) ........................................ 21

*Genesee Brewing Co., Inc. v. Stroh Brewing Co.*,
　124 F.3d 137 (2d Cir. 1997) ......................................................................... 10

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*,
　82 F.Supp. 2d 126 (S.D.N.Y. 1999) ............................................................ 24

*Golden Pac. Bancorp. v. F.D.I.C.*,
　375 F.3d 196 (2d Cir. 2004) ........................................................................... 6

*Gristede's Foods, Inc. v. Unkechauge Nation*,
　2008 U.S. Dist. LEXIS 61102 (E.D.N.Y. Aug. 8, 2008) ................................... 21

*Gruner + Jahr USA Publ'g, v. Meredith Corp.*,
　991 F.2d 1072 (2d Cir. 1993) .......................................................................... 7

*Gucci Am. Inc. v. Action Activewear, Inc.*,
　759 F. Supp. 1060 (S.D.N.Y. 1991) .............................................................. 7

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
　286 F.Supp. 2d 284 (S.D.N.Y. 2003) ................................................. 6, 7, 8, 10

*Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*,
　240 U.S. 251 (1916) ...................................................................................... 12

*Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*,
　955 F.2d 1143 (7th Cir. 1992) ............................................................... 17, 20

*Hearts on Fire Co., LLC v. L C Int'l Corp.*,
　2004 U.S. Dist. LEXIS 14828 (S.D.N.Y. July 30, 2004) ................................... 9

*Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*,
　219 F.3d 104 (2d Cir. 2000) ........................................................................... 21

iv

*In re Parmalat Sec. Litig.*,
    383 F.Supp. 2d 587 (S.D.N.Y. 2005) .................................................................. 17

*Int'l Consulting Servs., Ltd. v. Cheap Tickets, Inc.*,
    2007 U.S. Dist. LEXIS 71689 (E.D.N.Y. Sept. 12, 2007) ..................................... 20

*ITC Ltd. v. Punchgini, Inc.*,
    482 F.3d 135 (2d Cir. 2007) .................................................................................. 15

*Johnson & Johnson Consumer Cos. v. Aini*,
    540 F.Supp. 2d 374 (E.D.N.Y. 2008) ...................................................................... 9

*Kiki Undies Corp. v Promenade Hosiery Mills, Inc.*,
    308 F. Supp. 489 (S.D.N.Y. 1969) ................................................................. 10, 11

*Lane Capital Mgmt, Inc. v. Lane Capital Mgmt, Inc.*
    192 F.3d 337 (2d Cir. 1999) .................................................................................... 7

*Lorillard Tobacco Co. v. A&E Oil, Inc.*,
    503 F.3d 588 (7th Cir. 2007) ............................................................................ 7, 16

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
    454 F.3d 108 (2d Cir. 2006) .................................................................................... 6

*Louis Vuitton, S.A. v. Lee*,
    875 F.2d 584 (7th Cir. 1989) ..................................................................... 15, 17, 21

*Maltina Corp. v. Cawy Bottling Co.*,
    613 F.2d 582 (5th Cir. 1980) ................................................................................ 14

*Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*,
    885 F.2d 1 (2d Cir. 1989) ................................................................................ 13, 14

*Mary Kay v. Weber*,
    2009 U.S. Dist. LEXIS 13314 (D. Tex. Feb. 20, 2009) ........................................ 24

*Mendez v. Holt*,
    128 U.S. 514 (1888) .............................................................................................. 21

*Microsoft Corp. v. Black Cat Computer Wholesale, Inc.*,
    269 F.Supp. 2d 118 W.D.N.Y. 2002) .............................................................. 17, 20

*Mishawaka Rubber and Woolen Mfg. Co. v. S.S. Kresge Co.*,
    315 U.S. 203 (1942) .............................................................................................. 12

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*,
  818 F.2d 254 (2d Cir. 1987)..................................................................................... 9

N.A.S. Import, Corp.v. Chenson Enters., Inc.,
  968 F.2d 250 (2d Cir. 1992)..................................................................................... 18

*Nike, Inc. v. Top Brand Co.*,
  2005 U.S. Dist. LEXIS 42374 S.D.N.Y. July 13, 2005) ......................................... 9, 10, 15, 16

*Owens v. N.Y.C. Housing Auth.*,
  934 F.2d 405 (2d Cir. 1991)..................................................................................... 16

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
  317 F.3d 209 (2d Cir. 2003)..................................................................................... 10

*Pavlica v. Behr*,
  397 F.Supp. 2d 519 (S.D.N.Y. 2005)....................................................................... 25

*Philip Morris USA Inc. v. Felizardo*,
  2004 U.S. Dist. LEXIS 11154 S.D.N.Y. (June 17, 2004) ....................................... 9

*Polo Ralph Lauren, L.P. v. 3M Trading Co.*,
  1999 U.S. Dist. LEXIS 7913 (S.D.N.Y. Mar. 22, 1999) ........................................ 17

*ProFitness Physical Therapy Ctr. v.*
  *Pro-Fit Orthopedic & Sports Physical Therapy P.C.*,
  314 F.3d 62 (2d Cir. 2002)....................................................................................... 21

*RIJ Pharm. Corp. v. Ivax Pharms., Inc.*,
  322 F.Supp. 2d 406 (S.D.N.Y. 2004) ...................................................................... 17

*Russian Kurier v. Russian Am. Kurier*,
  899 F. Supp. 1204 (S.D.N.Y. 1995)......................................................................... 9

*Saratoga Vichy Spring Co., Inc. v. Lehman*,
  625 F.2d 1037 (2d Cir. 1980).................................................................................. 24

*Savin Corp. v. Savin Group*,
  391 F.3d 439 (2d Cir. 2004)..................................................................................... 8

*SEC v. Falbo*,
  14 F.Supp. 2d 508 (S.D.N.Y. 1998)......................................................................... 22

*Skouras v. United States*,
  26 F.3d 13 (2d Cir. 1994) ......................................................................................... 15

*Stone v. Williams*,
891 F.2d 401 (2d Cir. 1989)...................................................................... 21

*Sunward Elecs., Inc. v. McDonald*,
362 F.3d 17 (2d Cir. 2004)......................................................................... 7

*Tanning Rsch. Labs, Inc. v. Worldwide Imp. & Exp .Corp.*,
803 F. Supp. 606 (E.D.N.Y. 1992) ........................................................... 15

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap., Inc.*,
531 F.3d 190 (2d Cir. 2008)...................................................................... 17

*Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*,
294 F.3d 383 (2d Cir. 2002)...................................................................... 20

*Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing, Inc.*,
2003 U.S. Dist. LEXIS 8788 (N.D. Ga. May 9, 2003) ...................... 18,

*Tupman Thurlow Co. v. S.S. Cap Castillo*,
490 F.2d 302 (2d Cir. N.Y. 1974) ............................................................ 17

