Gerard F. Dunne
Law Offices of Gerard F. Dunne, P.C.
Attorney For Defendants
156 Fifth Avenue, Suite 1223
New York, New York 10010
Tel.: 212-645-2410
Attorney for Defendants

UNITED STATES DISTRICT COURT                    ECF CASE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------x
FENDI ADELE S.R.L., FENDI S.R.L.     :
and FENDI NORTH AMERICA                          Civil Action No.
                                     :
             Plaintiffs,                         06 CIV 0243 (RMB)
                                     :
             vs.                     :

ASHLEY REED TRADING, INC.            :
SCOTT RESSLER
and JAMES RESSLER                    :
                                     :
             Defendants.
-------------------------------------------------x

## REPLY OF DEFENDANTS TO PLAINTIFFS' STATEMENT PURSUANT TO RULE 56.1

The Defendants, Ashley Reed Trading, Inc. ("ARTI"), Scott Ressler and James

Ressler (Collectively "Ashley Reed"), in the above-captioned matter hereby respond to

the Rule 56.1 statement of Plaintiffs Fendi Adele S.r.l., Fendi S.r.l., and Fendi North

America, Inc. ( collectively "Fendi") , with the paragraphs below corresponding to the

numbered paragraphs of the Rule 56.1 statement of Fendi.

Additionally, the above captioned case had been consolidated for fact discovery

with several related cases:

- *Fendi et al. v. Filene's Basement, Inc.* 06 CV 0244 (RMB)
- *Fendi et al. v. Burlington Coat Factory, et al.*, 06 CV. 0085 (LBS)
- *Fendi et al. v. 546332 BC LTD et al.* 06 CV 7084 (JGK)

It has come to our attention that nearly 100 of the facts alleged by Fendi in the current suit

are identical to facts that were alleged in the three cases referenced above, and te Defendants have many common defenses. Accordingly, Ashley Reed requests that the court incorporate the factual submissions of each of the defendants in the three cases captioned above with the responses of Ashley Reed set out below.

## THE PARTIES

### The Plaintiffs

1. Plaintiff Fendi Adele S.r.l. is the owner of the world famous, federally registered Fendi trademarks and of all other intellectual property rights associated with merchandise bearing any of the Fendi trademarks. (Declaration of Alberto Fabbri ("Fabbri Decl.") ¶ 2).

**Response to No. 1**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

2. In addition, plaintiff Fendi Adele S.r.l. is the exclusive designer of all handbags, shoulder bags, purses, wallets, and key holders that bear any Fendi trademark (the "Products"). (Deposition of Alberto Fabbri ("Fabbri Dep.") at 13, 402, 403; (Genecin Decl. Ex. 14); Fabbri Decl.¶4).

**Response to No. 2**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

3. Plaintiff Fendi S.r.l. is the exclusive worldwide licensee of Fendi Adele S.r.l. for the manufacture and distribution of the Products. (Fabbri Dep. at 13, 17, 142, 402, 403 (Genecin Decl. Ex. 14); Fabbri Decl. ¶ 4).

**Response to No. 3**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

4. The Products are manufactured exclusively by Fendi S.r.l. and its authorized

-2-

assembly subcontractors in Italy. (Fabbri Decl. ¶ 5; Fabbri Dep. at 148, 393, 402, 516 (Genecin Decl. Ex. 14); Deposition of Leonardo Minerva, October 24, 2007 ("2007 Minerva Dep.") at 72-73) (Genecin Decl. Ex. 12)).

**Response to No. 4**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

5. Plaintiff Fendi North America, Inc. is a corporation organized and existing under the laws of the State of New York. Fendi North America, Inc. is Fendi S.r.l.'s exclusive distributor of the Products to independent retailers in the United States and is the exclusive owner and operator of all Fendi boutiques in the United States. (Fabbri Decl. ¶ 6; Fabbri Dep. at 13-14, 153, 402, 403, 411-12; Genecin Decl. Ex. 14).

**Response to No. 5**: Denied. Genuine Fendi-branded goods (the "Products") can be purchased by independent distributors. (See ¶ 126 of Fendi's Rule 56.1 statement against Filene's basement (Declaration of Joseph Dunne ("J. Dunne Decl.") Ex.1);  Declaration of Scott Ressler ("S. Ressler Decl") ¶ 4-11; Deposition of Scott Ressler ("S. Ressler Dep.")(J. Dunne Decl. Ex. 3) at 52-60, 65-66.)

For example Fendi sells the Products into Duty Free channels around the world. (See Fendi Documents Nos. FENDI 003491-003497, 003503-003509, and 003516-003526 (J. Dunne Decl. Ex.2 ).) In addition, Alberto Fabbri testified that he believes that retail stores, such as Saks Fifth Avenue and Bergdorf Goodman, sell end of season Fendi products through their outlet divisions. (Deposition of Alberto Fabbri ("Fabbri Dep.") (J. Dunne Decl. Ex. 5) at 499:22-500:12; 504:15-505:3).

Further, Products such as Fendi-branded leather goods are typically sold by a Fendi company to retailers in Europe and others around the world at prices below the prices the same goods are sold by Fendi to retailers in the United States. As a result, price

disparities result between the same goods sold in Europe, or elsewhere, and in the United States; and a legitimate international trade in these goods results. (S. Ressler Decl. ¶ 5)

6.  Fendi Industria S.r.l., a manufacturing company within the Fendi Group, was merged into Fendi S.r.l in December 2003. (Deposition of Marta Fontanesi ("Fontanesi Dep.") at 91 (Genecin Decl. Ex. 15); Fabbri Dep. at 392, 395 (Genecin Decl. Ex. 14)).

**Response to No. 6**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

7.  The Products have been sold throughout the United States since 1970 in a limited number of carefully selected, highly qualified retail stores and department stores. (Fabbri Decl. ¶ 7; Fabbri Dep. at 402, 403, 412 (Genecin Decl. Ex. 14); 2007 Minerva Dep. at 355) (Genecin Decl. Ex. 12)).

**Response to No. 7**: Denied. See the response to No. 5 above. Genuine Products can be purchased by independent distributors from secondary sources which can then be sold to retailers outside of the "carefully selected, highly qualified retail stores and department stores" that Fendi chooses to sell directly. (See ¶ 126 of Fendi's Rule 56.1 statement against Filene's Basement (J. Dunne Decl. Ex. No. 1 );  S. Ressler Decl. ¶ 4-11; S. Ressler 2006 Dep. at 51-60,65-66, 132:21-133:2; Colton Decl ¶; Fendi Documents Nos. FENDI 003491-003497, 003503-003509, and 003516-003526  Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

### The Defendants

8.  Defendant Ashley Reed Trading, Inc. is a corporation organized and existing pursuant to the laws of the State of New York, with its principal place of business in New York, NY. (Compl. ¶ 10; Am. Answer ¶ 10). Its business is the purchase and sale of off-price branded merchandise. (S. Ressler Dep. at 13 (Genecin Decl. Ex. 18)).

**Response to No. 8**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

9. Defendant Scott Ressler is the president of ARTI. (Compl. ¶ 11; Am. Answer ¶ 11) (Genecin Decl. Exs. 6, 7) (S. Ressler Dep. at 14) (Genecin Decl. Ex. 18).

**Response to No. 9**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

10. Defendant Jim Ressler is the vice president of ARTI. (Compl. ¶ 12; Am. Answer ¶ 12 (Genecin Decl. Exs. 6, 7); S. Ressler Dep. at 46 (Genecin Decl. Ex. 18)).

**Response to No. 10**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

11. James Ressler and Scott Ressler are brothers; each owns 50% of ARTI. (S. Ressler Dep. at 41, 46, 648 (Genecin Decl. Ex. 18)).

**Response to No. 11**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

12. Aimee Fink, sales manager for ARTI, testified that James and Scott Ressler were her bosses and that everything she did at ARTI went through Scott and James Ressler. (Deposition of Aimee Fink ("Fink Dep") at 11, 12, 62 (Genecin Decl. Ex. 20)).

**Response to No. 12**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

13. Both Scott and Jim Ressler dealt with ARTI's Fendi branded goods. (S. Ressler Dep. at 50 Genecin Decl. Ex. 18)).

**Response to No. 13**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

14. In his deposition in this case, James Ressler invoked his Fifth Amendment

right against self-incrimination in response to all substantive questions. (Deposition of James Ressler ("J. Ressler Dep.") Genecin Decl. Ex. 18)).

**Response to No. 14**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

15.  ARTI has previously been involved in litigation relating to counterfeit merchandise. (S. Ressler Dep. at 53 (Genecin Decl. Ex. 18)).

**Response to No. 15**: Contested.  ARTI has been involved in litigation that involved allegations of counterfeiting, in all cases Ashley Reed denied all allegations of counterfeiting, and at no time in any litigation has a judicial determination been made that Ashley Reed dealt in counterfeit merchandise. (S. Ressler Decl. ¶ 10)

16.  ARTI was sued for trademark infringement in 2000. See *Gucci Am., Inc. v. Ashley Reed Trading, et al*, 1:00-cv-06041-RCC-JCF; see also S. Ressler Dep. at 7, 11. In that matter, on April 19, 2004, a Consent Final Judgment was entered as to ARTI, Scott Ressler, and James Ressler. (1:00-cv-06041, Docket No. 142).

**Response to No. 16**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.  Final Judgment was made after the parties settled, and Ashley Reed made no admission to counterfeiting activity.  Settlement was entered into as a business decision.  (S. Ressler Decl. ¶ 17; S. Ressler Deposition (J. Dunne Decl. Ex. 3) at 7:10-18, 121:2-25).

17.  ARTI was again sued in 2001 under federal trademark laws. *Tommy Hilfiger v. Ashley Reed Trading, et al*, 1:01-cv-09037-MGC.  On April 18, 2002, the Court in that matter issued a permanent injunction and final judgment on consent against ARTI. (1:01-cv-09037, Docket No. 12).

**Response to No. 17**: Ashley Reed does not contest for the purposes of summary

judgement the facts asserted in this paragraph. Final Judgment was made after the parties settled, and Ashley Reed made no admission to counterfeiting activity. Settlement was entered into as a business decision. (S. Ressler Decl. ¶ 18; S. Ressler Deposition (J. Dunne Decl. Ex. 3) at 12:2-13:6, 121:23-25.)

18. Ralph Lauren threatened to sue ARTI for trademark violations. (S. Ressler Dep. at 120-21 (Genecin Decl. Ex. 18)).

**Response to No. 18**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

19. James Ressler is the subject of a criminal proceeding in Georgia involving allegedly counterfeit Prada merchandise. (S. Ressler Dep. at 34, 127-28, 444 (Genecin Decl. Ex. 18)).

**Response to No. 19**: Denied. Jim Ressler *was* the subject of the Georgia Criminal proceeding mentioned. However the case has ended, and all substantive counterfeiting charges brought by the prosecution against Jim Ressler have been dismissed. (Declaration of David Schoen ¶3-4).

## FENDI'S WORLD FAMOUS TRADEMARKS

20. The original Fendi company was founded by Edoardo and Adele Fendi in 1925 in Rome, Italy to manufacture handbags and fur coats. (Fabbri Decl. ¶ 8).

**Response to No. 20**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

21. After the Second World War, Edoardo and Adele Fendi's daughters, Paola, Anna, Franca, Carla and Alda, who were to become famous as the five Fendi sisters, joined the business. (Fabbri Decl.¶ 9).

**Response to No. 21**: Ashley Reed does not contest for the purposes of summary

judgement the facts asserted in this paragraph.

22. In the late 1960s, a predecessor company of plaintiff Fendi Adele S.r.l. developed the world-famous "Double F" trademark and became known for high-fashion furs and innovative handbags. (Fabbri Decl. ¶ 10).

**Response to No. 22**: Ashley Reed objects to the use of the terms "world-famous" as ambiguous. However, Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

23. In the 1970s and '80s, the "Double F," FENDI and "FF FENDI" trademarks made the Products instantly recognizable. (Fabbri Decl. ¶ 11); *Fendi S.A.S. Di Paola Fendi E Sorelle v. Cosmetic World, Ltd.*, 642 F. Supp. 1143, 1145 (S.D.N.Y. 1986 (Fendi trademarks "have been extensively advertised and now represent prestigious symbols in fashion.")).

**Response to No. 23**: The term "instantly recognizable" is an ambiguous claim and is objected to on that basis. Further, the facts asserted in this paragraph have not been supported by admissible evidence as required by Rule 56 (e) of the Fed. R. Civ. Pro., Fabbri does not have personal knowledge as to others' ability to recognize the referenced Fendi marks.

