UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
FENDI ADELE S.R.L., FENDI S.R.L., and :
FENDI NORTH AMERICA, INC., :
 :
      Plaintiffs, :
 : Case No.: 06-CV-0243 (RMB)
  -against- :
 : Oral Argument Requested
ASHLEY REED TRADING, INC., :
SCOTT RESSLER and :
JAMES RESSLER, :
 :
      Defendants. :
----------------------------------------- X

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

           Richard L. Mattiaccio (RM 4764)
           Victor Genecin (VG 9733)
           Steven Skulnik (SS 7821)

           SQUIRE, SANDERS & DEMPSEY L.L.P.
           1095 Avenue of the Americas, 31st floor
           New York, NY  10036
           (212) 872-9800

           *Attorneys for Plaintiffs*
           FENDI ADELE S.r.l., FENDI S.r.l., and
           FENDI NORTH AMERICA, INC.

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ..................................................................................................................................2

POINT I:    DEFENDANTS' LIABILITY FOR TRADEMARK COUNTERFEITING IS ESTABLISHED BY UNCONTROVERTED EVIDENCE ................................... 2

    A.    Minerva's Testimony Is Irrefutable ..............................................................2

    B.    There is No Evidence that Defendants' Fendi Branded Products Were Genuine ..........................................................................................................4

POINT 2:    FENDI IS ENTITLED TO SUMMARY JUDGMENT DIRECTING DISGORGEMENT OF DEFENDANTS' PROFITS FROM SALES OF COUNTERFEITS ...............................................................................................6

POINT 3:    DAMAGES SHOULD BE TREBLED ...................................................................8

POINT 4:    DEFENDANTS' AFFIRMATIVE DEFENSES ARE MERITLESS......................9

CONCLUSION..............................................................................................................................10

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                              **Page**

*20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*,
    747 F.2d 81 (2d Cir. 1984) ............................................................................................. 3

*Aris Isotoner, Inc. v. Dong Jin Trading Co., Inc.*,
    17 U.S.P.Q.2d 1017 (S.D.N.Y. 1989) ............................................................................ 7

*Autoforge, Inc. v. Am. Axle & Mfg.*,
    2008 U.S. Dist. LEXIS 755 (W.D. Pa. Jan. 4, 2008) ..................................................... 4

*Bankers Trust Co. v. Publicker Indus.*,
    1980 U.S. Dist. LEXIS 15159 (S.D.N.Y.1980) ............................................................. 3

*Carl Zeiss Stiftung v. Veb Carl Zeiss Jena*,
    433 F.2d 686 (2d Cir. 1970) ......................................................................................... 10

*Cartier Int'l B.V. v. Ben-Menachem*,
    2007 U.S. Dist. LEXIS 95366 (S.D.N.Y. Dec. 19, 2007) .............................................. 8

*Chesa Int'l, Ltd. v. Fashion Assoc., Inc.*,
    425 F. Supp. 234 (S.D.N.Y. 1977) ............................................................................ 6, 7

*Christian Dior Couture, S.A. v. Fred's Int'l Handbags*,
    2002 U.S. Dist. LEXIS 778 (S.D.N.Y. Jan. 17, 2002) ................................................... 8

*Conopco, Inc. v. Campbell Soup Co.*,
    95 F.3d 187 (2d Cir. 1996) ........................................................................................... 10

*Dallas Cowboys Football Club, Ltd. v. Am.'s Team Props.*,
    2009 U.S. Dist. LEXIS 2712 (N.D. Tex. Mar. 30, 2009) ............................................. 10

*E & J Gallo Winery v. Pasatiempos Gallo S.A.*,
    905 F. Supp. 1403 (E.D. Cal. 1994) ............................................................................. 10

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*,
    2007 U.S. Dist. LEXIS 75812 (S.D.N.Y. Oct. 10, 2007) ............................................... 9

*Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*,
    219 F.3d 104 (2d Cir. 2000) ........................................................................................... 9

*In re LTV Steel Co., Inc.*,
    285 B.R. 259 (S.D. Ohio Bankr. 2002) .......................................................................... 4