*United States Media Corp. v. Edde Entm't, Inc.*,
1998 U.S. Dist. LEXIS 10985 (S.D.N.Y. July 16, 1998) ........................ 13

*Warner Brothers, Inc. v. Gay Toys, Inc.*,
724 F.2d 327 (2d Cir. 1983) ..................................................................... 20

*Whittaker Corp. v. Execuair Corp.*,
953 F.2d 510 (9th Cir. 1992) .................................................................... 11

*With Love Designs, Inc. v. Dressy Tessy, Inc.*,
1992 U.S. Dist. LEXIS 15629 (S.D.N.Y. Oct. 9, 1992) .......................... 13

*Wojnarowicz v. Am. Family Ass'n*,
745 F. Supp. 130, 148 (S.D.N.Y. 1990)................................................... 10

*Wow & Flutter Music, Hideout Records & Distributors, Inc. v. Len's Tom Jones Tavern, Inc.*,
606 F. Supp. 554 (W.D.N.Y. 1985) .......................................................... 16

*Yurman Design, Inc. v. Golden Treasure Imports, Inc.*,
275 F.Supp. 2d 506 (S.D.N.Y. 2003) ....................................................... 20

## Statutes & Rules

15 U.S.C. § 1065 ........................................................................................... 7

15 U.S.C. §1114(1)(a) .................................................................................. 15

15 U.S.C. § 1114(a) ...................................................................................... 6

15 U.S.C. §1116(a) ....................................................................................... 10

15 U.S.C. § 1117(a) .............................................................................. 12, 13, 14

15 U.S.C. § 1117(b) ...................................................................................... 19

15 U.S.C. § 1118 .......................................................................................... 11

15 U.S.C § 1125(a) ....................................................................................... 6

15 U.S. C. § 1125(c) .................................................................................. 7, 8

15 U.S.C. § 1127 .......................................................................................... 7

26 U.S.C § 6621(a)(2) ................................................................................... 19

N.Y. Bus. Law § 360-1 ................................................................................. 9

N.Y. C.P.L.R. § 213(8) ................................................................................. 21

Fed. R. Civ. P. 56(c) ..................................................................................... 5

## Treatise

5 MCCARTHY, J. THOMAS,
    *McCarthy on Trademarks and Unfair Competition*, §30:65 (2001) ...................................... 12

## PRELIMINARY STATEMENT

Based upon uncontroverted evidence that defendants sold counterfeit Fendi branded handbags and small leather goods to nationwide retailers, including Filene's Basement and Burlington Coat Factory Warehouse Corporation, and upon uncontroverted evidence that defendants' sales of Fendi branded products totaled nearly $10,000,000, plaintiffs respectfully submit this Memorandum of Law in support of their motion seeking summary judgment.

## STATEMENT OF FACTS[1]

Plaintiff Fendi Adele S.r.l. owns the world-famous, federally-registered Fendi trademarks, and is the exclusive designer of handbags, shoulder bags, purses, wallets, and key holders bearing those trademarks (the "Products").  (56.1 ¶¶ 1-2).  Plaintiff Fendi S.r.l. is the exclusive worldwide licensee of Fendi Adele S.r.l. for the manufacture and distribution of the Products.  (56.1 ¶ 3).  Plaintiff Fendi North America, Inc. owns and operates Fendi boutiques in the United States and is the exclusive distributor of the Products to carefully selected, highly-qualified retail and department stores located in North America.  (56.1 ¶ 5).

Defendant Ashley Reed Trading, Inc. ("ARTI") is a New York corporation with its principal place of business in New York, New York.  Defendant Scott Ressler is president of ARTI.  His brother, defendant James Ressler, is vice president of ARTI.  Each of the brothers owns 50% of ARTI.  In his deposition in this case, James Ressler invoked his Fifth Amendment right against self-incrimination in response to all substantive questions.  (Deposition of James Ressler dated May 29, 2008).  (56.1 ¶¶ 8-11).

Five Fendi trademarks, U. S. Patent and Trademark Office Registration No. 1,214,472; No. 1,244,466, No. 1,439,955; No. 2,648,256 and No. 2,648,257, are used on the Products.[2]

---

[1]    For ease of reference, citations to matters in the record herein will be given as "56.1 ¶___" and will be to the corresponding paragraph of Plaintiffs' Statement Pursuant to Local Civil Rule 56.1, where the relevant testimony or exhibit will be fully cited.

(56.1 ¶ 28).  The registrations are valid, subsisting, and in full force and effect, and Fendi uses these trademarks and has never abandoned them.  (56.1 ¶¶ 29-32).  Fendi's trademarks "have been extensively advertised and now represent prestigious symbols in fashion."  *Fendi S.A.S. Di Paola Fendi E Sorelle v. Cosmetic World, Ltd.*, 642 F. Supp. 1143, 1145 (S.D.N.Y. 1986).

The Products and their component parts are individually designed by Fendi Adele S.r.l., which undertakes a complex design process twice a year to create and select the Products shown to plaintiffs' customers during the Fall and Spring Fashion Weeks in Milan, Italy.  (56.1 ¶¶ 33-39).  Fendi S.r.l manufactures the Products pursuant to orders received from the customers, and makes no Products for inventory based on sales projections.  (56.1 ¶¶ 43-49).

Fendi S.r.l. contracts with suppliers to produce the components used to assemble the Products.  (56.1 ¶ 50).  The components are manufactured exclusively for Fendi S.r.l., pursuant to strict specifications; items that do not meet Fendi S.r.l.'s specifications are destroyed.  (56.1 ¶¶ 54-55).  Fendi S.r.l. monitors the activities of its materials suppliers, and they are contractually bound to deliver the items ordered only to Fendi S.r.l.  (56.1 ¶¶ 50-53).

To assemble the Products, Fendi S.r.l. contracts with small companies in and around Florence, Italy.  (56.1 ¶¶ 56-57).  Each assembly order is for a stated quantity of one Product style in a specific combination of materials, and Fendi S.r.l. prepares a "kit" containing the precise number of components needed to assemble the quantity specified.  (56.1 ¶¶ 58-68).  Included within each kit is a 16-digit code that identifies the assembler -- called a subcontractor by Fendi S.r.l. -- the style number, the combination of materials used, and the season for which the order is manufactured.  (56.1 ¶¶ 69-70).  The code is stamped by the subcontractor on a piece of leather trim that is sewn into the inside lining of each Product.  (56.1 ¶ 71).  The

---

[2]     These trademarks are illustrated at 56.1 ¶ 28. Current registration certificates are Exhibits 1-5 to the Declaration of Victor Genecin dated February 27, 2009 ("Genecin Decl.") filed herewith.

subcontractors are inspected and are not permitted to market or sell the Products, but must deliver all finished Products, accounting for all components in the kit, to Fendi's distribution center. (56.1 ¶¶ 89-96). Fendi S.r.l. destroys Products that are incorrectly assembled and cannot be repaired. (56.1 ¶ 97).