24. In the 1990s, the "Baguette" Fendi branded handbag became popular with large numbers of consumers. (Fabbri Decl.¶ 12).

**Response to No. 24**: The fact asserted in this paragraph, that the handbags became "popular with a large number of consumers," is an ambiguous claim and is objected to on that basis. Further, the facts asserted are not within the personal knowledge of Fabbri , and thus have not been supported by admissible evidence as required by Rule 56 (e) of the Fed. R. Civ. Pro.

25.   Today, Fendi Adele S.r.l. and Fendi S.r.l. actively design and develop new merchandise, fabrics, styles and designs, while continuing to offer many items that have become fashion classics. (Fabbri Decl. ¶ 13).

**Response to No. 25**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

26.   The Fendi trademarks have acquired great value and are well known to the consuming public and to the fashion trade as identifying and distinguishing Fendi S.r.l. exclusively and uniquely as the authorized source of the Products. (Fabbri Decl. \ 14).

**Response to No. 26**:  The terms "great value" and "well known" are ambiguous claims and are objected to on that basis.  Further, the facts asserted in this paragraph have not been supported by admissible evidence as required by Rule 56 (e) of the Fed. R. Civ. Pro., Fabbri does not have personal knowledge as to the knowledge of the consuming public.

27.   Commencing at least as early as 1972, the predecessors of Fendi Adele S.r.l. and Fendi S.r.l. adopted one or more of the Fendi trademarks for use on a wide variety of fashion merchandise and accessories including, but not limited to, the Products, luggage, apparel and other related goods, and caused the Fendi trademarks to be registered with the United States Patent and Trademark office. (Fabbri Decl. ¶15).

**Response to No. 27**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

28.   True and complete copies of the federal trademarks registrations concerning the Products are annexed to the Declaration of Victor Genecin dated February 27, 2009 ("Genecin Decl.") submitted herewith. These registrations are:

| Registration No. | Registration Date | Mark | Image |
|---|---|---|---|
| 1,244,466 | 7/5/83 | Fendi | FENDI |
| 1,439,955 | 5/19/87 | FF Monogram Trademark and the Fendi trademark together |  |
| 1,214,472 | 10/26/82 | FF Monogram Trademark |  |
| 2,648,256 | 11/12/2002 | FF Monogram Trademark |  |
| 2,648,257 | 11/12/2002 | FF Monogram Trademark |  |

**Response to No. 28**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

29.   The trademarks and the goodwill of the business of plaintiffs in connection with which the Fendi trademarks are used have never been abandoned. (Fabbri Decl. ¶ 16).

**Response to No. 29**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

30.   Plaintiffs intend to continue to preserve and maintain their rights with respect to the Fendi trademark registrations and to make use of the Fendi trademarks in connection with all aspects of their respective businesses and, in particular, in all aspects of designing, manufacturing, marketing, advertising, promoting, distributing, displaying and selling the Products. (Fabbri Decl ¶ 17).

**Response to No. 30**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

31.   The Fendi trademarks and the goodwill associated therewith have substantial monetary value to plaintiffs. (Fabbri Decl. ¶ 18).

**Response to No. 31**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

32.   Fendi S.r.l. has widely distributed the Products with millions of dollars in sales annually. (Fabbri Decl. ¶ 19).

**Response to No. 32**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

## FENDI'S CONTROL OVER MATERIALS, MANUFACTURING AND DISTRIBUTION

33.   Each of the Products is individually designed. (2008 Minerva Dep. at 17-22 (Genecin Decl. Ex. 11)).

**Response to No. 33**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

34.   Each of the components used in the Products is individually designed. (2008 Minerva Dep. at 17-22 (Genecin Decl. Ex. 11)).

**Response to No. 34**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

35.   The design process, from start to finish, is complex, takes considerable time, and involves many people. (Deposition of Cristiana Torre ("Torre Dep.") at 14, 15, 16, 64 (Genecin Decl. Ex. 13)).

**Response to No. 35**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

36.   The materials used to make the Products, such as fabric bearing a design containing one of the Fendi trademarks, or the rivets, buckles, zippers, and clasps used in the Products, are manufactured exclusively for Fendi S.r.l. to exacting specifications.

(2007 Minerva Dep. at 100-01, 283, 378 (Genecin Decl. Ex. 12); 2008 Minerva Dep. at 42 (Genecin Decl. Ex. 11)).

**Response to No. 36**: Contested. Fendi is aware of handbags that it has determined to be counterfeit, but which contain original fabrics, hardware and/or buckles demonstrating that these components had been manufactured for others than Fendi. (2007 Cannatella Dep. at 23:20-27:5, 31:15-34:1(J. Dunne Decl. Ex. 6); 2008 Cannatella Dep. (J. Dunne Decl. Ex. 7) at 26:20-27:13; also See S. Ressler Dep. at 431-34 (J. Dunne Decl. Ex. 3)). Also, the term "exacting specifications" is ambiguous and is objected to on that basis.

37.   Once the design team has determined the form and dimensions of a Product style, it then selects the leather, fabric and metal hardware to be used in manufacturing that style. (2007 Minerva Dep. at 381-82 (Genecin Decl. Ex. 12); 2008 Minerva Dep. at 18-19 (Genecin Decl. Ex. 11)).

**Response to No. 37**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

38.   Fendi S.r.l. manufactures and sells the Products in two annual seasons, the Spring-Summer season, for which manufacturing begins when orders are received from the September Fashion Week in Milan, and the Fall-Winter season, for which manufacturing begins when orders are received from the February Fashion Week. (2008 Minerva Dep. at 45-48 (Genecin Decl. Ex. 11)).

**Response to No. 38**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

39.   For each season, the design team decides which styles to include in the line of Products for the season, and which combination of materials to use to manufacture each

style. (Torre Dep. at 19-20, 69 (Genecin Decl. Ex. 13); 2008 Minerva Dep. at 17-18 (Genecin Decl. Ex. 11)).

**Response to No. 39**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

40.  Fendi S.r.l. maintains a database of technical drawings for its Products and records the combinations of materials in which it manufactures each of its Products. (2008 Minerva Dep. at 431-32 (Genecin Decl. Ex. 11); Torre Dep. at 35, 55 (Genecin Decl. Ex. 13)).

**Response to No. 40**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

41.  Fendi S.r.l.'s meticulous record keeping assists the Fendi Group's anti-counterfeiting efforts: an item that appears to be a Product, but that is made in a combination of materials in which Fendi S.r.l. never manufactured that style is readily identifiable as counterfeit. (2008 Minerva Dep. at 97-100 (Genecin Decl. Ex. 11)).

**Response to No. 41**:  Contested. Fendi's own testimony suggests otherwise in that they require specifically trained staff to make authenticity determinations. Minerva testified that there were only two people in all of Fendi that were qualified to determine whether handbags were genuine or counterfeit, he and his assistant, Massimo Lepri.  (2007 Minerva Dep. (J. Dunne Decl. Ex. 10) at 317:25-319:3.) The terms "meticulous" and "readily" are ambiguous, and are objected to on that basis.

42.  Throughout the manufacturing process, the Products are subject to strict quality control and anti-counterfeiting measures. (2008 Minerva Dep. at 41-42, 49-58 (Genecin Decl. Ex. 11)).

**Response to No. 42**: Contested, Lorenzo Bandinelli makes clear that he only

inspects the "finished product" not the actual work of the subcontractors, and thus they are not subject to such processes *throughout* the process. (See Deposition of Lorenzo Bandinelli ("Bandinelli Dep.") at 26:2-7. (J. Dunne Decl. Ex. 8)). The terms "throughout" and "strict"are ambiguous, and are objected to on that basis.

43.   Fendi S.r.l. manufactures Products on a strictly "to-order" basis. (2008 Minerva Dep. at 48-49, 354, 355 (Genecin Decl. Ex. 11); Torre Dep. at 33 (Genecin Decl. Ex. 13)).

**Response to No. 43**:   Contested.   Excess Products are at times available for purchase by independent distributors from Fendi S.r.l's subcontractor manufacturers. (See S. Ressler Decl. ¶ 6-10; S. Ressler Dep. (J. Dunne Decl. Ex. 3) at 431-34; Colton Dep. (J. Dunne Decl. Ex. 4) at 52:14-58:24.) .   Further, the term "strictly"is ambiguous, and is objected to on that basis.

44.   Fendi's S.r.l. authorized customers visit Fendi S.r.l.'s showrooms during the Fall and Spring Fashion Weeks in Milan, view the collection for the season, and place their orders for specific Products in specific quantities. (2008 Minerva Dep. at 45-49, 355 (Genecin Decl. Ex. 11)).

**Response to No. 44**: Contested to the extent that this allegation implies that this is the only way that genuine Fendi merchandise is sold.  (See S. Ressler Decl. ¶ 2-9; S. Ressler Dep. (J. Dunne Decl. Ex. 3) at 431-34; Colton Dep. (J. Dunne Decl. Ex. 9.) at 52:14-58:24, 92:18-93:7.)

45.   Fendi S.r.l. manufactures the quantities ordered by its customers. (2008 Minerva Dep. at 45-49, 355 (Genecin Decl. Ex. 11)).

**Response to No. 45**: Ashley Reed does not contest that Fendi manufactures what is ordered, however Ashley Reed does contest the implication suggested that Fendi

-14-

manufactures _only_ these quantities.

46.   Through the end of 2001, Fendi S.r.l. sold only to retailers, except that it used a licensed distributor to sell to operators of duty free shops. Thereafter, and through the end of 2005, Fendi S.r.l. sold only to retailers worldwide. Since the beginning of 2006, Fendi S.r.l. has sold only to retailers worldwide except in the United States, where it sells to Fendi North America, Inc. and to operators of duty free shops. (Fabbri Decl. ¶ 22).

**Response to No. 46**: Denied.  Fendi's own records indicate substantial distribution in Duty Free channels world-wide from 2004-2006.  See Fendi Documents Nos. FENDI 003491-003497, 003503-003509, and 003516-003526 (J. Dunne Decl. Ex. No. 2). Also See Ressler Dep. at 431-34 (J. Dunne Decl. Ex. 3); Colton Dep. at 52:14-58:24 (J. Dunne Decl. Ex. 9).)

47.   Fendi S.r.l. does not manufacture production runs of its Products "on spec," or in the expectation of receiving orders for them. (2008 Minerva Dep. at 48-49 (Genecin Decl. Ex. 11)).

**Response to No. 47**:   Contested.  Excess Products are at times available for purchase by independent distributors, indicating that more Products were produced than ordered. (See S. Ressler Decl. ¶ 5-6; S. Ressler Dep.(J. Dunne Decl. Ex. 3) at 431-34; Colton Dep. (J. Dunne Decl. Ex. 4) at 52:14-58:24.)

48.   Fendi S.r.l. does not sell "leftover" merchandise at discounted prices. (Fabbri Dep. at 110-11 (Genecin Decl. Ex. 14)).

**Response to No. 48**: Denied.  Fabbri testified that end of season merchandise from Fendi North America is sold the following season at Fendi outlet stores in Woodbury, NJ and Atlanta, GA at 60% off the retail price.  (Fabbri Dep. at 441:11-443:16, 497:4-499:16. (J. Dunne Decl. Ex. 5).  Excess Products are at times available for purchase by

independent distributors. (See S. Ressler Decl. ¶ 5-6; S. Ressler Dep.(J. Dunne Decl. Ex. 3) at 431-34; Colton Dep. (J. Dunne Decl. Ex. 4) at 52:14-58:24.)

49. Based upon the orders received from customers, Fendi S.r.l. orders the specific quantities of the materials it will need from its suppliers. (2008 Minerva Dep. at 42, 47-48 (Genecin Decl. Ex. 11).)

**Response to No. 49**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph to the extent that it only claims that Fendi place orders for specific quantities, but does not make any claim as to what these quantities are or how they determine the "quantities of materials it will need from its suppliers."

50. Fendi S.r.l.'s materials suppliers are contractually bound to supply materials that bear the Fendi trademarks only to Fendi S.r.l. (2008 Minerva Dep. at 42-43, 461, 464-65 (Genecin Decl. Ex. 11)).