*JSC Foreign Economic Ass'n Technostroyexport v. Int'l Devel. and Trade Servs.*,
  2006 U.S. Dist. LEXIS 24829 (S.D.N.Y. Apr. 28, 2006) ...................................................... 6

*Lorillard Tobacco Co. v. A&E Oil, Inc.*,
  503 F.3d 588 (7th Cir. 2007) ................................................................................................ 8

*Louis Vuitton S.A. v. Spencer Handbags Corp.*,
  765 F.2d 966 (2d Cir. 1985) ................................................................................................. 8

*Polo Ralph Lauren, L.P. v. 3M Trading Co.*,
  1999 U.S. Dist. LEXIS 7913 (S.D.N.Y. Mar. 22, 1999) ...................................................... 8

*ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*,
  314 F.3d 62 (2d Cir. 2002) ................................................................................................... 9

*Toyota Motor Corp. v. Ailments Lexus Inc.*,
  2004 U.S. Dist. LEXIS 10729 (E.D.N.Y. June 14, 2004) ................................................... 9

*With Love Designs, Inc. v. Dressy Tessy, Inc.*,
  1992 U.S. Dist. LEXIS 15629 (S.D.N.Y. Oct. 9, 1992) ...................................................... 7

*Wright v. Brae Burn Country Club, Inc.*,
  2009 U.S. Dist. LEXIS 26492 (S.D.N.Y. Mar. 20, 2009) ................................................... 9

## **STATUTES**

U.S. CONST. amend. V ................................................................................................................ 6

15 U.S.C. § 1117(a) ..................................................................................................................... 7

## **RULES**

FED. R. EVID. 612 ........................................................................................................................ 3

**PRELIMINARY STATEMENT**

Fendi's Industrial Director for Leather Goods, Leonardo Minerva, who was in charge of manufacturing all Fendi handbags and small leather goods, testified to the results of detailed, authenticity examinations of twenty items bearing Fendi trademarks that defendants admit they sold to Filene's Basement, Big M, Inc. d/b/a "Annie Sez," Nordstrom's Rack and Saks Off Fifth Avenue. Each of these items presents multiple indicia of counterfeiting, such as combinations of colors and hardware not used in genuine Fendi products, inferior leather, peeling holograms, incorrect codes stamped on the leather trim sewn into the inner seam, or incorrect order numbers on the "authenticity cards" that come with the items. In opposition to Fendi's motion for summary judgment, defendants do not proffer a shred of evidence that any of these twenty items is genuine. They have not put forward a countervailing expert, nor have they shown that they purchased any of these items from Fendi or from a customer of Fendi. Instead, they claim that Minerva's testimony is "inadmissible" because he referred while testifying to Fendi's internal reports of the authenticity examinations. There is no basis in fact or in law for the Court to discount, much less refuse to consider, Minerva's uncontroverted testimony.

Defendants concede, moreover, that their records of sales of Fendi branded goods are incomplete, and that the records they did produce show more than $5 million in such sales. Fendi's accounting expert, James J. Donohue, C.P.A., C.V.A., examined the purchasing records of defendants' known customers and found that defendants made sales of nearly $5 million more in Fendi branded goods that defendants' books do not show. Defendants offer nothing to controvert this testimony, but claim that their customers' records are somehow inadmissible or unreliable. Plaintiffs are entitled, as a matter of law, to summary judgment requiring defendants to disgorge all amounts received in connection with these sales.

Defendants concede, moreover, key facts that demonstrate that they were, at minimum, willfully blind to the counterfeit nature of their Fendi branded goods: (1) they disposed of their inventory of Fendi branded goods after Fendi sued them and (2) they refused to warrant to one retailer, Filene's Basement, that "Seller has the legal right to sell the Merchandise" and that "the purchase and resale of the Merchandise by Filene's in the U.S.A. will not violate or infringe upon any existing contractual and/or Proprietary Rights owned by others."[1]

Summary judgment should be granted as to all of Fendi's claims, and all of defendants' affirmative defenses should be stricken because they are without merit.