Fendi S.r.l. records the exact combination of materials in which it manufactures each of the Products, and which Products are assigned to each assembler in each season. A Fendi branded item made in a combination of materials not used by Fendi S.r.l. is thus readily identifiable as counterfeit. Counterfeits of the Products, moreover, typically have a piece of leather trim stamped with 16 digits sewn into the inside lining, but the digits are either nonsense, or identify an incorrect subcontractor, material or season. (56.1 ¶ 128). Leonardo Minerva, Industrial Director of Leather Goods and Logistics Director for Fendi S.r.l. was in charge of the manufacturing of the Products from 2002 to 2008, and also examined hundreds of questioned Fendi branded items each year for authenticity. (56.1 ¶¶ 111-13). He never saw an instance in which a Fendi branded item had the correct code, but imperfect materials. (56.1 ¶ 75).

Starting with Fall-Winter, 2003 season, a hologram label is stitched into the lining of each Product. These labels are manufactured by a specialized vendor, delivered to Fendi S.r.l.'s manufacturing facility, and locked in a safe. Within a genuine hologram, microscopic examination reveals proprietary symbols used by Fendi. (56.1 ¶¶ 76-81)). The owner of each assembly subcontractor must visit Fendi S.r.l.'s manufacturing facility in person to sign for and obtain the hologram labels assigned to each kit. (56.1 ¶ 83).

Finished Products are shipped directly from Fendi S.r.l.'s distribution center to customers or, in the case of the United States, to Fendi North America, Inc. (56.1 ¶¶ 98-100). Fendi S.r.l. maintains detailed records concerning each shipment, and includes including tracking numbers,

descriptions, the exact type and amount of merchandise sold and the identity of the purchaser on each of its invoices.  (56.1 ¶¶ 103-10).  Fendi S.r.l. maintains a database that allows it to determine whether a document that appears to be a Fendi S.r.l. invoice is authentic.  (56.1 ¶¶ 109-10).

Minerva followed a careful, multi-step protocol in examining a questioned Fendi branded item for genuineness.  (56.1 ¶¶ 114-22).  First, he visually inspected the item, noting the quality of the materials, the appearance of the trademarks, the finish, the hardware, and the construction. (56.1 ¶ 115).  Then, he checked the item against Fendi S.r.l.'s records to determine whether the particular style had been manufactured in the combination of materials presented.  (56.1 ¶ 116). He inspected each component for conformity with Fendi's specifications, and examined the code on the leather trim to see if it matched Fendi S.r.l.'s internal manufacturing and design records. (56.1 ¶¶ 117-19).  Finally, he examined the hologram, and verified the serial number on the hologram label.  (56.1 ¶ 120).

Minerva testified in this case concerning 20 separate Fendi branded items sold by defendants to Filene's Basement, Inc., Big M, Inc.d/b/a "Annie Sez," Nordstrom Rack and Saks Off Fifth Avenue.  (56.1 ¶¶ 123-27).  Each of these items is counterfeit.  Minerva's uncontradicted testimony sets forth multiple factors for his conclusion concerning each item. (56.1 ¶ 128).  Each of these 20 items bears counterfeits of one or more of the registered Fendi trademarks.  (56.1 ¶ 129).[3]  Not one genuine Fendi branded item sold by ARTI to anyone has been proffered by these defendants, or by any of the defendants in any of Fendi's anti-counterfeiting cases in this Court.[4]  Indeed, following the commencement of this litigation,

---

[3]     All, or any part, of the demonstrative exhibits herein -- handbags and small leather goods -- will be delivered to the Court for its examination upon request.

[4]     Plaintiffs' lawsuit against Filene's Basement, Inc, and its parent company, Retail Ventures, Inc., *Fendi Adele, s.r.l. et al. v. Filene's Basement, Inc., et al.*, Case No. 06 Civ. 0244 (RMB)(MHD) is currently pending before

defendants disposed of their inventory of Fendi branded goods, obviating examination by plaintiffs.  (56.1 ¶ 137-40).

Defendants admit, moreover, that they did not preserve the invoices sent to them by their suppliers of Fendi branded goods.  (56.1 ¶ 141).  Nor did they produce complete records of their sales:  their document production disclosed total sales of Fendi branded goods of $     **REDACTED**     , while documents obtained in discovery from defendants' customers revealed an additional **REDACTED** $    **REDACTED**    .  (56.1 ¶¶ 132-34).  It is now undisputed that defendants made $   **REDACTED**   in sales of Fendi branded goods.  (56.1 ¶ 135).

Summary judgment on every cause of action pleaded by plaintiffs for every form of relief sought in their Complaint is warranted on this record, and is needed by plaintiffs if this illegal activity is ever to be brought to an end.

### ARGUMENT

"The principles governing the grant of summary judgment are the same in trademark as in other actions."  *Fendi S.A.S. Di Paola Fendi E Sorelle v. Cosmetic World, Ltd.*, 642 F. Supp. 1143, 1145 (S.D.N.Y. 1986).  A motion for summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In deciding a motion for summary judgment, the evidence submitted must be viewed in the light most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  While credibility

---

this Court.  Their lawsuit against Burlington Coat Factory Warehouse Corporation and its subsidiary, Cohoes Fashions, Inc., *Fendi Adele, s.r.l. et al. v. Burlington Coat Factory Warehouse et al.*, Case No. 06 Civ. 0085 (LBS) (MJD), is pending before Judge Sand.  Also pending, before Judge Koeltl, is plaintiffs' lawsuit against two other wholesalers of counterfeits, Colton International and its owner, Howard Colton, *Fendi Adele, s.r.l. et al. v. 546332 BC, Ltd. et al.*, Case No. 06 Civ. 7084 (JGK) (MHD).

    On motion of the defendants, those cases, and Fendi's lawsuit against Big M, Inc., which has since been settled, were consolidated with the instant case for purposes of discovery.  All documents concerning ARTI produced by the defendants in any of these cases or otherwise obtained by plaintiffs were produced to defendants herein, and defendants had the opportunity to attend and examine at each deposition in which any matter concerning ARTI was raised.

determinations, weighing evidence, and drawing legitimate inferences from facts are functions

that the Court must leave to the jury, if the nonmoving party does not present evidence from

which a reasonable jury could return a favorable verdict, then summary judgment is appropriate.