**Response to No. 50**: Contested. Fendi has not produced any documentary evidence of such contractual arrangements. Fendi is aware of handbags that it has determined to be counterfeit, but which contain original fabrics, hardware and/or buckles demonstrating that these components had been manufactured for others than Fendi. (2007 Cannatella Dep. (J. Dunne Decl. Ex. 6) at 23:20-27:5, 31:15-34:11; 2008 Cannatella Dep. (J. Dunne Decl. Ex. 7) at 26:20-27:13; S. Ressler Dep. at 431-34 (J. Dunne Decl. Ex. 3).) Excess goods bearing Fendi Trademarks are at times available for purchase by independent distributors from Fendi S.r.l's subcontractor manufacturers. (See S. Ressler Decl. ¶ 5-6; S. Ressler Dep.(J. Dunne Decl. Ex. 3) at 431-34; Colton Dep. (J. Dunne Decl. Ex. 4) at 52:14-58:24.).

51. Fendi S.r.l. has instituted measures to prevent its suppliers of metallic

hardware from selling metallic hardware manufactured to Fendi S.r.l.'s specifications to third parties. (2008 Minerva Dep. at 99-101 (Genecin Decl. Ex. 11)).

**Response to No. 51**:   Not contested, except to the extent that this allegation implies that these measures are enforced and are effective, and the assertion is ambiguous as to when these measures were instituted.   (See Ressler Dep. at 341-44 (J. Dunne Decl. Ex. 3).)  Further, Fendi is aware of handbags that it has determined to be counterfeit, but which contain original fabrics, hardware and/or buckles demonstrating that these components had been sold to others than Fendi. (2007 Cannatella Dep. (J. Dunne Decl. Ex. 6) at 23:20-27:5, 31:15-34:11; 2008 Cannatella Dep. (J. Dunne Decl. Ex. 7) at 26:20-27:13;  S. Ressler Dep. at 431-34 (J. Dunne Decl. Ex. 3).)

52.   Fendi S.r.l's materials suppliers are subject to both periodic and unannounced visits by inspectors employed by Fendi S.r.l. who monitor their activity. (2008 Minerva Dep. at 41-42, 287-88, 383 (Genecin Decl. Ex. 11); 2007 Minerva Dep. at 62, 101-03 (Genecin Decl. Ex. 12)).

**Response to No. 52**:   Not disputed, except to the extent that the assertion is ambiguous as to the frequency of the "periodic" inspections.

53.   Fendi S.r.l's materials suppliers are required to deliver materials only to the Fendi S.r.l. manufacturing facility located in Grassina, near Florence, Italy. (2008 Minerva Dep. at 43 (Genecin Decl. Ex. 11)).

**Response to No. 53**:   Contested.  Fendi has not produced any evidence of contractual arrangements.  Further, Fendi is aware of handbags that it has determined to be counterfeit, but which contain original fabrics, hardware and/or buckles demonstrating that these components had been sold to others than Fendi. (2007 Cannatella Dep. (J. Dunne Decl. Ex. 6) at 23:20-27:5, 31:15-34:11; 2008 Cannatella Dep. (J. Dunne Decl. Ex. 7) at

26:20-27:13; also See S. Ressler Dep. at 431-34 (J. Dunne Decl. Ex. 3); S. Ressler Dep. at 341-44 (J. Dunne Decl. Ex. 3).)

54.   Upon receipt, Fendi S.r.l's quality inspectors examine the materials, and, if they do not conform to specifications, Fendi S.r.l. destroys them. (2008 Minerva Dep. at 42, 288 (Genecin Decl. Ex. 11); 2007 Minerva Dep. at 63 (Genecin Decl. Ex. 12)).

**Response to No. 54**:   Ashley Reed does not contest this allegation, except to the extent that it implies that these measures are enforced and are effective.

55.   Strict specifications and tolerances govern fabric bearing a design containing one of the Fendi trademarks, making it difficult for third parties to replicate the fabric and design. (2008 Minerva Dep. at 20-22 (Genecin Decl. Ex. 11)).

**Response to No. 55**:  The reference does not support the assertion.  Further, the term "strict specifications and tolerances" is objected to as ambiguous.  However, Ashley Reed does not contest for the purpose of summary judgment the claim that it is "difficult for third parties to replicate the fabric design."

56.   Fendi S.r.l. contracts with small companies in and around Florence, Italy to assemble the Products. (2008 Minerva Dep. at 50-51 (Genecin Decl. Ex. 11); 2007 Minerva Dep. at 72-73 (Genecin Decl. Ex. 12)).

**Response to No. 56**:  Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

57.   These assemblers, called "subcontractors" by Fendi S.r.l., may, with the approval of Fendi S.r.l., subcontract certain limited tasks to other companies, called "sub-subcontractors." (2007 Minerva Dep. at 72, 194 (Genecin Decl. Ex. 12)).

**Response to No. 57**:  Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

58. The authorized assembly subcontractors, and their Fendi S.r.l.-approved sub-subcontractors, if any, use the material that Fendi S.r.l. supplies, and they follow Fendi' S.r.l.'s detailed instructions for the assembly of Products. (2007 Minerva Dep. at 72-76, 78, 194 (Genecin Decl. Ex. 12); 2008 Minerva Dep. at 53-54, 287-88, 465-66 (Genecin Decl. Ex. 11); Deposition of Lorenzo Bandinelli ("Bandinelli Dep.") at 86-88 (Genecin Decl. Ex. 36); Fabbri Dep. at 146-47, 149 (Genecin Decl. Ex. 14)).

**Response to No. 58**: Contested. Fendi subcontractors are permitted to use dyes and threads not provided by Fendi. (See Bandinelli Dep. at 90:18-91:14 (J. Dunne Decl. Ex. 8).)

59. The subcontractors' relationship with Fendi S.r.l. is governed by a contract that requires them, among other things, to deliver finished Products only to Fendi S.r.l. (2008 Minerva Dep. at 58 (Genecin Decl. Ex. 11)).

**Response to No. 59**: Contested. Fendi has not produced any documenray evidence of contractual arrangements. Further, Ashley Reed objects to the allegation to the extent that it implies that if such procedure is in place it is in fact enforced and effective. Excess Products are at times available for purchase by independent distributors from Fendi S.r.l's subcontractor manufacturers. (See S. Ressler Decl. ¶ 5-6; S. Ressler Dep.(J. Dunne Decl. Ex. 3) at 431-34; Colton Dep. (J. Dunne Decl. Ex. 4) at 52:14-58:24.)

60. The only authorized customer of a Fendi S.r.l. subcontractor (with respect to goods that bear the Fendi trademark) is Fendi, S.r.l. (Fabbri Dep. at 148, 155 (Genecin Decl. Ex. 14)).

**Response to No. 60**: Contested. Fendi has not produced any documentary evidence of contractual arrangements. Further, Ashley Reed objects to the allegation to the extent that it implies that if such procedure is in place it is in fact enforced and

-19-

effective. Excess Products are at times available for purchase by independent distributors
from Fendi S.r.l's subcontractor manufacturers. (See S. Ressler Decl. ¶ 5-6; S. Ressler
Dep.(J. Dunne Decl. Ex. 3) at 431-34; Colton Dep. (J. Dunne Decl. Ex. 4) at 52:14-58:24.)

61. Each order given by Fendi S.r.l. to an assembly subcontractor is for a stated
quantity of a specific Product in a specific combination of materials. (2008 Minerva Dep.
at 287, 363, 383 (Genecin Decl. Ex. 11)).

**Response to No. 61**: Ashley Reed does not contest for the purposes of summary
judgement the facts asserted in this paragraph to the extent that they only claim that Fendi
place orders for stated quantities of specific products but does not make any claim as to
what these quantities are or how they are determined.

62. For each order, Fendi S.r.l.'s manufacturing facility prepares a "kit." (2008
Minerva Dep. at 51 (Genecin Decl. Ex. 11); Fabbri Dep. at 149 (Genecin Decl. Ex. 14)).

**Response to No. 62**:  Ashley Reed does not contest for the purposes of summary
judgement the facts asserted in this paragraph to the extent that it only claims that Fendi
supplies a "kit" but makes no claims as to the kit's contents.

63. Each kit contains precisely the materials required to manufacture the quantity
of the Product called for by the order. (2008 Minerva Dep. at 51-53, 288 (Genecin Decl.
Ex. 11); Fabbri Dep. at 149 (Genecin Decl. Ex. 14)).

**Response to No. 63**:  Contested. Defendants have witnessed, at Fendi
subcontractor factories, in the presence of Lorenzo Bandinelli excess materials including
fabric and metallic hardware (See S. Ressler Decl. ¶ 6-10 ;S. Ressler Dep. at 429:21-434
(J. Dunne Decl. Ex. 3). Further, Fendi is aware of handbags that it has determined to be
counterfeit, but which contain original fabrics, hardware and/or buckles demonstrating that
these components had been sold to others than Fendi. (2007 Cannatella Dep. (J. Dunne

Decl. Ex. 6) at 23:20-27:5, 31:15-34:11; 2008 Cannatella Dep. (J. Dunne Decl. Ex. 7) at 26:20-27:13.)

64.  The cloth for the outside and linings of each item is pre-cut in Fendi S.r.l.'s manufacturing facility, as are the leather components; the necessary hardware items are prepared and counted. (Fabbri Dep. at 144, 146-47, 149-50 (Genecin Decl. Ex. 14)).

**Response to No. 64**: Contested. Leonardo Minerva testified that there are "exceptions" when subcontractors will cut fabrics during peak production times. (2007 Minerva Dep. (J. Dunne Decl. Ex. 10) at 85:7-87:13).  Ressler Dep. at 429:21-434 (J. Dunne Decl. Ex. 3). Defendants have witnessed at Fendi subcontractor factories, in the presence of Lorenzo Bandinelli, excess materials including fabric and metallic hardware (See S. Ressler Decl. ¶ 6-10; S. Ressler Dep. at 429:21-434 (J. Dunne Decl. Ex. 3).  Also, Lorenzo Bandinelli testified that subcontractor manufacturers have to sometimes cut fabric.  (See Bandinelli Dep. at 54:25-55:3, 90:18-91:14 (J. Dunne Decl. Ex. 8).  Further, Fendi is aware of handbags that it has determined to be counterfeit, but which contain original fabrics, hardware and/or buckles demonstrating that these components had been sold to others than Fendi. (2007 Cannatella Dep. (J. Dunne Decl. Ex. 6) at 23:20-27:5, 31:15-34:11; 2008 Cannatella Dep. (J. Dunne Decl. Ex. 7) at 26:20-27:13.)

65.  Fendi S.r.l.'s manufacturing facility meticulously counts all materials supplied in each kit. (Bandinelli Dep. at 36 (Genecin Decl. Ex. 16)).

**Response to No. 65**:  Contested.  (See Bandinelli Dep. at 87:8-88:16 (J. Dunne Decl. Ex. 8); S. Ressler Dep. at 429:21-434 (J. Dunne Decl. Ex. 3).) Further, the term "meticulously" is objected to as ambiguous.

66.  Only glue and minor components (such as paint for the border of a shoulder strap) are not included in the kit. (2008 Minerva Dep. at 54 (Genecin Decl. Ex. 11)).

**Response to No. 66**: Contested. (See Ressler Dep. at 429:21-434:7 (J. Dunne Decl. Ex. 3); S. Ressler Decl. ¶; Bandinelli Dep. at 54:25-55:3, 90:18-91:14 (J. Dunne Decl. Ex. 8).) Further, the term "minor components" is objected to as ambiguous.

67.   At most, the subcontractor might have to make minor adjustments to the pieces of leather that Fendi S.r.l. supplies. (Bandinelli Dep. at 36 (Genecin Decl. Ex. 16)). Such adjustments involve cutting away small amounts of material such as a strip of leather less than one centimeter in width. (Bandinelli Dep. at 36-37, 55 (Genecin Decl. Ex. 16)).

**Response to No.67**: Contested.   Leonardo Minerva testified that there are "exceptions" when subcontractors will cut fabrics during peak production times. (2007 Minerva Dep. (J. Dunne Decl. Ex. 10) at 85:7-87:13).   Further, the term "minor adjustments" is objected to as ambiguous.

68.   Fendi S.r.l. does not deliver kits to its assembly subcontractors; rather, the assembly subcontractors must come to Fendi S.r.l.'s manufacturing facility to pick up the kits (2008 Minerva Dep. at 55, 378 (Genecin Decl. Ex. 11)).

**Response to No. 68**: Ashley Reed does not contest that assembly subcontractors pick up kits to the extent that this allegation does not allege the contents of such kits.

69.   With each kit, Fendi S.r.l. advises the assembly subcontractor of a 16-digit code. (2007 Minerva Dep. at 165-66, 174 (Genecin Decl. Ex. 12); 2008 Minerva Dep. at 437 (Genecin Decl. Ex. 11)).