## ARGUMENT

### POINT 1:  DEFENDANTS' LIABILITY FOR TRADEMARK COUNTERFEITING IS ESTABLISHED BY UNCONTROVERTED EVIDENCE

**A.     Minerva's Testimony Is Irrefutable.**

Leonardo Minerva was responsible for virtually all aspects of Fendi's research and development, manufacturing, and distribution. (2008 Minerva Dep. at 11-12).[2]  Given his familiarity with the materials Fendi uses and with its manufacturing and quality control procedures, he was also charged with determining the authenticity of questioned products, (*id*. at 12), and he and a staff with specialized knowledge of the characteristics of genuine Fendi products examined hundreds of questioned items each year. (*Id*. at 11-13).  Minerva:

---

[1] In their opposition to summary judgment, defendants display an extreme lack of candor in their concealment of defendant James Ressler's past counterfeiting activities. Defendants assert that criminal charges of counterfeiting against James Ressler in Criminal Indictment No. 1:06 CR 103 (N.D. Ga.) were dismissed. (S. Ressler Decl. ¶ 12 ("[C]riminal charges of counterfeiting against Jim Ressler were recently dismissed"); D. Schoen Decl. ¶ 4).  Omitted from these declarations is the fact that dismissal of the criminal charges was expressly conditioned on Ressler's agreement to plead guilty to lesser charges of being an accessory to counterfeiting activities.  *See* Criminal Information No. 1:08 CR 474 (Supp. Decl. of Victor Genecin in Further Support of Pls. Mot. for Summary J., dated May 13, 2009 ("Supp Decl.") Ex. 24; 12/1/08 Stip. Facts in Supp. of Plea, No. 1:08-CR-474 (N.D. Ga.) (Supp. Decl. Ex. 25); 12/1/08 Guilty Plea and Plea Agreement. (Supp. Decl. Ex. 26).

[2] Leonardo Minerva's 2008 Deposition was attached as Exhibit 11 to the Declaration of Victor Genecin, dated February 27, 2009 (Docket No. 90).

2

- Checked measurements and other characteristics of the counterfeits. (2008 Minerva Dep. at 333, 492, 495).[3]

- Supervised the work of his assistant, who was responsible for drafting the reports of authenticity examinations. (*Id*. at 62, 300-01; 2007 Minerva Dep. at 202).[4]

- Supervised the preparation of Fendi's reports concerning the authenticity examinations. (*Id*. at 492, 495).

- Reviewed, checked, and signed each report. (2008 Minerva Dep. at 333, 334, 406, 495; 2007 Minerva Dep. at 265).

In his deposition, Minerva referred to the authenticity reports, prepared under his direct supervision and guidance, to testify concerning the counterfeit nature of the twenty items at issue herein. Defendants do not challenge the content of his testimony, but argue that a witness cannot refer to a document while testifying. (Opp'n at 8). The one case cited by defendants, *20th Century Wear, Inc. v. Sanmark-Stardust, Inc*., 747 F.2d 81 (2d Cir. 1984), concerned whether a recording made without a witness's knowledge could be used to refresh that witness's recollection. At no place in the opinion does the Court in *20th Century Wear* suggest that a witness cannot be permitted to consult a report—prepared under the witness's supervision— while testifying. To the contrary, Federal Rule of Evidence 612 specifically contemplates that a witness may "use a writing to refresh memory for the purpose of testifying . . . while testifying." Where testimony involves precise details, as did Minerva's testimony in this case,

> the court should be liberal in allowing a witness to refer to materials which will assist the witness in testifying fully and accurately. The court need not observe a formalistic ritual to establish the need for materials to refresh memory.

---

[3] Desperately grasping for any means to undermine Minerva's testimony, defendants are forced to mischaracterize it. They contend, for example, that Minerva "only checks about half" of the reports "for accuracy." (Opp'n at 8). In the testimony they cite, however, Minerva was referring to *one* of the many authenticity tests Fendi uses: measuring the "distance between the Fs [trademarks]." (2008 Minerva Dep. at 332-33).

[4] Referenced portions of Leonardo Minerva's 2007 deposition are attached as Exhibit 27 to the Supplemental Declaration.