*See, e.g.*, *Golden Pac. Bancorp. v. F.D.I.C.*, 375 F.3d 196, 200 (2d Cir. 2004); *Fendi Adele*

*S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 2007 U.S. Dist. LEXIS 75812, at *8

(S.D.N.Y. Oct. 10, 2007)


## POINT I.

### PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT HOLDING DEFENDANTS LIABLE FOR TRADEMARK COUNTERFEITINGAND FALSE DESIGNATION OF ORIGIN

**A.    Defendants Purchased and Sold Counterfeit Fendi Branded Goods**

Defendants do not even attempt to controvert Minerva's testimony that 20 Fendi branded

items sold by defendants are counterfeit.  This evidence clearly satisfies plaintiffs' burden on

summary judgment.  *See Gucci Am., Inc. v. Duty Free Apparel*, 286 F.Supp. 2d 284, 285-86

(S.D.N.Y. 2003) (quality-assurance personnel testified that components of defendant's handbags

did not conform to plaintiff's specifications)(granting summary judgment for counterfeiting).


**B.    Defendants' Conduct Constituted Trademark Counterfeiting and
        False Designation of Origin**

Plaintiffs' first and second causes of action allege counterfeiting in violation of 15 U.S.C.

§ 1114(a) (Compl. ¶¶ 41-53) and false designation of origin in violation of 15 U.S.C. § 1125(a).

(Compl. ¶¶ 54-66).[5]  To prevail on claims under these provisions, a plaintiff must establish two

---

[5]    The Lanham Act prohibits the use in commerce, without consent, of any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods in a way that is likely to cause confusion with a plaintiff's registered trademark.  15 U.S.C. § 1114(a). The Act further prohibits the use in commerce of "any false designation of origin . . . which is likely to cause confusion."  15 U.S.C. § 1125(a).

elements:  (1) the plaintiff had a valid mark entitled to protection, and (2) the defendant used a similar mark in commerce in a way that was likely to cause confusion among the relevant consuming public.  *See, e.g., Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2006).  Defendants admit that each of the five trademarks used on the Products is registered in the U.S. Patent and Trademark Office.  (Am. Answer ¶ 23).  In an action for infringement of a registered mark, "the defendant bears the burden to rebut the presumption of the mark's protectibility by a preponderance of the evidence."  *Lane Capital Mgmt, Inc. v. Lane Capital Mgmt, Inc.*, 192 F.3d 337, 345 (2d Cir. 1999).  A registered mark, moreover, "becomes incontestable if it has been in continuous use for five consecutive years subsequent to its registration and is still in use."  15 U.S.C. § 1065; *Gruner + Jahr USA Publ'g, v. Meredith Corp.*, 991 F.2d 1072, 1076 (2d Cir. 1993).[6]  Defendants admit that "plaintiffs have used one or more of the trademarks on the Products since 1972 and caused them to be registered, and that, "the Fendi trademarks have acquired great value and have become well known to the consuming public and trade as identifying and distinguishing Fendi exclusively and uniquely as the source of the merchandise to which the trademarks are applied." (Compl. ¶¶ 21, 34, 36; Am. Answer ¶¶ 21, 34, 36). The Fendi trademarks are therefore valid and entitled to protection.

A defendant's knowledge or intent need not be shown to establish liability:  sellers of counterfeit goods are strictly liable.  *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 26 (2d Cir. 2004) ("Wrongful intent is not a prerequisite to an action for trademark infringement or unfair competition, and good faith is no defense."); *Cartier Int'l B.V. v. Ben-Menachem*, 2007 U.S. Dist. LEXIS 95366, at *31-*32 (S.D.N.Y. Dec. 19, 2007); *Gucci Am., Inc. v. Action Activewear,*

---

[6]       In January, 2006 when this action was commenced, three of the trademarks -- No.1,214,472 (registered 1982); No. 1,244,466, (registered 1983); and No. 1,439,955 (registered 1987) -- had been registered and in continuous use for more than five years.  Indeed, the word "FENDI" (Trademark No. 1,244,466) and the "Double-F" Monogram (Trademark No.1,214,472) were recognized by this Court to be famous trademarks in 1986. *Fendi S.A.S.,* 642 F. Supp. at 1145.

*Inc.*, 759 F. Supp. 1060, 1065 (S.D.N.Y. 1991).  The issue is whether defendants imported, distributed, advertised, offered for sale or sold products bearing counterfeits of plaintiffs' trademarks.  *See Lorillard Tobacco Co*., 378 F.Supp. 2d at 455; *Gucci Am., Inc v. Duty Free Apparel, Ltd*., 286 F.Supp. 2d at 287.

Finally, defendants' use in commerce of counterfeits of the Fendi trademarks is shown by uncontroverted evidence, and summary judgment is warranted on plaintiffs' Lanham Act claims of trademark counterfeiting and false designation of origin.  *See Gucci*, 286 F.Supp. 2d at 286, 289; *Fendi S.a.S.,* 642 F. Supp. at 1145.

## C.        Defendants' Conduct Constituted Trademark Dilution

Plaintiffs are also entitled to summary judgment on their third cause of action, for trademark dilution pursuant to 15 U.S.C. § 1125(c).[7]  (Compl. ¶¶ 67-81).  To establish dilution, a plaintiff must prove five elements:

> (1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must be a commercial use in commerce; (4) it must begin after the senior mark has become famous; and (5) it must cause dilution of the distinctive quality of the senior mark.

*Savin Corp. v. Savin Group*, 391 F.3d 439, 448-49 (2d Cir. 2004).   The Fendi trademarks are undeniably famous and distinctive, *Fendi S.A.S.*, 642 F. Supp. at 1145, as defendants admit. (Am. Answer ¶¶ 18, 21, 68).  Defendants admit that they used the Fendi name and trademarks in commerce after the marks had become famous.  (Am. Answer ¶ 69).  It is undisputed that

---

[7]        Section 1125(c) provides:  "The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the Court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection."  "Dilution" is "[t]he lessening of the capacity of a famous mark to identify and distinguish goods and services, regardless of the presence or absence of:  (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception."  15 U.S.C. § 1127.

defendants used marks that mimic the registered marks that Fendi owns.  Plaintiffs are entitled to summary judgment pursuant to 15 U.S.C. § 1125(c) for dilution of their trademarks.


## POINT II.

### PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT HOLDING DEFENDANTS LIABLE UNDER NEW YORK LAW FOR TRADEMARK DILUTION AND UNFAIR COMPETITION

**A.**    **Fendi has Presented Uncontroverted Evidence Establishing Unfair Competition Under New York Common Law**

Proof of trademark counterfeiting and unfair competition under the Lanham Act also proves plaintiffs' fourth cause of action, (Compl. ¶¶ 82-87), common law unfair competition under New York law.  *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 260 (2d Cir. 1987).  Although the common law of unfair competition also requires evidence of bad faith, "a presumption of bad faith attaches to the use of a counterfeit mark."  *Philip Morris USA Inc. v. Felizardo*, 2004 U.S. Dist. LEXIS 11154, at *24 (S.D.N.Y. June 17, 2004).  Accordingly, summary judgment is appropriate on this cause of action.  *See Russian Kurier v. Russian Am. Kurier*, 899 F. Supp. 1204, 1208 (S.D.N.Y. 1995).