**Response to No. 69**:   Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph except to the extent that it implies that if such code are given, the use of such codes is in fact enforced and effective.

70.   The code identifies the subcontractor (2008 Minerva Dep. at 56 (Genecin Decl. Ex. 11); 2007 Minerva Dep. at 359 (Genecin Decl. Ex. 12)), the style number, the

combination of materials used, and the season for which the order is manufactured. (2008 Minerva Dep. at 34-35 (Genecin Decl. Ex. 11)).

**Response to No. 70**:   Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph except to the extent that the allegation implies that if such procedure is in place it is in fact enforced and effective.

71.   The code is stamped by the subcontractor on a piece of leather trim that is sewn into the inside lining of each Product in the order. (2008 Minerva Dep. at 34-35, 437 (Genecin Decl. Ex. 11)).

**Response to No. 71**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph except to the extent that the allegation implies that if such procedure is in place it is in fact enforced and effective.

72.   Fendi S.r.l. closely monitors the coding of its Products by its assembly subcontractors. (2007 Minerva Dep. at 196-97 (Genecin Decl. Ex. 12)).

**Response to No. 72**: Ashley Reed objects to the term "closely monitors" as ambiguous.

73.   Fendi S.r.l.'s coding system serves an important quality control function, informing Fendi of the age and assembly subcontractor of an item if there should be a customer complaint. (2008 Minerva Dep. at 35 (Genecin Decl. Ex. 11); 2007 Minerva Dep. at 359 (Genecin Decl. Ex. 12); Fabbri Dep. at 509, 512-13 (Genecin Decl. Ex. 14)).

**Response to No. 73**:   Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

74.   The coding system also supports Fendi S.r.l.'s anti-counterfeiting efforts. (2007 Minerva Dep. at 176-78, 359-60 (Genecin Decl. Ex. 12)).

**Response to No. 74**:   Ashley Reed does not contest for the purposes of summary

judgement the facts asserted in this paragraph.

75.   Minerva testified that he never saw an instance in which a Fendi branded item had correct codes, but imperfect material. (2008 Minerva Dep. at 60, 494 (Genecin Decl. Ex. 11)).

**Response to No. 75**:   Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph to the extent that this paragraph only refers to what Minerva has personally witnessed, and does not claim that no such products exist.

76.   Since the Fall-Winter season of 2003, every Product bears a hologram label. (2008 Minerva Dep. at 30, 31 (Genecin Decl. Ex. 11); 2007 Minerva Dep. at 136, 145 (Genecin Decl. Ex. 12)).

**Response to No. 76**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

77.   The hologram label is stitched into the lining of Products. (2008 Minerva Dep. at 27-28 (Genecin Decl. Ex. 11)).

**Response to No. 77**: Ashley Reed does not contest that, when present, the hologram is stitched into the lining.

78.   Fendi S.r.l. 's hologram label is a serially-numbered piece of cloth bearing a hologram. (2008 Minerva Dep. at 30-32 (Genecin Decl. Ex. 11)).

**Response to No. 78**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

79.   Each hologram label has a distinct serial number. (2007 Minerva Dep. at 273-74 (Genecin Decl. Ex. 12)).

**Response to No. 79**:   Contested.  Minerva has insufficient knowledge to support this assertion, as he testified that the manufacturers of the holograms were not subject to

quality control inspections nor monitoring of the total output of holograms. (See 2007 Minerva Dep. at 333, 336-337, 339, 342-343 (J. Dunne Decl. Ex. 10).)

80.   Under a microscope, symbols can be seen within a genuine hologram, permitting it to be identified as authentic. (2007 Minerva Dep. at 269 (Genecin Decl. Ex. 12)).

**Response to No. 80**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

81.   A specialized vendor manufactures the hologram labels for Fendi S.r.l. (2007 Minerva Dep. at 332-33 (Genecin Decl. Ex. 12)).

**Response to No. 81**:  Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

82.   After they are delivered to Fendi S.r.l.'s manufacturing facility, the hologram labels are locked in a safe. (2008 Minerva Dep. at 54-55, 378, 482 (Genecin Decl. Ex. 11)).

**Response to No. 82**:   Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

83.   The owner of the assembly subcontractor must come to Fendi S.r.l. 's manufacturing facility in person to receive and sign for the hologram labels assigned to each kit. (2008 Minerva Dep. at 55 (Genecin Decl. Ex. 11)).

**Response to No. 83**:   Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

84.   For each order, Fendi S.r.l. provides one hologram label for each item to be assembled. (2008 Minerva Dep. at 55, 288 (Genecin Decl. Ex. 11)).

**Response to No. 84**:   Ashley Reed does not contest for the purposes of summary

judgement the facts asserted in this paragraph.

85.   Fendi tracks the hologram number on each item. (2007 Minerva Dep. at 274 (Genecin Decl. Ex. 12)).

**Response to No. 85**:   Contested.   Minerva testified that the manufacturers of the holograms were not subject to quality control inspections nor monitoring of the total output of holograms.  (See 2007 Minerva Dep. at 333, 336-337, 339, 342-343 (J. Dunne Decl. Ex. 10).)

86.   The hologram label serves important anti-counterfeiting and quality control functions. (2008 Minerva Dep. at 54, 289 (Genecin Decl. Ex. 11)).

**Response to No. 86**:  Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

87.   The hologram serial number provides another way to determine whether a Fendi branded item is authentic. (2007 Minerva Dep. at 338 (Genecin Decl. Ex. 12)).

**Response to No. 87**:   Contested.   Minerva testified that the manufacturers of the holograms were not subject to quality control inspections nor monitoring of the total output of holograms.  (See 2007 Minerva Dep. at 333, 336-337, 339, 342-343.)

88.   Fendi S.r.l. monitors the work of its assembly subcontractors. (2007 Minerva Dep. at 81-83, 196-99, 203-04, 240 (GenecinDecl. Ex. 12); 2008 Minerva Dep. at 57-58, 441, 481 (Genecin Decl. Ex. 11); Bandinelli Dep. at 25-29 (Genecin Decl. Ex. 16); Fabbri Dep. at 160 (Genecin Decl. Ex. 14)).

**Response to No. 88**:   Contested, the cited testimony of Bandinelli makes clear that he only inspects the "finished product" not the actual work of the subcontractors. (See Bandinelli Dep. at 26:2-7 (J. Dunne Decl. Ex. 8).)

89.   Fendi S.r.l. conducts scheduled and unscheduled inspections of authorized

assembly subcontractors. (2007 Minerva Dep. at 191-94, 198, 200 (Genecin Decl. Ex. 12); 2008 Minerva Dep. at 287 (Genecin Decl. Ex. 11); Bandinelli Dep. at 23-26 (Genecin Decl. Ex. 16)).

**Response to No. 89**:   Not contested, except to the extent that the assertion is ambiguous as to the frequency of the inspections.

90.   Fendi S.r.l. inspectors visit subcontractors twice a week. (2007 Minerva Dep. at 193 (Genecin Decl. Ex. 12)).

**Response to No. 90**:   Not contested, except to the extent that the assertion is ambiguous as to what the inspectors do on these visits.

91.   Fendi S.r.l. conducts inspections of sub-sub contractors. (2007 Minerva Dep. at 192 (Genecin Decl. Ex. 12)).

**Response to No. 91**:   Not disputed, except to the extent that the assertion is ambiguous as to the frequency of inspections and what the inspections entail.

92.   The assembly subcontractors and sub-sub contractors are not permitted to market or sell Fendi trademarked goods to third parties. (2008 Minerva Dep. at 57-58 (Genecin Decl. Ex. 11); Fabbri Dep. at 148-49 (Genecin Decl. Ex. 14)).

**Response to No. 92**:   Contested.  Fendi has not produced any documentary evidence of contractual arrangements.  Further, Ashley Reed objects to this allegation to the extent that it implies that if such procedure is in place it is in fact enforced and effective.  Excess Products are at times available for purchase by independent distributors from Fendi S.r.l's subcontractor manufacturers. (See S. Ressler Decl. ¶ 6-10; S. Ressler Dep.(J. Dunne Decl. Ex. 3) at 431-34; Colton Dep. (J. Dunne Decl. Ex. 4) at 52:14-58:24.)

93.   When an assembly subcontractor completes an order, the order must be delivered to Fendi S.r.l.'s distribution center in Italy. (2008 Minerva Dep. at 288 (Genecin

Decl. Ex. 11); Fabbri Dep. at 149, 151 (Genecin Decl. Ex. 14)).

**Response to No. 93**:  Contested.  Fendi has not produced any evidence of contractual arrangements.  Further, Ashley Reed objects to this allegation to the extent that it implies that if such procedure is in place it is in fact enforced and effective.  Excess Products are at times available for purchase by independent distributors from Fendi S.r.l's subcontractor manufacturers. (See S. Ressler Decl. ¶ 5-6; S. Ressler Dep.(J. Dunne Decl. Ex. 3) at 431-34; Colton Dep. (J. Dunne Decl. Ex. 4) at 52:14-58:24.)

94.   Assembly subcontractors are forbidden to deliver Products anywhere other than to Fendi S.r.l.'s distribution center. (2008 Minerva Dep. at 57-58, 288 (Genecin Decl. Ex. 11); Fabbri Dep. at 151-52 (Genecin Decl. Ex. 14)).

**Response to No. 94**:  Contested.  Fendi has not produced any evidence of contractual arrangements.  Further, Ashley Reed objects to this allegation to the extent that it implies that if such procedure is in place it is in fact enforced and effective.  Excess Products are at times available for purchase by independent distributors from Fendi S.r.l's subcontractor manufacturers. (See S. Ressler Decl. ¶ 5-6; S. Ressler Dep.(J. Dunne Decl. Ex. 3) at 431-34; Colton Dep. (J. Dunne Decl. Ex. 4) at 52:14-58:24.)

95.   The subcontractor is required to return each component contained in the kit when the order has been assembled, either by delivering to Fendi S.r.l. the precise number of finished Products called for by the order, or by delivering all of the Products that the subcontractor has been able to finish, plus all damaged or incomplete items and material. (2007 Minerva Dep. at 189 (Genecin Decl. Ex. 12); Bandinelli Dep. at 37 (Genecin Decl. Ex. 16); Fabbri Dep. at 149 (Genecin Decl. Ex. 14)).

**Response to No. 95**:  Contested.  Fendi has not produced any evidence of contractual arrangements.  Further, Ashley Reed objects to this allegation to the extent that

it implies that if such procedure is in place it is in fact enforced and effective. Excess Products are at times available for purchase by independent distributors from Fendi S.r.l's subcontractor manufacturers. (See S. Ressler Decl. ¶ 5-6; S. Ressler Dep.(J. Dunne Decl. Ex. 3) at 431-34; Colton Dep. (J. Dunne Decl. Ex. 4) at 52:14-58:24.)

96. Fendi S.r.l. inspects each finished Product. (2007 Minerva Dep. at 81-83, 196-99, 203-04, 240 (Genecin Decl. Ex. 12); 2008 Minerva Dep. at 57-58, 441, 481 (Genecin Decl. Ex.11); Bandinelli Dep. at 25-29 (Genecin Decl. Ex. 16); Fabbri Dep. at 160) (Genecin Decl. Ex. 14)).

**Response to No. 96**: Contested. Minerva and Bandinelli have insufficient personal knowledge to support this assertion that "each finished product" is inspected. Further, Ashley Reed objects to the allegation to the extent that it implies that if such procedure is in place it is in fact enforced and effective.

97. If a Product has not been assembled correctly and cannot be repaired, the Product is destroyed. (2008 Minerva Dep. at 53 (Genecin Decl. Ex. 11)).

**Response to No. 97**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

98. Fendi S.r.l.'s distribution center in Italy ships the Products directly to Fendi's authorized customers. (Fabbri Dep. at 151-52 (Genecin Decl. Ex. 14)).

**Response to No. 98**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph, except to the extent that this allegation implies that distribution center in Italy ships the Products _only_ to Fendi's authorized customers.  (See S. Ressler Decl. ¶; See Colton Decl. ¶ (J. Dunne Decl. Ex. 4).)

99. Genuine Products are shipped only by Fendi S.r.l's distribution center. (2008 Minerva Dep. at 288 (Genecin Decl. Ex. 11); Fabbri Dep. at 151-52 (Genecin Decl. Ex.

14)).

**Response to No. 99**:   Contested.   See Response to No. 5 above.   Genuine Products can be purchased and shipped by independent distributors. (See S. Ressler Dep. at 431-34 (J. Dunne Decl. Ex. 3); S. Ressler Decl. ¶ 4-11; Colton Dep. at 52:14-58:24, 92:18-93:7 (J. Dunne Decl. Ex. 9).