3

*Bankers Trust Co. v. Publicker Indus.*, 1980 U.S. Dist. LEXIS 15159, at *3-*4 (S.D.N.Y.1980)

Defendants also make no mention of the conspicuously inferior characteristics of many of the counterfeits at issue, which Minerva commented upon without reference to his reports. (2008 Minerva Dep. at 208-09 ("plastic" feeling of the leather); *id*. at 271-73 (*hologram was peeled off and not properly situated*);[5] *id*. at 265-66 (hologram was not attached; one can "easily see the difference" between an authentic and counterfeit bag)). Indeed, on many of the counterfeits, entire portions of the internal code were missing, while others contained a recurring fictitious code frequently found on counterfeit products. (*Id*. at 74, 211-12, 216, 236-37, 247).

In addition, a witness "may rely on the reports of others, including outsiders, to the extent that he 'posses[es] the requisite personal knowledge or foundation to render his lay opinion testimony admissible under Federal Rule of Evidence 701.'" *Autoforge, Inc. v. Am. Axle & Mfg.*, 2008 U.S. Dist. LEXIS 755, at *18-*19 (W.D. Pa. Jan. 4, 2008) (quoting *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1175 (3d Cir. 1993)); *In re LTV Steel Co., Inc*., 285 B.R. 259, 265 (S.D. Ohio Bankr. 2002) ("Lay witnesses may rely on reports prepared by outsiders."). Minerva unquestionably had the requisite knowledge. His testimony is uncontroverted.

**B.      There is No Evidence that Defendants' Fendi Branded Products Were Genuine.**

Defendants seek to divert attention from the uncontroverted evidence of their counterfeit products with the utterly irrelevant claim that there exists a "grey market" in genuine Fendi goods. (Opp'n at 2-3).[6] Fendi does not dispute that genuine Fendi goods can be bought from its

---

[5] Defendants admit that the hologram serves an important anti-counterfeiting and quality control function. (Defs. 56.1 Reply ¶ 86).

[6] Defendants brief is replete with unsupported assertions concerning the "gray market," but they do not cite any testimony by their gray market "expert," one Mark Stratford, whom they proffered in September 2008. The Resslers had met Mr. Stratford some years earlier at an apparel conference; he was proffered as an expert witness concerning the secondary market in branded merchandise. The other defendants also reserved their rights to submit Stratford's testimony at trial. At plaintiffs' deposition of Stratford, he

4

customers, or, from time to time, from customers of its customers. Defendants, however, have made absolutely no showing that they ever bought any genuine Fendi product. Not only do they fail to controvert the evidence that every item inspected by Fendi in this case is counterfeit, but the record further demonstrates that they gave their customers, and produced in discovery, documents that appear to be invoices generated by Fendi, but that, in fact, are forgeries. (Fabbri Decl. ¶¶ 31-57). Indeed, defendants do not contest that Alberto Fabbri, Fendi's CFO, is qualified to determine whether a document that appears to be a Fendi invoice or packing list is genuine. (*Id.* ¶¶ 24-30; Defs. 56.1 Reply ¶ 110 (only contesting, without support, whether all invoices have been entered into database)). Defendants assert that they obtained Fendi branded goods from Zucker's Gifts, Moda Oggi, and HIDEA (which, they claim, sold them products from Cinque Piu S.r.l.), but the record, based on Fabbri's uncontroverted testimony, is that:

- HIDEA has never been a customer of Cinque Piu or Fendi (Fabbri Decl. ¶¶ 37-38; Defs. 56.1 Reply ¶ 154);

- There has never been a company called HIDEA in the Fendi Group, and HIDEA never performed billing or any other function for Cinque Piu or for any company in the Fendi Group (Fabbri Decl. ¶ 36);

- Records of Cinque Piu show that ARTI was never a customer (*Id.* ¶ 35; Defs. 56.1 Reply ¶ 153); and

- Moda Oggi and Zucker's have never been customers of Fendi. (Fabbri Decl. ¶ 54).