**B.**    **Plaintiffs have Presented Uncontroverted Evidence Establishing Trademark Dilution Under New York Law**

Summary judgment is also warranted on plaintiffs' fifth cause of action, (Compl. ¶¶ 88-92), seeking relief under New York's anti-dilution statute, N.Y. Bus. Law § 360-1 (previously § 368-d).  Under New York law, a plaintiff must demonstrate:  (1) ownership of a distinctive mark; and (2) likelihood of dilution of that mark through blurring or tarnishment.  *See Hearts on Fire Co., LLC v. L C Int'l Corp.*, 2004 U.S. Dist. LEXIS 14828, at *9-*10 (S.D.N.Y. July 30, 2004).  Plaintiffs' marks, as set forth above, are clearly distinctive; defendants' counterfeits certainly led buyers to believe that the Fendi branded goods sold by defendants were genuine, thereby causing

confusion.  *See Johnson & Johnson Consumer Cos. v. Aini*, 540 F.Supp. 2d 374, 395 (E.D.N.Y.

2008); *Nike, Inc. v. Top Brand Co.*, 2005 U.S. Dist. LEXIS 42374, at \*26-\*27 (S.D.N.Y. July 13,

2005).  Defendants' use of identical marks "is not only confusing, but constitutes a whittling

away" of the distinctive nature of plaintiffs' valuable trademarks.  *See Baker v. Parris*, 777 F.

Supp. 299, 304 (S.D.N.Y. 1991).  Plaintiffs are clearly entitled to summary judgment for dilution

under New York law.  *See Nike, Inc.*, 2005 U.S. Dist. LEXIS 42374, at \*27-\*28.

**POINT III.**

**PLAINTIFFS ARE ENTITLED TO ENTRY OF A PERMANENT INJUNCTION**

Part of the relief requested in plaintiffs' first and second causes of action, (Compl. ¶¶ 50-

52, 63-65), is a permanent injunction pursuant to 15 U.S.C. §1116(a).  To obtain a permanent

injunction, a party must demonstrate (1) actual success on the merits and (2) irreparable harm.

*See Wojnarowicz v. Am. Family Ass'n*, 745 F. Supp. 130, 148 n.13 (S.D.N.Y. 1990).  An Order

granting summary judgment as to liability on these causes of action will certainly represent

success on the merits.  *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F.Supp. 2d 284, 290

(S.D.N.Y. 2003).  Irreparable harm is established by likelihood of confusion, *Genesee Brewing

Co., Inc. v. Stroh Brewing Co.,* 124 F.3d 137, 142 (2d Cir. 1997), and counterfeit goods are

inherently confusing.  *Gucci Am., Inc.*, 286 F.Supp. 2d at 287.

A court can "frame an injunction which will keep a proven infringer safely away from the

perimeter of future infringement."  *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 220

(2d Cir. 2003).  A defendant may be required to undertake affirmative steps to guarantee its

obedience.  *See, e.g.*, *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 2005 U.S. Dist. LEXIS 925

at \*15, \*23 (S.D.N.Y. Jan. 21, 2005) (defendants ordered to provide a copy of the injunction to

present and former licensees, franchisees, customers and distributors); *Kiki Undies Corp. v*

*Promenade Hosiery Mills, Inc.*, 308 F. Supp. 489, 492 (S.D.N.Y. 1969) (infringer required to notify customers seeking to purchase trademarked items that mark belongs to plaintiff); *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1255 (9th Cir. 1982) (affirming injunction requiring defendant to give each customer oral notice and obtain customer's approval before substituting beverage in response to an order for "Coca-Cola" or "Coke").  Courts also require that a defendant report upon its compliance with an injunction.  *E.g.*, *Conn. Cmty. Bank v. Bank of Greenwich*, 578 F.Supp. 2d 405, 424 (D. Conn. 2008); *Kiki Undies Corp.*, 308 F. Supp. at 492.

Plaintiffs respectfully submit that defendants should be permanently enjoined from purchasing, offering for sale or selling any item bearing the word "Fendi" or any Fendi trademark unless they have first obtained written permission from plaintiff Fendi S.r.l., and that they be required, on an ongoing and permanent basis:  (1) to notify each of their employees, in writing, of the terms of the permanent injunction; (2) to notify any customer that seeks to purchase Fendi branded goods from them of the terms of the permanent injunction; (3) to notify any supplier that offers to sell them Fendi branded goods of the terms of the permanent injunction; (4) to serve, within ten (10) business days after the conclusion of each fiscal quarter, upon the chief financial officer of Fendi S.r.l. a report for the quarter just ended, prepared and certified by the chief executive officer of defendant ARTI, showing the results of a thorough search of defendants' records for sales of items bearing a Fendi trademark; and, (5) to serve, within ten (10) business days after the conclusion of each fiscal quarter, upon the chief financial officer of Fendi S.r.l. a statement for the quarter just ended in which defendants' chief executive officer certifies that defendants have neither purchased nor sold any product bearing any Fendi trademark during the quarter to which the statement relates, and, in the event that it should not be possible for defendants to make such a statement concerning a quarter, to serve and file a

statement, certified under penalty of perjury by each of the same officer, of the reasons it is not possible.

## POINT IV.
### PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT DIRECTING DEFENDANTS TO DISGORGE THEIR PROFITS FROM THEIR SALES OF COUNTERFEITS

A.   **Defendants Should be Directed to Disgorge All of Their Profits from Their Sales of Fendi Branded Handbags and Small Leather Goods**

Pursuant to 15 U.S.C. § 1117(a), a plaintiff is entitled to recover defendant's profits from its sales of infringing goods. Accordingly, plaintiffs seek judgment for all profits obtained by defendants from their sales of Fendi branded handbags and small leather goods. The total of the
**REDACTED**
known sales of the goods in question -- $         -- is not in dispute. (56.1 ¶ 135). The evidence that defendants sold counterfeit Fendi branded goods (56.1 ¶¶ 123-28) is uncontroverted; there is no evidence that any Fendi branded item sold by defendants was genuine.

Once infringement has been shown, the owner of the trademark is entitled to the defendant's profits from its use of the mark. *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 252 (1916). The burden is on the infringer "to prove any proportion of his total profits which may not have been due to use of the infringing mark." 5 McCarthy, J. Thomas, *McCarthy on Trademarks and Unfair Competition*, §30:65 (2001).[8] Plaintiffs are entitled to

---

[8]     As the Supreme Court has made clear:

[T]he burden is the infringer's to prove that his infringement had no cash value in sales made by him. If he does not do so, the profits made on sales of goods bearing the infringing mark properly belong to the owner of the mark. There may well be a windfall to the trademark owner where it is impossible to isolate the profits which are attributable to the use of the infringing mark. But to hold otherwise would give a windfall to the wrongdoer.