Further, as admitted in ¶ 126 of Fendi's Rule 56.1 statement against Filene's basement, at least one of Fendi S.r.l.'s duty free shop customers distributed genuine Fendi goods to Migosa Enterprises, Inc., who then sold those goods to Filene's. (J. Dunne Decl. Ex. 1).  Fendi's own records indicate substantial distribution in Duty Free channels world-wide from 2004-2006.  See Fendi Documents Nos. FENDI 003491-003497, 003503-003509, and 003516-003526 (J. Dunne Decl. Ex. No. 2).

100.   As of July, 2001, it has been Fendi S.r.l.'s practice to ship the Products to its customers worldwide from a single location, the Fendi distribution center in Calenzano, Sesto Fiorentino, Italy, near Florence. (Fabbri Decl. ¶ 20).

**Response to No. 100**:   Contested.  See response to No. 99 above.

101.   Prior to July, 2001, the Products were shipped from one of two distribution centers in Italy, one located in Bagno a Ripoli, also near Florence, and the other in Rome. (Fabbri Decl. ¶ 21).

**Response to No. 101**:   Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

102.   The only source of Products at wholesale in North America is Fendi North America, except for operators of duty free shops in North America, which deal directly with Fendi S.r.l. The only source of Products for customers outside of North America is Fendi S.r.l. (Fabbri Dep. at 155-56; 404-05 (Genecin Decl. Ex. 14)).

**Response to No. 102**:  Contested.  See Response to No. 5 above. Genuine
Products can be purchased and shipped by independent distributors.(See S. Ressler Dep. at
431-34 (J. Dunne Decl. Ex. 3); Colton Dep. at 52:14-58:24, 92:18-93:7 (J. Dunne Decl.
Ex. 9); Colton Decl. ¶ (J. Dunne Decl. Ex. 4).)   As admitted in ¶ 126 of Fendi's Rule 56.1
statement against Filene's basement, at least one of Fendi S.r.l.'s duty free shop customers
distributed genuine Fendi goods to Migosa Enterprises, Inc., who then sold those goods to
Filene's.  (J. Dunne Decl. Ex. No. 1).  Fendi's own records indicate substantial
distribution in Duty Free channels world-wide from 2004-2006.  See Fendi Documents
Nos. FENDI 003491-003497, 003503-003509, and 003516-003526 (J. Dunne Decl. Ex.
No. 2).

103.   Fendi S.r.l. has always complied with the requirement of Italian law
that every seller of goods issue an invoice to each purchaser on a form regularly used by
the seller for this purpose. (Fabbri Decl. ¶ 23).

**Response to No. 103**:  Contested.  The facts asserted in this paragraph have not
been supported by admissible evidence as required by Rule 56 (e) of the Fed. R. Civ. Pro.
Fabbri does not have personal knowledge of the facts asserted.  Even if such procedures
exist, Fabbri cannot personally know that such a procedure has "always" been followed.
(See also S. Ressler Dep. at 416-20 (J. Dunne Decl. Ex. 3).)

104.   Fendi S.r.l.'s invoice form is printed with the Fendi S.r.l. name and the
locations of the company's corporate offices in Italy. (Fabbri Decl. ¶ 24).

**Response to No. 104**:  Ashley Reed does not contest for the purposes of summary
judgement the facts asserted in this paragraph.

105.   Fendi S.r.l.'s invoice is issued and dated on the date on which the goods
shown on the invoice are ready for shipment. (Fabbri Decl. ¶ 25).

**Response to No. 105**:   Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

106.   Fendi S.r.l.'s invoice also shows the name and address of Fendi S.r.l.'s customer and the order number assigned to the order. (Fabbri Decl. ¶ 26).

**Response to No. 106**:   Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

107.   Fendi S.r.l.'s invoice sets forth the dimensions and weight of each box of goods shipped, and Fendi S.r.l.'s distribution center assigns each box a unique number. The box number is stated on the invoice. (Fabbri Decl. ¶ 27).

**Response to No. 107**:   Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

108.   The contents of each box, including the exact quantity of each style, described by Fendi S.r.l.'s style number and materials code, and a description of the article in words, are also stated on the invoice. (Fabbri Decl. ¶ 28).

**Response to No. 108**:   Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

109.   Using Fendi S.r.l.'s computerized records, Alberto Fabbri, the chief financial officer of the Fendi Group, is able to access all invoices going back to 2001 that have been issued by Fendi S.r.l. for Products. (Fabbri Decl.¶ 29).

**Response to No. 109**: Contested.  The facts asserted in this paragraph have not been supported by admissible evidence as required by Rule 56 (e) of the Fed. R. Civ. Pro. (See response to No. 103 above). This allegations assumes that "all" invoices have been properly entered into the computerized records without providing any admissible evidence that such is the case.

110.    Fabbri is able to compare any document that appears to be a Fendi S.r.l. invoice to Fendi S.r.l.'s extensive database of invoices to determine whether the document is authentic. (Fabbri Decl. ¶ 30).

**Response to No. 110**:    Contested.  (See Response to No. 109 above.)  This allegations assumes that "all" invoices have been properly entered into the computerized records without providing any evidence that such is the case.

### FENDI S.R.L.'S EXAMINATION OF QUESTIONED GOODS

111.    Leonardo Minerva, Industrial Director of Leather Goods and Logistics Director for plaintiff Fendi, S.r.l, was in charge of all manufacture by Fendi S.r.l of Products from September, 2002 until March, 2008. (2008 Minerva Dep. at 10-11 (Genecin Decl. Ex. 11)).

**Response to No. 111**:  Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

112.    In addition, when Fendi S.r.l was presented with questions concerning the authenticity of handbags, shoulder bags, purses, wallets and key holders bearing its trademarks, Minerva was responsible for examining them and determining whether they were genuine. (2008 Minerva Dep. at 12-13 (Genecin Decl. Ex. 11)).

**Response to No. 112**:  Contested.  Minerva testified that the inspections were principally conducted by his assistant Massimo Lepri.  (2008 Minerva Dep. at 328-31, 492-95 (Genecin Decl. Ex. 11) (J. Dunne Decl. Ex. 11).)

113.    Minerva examined hundreds of questioned items each year from all over the world. (2008 Minerva Dep. at 13 (Genecin Decl. Ex. 11)).

**Response to No. 113**:    Contested.  Minerva testified that the inspections were principally conducted by his assistant Massimo Lepri. .  (2008 Minerva Dep. at 328-31,

492-95 (Genecin Decl. Ex. 11).)

114.   Minerva followed a multi-step protocol to determine the authenticity of a questioned item bearing Fendi trademarks. (2008 Minerva. Dep. at 59-61).

**Response to No. 114**:   Contested. Minerva testified that the inspections were principally conducted by his assistant Massimo Lepri.  (2008 Minerva Dep. at 328-31, 492-95 (Genecin Decl. Ex. 11).)

115.   First, he examined the physical characteristics of the item, i.e the quality of the materials, finishing, metallic hardware, and the way the item was manufactured. (2008 Minerva Dep. at 59-60 (Genecin Decl. Ex. 11)).

**Response to No. 115**:   Contested. Minerva testified that the inspections were principally conducted by his assistant Massimo Lepri.  (2008 Minerva Dep. at 328-31, 492-95 (Genecin Decl. Ex. 11).)

116.   Minerva then checked the item against Fendi S.r.k's records to determine whether Fendi S.r.k had actually manufactured the particular style in the combination of materials presented. (2008 Minerva Dep. at 60 (Genecin Deck Ex. 11)).

**Response to No. 116**:   Contested. Minerva testified that the inspections were principally conducted by his assistant Massimo Lepri.  (2008 Minerva Dep. at 328-31, 492-95 (Genecin Decl. Ex. 11).)

117.   Minerva then inspected each of the components for conformity with Fendi's specifications. (2008 Minerva Dep. at 60-61 (Genecin Deck Ex. 11)).

**Response to No. 117**:   Contested. Minerva testified that the inspections were principally conducted by his assistant Massimo Lepri.  (2008 Minerva Dep. at 328-31, 492-95 (Genecin Decl. Ex. 11).)

118.   Inside each of the Products, Fendi S.r.l places a card on which details such as

the style number, description code, season of production and order number are recorded. A counterfeit item often contains a card that reproduces the appearance of the card inserted by Fendi S.r.l. When a card was present, Minerva checked the numbers printed on it to verify whether they correspond to Fendi S.r.l.'s production data. (2008 Minerva Dep. at 28, 29-30, 35-36, 65, 73-74, 77-78- 97, 110, 122, 134, 148, 162, 282 (Genecin Decl. Ex. 11)).

**Response to No. 118**:   Contested. Minerva testified that the inspections were principally conducted by his assistant Massimo Lepri.  (2008 Minerva Dep. at 328-31, 492-95 (Genecin Decl. Ex. 11).)

119.   Minerva then verified each part of the product code stamped on the leather trim inside the lining. (2008 Minerva Dep. at 60 (Genecin Decl. Ex. 11)).

**Response to No. 119**:   Contested. Minerva testified that the inspections were principally conducted by his assistant Massimo Lepri.  (2008 Minerva Dep. at 328-31, 492-95 (Genecin Decl. Ex. 11).)

120.   Further, he examined the hologram and checked the serial number on the hologram label. (2008 Minerva Dep. at 60 (Genecin Decl. Ex. 11)).

**Response to No. 120**:   Contested. Minerva testified that the inspections were principally conducted by his assistant Massimo Lepri.  (2008 Minerva Dep. at 328-31, 492-95 (Genecin Decl. Ex. 11).)

121.   When a questioned item has more than one coded element — card, leather trim and/or hologram — the information provided by these elements could be cross-checked for consistency. (2008 Minerva Dep. at 31, 35 (Genecin Decl. Ex. 11)).

**Response to No. 121**: Ashley Reed does not contest that such cross-checking "could" be done, however this allegation is contested to the extent that it implies that such cross-checking was done, since such an allegation has not been supported by admissible

evidence as required by Rule 56 (e) of the Fed. R. Civ. Pro..

122.    A written report was prepared concerning each item examined for authenticity. (2008 Minerva Dep. at 62 (Genecin Decl. Ex. 11)).

**Response to No. 122**:  Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph,  however it is contested to the extent that it implies that such reports were prepared by Minerva, these reports were prepared by Massimo Lepri. (2008 Minerva Dep. at 328-31, 492-95 (Genecin Decl. Ex. 11).)

### THE UNCONTROVERTED EVIDENCE OF COUNTERFEITING

123.    In *Fendi Adele, s.r.l. et al. v. Filene's Basement, Inc. et al*, Case No. 06 Civ. 0244(RMB) (MHD), currently pending before Judge Berman in this District, plaintiffs examined 15 Fendi branded handbags and small leather items that had either been sold by Filene's Basement or that were obtained from that defendant during discovery. Each of these items was determined by Minerva to be counterfeit.

**Response to No. 123**:    Contested. Minerva testified that the inspections were principally conducted by his assistant Massimo Lepri.  (2008 Minerva Dep. at 328-31, 492-95 (Genecin Decl. Ex. 11).)

124.    In addition, plaintiffs purchased a total of five Fendi branded items from three other retailers, Big M, Inc., Nordstrom's Rack and Saks Off Fifth that Minerva also examined and determined to be counterfeit.

**Response to No. 124**:    Contested. Minerva testified that the inspections were principally conducted by his assistant Massimo Lepri.  (2008 Minerva Dep. at 328-31, 492-95 (Genecin Decl. Ex. 11).)

125.    Filene's Basement's buyers testified that the source for that company's Fendi branded goods was ARTI (Deposition of Cynthia A. Quinn ("Quinn Dep.") at 134-35;

Deposition of Melissa R. Miller ("Miller Dep.") at 35-36; Deposition of Lisa Honig ("Honig Dep.") at 120; see also Deposition of J. Rudd ("Rudd Dep") at 145).

**Response to No. 125**:  Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

126.  Michael Wolkoff, senior vice president and general merchandise manager of the Off Fifth Division of Saks Fifth Avenue testified that his company's source for Fendi branded goods was ARTI (Wolkoff Dep. at 6, 11 (Genecin Decl. Ex. 21)).

**Response to No. 126**:  Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

127.  Scott Ressler testified that ARTI sold Fendi branded goods to Filene's Basement, Saks Off Fifth Avenue, Big M, Inc. and Nordstrom's Rack, as well as to Burlington Coat Factory and Neiman Marcus Last Call. (S. Ressler Dep. at 136-40 (Genecin Deck Ex. 18)).