Defendants grossly misstate the record when they assert that Fendi's counsel acknowledged that "at least some" of the goods that they claim they purchased from Moda Oggi in 2004 were genuine. (Opp'n at 3-4). To the contrary, Fendi has never acknowledged that any Fendi branded goods sold by defendants were genuine. Defendants produced a genuine Fendi invoice for goods purchased from Fendi by Euro Moda Inc. (not Moda Oggi) in *2002*. (*See* Pls.

---

admitted that his company (he and his wife were the sole directors and shareholders) had been criminally convicted for trademark counterfeiting. (Stratford Dep. at 26, 68-76 (Supp. Decl. Ex. 28)).

Resp. to Defs.' 56.1 Statement ¶ 4).  Defendants have not shown that they actually purchased any of the goods shown on that invoice from Euro Moda, Inc., and Moda Oggi Inc. has never been a customer of Fendi S.r.l. (Fabbri Decl. ¶ 54).

Defendants further argue that Fendi's proof of counterfeiting is limited to the samples of products sold by defendants in 2005.  (Opp'n at 5-6).  The twenty counterfeit items in this case all date from 2005; however, defendants produced numerous forged invoices and packing lists from Fendi companies, addressed to defendants or their purported suppliers, and bearing dates going as far back as 1999.  (Fabbri Decl. ¶¶ 31-52 and exhibits thereto).  Defendants admit, moreover, that they disposed of their inventory of Fendi branded goods after Fendi filed suit, precluding any of the parties from examining the goods in defendants' possession.  (Defs. 56.1 Reply ¶¶ 137, 139-40).  Given their acknowledged familiarity over the years with accusations of counterfeiting, defendants cannot suggest that they innocently caused this evidence to disappear.

Ultimately, defendants' focus on the "gray market" is a smokescreen designed to divert attention from the clear evidence of their counterfeiting.  Defendants did not purchase *genuine* Fendi branded products directly from Fendi subcontractor factories and distributors or other secondary sources.  Plaintiffs are entitled to judgment for the total of defendants' sales.  *See Chesa Int'l, Ltd. v. Fashion Assocs., Inc.*, 425 F. Supp. 234, 238 (S.D.N.Y. 1977).[7]

## POINT 2: FENDI IS ENTITLED TO SUMMARY JUDGMENT DIRECTING DISGORGEMENT OF DEFENDANTS' PROFITS FROM SALES OF COUNTERFEITS

Fendi's presentation of evidence of gross sales of the infringing products shifts the burden to defendants to prove each deduction they claim is appropriate to the calculation of their

---

[7] Tellingly, when asked during his deposition whether ARTI purchased and sold counterfeit Fendi products, James Ressler invoked the Fifth Amendment. (Defs. 56.1 Reply ¶ 142). Courts are permitted to draw an adverse inference in civil cases where a litigant asserts the Fifth Amendment. *See JSC Foreign Economic Ass'n Technostroyexport v. Int'l Devel. and Trade Servs.*, 2006 U.S. Dist. LEXIS 24829, at *21-22 (S.D.N.Y. Apr. 28, 2006) (citing *LiButti v. United States*, 178 F.3d 114, 120 (2d Cir. 1999)).

profits. 15 U.S.C. § 1117(a) ("[I]n assessing profits, the plaintiff shall be required to prove defendant's sales only; the defendant must prove all elements of cost or deduction claimed"); *With Love Designs, Inc. v. Dressy Tessy, Inc.*, 1992 U.S. Dist. LEXIS 15629, at *13 (S.D.N.Y. Oct. 9, 1992). Defendants have not shown that any part of their total sales of Fendi branded products was not due to their use of counterfeit marks; still less have they demonstrated "sufficient nexus" between each requested deduction and the unlawful sales. (Opening Mem. at 12). Indeed, defendants do not set forth *any* documentation of ARTI's expenses. They do not point to even one c*ent* of actual costs.