*Mishawaka Rubber and Woolen Mfg. Co. v. S.S. Kresge Co.*, 315 U.S. 203, 206-07 (1942).

judgment for the profits garnered by defendants from their sales of Fendi branded handbags and small leather goods.

## B.  ARTI's Total Sales Revenue from its Unlawful Sales is the Proper Measure of its Profits

Under the Lanham Act, the plaintiff is required only to provide evidence of a defendant's gross sales of the products at issue. The burden then shifts to the defendant to provide evidence of each deduction that the defendant claims is appropriate to the calculation of its profits. *See* 15 U.S.C. § 1117(a) ("[I]n assessing profits, the plaintiff shall be required to prove defendant's sales only; the defendant must prove all elements of cost or deduction claimed"). "The gross sales figure will stand if the infringer does not assume this burden or if its attempt to do so is found to be unacceptable." *With Love Designs, Inc. v. Dressy Tessy, Inc.*, No. 91-4717, 1992 U.S. Dist. LEXIS 15629, at *13 (S.D.N.Y. Oct. 9, 1992). Unless the defendant demonstrates, moreover, that there is a "sufficient nexus" between each requested deduction and the unlawful sales, such deduction will not be permitted under any accounting methodology. *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 7-8 (2d Cir. 1989). In *Manhattan Industries*, the Second Circuit held that a defendant "must prove not only that it has borne the particular cost or expense but also that the cost or expense is attributable to its unlawful sales." *Manhattan Indus., Inc.*, 885 F.2d at 6.

In this case, James J. Donohue, C.P.A., C.V.A., Fendi's expert witness, studied the unlawful sales from ARTI's incomplete records and from the records of ARTI's known customers. (56.1 ¶¶ 130-35). The available records show that ARTI made sales of at least **REDACTED** $         of Fendi branded handbags and small leather goods. (56.1 ¶¶ 133-35). ARTI has offered no documentation of its expenses. Indeed, its president, Scott Ressler, admitted that ARTI discards the invoices provided by its suppliers. (56.1 ¶¶ 132, 141).

ARTI's damages expert, Neil Bressler, made no calculations whatsoever concerning deductions to be taken from sales. The entirety of his expert report states as follows:

> My resume is attached as Exhibit A, and for the past 29 years I have been a Certified Public Accountant. From approximately 2003, 1 have been the accountant for Ashley Reed Trading.
>
> The calculation of the profit earned by Ashley Reed Trading, Inc. for the sale of Fendi products in any particular year would commence by determining the sales of Fendi product less any returns and allowances. From this amount one would deduct the cost of acquiring the goods. This would include the cost of merchandise, duty, and freight. The net balance would represent the gross profit margin earned on sales. Generally accepted accounting principals [sic] would necessitate determining the amount of the company's overhead to apply in order to determine the final or net profit or loss for each year. Examples of overhead would include salaries, rent, and warehousing costs as contained in the company's tax return and financial statements.
>
> The ratio of Fendi sales to total sales for the same year should then be multiplied by the total overhead for that year to determine this amount. Subtracting this overhead from the gross margin would then yield the net profit or loss for each year.
>
> There are no articles written by myself nor have I been asked to testify in court during the past four years.
>
> My rate of compensation for the work performed in this matter is $350 per hour.

(56.1 ¶ 136).

ARTI has not only failed to demonstrate a sufficient nexus between each requested deduction and the unlawful sales, *Manhattan Indus., Inc.*, 885 F.2d at 6, but ARTI has not pointed to one dime of actual costs. Its purported expert analysis consists of no more than a summary of certain accounting principles and procedures. ARTI has, therefore, utterly failed to "prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). Plaintiffs are entitled to judgment for the total of its sales.

**POINT V.**

**PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT FOR THREE TIMES DEFENDANTS' PROFITS**

Uncontroverted evidence supports an award to plaintiffs of three times defendants' profits from their counterfeiting activity.[9]  Treble disgorgement is appropriate where the evidence demonstrates that the defendant was "willfully blind to the counterfeit nature of the mark."  *Nike, Inc. v. Top Brand Co.*, 2005 U.S. Dist. LEXIS 42374, at *22 (S.D.N.Y. July 13, 2005); *Tanning Rsch. Labs, Inc. v. Worldwide Imp. & Exp. Corp.*, 803 F. Supp. 606, 610 (E.D.N.Y. 1992); *Fendi S.A.S. Di Paola Fendi E Sorelle v. Cosmetic World, Ltd*., 642 F. Supp. 1143, 1147 (S.D.N.Y. 1986); *see also Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989) (reversing district court and directing award of treble profits).  Indeed, absent extenuating circumstances, "federal courts are expected, not merely authorized, to grant treble profits" in a case in which the defendant has acted willfully.  *Nike*, 2005 U.S. Dist. LEXIS 42374, at *37 (quoting *Fendi S.A. S. Di Paola Fendi E Sorelle*, 642 F. Supp. at 1147).

Although questions of intent are ordinarily not amenable to summary judgment,

> [t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion.

*ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 150 (2d Cir. 2007) (affirming grant of summary judgment) (internal quotation marks and citations omitted).  "If the record justifies it, willfulness may be determined at the summary judgment stage."  *Skouras v. United States*, 26 F.3d 13, 14 (2d Cir. 1994).  Federal Courts have granted summary judgment on issues of intent/willfulness:

---

[9]     15 U.S.C. §1117(b) provides:

[T]he court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation of [15 U.S.C. §1114(1)(a)]... that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark, in connection with the sale, offer for sale, or distribution of goods . . . .

> On the uncontested facts here, we find plaintiff is entitled to summary judgment on the issue of liability. . . .  In this instance, we find no extenuating circumstances mitigating defendants' willful infringement plaintiff's registered trademark.

*Fendi S.A.S. Di Paola Fendi E Sorelle*, 642 F. Supp. at 1147; *see also Nike*, 2005 U.S. Dist. LEXIS 42374 at *37; *Lorillard Tobacco Co. v. A&E Oil, Inc.,* 503 F.3d 588, 593-94 (7th Cir. 2007) (affirming grant of summary judgment for willful blindness to counterfeits: "There is simply no evidence in the record to support defendants' claims of an innocent source for the counterfeit" goods); *Country Rd. Music, Inc. v. MP3.com, Inc*., 279 F.Supp. 2d 325, 329, 329 (S.D.N.Y. 2003) (granting summary judgment for willful copyright infringement); *Wow & Flutter Music, Hideout Records & Distrib., Inc. v. Len's Tom Jones Tavern, Inc*., 606 F. Supp. 554, 556 (W.D.N.Y. 1985) (holding that a finding a willfulness is appropriate on summary judgment where there are sufficient undisputed material facts in the record).