**Response to No. 127**:  Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

128.  The following table sets forth the uncontroverted evidence of counterfeit Fendi branded goods supplied by ARTI:

| RETAILER | EX. | MIMICS FENDI MODEL NO. | SUMMARY OF INDICIA OF COUNTERFEITING | 2008 MINERVA DEP. AT |
|---|---|---|---|---|
| Saks | PL 54 | 8BR000 | Leather is low grade and not consistent with Fendi quality; fabric is not used by Fendi, *i.e.*, different weave, dimensions, feel, and geometrical measurements; lining is not used by Fendi; buckles consist of incorrect material; hologram is not authentic, is peeled off, and is not properly situated on the label; serial number on hologram label is set in the wrong font; code inside bag that identifies assembler does not correspond to any assembler of this model. | 271-73 |
| Saks | PL 55 | 8BR000 | Leather is low grade and not consistent with Fendi quality; fabric is not one used by Fendi; the color is "completely different"; code inside bag identifies an assembler that never produced this model, in this combination and color, in fall-winter '02. | 275-76 |

| RETAILER | EX. | MIMICS FENDI MODEL NO. | SUMMARY OF INDICIA OF COUNTERFEITING | 2008 MINERVA DEP. AT |
|---|---|---|---|---|
| FILENE'S | PL 90 | 8BR155 029 | Inside metallic plate is the wrong size; zipper pull side buckles are made of zinc alloy instead of the brass used by Fendi; the season code on the bag is fall-winter '02, but Fendi introduced this zinc alloy after that season; fabric is not one used by Fendi; assembler code is missing; interior lining does not meet Fendi specifications; card inside bag has a manufacturing order number that was used by Fendi to produce a different model. | 247-48 |
| FILENE'S | PL 91 | 8BR444 | Metallic inside plate is the wrong size; lining and fabric do not meet Fendi standards; hologram is not authentic; code inside bag that identifies assembler is a number not assigned by Fendi to any assembler; the season code on the bag is fall-winter '05, but Fendi never produced this model in fall-winter '05; card inside bag has an incorrect manufacturing order number -- it does not correspond to any order for handbags. | 249-50 |
| FILENE'S | PL 92 | 8BR444 | Lining and fabric are not used by Fendi; inside metallic plate is the wrong size; hologram is not authentic; code inside bag that identifies assembler is a number not assigned by Fendi to any assembler; card inside bag has a manufacturing order number that was used by Fendi to produce a different model; the size of the "FF" trademark does not meet Fendi's specifications. | 252-54 |
| Rack | PL 53 | 8BR269 | "[T]he leather is completely a lower grade of leather, compared to [Fendi] leather"; interior lining is not one used by Fendi; incorrect shade of fabric; hologram is not authentic. | 269 |

-39-

| RETAILER | EX. | MIMICS FENDI MODEL NO. | SUMMARY OF INDICIA OF COUNTERFEITING | 2008 MINERVA DEP. AT |
|---|---|---|---|---|
| FILENE'S | PL 86 | 8BR156 | Fabric does not meet Fendi specifications; trim is incorrect for this model; inside metallic plate is the wrong size; different zipper pull was used when this item was allegedly manufactured; assembler code is missing; card inside bag has the recurrent manufacturing order number 10955 used by counterfeiters and that was used by Fendi to produce a different model with a different fabric. | 236-37 |
| FILENE'S | PL 87 | 8BH133 | Different geometrical dimensions than an authentic Fendi; different lining; buckles are incorrect; hologram is not authentic; code inside bag that identifies assembler is a number not assigned by Fendi to any assembler. | 239 |
| FILENE'S | PL 88 | 8BR000 | This model has never been made in this fabric/color combination; interior lining does not meet Fendi's specifications; different zipper pull was used in the season when this item was allegedly manufactured; hologram is not authentic; code inside bag identifies year of production as 2002, *i.e.*, before Fendi began placing holograms in Products; code identifies a supplier that never produced this model during the corresponding season. | 241-42 |
| FILENE'S | PL 89 | 8BR001 | Leather is low grade and not consistent with Fendi quality; hologram is not authentic; interior lining is not one used by Fendi on this model; buckles consist of the wrong material for this model and are not within tolerance for thickness; fabric is different from that used by Fendi in terms of geometric dimension and color; hologram is not authentic. | 244-45 |

| RETAILER | EX. | MIMICS FENDI MODEL NO. | SUMMARY OF INDICIA OF COUNTERFEITING | 2008 MINERVA DEP. AT |
|---|---|---|---|---|
| FILENE'S | PL 83 | 8BR158 | Lining fabric is not the one used by Fendi; fabric does not meet Fendi's specifications; accessories do not conform to those used by Fendi for this model; inside metallic plate is not the correct size; manufacturing order number corresponds to another model; assembler code is missing. | 214-15 |
| FILENE'S | PL 84 | 8BR155 | Fabric does not meet Fendi's specifications; zipper pull consists of material not used by Fendi at the time this item was supposedly manufactured; inside metallic plate is not the correct size; lining fabric is not the one used by Fendi; assembler code is missing; card inside bag has the recurrent manufacturing order number 10955 used by counterfeiters and that was used by Fendi to produce a different model. | 216 |
| FILENE'S | PL 85 | 8BR444 | Model has never been produced in this fabric color, and fabric does not meet Fendi's specifications; zipper pull present on this item was out of production when this item was supposedly manufactured; inside metallic plate is not the correct size; lining fabric is not the one used by Fendi; code inside bag includes an assembler code that corresponds to a materials supplier, not an assembler; card inside bag with the manufacturing order number corresponds to a different item in a different color; hologram is not authentic. | 218-19 |

| RETAILER | EX. | MIMICS FENDI MODEL NO. | SUMMARY OF INDICIA OF COUNTERFEITING | 2008 MINERVA DEP. AT |
|---|---|---|---|---|
| FILENE'S | PL 79 | 8M0024 | Leather is low grade and not consistent with Fendi quality; lining fabric is not the one used by Fendi; zipper pull is different from the one used by Fendi during the season when this item was allegedly manufactured; the code refers to a wallet that should be beige, but this item is black. | 205 |
| FILENE'S | PL 80 | 8M0000 | Zipper pull is different from the one used by Fendi in the season (spring-summer '03) when this item was allegedly manufactured; lining is too dark and does not meet Fendi's specifications; code inside bag identifies an assembler that has never produced this model during the spring-summer '03 season; the manufacturing code corresponds to a beige item, but this one is black. | 206-07 |
| FILENE'S | PL 81 | 8M0000 | Leather is low grade and has a "plastic" feeling; different lining; code inside bag identifies an assembler that has never produced this model during the spring-summer '03 season; manufacturing order number corresponds to an item in "zucchini" fabric, but this item is made with "zucca" fabric. | 208-09 |
| FILENE'S | PL 82 | 8BR155 | This model has never been made in this color/fabric combination; fabric does not meet Fendi's specifications in terms of color and dimension; lining fabric is not the one used by Fendi; inside metallic plate is not the correct size; code inside bag that identifies assembler is missing; card inside bag has the recurrent manufacturing order number 10955 used by counterfeiters and that was used by Fendi to produce a different model. | 211-12 |

| RETAILER | EX. | MIMICS FENDI MODEL NO. | SUMMARY OF INDICIA OF COUNTERFEITING | 2008 MINERVA DEP. AT |
|---|---|---|---|---|
| BIG M | PL 21 | 8BR001 | The fabric and lining are not the ones used by Fendi; the color of this item is not consistent with genuine Fendi zucca fabric; the hologram is not attached; serial number on hologram label is set in the wrong font; code inside bag identifies an assembler that has never produced in this item in this particular color. | 265-66 |
| BIG M | PL 20 | 8BR001 | Leather is low grade and not consistent with Fendi quality; the fabric measurements do not correspond to Fendi's specifications; side buckles consist of the wrong material; the Fendi trademark is not where it should be; incorrect lining; lining fabric is not the one used by Fendi; code inside bag identifies an assembler that has never produced this item during the referenced season; card inside bag with the manufacturing order number does not correspond to any manufacturing order of Fendi, nor does the code correspond to the color of this item. | 256-57 |
| FILENE'S | PL 78 | 8M0024 | Leather is low grade and not consistent with Fendi quality; different lining; the season code is spring-summer, but this particular model in this color was not produced in that season; code inside bag identifies an assembler that has never produced this item in this color during spring-summer; card inside bag with the manufacturing order number corresponds to a different item. | 201-03 |

**Response to No. 128**:   Contested.   There is no admissible evidence as to
"Minerva's findings" concerning defendants' Fendi branded goods.   At his deposition,
rather than testifying from memory or personal knowledge, Minerva was reading from
inadmissible reports apparently prepared by Massimo Lepri.   ((2008 Minerva Dep. at
328-31, 492-95 (Genecin Decl. Ex. 11); Declaration of Gerard F. Dunne ("G. Dunne
Decl.") ¶ 2.)

129.   Each of the counterfeit Fendi branded items listed above bears a counterfeit
of at least one of the Fendi-registered trademarks listed in paragraph 28, above. The
following table illustrates at least one counterfeit Fendi trademark for each exhibit, but
does not represent an exhaustive catalogue of the counterfeit trademarks present on these
items:

| EXH | IMAGE | TRADEMARK REGISTRATION NO. | TYPE OF GOODS |
|---|---|---|---|
| PL 78 | | 1,214,472 | Wallet |
| | | 1,244,466 | |
| | | 1,439,955 | |
| PL 79 | | 1,214,472 | Wallet |
| | | 1,244,466 | |
| | | 1,439,955 | |
| PL 80 | | 1,214,472 | Wallet |
| | | 1,439,955 | |
| PL 81 | | 1,214,472 | Wallet |

| EXH | IMAGE | TRADEMARK REGISTRATION NO. | TYPE OF GOODS |
|---|---|---|---|
| |  | 1,244,466 | |
| | | 1,439,955 | |
| PL 82 | | 1,214,472 | Handbag |
| | | 1,244,466 | |
| | | 1,439,955 | |
| PL 83 | | 1,214,472 | Handbag |
| | | 1,244,466 | |
| | | 1,439,955 | |
| PL 84 | | 1,214,472 | Handbag |

| EXH | IMAGE | TRADEMARK REGISTRATION NO. | TYPE OF GOODS |
|---|---|---|---|
| | | 1,244,466 | |
| | | 1,439,955 | |
| PL 85 | | 1,214,472 | Handbag |
| | | 1,244,466 | |
| | | 2,648,257 | |
| | | 1,439,955 | |
| PL 86 | | 1,214,472 | Handbag |
| | | 1,244,466 | |
| | | 1,439,955 | |

−47−

| EXH | IMAGE | TRADEMARK REGISTRATION NO. | TYPE OF GOODS |
|---|---|---|---|
| PL 87 | | 1,214,472 | Handbag |
| | | 1,244,466 | |
| | | 2,648,257 | |
| | | 1,439,955 | |
| PL 88 | | 1,214,472 | Handbag |
| | | 1,244,466 | |
| | | 2,648,256 | |
| | | 1,439,955 | |

| EXH | IMAGE | TRADEMARK REGISTRATION NO. | TYPE OF GOODS |
|---|---|---|---|
| PL 89 | | 1,214,472 | Handbag |
| | | 1,244,466 | |
| | | 1,439,955 | |
| | | 2,648,256 | |
| PL 90 | | 1,214,472 | Handbag |
| | | 1,244,466 | |
| | | 1,439,955 | |

| EXH | IMAGE | TRADEMARK REGISTRATION NO. | TYPE OF GOODS |
|---|---|---|---|
| PL 91 | | 1,214,472 | Handbag |
| | | 1,244,466 | |
| | | 2,648,257 | |
| | | 1,439,955 | |
| PL 92 | | 1,214,472 | Handbag |
| | | 1,244,466 | |
| | | 2,648,257 | |
| | | 1,439,955 | |

| EXH | IMAGE | TRADEMARK REGISTRATION NO. | TYPE OF GOODS |
|---|---|---|---|
| PL 53 Nordstrom Rack | | 1,214,472 | Handbag |
| | | 1,244,466 | |
| | | 2,648,256 | |
| | | 1,439,955 | |
| PL 54 Saks Off 5th | | 1,214,472 | Handbag |
| | | 1,244,466 | |
| | | 1,439,955 | |

| EXH | IMAGE | TRADEMARK REGISTRATION NO. | TYPE OF GOODS |
|---|---|---|---|
| |  | 2,648,256 | Handbag |
| PL 55 Saks Off 5th |  | 1,214,472 | Handbag |
| |  | 1,244,466 | |
| |  | 2,648,256 | |
| |  | 1,439,955 | |

**Response to No. 129**:  Contested.  There is no admissible evidence as to "Minerva's findings" concerning defendants' Fendi branded goods.  At his deposition, rather than testifying from memory or personal knowledge, Minerva was reading from inadmissible reports apparently prepared by Massimo Lepri.  (2008 Minerva Dep. at 328-31, 492-95 (Genecin Decl. Ex. 11); G. Dunne Decl. ¶ 2.)