Defendants admit that the documents they produced reflect total sales of Fendi branded goods of $5,034,269. (Defs. 56.1 Reply ¶ 133). They do not contest, moreover, the substance of the analysis provided by Fendi's accounting expert of documents obtained in discovery from defendants' customers, which reveal an additional $4,960,927 in sales. (*Id*. ¶¶ 134-35). Instead, defendants claim that Fendi's expert relied on inadmissible evidence. Yet defendants offer no evidence to refute Donohue's analysis or methodology, nor do they offer an explanation for their claim that the documents relied upon by Donohue are inadmissible.[8]

The only doubts in this case concerning the extent of defendants' infringing activity are the result of defendants' poor recordkeeping.[9] Counterfeiters' records are often "nonexistent, inadequate or deceptively kept in order to willfully deflate the level of counterfeiting activity

---

[8] Defendants suggest that Fendi failed to obtain and review records from ARTI's factor. (Opp'n at 8). It is defendants' burden (not Fendi's) to prove each deduction that is appropriate to the calculation of their profits. *See* 15 U.S.C. § 1117(a). Defendants could have (and probably would have) obtained such record from the factor—their agent—if they believed that the records supported their position.

[9] *See Chesa*, 425 F. Supp. at 238 ("[W]hen a party frustrates proof of damages, either by withholding facts or through inaccurate record keeping, any doubts . . . will be resolved against that party, and the fact-finder may calculate damages at the highest reasonably ascertainable value."); *Aris Isotoner, Inc. v. Dong Jin Trading Co., Inc.*, 17 U.S.P.Q.2d 1017, 1022 (S.D.N.Y. 1989) ("the court may resolve any doubts against the defendant in calculating profits, particularly if the uncertainty is due to the defendant's inadequate recordkeeping or failure to produce documentary evidence.").

actually engaged in . . . ." *Polo Ralph Lauren, L.P. v. 3M Trading Co.*, 1999 U.S. Dist. LEXIS 7913, at *11 (S.D.N.Y. Mar. 22, 1999).  In such cases, courts "must rely on less certain methods of proof" and may be "forced to calculate damages based on indirect and circumstantial evidence." *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 972-73 (2d Cir. 1985).  In this case, because defendants failed to maintain adequate records and to produce complete records in discovery, (Defs. 56.1 Reply ¶¶ 130-32), plaintiffs' expert comprehensively analyzed defendants' unlawful sales from their incomplete records and from the records of their known customers.  His analysis went beyond what courts typically might require in similar cases.  Fendi is entitled to summary judgment for the total of ARTI's sales of Fendi branded items in the amount of $9,996,196.

## POINT 3: DAMAGES SHOULD BE TREBLED

Defendants do not dispute that plaintiffs are entitled to treble disgorgement if the evidence demonstrates that they were willfully blind to the counterfeit nature of the Fendi branded goods they sold.  The admitted facts demonstrating willfulness are overwhelming.  First, defendants admit that they wrongfully disposed of their inventory of Fendi branded goods after being sued.  (Defs. 56.1 Reply ¶¶ 137, 139-40).  Second, defendants do not dispute that they refused to represent to Filene's Basement that the resale of goods purchased from them would not violate any person's proprietary rights.  (*Id*. ¶¶ 143-48).  Third, defendants concede that they failed to maintain and produce complete records of their purchases and sales of Fendi branded products.  (*Id*. ¶¶ 130-32).[10]

---

[10] Courts have recognized that the withholding of documents is evidence of willfulness.  *See Cartier Int'l B.V. v. Ben-Menachem*, 2007 U.S. Dist. LEXIS 95366, at *14-*18, *33 (S.D.N.Y. Dec. 19, 2007); *Christian Dior Couture, S.A. v. Fred's Int'l Handbags*, 2002 U.S. Dist. LEXIS 778, at *8-*9 (S.D.N.Y. Jan. 17, 2002).

8

Based on the undisputed facts, no reasonable trier of fact could find in favor of defendants, and treble disgorgement is appropriate as a matter of law.

### POINT 4: DEFENDANTS' AFFIRMATIVE DEFENSES ARE MERITLESS

Finally, plaintiffs are entitled to summary judgment on defendants' affirmative defenses of laches and acquiescence.[11] Defendants claim that Fendi consented, either expressly or impliedly, to defendants' sales of counterfeits because their attorney met with Fendi's counsel in 2001 after ARTI's customers received cease and desist letters from Fendi, but Fendi did not communicate further with defendants until 2005. (Opp'n at 10).