The defendants' admissions establish that they were willfully blind, or worse, to the counterfeit nature of the Fendi branded goods they sold.  They offer no evidence to the contrary. *See Nike*, 2005 U.S. Dist. LEXIS 42374 at *19-*20.  Nor can they draw any reasonable inferences from the uncontroverted evidence of their conduct.  *Cf. Island Software and Computer Serv., Inc. v. Brunner*, 413 F.3d 257, 264 (2d Cir. 2005).  In this case, "no reasonable trier of fact could find in favor of the non-moving party."  *Owens v. N.Y.C. Housing Auth.*, 934 F.2d 405, 410 (2d Cir. 1991); *Nike*, 2005 U.S. Dist. LEXIS 42374, at *20-*21.

## A.    Defendants Failed to Maintain, and to Produce in Discovery, Evidence of their Purchases and Sales of Fendi Branded Products

Scott Ressler testified that defendants did not retain the invoices that they received from their suppliers of Fendi branded goods.  (56.1 ¶¶ 130-34, 137-41).  For a business to destroy the records that document its cost of goods sold is clear evidence of consciousness that its

merchandise was illegal.  Non-production of material evidence in a party's control raises a strong inference that that evidence is unfavorable to that party.  *See, e.g. Tupman Thurlow Co. v. S.S. Cap Castillo*, 490 F.2d 302, 308 (2d Cir. 1974); *RIJ Pharm. Corp. v. Ivax Pharms., Inc*., 322 F.Supp. 2d 406, 419 (S.D.N.Y. 2004) (failure to produce records regarding sales); *Dietrich v. Bauer*, 126 F.Supp. 2d 759, 766 (S.D.N.Y. 2001).

In addition, defendants produced records showing only a little more than half of their sales of Fendi branded handbags and small leather goods:  ARTI's business records show total sales of Fendi branded goods of $ **REDACTED** .  (56.1 ¶ 133).  Plaintiffs were required to reconstruct the true picture of defendants' sales from documents obtained in discovery from defendants' customers.  These documents reveal an additional $ **REDACTED** in sales not disclosed by defendants.  Defendants clearly sought to evade as much disgorgement as they could.  (56.1 ¶ 134; *Polo Ralph Lauren, L.P. v. 3M Trading Co.*, 1999 U.S. Dist. LEXIS 7913, at *11 (S.D.N.Y. Mar. 22, 1999) (counterfeiters' records are often nonexistent, inadequate or deceptively kept to willfully deflate the level of counterfeiting activity)).  Now, they cannot controvert that they made $ **REDACTED** in sales of Fendi branded goods.  (56.1 ¶ 135).

## B.  Defendants Caused their Remaining Inventory, and that of their Customer, Big M, Inc., to Vanish after Plaintiffs Sued Them

Scott Ressler admits that defendants had inventory of Fendi branded goods at the time this litigation began.  (56.1 ¶¶ 137-40).  He further admits that he returned those goods to his "sources."  He could not identify those sources, nor did defendants have any documents concerning the goods they returned.  (*Id*.).  In addition, defendants received, and returned to their supplier, Fendi branded goods they had sold to Big M, Inc., which operates stores under the name "Annie Sez."  (56.1 ¶ 139).  This conduct is clearly probative of defendants' consciousness

that their Fendi branded goods were counterfeit, and summary judgment for willfulness is merited on this evidence alone.

## C.    Defendants Refused to Represent to their Customer Filene's Basement that Resale of Goods Purchased from Them Would Not Violate Any Person's Proprietary Rights.

Executives of Filene's Basement, including its then-CEO, Heywood Wilansky, met with ARTI in 2003 concerning the purchase of Fendi branded goods.  (56.1 ¶ 143).[10]  During that meeting, Wilansky asked James Ressler, ARTI's vice president, to execute a Filene's Basement form letter in which ARTI agreed to defend FB against claims concerning trademarked merchandise that it would supply.  (56.1 ¶¶ 143-44).  Ressler executed the form letter on June 12, 2001, but redacted from the document the paragraph numbered "2."  (56.1 ¶¶ 146, 148).  He placed his initials next to the redacted paragraph, and, under his signature, James Ressler wrote: "Point #2 was taken out."  (56.1 ¶ 147).

The redacted paragraph read:

> Seller has the legal right to sell the Merchandise, including sale thereof for resale in the U.S.A., and the purchase and resale of the Merchandise by Filene's Basement in the U.S.A. will not violate or infringe upon any existing contractual and/or Proprietary Rights owned by others.

(56.1 ¶ 148).

As "a seller of handbags in a market rife with knock-offs, it is more likely than not" that James Ressler knew that ARTI's stock was counterfeit.  *See N.A.S. Import, Corp.v. Chenson Enters., Inc*., 968 F.2d 250, 253 (2d Cir. 1992).  His refusal to warrant that ARTI's sales of Fendi branded goods were lawful -- and that Filene's Basement's sales of that merchandise would also

---

[10]    Filene's Basement's vendors were required to execute a standardized form Agreement -- the "Purchase Order-Specific Agreement," to defend Filene's Basement against claims concerning trademarked merchandise supplied by the vendor.  (56.1 ¶¶ 144-45).  According to defendants, ARTI was the type of third-party vendor that in-house counsel would scrutinize.  (56.1 ¶¶ 143-44).

be lawful -- is a clear statement that he knew that it was counterfeit.  *See Tommy Hilfiger Licensing, Inc.*, 2003 U.S. Dist. LEXIS 8788, at *52.

## POINT VI.

### PLAINTIFFS ARE ENTITLED TO COSTS AND ATTORNEYS' FEES

In actions involving willful trademark infringement, a plaintiff is entitled to recover its costs and reasonable attorneys' fees. 15 U.S.C. § 1117(b); *see Cartier Int'l B.V.*, 2007 U.S. Dist. LEXIS 95366, at *39.  Defendants willfully sold and offered for sale counterfeits bearing plaintiffs' marks.  Plaintiffs are therefore entitled to costs and attorneys' fees and respectfully request that the Court direct a hearing to fix the amount of such an award.

## POINT VII.

### PLAINTIFFS ARE ENTITLED TO AN AWARD OF PRE-JUDGMENT INTEREST

"The court may in its discretion award prejudgment interest on such amount at an annual interest rate established under" 26 USC §6621(a)(2) "commencing on the date of the service of the claimant's pleadings setting forth the claim for such entry and ending on the date such entry is made, or for such shorter time as the court deems appropriate."  An award of pre-judgment interest will be consistent with a finding that defendants unjustly enriched themselves and must disgorge all profits from their sales of counterfeit Fendi branded goods.  *See Fendi Adele S.R.L.*, 2007 U.S. Dist. LEXIS 75812, at *16.[11]

---

[11]   Indeed, "requiring the payment of interest prevents a defendant from obtaining the benefit of what amounts to an interest-free loan procured as a result of illegal activity."  *SEC v. Falbo*, 14 F.Supp. 2d 508, 528 (S.D.N.Y. 1998).