## THE UNCONTROVERTED EVIDENCE OF DEFENDANTS' PROFITS FROM THEIR SALES OF FENDI BRANDED GOODS

130.   Defendants produced incomplete records of their purchases and sales of Fendi branded merchandise. (Declaration of James J. Donohue, C.P.A., C.V.A., dated February 18, 2009 ("Donohue Decl.") ¶ 3, 13).

**Response to No. 130**:  Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph, to the extent that Ashley Reed did not have complete files going back to 2001.

131.   Notably, defendants did not retain the invoices that they received from their suppliers of Fendi branded goods (S. Ressler Dep. at 182, 259-60), nor did they record what they paid for goods in its computer system. (S. Ressler Dep. at 615 (Genecin Decl. Ex. 18)).

**Response to No. 131**: Contested.  Ashley Reed produced invoices from suppliers, though not for all shipments received, however Ashley Reed did record and produce all recent records of payments made by Ashley Reed to their suppliers.  (See S. Ressler Deposition, at 251:24 - 266 (J. Dunne Decl. Ex. 3).)  However, Ashely Reed did not maintain records as far back as 2001, and further, Ashley Reed's computer system failed around early 2004, and records from before 2004 are incomplete.  (S. Ressler Decl. ¶ 25; S. Ressler Deposition at 251:24 - 265, 267:19-21, 271:11-25 (J. Dunne Decl. Ex. 3).)

132.  In addition, defendants did not keep complete records of their sales.
(Donohue Decl. ¶ 14, 18-24).

**Response to No. 132**:  Contested. Ashley Reed produced their sales invoices from
2004 through 2005, however many records from before this period were lost when the
computer system failed.  (See S. Ressler Decl. ¶ 25; S. Ressler Deposition at 267:19-21 (J.
Dunne Decl. Ex. 3).).

Further, Ashley Reed provided the name and location of their billing factor
Rosenthal and Rosenthal, LLC, and informed Fendi that Rosenthal and Rosenthal would
be in possession of Ashley Reed's records.  (See S. Ressler Decl. ¶ 26 & 29).  In fact,
Fendi subpoenaed Rosenthal and Rosenthal, however Fendi, inexplicably chose to have
their forensic accountant expert examine only the files of Ashley Reed's office and Ashley
Reed's customers and not examine the files of Rosenthal and Rosenthal. (G. Dunne Decl.
¶ 3.)

133.  The ARTI document production reflects total sales of Fendi branded goods of
$5,034,269. (Donohue Decl. Ex. 3).

**Response to No. 133**:  Ashley Reed does not contest for the purposes of summary
judgement the facts asserted in this paragraph.

134.  Documents obtained in discovery from customers of ARTI reveal an
additional $4,960,927 in sales not disclosed by defendants. (Donohue Decl Ex. 3).

**Response to No. 134**: Contested.  The facts asserted in this paragraph have not
been supported by admissible evidence as required by Rule 56 (e) of the Fed. R. Civ. Pro.
Several of the alleged documents were spreadsheets created for the purpose of this
litigation, not in response to proper discovery, and are not admissible evidence of
authenticated business records.  (See Donohue Decl. ¶ 20-23; Also See S. Ressler Decl. ¶

26 & 29)

Further, Donohue used unreliable documents that included purchase orders (See Donohue Decl. ¶ 19 and ¶ 24).  A purchase order is subject to product availibilty and does not necessarrily represent a quantity of goods that was in fact purchased and shipped.

The report used by Donohue in regard to Saks 5th Avenue is inaccurate. The report was created and titled by Saks "Fendi Receipts Reports..." (See Dunne Decl. ¶ 4). However, Donohue admits that the report contained "Fendi and non Fendi SKUs." (Donohue Decl. ¶ 23).  Donohue admits that he was aware that the report alleging to be Fendi Receipts was, in at least one aspect, not reliable.  Yet, Donohue states he "manually reviewed each SKU and indentified the Fendi Style Numbers." (Donohue Decl. ¶ 23). Donohue does not disclose how he has the knowledge to separate such style numbers, nor has he given any reason for his assumption that the report was reliable despite the clear indicia of non-reliability.

135.  Defendants do not controvert that they made $9,995,196 in sales of Fendi branded handbags and small leather goods. (Donohue Decl. ¶ 12, Ex. 3).

**Response to No. 135**:  Contested.  See the response to no. 134 above.  Ashley Reed did not sell $9,995,196 of Fend-branded handbags and small leather goods. (S. Ressler Decl. ¶ 29.)

136.  Defendants did not put forward any evidence of their costs, and their damages expert, Neil Bressler, made no calculations whatsoever concerning deductions to be taken from sales. The entirety of his expert report states as follows:

> My resume is attached as Exhibit A, and
>
> for the past 29 years I have been a Certified Public
>
> Accountant. From approximately 2003, 1 have been the

accountant for Ashley Reed Trading.

The calculation of the profit earned by Ashley Reed Trading, Inc. for the sale of Fendi products in any particular year would commence by determining the sales of Fendi product less any returns and allowances. From this amount one would deduct the cost of acquiring the goods. This would include the cost of merchandise, duty, and freight. The net balance would represent the gross profit margin earned on sales. Generally accepted accounting principals [sic] would necessitate determining the amount of the company's overhead to apply in order to determine the final or net profit or loss for each year. Examples of overhead would include salaries, rent, and warehousing costs as contained in the company's tax return and financial statements.

The ratio of Fendi sales to total sales for the same year should then be multiplied by the total overhead for that year to determine this amount. Subtracting this overhead from the gross margin would then yield the net profit or loss for each year.

There are no articles written by myself nor have I been asked to testify in court during the past four years.

My rate of compensation for the work

performed in this matter is $350 per hour. (Expert Report

of Neil Bressler (Genecin Decl. Ex. 8)).

**Response to No. 136**: Contested.  Ashley Reed produced accounting records

evidencing their costs.  (See J. Dunne Decl. ¶ 2-3)  Neil Bressler's expert testimony

concerns how to calculate profits, and an expert is not required to actually calculate the

numbers that are show in the documents produced.

## THE UNCONTROVERTED EVIDENCE THAT DEFENDANTS' SALES OF COUNTERFEIT FENDI BRANDED PRODUCTS WERE WILLFUL

137.  After the commencement of the present litigation, defendants returned their

inventory of Fendi branded goods to their suppliers:

Q.       With respect to the merchandise, he Fendi

branded merchandise that's the subject matter of this

litigation, did you have any inventory?

A             No.

Q.    You presently do not have any inventory?

A.    No.

Q.     Upon the initiation of the lawsuit did you have

any inventory?

A.    We might have had a little. I think we returned it.

Q.    Returned it to whom?

A.    I'm not sure.

Q.    So when the litigation was initiated, you took the

merchandise, the Fendi brands of merchandise that you

had in inventory, and you returned it?

A.     Yes.

Q.     The Fendi branded merchandise that you had in your possession that was in your inventory at the time the litigation was initiated, were those handbags and accessories?

A.     Yes.

Q.     Were they the subject matter of the litigation that was involved in this case?

A.     Yes.

Q.     So you took product that was the subject matter of this litigation and you got rid of it?

A.     Returned it.

Q.     You got rid of it, you sent it back somewhere?

A.     Sent it back, yes.

Q.     Do you know how much merchandise that was?

A.     No, I don't.

Q.     Do you have records of that?

A.     I'm not sure. (S. Ressler Dep. at 123-24 (Genecin Decl. Ex. 18)).

**Response to No. 137**:   Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

138.   Defendants did not have documents relating to the returns. (S. Ressler Dep. at 133-34 (Genecin Decl. Ex. 18)).

**Response to No. 138**:   Ashley Reed does not contest for the purposes of summary

judgement the facts asserted in this paragraph.

139.   When Fendi sued Annie Sez, moreover, Scott Ressler took back Fendi branded goods from that company, and returned them to his supplier:

> Q.      Do you recall that Annie Sez, at the time when Fendi sued them, had Fendi branded products in inventory?
>
> A.      I do.
>
> Q.      And do you recall that those products were ultimately sent back to Ashley Reed?
>
> A.      Yes. They returned them to me, and I returned them to my source.
>
> Q.      Right. Do you recall about when they returned them to you?
>
> A.      No. After the onset of the lawsuit.
>
> Q.      They were returned to you?
>
> A.      They returned them to me and I returned them to my source.
>
> Q.      And who was your source?
>
> A.      It was — if you read me off the list again, I'll tell you which one it was.
>
> Q.      Why don't you try to remember who you returned those goods to?
>
> A.      We're back to the memory game? (S. Ressler Dep. at 592-93 (Genecin Decl. Ex. 18)).

**Response to No. 139**:  Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

140.   Scott Ressler testified that he returned the Fendi branded goods from Annie Sez to Moda Oggi. (S. Ressler Dep. at 608 (Genecin Decl. Ex. 18)).

**Response to No. 140**:  Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

141.   Defendants did not retain the invoices that they received from their suppliers of Fendi branded goods. (S. Ressler Dep. at 182, 259-60 (Genecin Decl. Ex. 18)).

**Response to No. 141**:  Ashley Reed produced invoices from suppliers, though not for all shipments received, however Ashley Reed did record and produce all recent records of payments made by Ashley Reed to their suppliers.  (See S. Ressler Deposition, 251:24 - 266).  However, Ashely Reed did not maintain records as far back as 2001, and further, Ashley Reed's computer system failed around early 2004, and records from before 2004 are incomplete.  (See S. Ressler Decl. ¶ 25; S. Ressler Deposition, 251:24 - 265, 267:19-21, 271:11-25.)

142.   James Ressler testified as follows:

> Q.      From what company or companies has Ashley Reed Trading Incorporated purchased Fendi branded products?
>
> MR. SCHOEN: Same objection.
>
> MR. BAINTON: Objection to form.
>
> MR. SCHOEN: And same objection.
>
> A.      By advice of counsel, I invoke the Fifth. (J. Ressler Dep. at 20 (Genecin Decl. Ex. 19)).

Q.     Did Ashley Reed Trading Corporation sell genuine Fendi products to Filene's Basement?

MR. SCHOEN: Same objection.

A.     By advice of counsel, I invoke the Fifth. (J. Ressler Dep. at 30 (Genecin Decl. Ex. 19)).

Q.     Did Ashley Reed Trading Incorporation sell counterfeit Fendi products to Filene's Basement?

MR. SCHOEN: Same objection.

A.     By advice of counsel, I invoke the Fifth. (J. Ressler Dep. at 31 (Genecin Decl. Ex. 19))

Q.     And isn't it true that you knew that all of the Fendi trademarked merchandise purchased by Burlington Coat Factory from Ashley Reed Trading was counterfeit?

MR. SCHOEN: Same objection.

A.     Under the advice of counsel, I invoke the Fifth.

Q.     Isn't it true that Ashley Reed Trading sold counterfeit Fendi trademarked goods to Burlington Coat Factory?

MR. SCHOEN: Same objection.

A.     Under the advice of counsel, I invoke the Fifth. (J. Ressler Dep. at 147 (Genecin Deck Ex. 19)).

Q.     Isn't it true that when Ashley Reed purchased Fendi trademarked goods from Moda Oggi, it did so knowing that those goods were counterfeit?

-61-

MR. BAINTON: Objection.

MR. SCHOEN: Object as to form, and same objection.

A.        By advice of counsel, I invoke the Fifth. (J. Ressler Dep. at 85 (Genecin Deck Ex. 19)).

Q.        Isn't it true that when Ashley Reed purchased Fendi trademarked goods from Moda Oggi, it did so knowing that those goods were counterfeit?

MR. BAINTON: Objection.

MR. SCHOEN: Object as to form, and same objection.

A.        By advice of counsel, I invoke the Fifth. (J. Ressler Dep. at 85 (Genecin Decl. Ex. 19)).

Q.        And all cases when Lawrence Samuel was a party to transactions involving Fendi trademarked goods, isn't it true that you knew that the goods that you were obtaining were counterfeit?