The defense of acquiescence requires "active consent." *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 67-68 (2d Cir. 2002). "[S]ilence is far from active acquiescence in trademark actions." *Toyota Motor Corp. v. Ailments Lexus Inc.*, 2004 U.S. Dist. LEXIS 10729, at *11 (E.D.N.Y. June 14, 2004). Here, defendants point to no evidence that Fendi actively consented to defendants' ongoing sales of counterfeits. The evidence is all to the contrary. (Cannatella Dep. at 162-63, 167 (Supp. Decl. Ex. 29)).

The uncontroverted evidence that defendants engaged in willful trademark counterfeiting means that they have unclean hands, and are barred from asserting the equitable defense of laches.[12] Even if the record did not support a finding of willfulness, defendants do not raise a genuine issue of material fact concerning laches, a defense that defendants do not deny is

---

[11] It is hardly surprising that defendants have withdrawn their "unclean hands" defense and their defense relating to plaintiffs' supervision and inspection of goods. (Opening Mem. at 20, 22; Opp'n at 9-11). Thus, summary judgment in favor of plaintiffs is warranted on these defenses. *See Wright v. Brae Burn Country Club, Inc.*, 2009 U.S. Dist. LEXIS 26492, at *15 (S.D.N.Y. Mar. 20, 2009).

[12] *See Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir. 2000) ("[A]ppellees' intentional infringement is a dispositive, threshold inquiry that bars further consideration of the laches defense . . . .") (citation omitted); *see also Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 2007 U.S. Dist. LEXIS 75812, at *13-*14 n.1 (S.D.N.Y. Oct. 10, 2007).

disfavored in trademark cases and therefore narrowly applied.  *See E & J Gallo Winery v. Pasatiempos Gallo S.A.*, 905 F. Supp. 1403, 1414 (E.D. Cal. 1994).  The "mere passage of time cannot constitute laches." *Carl Zeiss Stiftung v. Veb Carl Zeiss Jena*, 433 F.2d 686, 704 (2d Cir. 1970).  Here, it is undisputed that Fendi filed suit within the six-year limitations period for fraud, which defendants concede is the benchmark for determining issues of laches.

An essential element of laches, moreover, is prejudice.  *See Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996); *see also Carl Zeiss*, 433 F.2d at 704.  There is simply no evidence that Fendi ever consented to defendants' continuous course of counterfeiting since 2001.  To the contrary, during the meeting in 2001, Fendi expressly demanded that defendants stop selling counterfeit Fendi branded items.  (Cannatella Dep. at 162-63, 167 (Supp. Decl. Ex. 29); S. Ressler Dep. at 104-05 (Supp. Decl. Ex. 30)).

Finally, defendants' laches defense fails because defendants, as they admit, received a cease and desist letter from Fendi in 2001 (S. Ressler Dep. at 104 (Supp. Decl. Ex. 30)).  "Any time lapse after a trademark plaintiff issues a cease and desist letter to the defendant does not count for the purposes of laches." *Dallas Cowboys Football Club, Ltd. v. Am.'s Team Props.*, 2009 U.S. Dist. LEXIS 27127, at *16 (N.D. Tex. Mar. 30, 2009).

## CONCLUSION

Summary judgment should be entered in favor of plaintiffs on all their claims, and defendants' affirmative defenses should be stricken.

New York, New York
May 13, 2009

Respectfully submitted,

SQUIRE, SANDERS & DEMPSEY L.L.P.

By_____
　　Richard L. Mattiaccio (RM 4764)
　　Victor Genecin (VG 9733)
　　Steven Skulnik (SS 7821)

　　1095 Avenue of the Americas, 31st Floor
　　New York, NY  10036
　　(212) 872-9800
　　*Attorneys for Plaintiffs*

　　FENDI ADELE S.r.l., FENDI S.r.l., and
　　FENDI NORTH AMERICA, INC.