## POINT VIII.

## DEFENDANTS' AFFIRMATIVE DEFENSES ARE LEGALLY
## AND FACTUALLY BASELESS

In their Answer and Amended Answer, defendants assert a grab bag of affirmative defenses for which there is no legal or factual basis.  First, they contend that plaintiffs have "unclean hands" because their claims are intended to "restrain legitimate competition of the defendants in genuine FENDI-trademarked products."  (Am. Answer ¶ 94).  It is evident from the face of the Complaint, however, that this case concerns defendants' sales of counterfeit Fendi goods.  (Compl. ¶¶ 36-40).  As this motion makes clear, plaintiffs have overwhelming proof of defendants' lucrative traffic in counterfeits, while, in nearly three years of discovery, defendants have not come forward with evidence that they made a single sale of a genuine Fendi Product.  A defendant, moreover, cannot maintain a defense of unclean hands that is premised solely on the fact that the plaintiff is seeking to protect its trademark rights.  *Warner Brothers, Inc. v. Gay Toys, Inc.*, 724 F.2d 327, 334 (2d Cir. 1983); *Yurman Design, Inc. v. Golden Treasure Imports, Inc.*, 275 F.Supp. 2d 506, 518 (S.D.N.Y. 2003).  There is absolutely no evidence that plaintiffs' assertion of their rights herein involved fraud, deceit, or unconscionability.  *Estate of John Lennon v. Screen Creations, Ltd.*, 939 F. Supp. 287, 293 (S.D.N.Y. 1996).

Defendants further purport to assert a defense of acquiescence.  (Am. Answer ¶ 95).  Under the Lanham Act, the elements of acquiescence are: "(1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice."  *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.,* 294 F.3d 383, 395 (2d Cir. 2002).  Both acquiescence and laches connote consent by the owner to an infringing use of his mark; however, "acquiescence implies active consent, while laches implies

a merely passive consent." *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 67-68 (2d Cir. 2002). "Active consent is implied by conduct on the plaintiff's part that amount[s] to an assurance to the defendant, express or implied, that the plaintiff would not assert his trademark rights against the defendant." *Id.* Defendants have presented absolutely no evidence that plaintiffs consented to their sales of counterfeits.

Defendants' claim of laches is equally meritless. (Am. Answer ¶ 96). The laches defense, it should be noted, is disfavored in trademark cases. *E & J Gallo Winery v. Pasatiempos Gallo S.A.*, 905 F.Supp. 1403, 1414 (E.D. Cal. 1994). To prevail on this affirmative defense, "a defendant must prove that it has been prejudiced by the plaintiff's unreasonable delay in bringing the action." *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996). Prejudice results when a defendant has changed its position in a way that would not have occurred if the plaintiff had brought suit earlier. *Id.* The applicable statute of limitations -- in New York, N.Y. C.P.L.R. § 213(8), the six-year limitations period for fraud -- provides the benchmark for determining issues of laches. *Fitzpatrick v. Sony-BMG Music Entm't, Inc.*, 2007 U.S. Dist. LEXIS 91446, at *8-*10 (S.D.N.Y. Dec. 7, 2007); *see Conopco, Inc.*, 95 F.3d at 192; ; *Gristede's Foods, Inc. v. Unkechauge Nation*, 2008 U.S. Dist. LEXIS 61102, at *7-*8 (E.D.N.Y. Aug. 8, 2008). Defendants engaged in a continuous course of counterfeit sales through 2006; the year this lawsuit was filed. It is well settled, moreover, that a defendant may not assert equitable defenses when it comes to Court with unclean hands. *See Mendez v. Holt*, 128 U.S. 514, 523 (1888); *Fendi Adele S.R.L.*, 2007 U.S. Dist. LEXIS 75812, at *13-*14 n.1 (emphasis added) (citing *Stone v. Williams*, 891 F.2d 401, 404 (2d Cir. 1989)). The laches defense is not available in a case, such as this one, involving intentional or willful

trademark infringement.  *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc*., 219 F.3d 104, 107 (2d Cir. 2000).

Finally, defendants assert on "information and belief," that plaintiffs "provides minimal supervision and inspection to assure the various subcontractors produce Fendi-branded products according to the standards and guidelines set forth by Fendi," and claim that "Fendi can no longer distinguish in the marketplace genuine Fendi branded goods and counterfeit goods" and that plaintiffs have "failed to adequately monitor the manufacture and distribution of Fendi-branded products so as to render the Fendi marks asserted herein invalid and unenforceable." (Am. Answer ¶ 97).  Not a single witness, nor a single document, has been proffered to support these assertions.  The defense could be dismissed on this basis alone.  In this case, moreover, the proof concerning Fendi's manufacturing and inspection procedures negates defendants' claims. It is undisputed that Fendi's subcontractors make no sales of the Products, (56.1 ¶¶ 92-95), and that they are contractually forbidden to deliver the Products anywhere other than to Fendi:

> Q.    [A]re Fendi's assemblers contractually permitted to deliver Fendi branded products anywhere other than Fendi's distribution center?
>
> A.    No.

(2008 Minerva Dep. at 57-58; Fabbri Dep. at 148-49, 151-52; 56.1 ¶¶ 93-94):

> In terms of delivering, the logistics, we make sure that all the flow and the delivery point is just one, and it's the distribution center in Calenzano. . . .

(2008 Minerva Dep. at 288; 56.1 ¶ 100).  Genuine Products, moreover, are shipped only by Fendi's distribution center, and billed only by Fendi on Fendi's invoice form.  (56.1 ¶¶ 103-10).

It is uncontroverted that Fendi S.r.l. maintains tight control over its suppliers, subcontractors, and distribution.  (56.1 ¶¶ 50-53, 58-59, 72, 83, 88-96, 98-102).  It is equally beyond dispute that the Fendi branded items sold by ARTI were determined to be counterfeit

based upon a careful, multi-factorial examination performed by the person responsible for manufacturing the genuine goods.  (56.1 ¶¶ 123-29).

Defendants raise no genuine issue of material fact regarding defendants' affirmative defenses and summary judgment in favor of Fendi is warranted.

## CONCLUSION

For all of the above stated reasons, summary judgment should be entered in favor of Fendi (1) as to all plaintiffs' causes of action, (2) striking defendants' affirmative defenses.

New York, New York
February 27, 2009

Respectfully submitted,

SQUIRE, SANDERS & DEMPSEY L.L.P.

By _____
   Richard L. Mattiaccio (RM 4764)
   Victor Genecin (VG 9733)
   Steven Skulnik (SS 7821)

   1095 Avenue of the Americas, 31st Floor
   New York, NY  10036
   (212) 872-9800

   *Attorneys for Plaintiffs*
   FENDI ADELE S.r.l., FENDI S.r.l., and
   FENDI NORTH AMERICA, INC.