MR. SCHOEN: Objection.

MR. BAINTON: Objection.

MR. SCHOEN: And same objection.

A.        Under the advice of counsel, I invoke the Fifth. (J. Ressler Dep. at 213 (Genecin Decl. Ex. 19)).

**Response to No. 142**:   Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

143.   At a meeting held in or about June, 2003, Filene's Basement's then-CEO, Heywood Wilansky, asked James Ressler to sign a form letter agreement. (Deposition of

Cynthia Quinn ("Quinn Dep.") at 59, 68 (Genecin Decl. Ex. 22)).

**Response to No. 143** : Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

144.  Wilansky told James Ressler: "Before you can sell us this Fendi merchandise, you are going to need to sign our letter." (Quinn Dep. at 59 (Genecin Decl. Ex. 22)).

**Response to No. 144**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

145.  The letter agreement contains an undertaking by ARTI to defend Filene's Basement in the event of a lawsuit concerning goods supplied by ARTI. (Filene's Basement Pls. Ex. 12 ¶ 4 (Genecin Decl. Ex. 9)).

**Response to No. 145**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

146.  The Agreement James Ressler executed on June 12, 2003 contains a redacted paragraph. (Pls. Exs. 12, 97 (Genecin Decl. Exs. 9, 10); see also Deposition of James Rudd ("Rudd Dep.") at 134-35 (Genecin Decl. Ex. 23)).

**Response to No. 146**:   Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.  However, it should be noted that paragraph 1(a) and 1(b) of the document in question contain a warranty regarding the authenticity of any trademarked goods. (See Genecin Decl. Ex. 9).

147.  Under his signature on the letter agreement, Jim Ressler wrote that "Point 2 was taken out." (Pls. Ex. 12 (Genecin Decl. Ex. 9)).

**Response to No. 147**:  Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.  However, it should be noted that paragraph 1(a) and 1(b) of the document in question contain a warranty regarding the

authenticity of any trademarked goods. (See Genecin Decl. Ex 9).

148.   Point 2, the redacted paragraph, reads:

Seller has the legal right to sell the Merchandise, including sale thereof for resale in the U.S.A., and the purchase and resale of the Merchandise by Filene's in the U.S.A. will not violate or infringe upon any existing contractual and/or Proprietary Rights owned by others. (Pls. Ex. 97 (Genecin Decl. Ex. 10); see also Rudd Dep. at 134-35 (Genecin Decl. Ex. 23)).

**Response to No. 148**:   Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.  However, it should be noted that paragraph 1(a) and 1(b) of the document in question contain a warranty regarding the authenticity of any trademarked goods. (See Genecin Decl. Ex 9).

149.   Defendants never purchased goods directly from Fendi. (S. Ressler Dep. at 97 (Genecin Decl. Ex. 18))

**Response to No. 149**: Ashley Reed objects to the use of the term "Fendi" as ambiguous.  Ashley Reed does not contest that goods were never purchased directly from Fendi S.r.l, but contests that they never purchased goods directly from Fendi to the extent that they purchased goods from authorized Fendi subcontractors and distributors.  Excess Products are at times available for purchase by independent distributors from Fendi S.r.l's subcontractor manufacturers. (See S. Ressler Decl. ¶ 4-11; S. Ressler Dep.(J. Dunne Decl. Ex. 3) at 431-34; Colton Dep. (J. Dunne Decl. Ex. 4) at 52:14-58:24.) .

150.   Defendants claim that they purchased Fendi branded goods from an Italian company called Cinque Piu, and paid a company in Switzerland called Hidea for these goods. (S. Ressler Dep. at 54, 62-63, 108 (Genecin Decl. Ex. 18)).

**Response to No. 150**: Ashley Reed does not contest for the purposes of summary

judgement the facts asserted in this paragraph.

151.   Scott Ressler testified that Fendi branded goods were purchased through a company called Hidea, and packed by Cinque Piu for ARTI. (S. Ressler Dep. at 581, 583 (Genecin Decl. Ex. 18)).

**Response to No. 151**:   Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

152.   Cinque Piu S.r.l. was, in fact, the member of the Fendi Group that was responsible for the manufacturing of the Products until 2000, when its name was changed to Fendi Industria S.r.l. Fendi Industria S.r.l., in turn, was merged into Fendi S.r.l. in December, 2003. The corporate records of Cinque Piu S.r.l. are maintained by Alberto Fabbri, chief financial officer of the Fendi Group. (Fabbri Decl. ¶ 34).

**Response to No. 152**:   Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

153.   The records of Cinque Piu S.r.l. show that Ashley Reed Trading, Inc. was never a customer of that company. (Fabbri Decl. ¶ 35).

**Response to No. 153**:   Ashley Reed does not contest for the purposes of summary judgement the fact that the records of Cinque Piu S.r.l do not show Ashley Reed as a customer.   However, the record keeping procedures of Cinque Piu have not been identified, nor has any admissible evidence been presented to show that such procedures are in fact followed and that such records are accurate.   Further, Ashley Reed has produced invoices for Fendi-branded goods from Cinque Piu to Ashley Reed.   (See Declaration of Alberto Fabbri Exs. 1-3, Plaintiffs' Exs. 61- 63).

154.   The records of Cinque Piu S.r.l. show that HIDEA was never a customer of that company, (Fabbri Decl. ¶ 37), nor has HIDEA ever been a customer of Fendi S.r.l. or

of Fendi North America, Inc. (Fabbri Decl. ¶ 38).

**Response to No. 154**:  Ashley Reed does not contest for the purposes of summary judgement the fact that the records of Cinque Piu S.r.l do not show HIDEA as a customer. However, the record keeping procedures have not been identified, nor has any admissible evidence been presented to show that such procedures are in fact followed and that such records are accurate.

155.   Plaintiffs' Exhibits 62 and 63 each are composed of documents produced by defendants that appear to be packing lists for Fendi branded goods shipped by Cinque Piu to ARTI. Scott Ressler testified that these packing lists reflect Fendi branded goods packed by Cinque Piu for ARTI.  (S. Ressler Dep. at 581, 583 (Genecin Decl. Ex. 18)).

**Response to No. 155**: Ashley Reed does not contest for the purposes of summary judgement the facts asserted in this paragraph.

156.   The documents contained in Plaintiffs' Exhibits 62 and 63 are not authentic documents of Cinque Piu. (Fabbri Decl. ¶ 44-47).

**Response to No. 156**:  Contested.   Fendi cites only one witness, whose credibility is subject to question, and has not produced any evidence to support the claim that these invoices are other than authentic. Scott Ressler testified that these packing lists reflect Fendi branded goods purchased by Ashley Reed from Cinque Piu. (See S. Ressler Dep. at 581, 583 (Genecin Decl. Ex. 18).)

## DEFENDANTS' STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE ARE GENUINE DISPUTES

**ASHLEY REED PURCHASED GENUINE FENDI-BRANDED GOODS**

1. Lorenzo Bandinelli, a Quality Inspector employed by Fendi at the time, accompanied Scott Ressler to Fendi S.r.l subcontractors and confirmed that the Fendi products Ashley Reed was purchasing from these sources were genuine. (See S. Ressler decl. ¶ 8-10; S. Ressler Deposition (J. Dunne Decl. Ex no. 3) at 83:20-86:21).

2. Ashley Reed purchased excess Fendi-branded goods from the Fendi outlet and distribution center, through Mario (last name unknown), the Fendi employee that was placed in charge of the Fendi outlet and distribution center. (See S. Ressler Decl. ¶ 11).

3. In 2002 Ashley Reed purchased genuine Fendi-Branded goods from Zucker's Gifts. (See J. Dunne Decl. Ex. 12, Ashley Reed Docs. Bates-stamped 001824-001847). Zucker's showed Ashley Reed invoices indicating that such goods were purchased from the Duty Free Shop in Guam, and Ashley Reed retained a copy of one such invoice. (See Scott Ressler Decl. ¶ 23; J. Dunne Decl. Ex.13 , Ashley Reed Doc. Bates-stamped 001823).

4. In 2004-2005, Ashley Reed purchased extensive amount of goods from a company known as Moda Oggi which acquired Fendi goods from legitimate sources; and in this suit the attorneys for Fendi have acknowledged at least some of these goods were genuine. (See Scott Ressler Decl. ¶ 24; J. Dunne Decl. ¶ 17-18; J. Dunne Decl. Ex.14, Ashley Reed Doc. Bates-stamped 001674-1675 & 00184-001685; J. Dunne Decl. Ex. 15.)

5. The Twenty bags that were examined by Fendi and are the sole basis for Fendi's summary judgment papers against Ashley Reed were all purchased in 2005, or retrieved

from the warehouse of Filene's Basement in 2007. (J. Dunne Decl. ¶ 19.)

## ASHLEY REED HAS A VALID AFFIRMATIVE DEFENSE OF ACQUIESCENCE AND LACHES

6. In Late 2000 and Early 2001 Fendi was aware of Ashley Reed's dealing in Fendi-branded merchandise and made allegations to Ashley Reed's customers alleging that Ashley Reed was dealing in counterfeit goods. (Deposition of Marta Fontanesi ("Fontanesi Dep.") at 48:2-49:16 (J. Dunne Decl. Ex. 11); 2007 Cannatella Deposition at 158:20-159:19 (J. Dunne Decl. Ex. 6); also see J. Dunne Decl. Ex. 14, Fendi Documents nos. FENDI 006459-006460.)

7. In 2001 Ashley Reed, with their attorney Brett Meyer, met more than once with Pavia and Harcourt, the attorneys for Fendi handling Fendi's anti-counterfeiting efforts in the United States. (See S. Ressler Decl. ¶ 19-22; S. Ressler Dep. (J. Dunne Decl. Ex. 3) at 62:3-20, 2007 Cannatella Deposition at 159:6-19 (J. Dunne Decl. Ex. 6).)

8. In the above referenced meetings Ashley Reed provided documents to Fendi including a copy of an authorization letter from Fendi regarding Cinque Piu, invoicing and Ashley Reed's sales numbers. (See S. Ressler Decl. ¶ 20; S. Ressler Dep. (J. Dunne Decl. Ex. 3) at 62:3-20; 2007 Cannatella Deposition at 160:6-161:25 (J. Dunne Decl. Ex. 6).) At these meetings Ashley Reed was lead to believe that if Fendi found any problems with the documents Ashley Reed provided they would contact Ashley Reed. (S. Ressler Decl. ¶20-22).

9. After these meetings in 2001, Fendi did not contact Ashley Reed regarding allegations of counterfeit Fendi goods until the initiation of this current dispute in late 2005. (S. Ressler Decl. ¶21).

10.  Ashley Reed relied on Fendi's silence in continuing their business activity in the secondary market for Fendi-branded goods.  (S. Ressler Decl. ¶22).

**ASHLEY REED'S PROFITS**

11.  Ashley Reed's documents reflected total sales of Fendi branded goods of $5,034,269. (Donohue Decl. Ex. 3).

12.  The additional "incremental sales" calculations made by Fendi's expert were done using unreliable documents. (See response to No. 134 above; See S. Ressler Decl. ¶ 26 & 29 Dunne Decl. ¶ 4.)

13.  Ashley Reed's factor, Rosenthal and Rosenthal, LLC, was paid directly by Ashley Reed's customers. and thus had records of the payments made by Ashley Reed's customers for goods purchased from Ashley Reed.  The records of Rosenthal and Rosenthal, LLC were made available to Fendi, and Fendi chose not to inspect such records. (See G. Dunne Decl. ¶ 3; S. Ressler Decl. ¶ 26-27.)

14.  Ashley Reed has produced an Expert Report from Neal Bressler regarding the method that will be used to calculate Ashley Reed's Fendi-based profits.  Ashley Reed has also produced detailed accounting documents outlining specific costs that can be assosciated with Ashley Reed's  sale of Fendi-branded goods that would be used in such a calculation. (See J. Dunne Decl. ¶ 2-3; also see Fendi's No. 136 and the corresponding response to No. 136 above.)

New York, New York
Dated:  April 28, 2009

Respectfully submitted,

Gerard F. Dunne (GD 3323)
Attorney for Plaintiff Imig, Inc. and
Counterclaim-Defendants Imig, Inc. and
Nationwide Sales & Service, Inc.
Law Office of Gerard F. Dunne, P.C.
156 Fifth Avenue, Suite 1223
New York, NY  10010
212-645-2410; Fax:212-645-2435