UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
FENDI ADELE S.R.L., FENDI S.R.L., and       :
FENDI NORTH AMERICA, INC.,                  :
                                            :
                 Plaintiffs,                :
                                            :   Case No.:  06-CV-0243 (RMB)
       -against-                            :
                                            :   Oral Argument Requested
ASHLEY REED TRADING, INC.,                  :
SCOTT RESSLER and                           :
JAMES RESSLER,                              :
                                            :
                 Defendants.                :
---------------------------------------- X

**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THEY CLAIM THERE ARE GENUINE DISPUTES**

Plaintiffs FENDI Adele S.r.l., FENDI S.r.l., and FENDI North America, Inc. (collectively, "Fendi"), respectfully submit this response to defendants' statement of material facts as to which they claim there are genuine disputes.

1.   Lorenzo Bandinelli, a Quality Inspector employed by Fendi at the time, accompanied Scott Ressler to Fendi S.r.l subcontractors and confirmed that the Fendi products Ashley Reed was purchasing from these sources were genuine.  (See S. Ressler decl. ¶ 8-10; S. Ressler Deposition (J. Dunne Decl. Ex no. 3) at 83:20-86:21).

**Response to No. 1:**  Disputed.  Lorenzo Bandinelli testified that he never met Scott Ressler in his life and had never heard Ressler's name until June 2007, when Bandinelli's deposition was taken.  (Bandinelli Dep. at 45 (Genecin 5/13/09 Supp. Decl. Ex. 31)).  He therefore never confirmed that the Fendi-branded products that ARTI purportedly was purchasing were genuine.

Defendants' Statement No. 1, moreover, is not material to any legal claim or defense raised by the parties in this lawsuit.  The record is uncontroverted that the "Fendi" invoices and

1

packing lists proffered by defendants to document the source of Fendi branded products that they bought are not genuine.  (*See* Fabbri Decl. ¶¶ 31-57).  Significantly, defendants do not contest that Alberto Fabbri, Fendi's CFO, is qualified to determine the authenticity of invoices that appear to have been issued by Fendi companies.  (*Id*. ¶¶ 24-30; Defs. 56.1 Reply ¶¶ 109-10).[1]

Defendants, moreover, have not produced a single genuine Fendi-branded item that they sold to anyone.

2. Ashley Reed purchased excess Fendi-branded goods from the Fendi outlet and distribution center, through Mario (last name unknown), the Fendi employee that was placed in charge of the Fendi outlet and distribution center.  (See S. Ressler Decl. ¶ 11).

**Response to No. 2:**  Disputed.  The record is uncontroverted that the "Fendi" invoices and packing lists proffered by defendants to document the source of Fendi branded products that they bought are not genuine.  (*See* Fabbri Decl. ¶¶ 31-57).  Defendants, moreover, have not produced a single genuine Fendi-branded item that they sold to anyone.  "Mario" is an extremely common Italian first name and, without furnishing a last name or corroboration for the existence of the alleged individual, defendants have presented an allegation that is not only uncorroborated but unverifiable.

3. In 2002 Ashley Reed purchased genuine Fendi-Branded goods from Zucker's Gifts.  (See J. Dunne Decl. Ex. 12, Ashley Reed Docs.  Bates-stamped 001824-001847).  Zucker's showed Ashley Reed invoices indicating that such goods were purchased from the Duty

---

[1] Defendants have failed to controvert the assertions of material fact set forth in paragraphs 109-10 of Fendi's Statement Pursuant to Local Civil Rule 56.1 as it relates to Mr. Fabbri's qualifications.  Defendants have failed to comply with Rule 56(e)(2) of the Federal Rules of Civil Procedure and Local Rule 56.1(d) by, *inter alia*, not citing any admissible evidence.

Free Shop in Guam, and Ashley Reed retained a copy of one such invoice. (See Scott Ressler Decl. ¶23; J. Dunne Decl. Ex.13, Ashley Reed Doc. Bates-stamped 001823).

**Response to No. 3:** Disputed. Zucker's Gifts, Inc. has never been a customer of Fendi S.r.l. (Fabbri Decl. ¶ 54). The invoice that defendants claim they obtained from the Duty Free Shop in Guam is not addressed to defendants and does not constitute proof of the genuineness of the goods listed on it. Nor do the goods listed on it appear to correspond to the goods listed on the invoice produced by defendants from Zucker's Gifts.

4. In 2004-2005, Ashley Reed purchased extensive amount of goods from a company known as Moda Oggi which acquired Fendi goods from legitimate sources; and in this suit the attorneys for Fendi have acknowledged that at least some of these goods were genuine. (See Scott Ressler Decl. ¶ 24; J. Dunne Decl. ¶ 17-18; J. Dunne Decl. Ex.14, Ashley Reed Doc. Bates-stamped 001674-1675 & 00184-001685; J. Dunne Decl. Ex. 15.)

**Response to No. 4:** Disputed. Fendi has never acknowledged that any Fendi-branded item sold by defendants was genuine, and defendants have not produced a single genuine Fendi-branded item that they sold to anyone. Fendi has acknowledged only that the documents Bates numbered 001674-001675 and 00184-001685 are genuine invoices issued by Fendi in 2002 to Euro Moda Inc. Defendants have proffered no evidence demonstrating that they purchased genuine Fendi-branded products from Euro Moda Inc., not Moda Oggi Inc. The record is uncontroverted that Moda Oggi Inc. has never been a customer of Fendi S.r.l. (Fabbri Decl. ¶ 54).

5. The twenty bags that were examined by Fendi and are the sole basis for Fendi's summary judgment papers against Ashley Reed were all purchased in 2005, or retrieved from the warehouse of Filene's Basement in 2007. (J. Dunne Decl. ¶ 19.)

**Response to No. 5:** Disputed.  Fendi has shown by uncontroverted evidence that twenty Fendi branded items that defendants admit they sold to four different retailers were counterfeit.  This evidence, however, is not the "sole basis for Fendi's summary judgment papers," which also cite extensive documentary evidence and testimony concerning defendants' conduct.  On the question whether defendants made sales of counterfeit Fendi products before 2005, it is noteworthy that defendants produced forged documents that appear to be invoices and packing lists from Fendi companies, dated in years prior to 2005 and addressed to Ashley Reed.  (Fabbri Decl. ¶¶ 31-57).

Defendants also have admitted that they disposed of their inventory of Fendi-branded products after this lawsuit was commenced, precluding the parties from examining the goods in defendants' possession.  (Defs. 56.1 Reply ¶¶ 137, 139-40).

6. In Late 2000 and Early 2001 Fendi was aware of Ashley Reed's dealing in Fendi-branded merchadise and made allegations to Ashley Reed's customers alleging that Ashley Reed was dealing in counterfeit goods.  (Deposition of Marta Fontanesi ("Fontanesi Dep.") at 48:2-49:16 (J. Dunne Decl. Ex. 11); 2007 Cannatella Deposition at 158:20-159:19 (J. Dunne Decl. Ex. 6); also see J. Dunne Decl. Ex. 14, Fendi Documents nos.  FENDI 006459-006460.)

**Response to No. 6:** Undisputed.

7. In 2001 Ashley Reed, with their attorney Brett Meyer, met more than once with Pavia and Harcourt, the attorneys for Fendi handling Fendi's anti-counterfeiting efforts in the United States.  (See S. Ressler Decl. ¶ 19-22; S. Ressler Dep. (J. Dunne Decl. Ex. 3) at 62:3-20, 2007 Cannatella Deposition at 159:6-19 (J. Dunne Decl. Ex. 6).)

**Response to No. 7:** Undisputed.

8.      In the above referenced meetings Ashley Reed provided documents to Fendi including a copy of an authorization letter from Fendi regarding Cinque Piu, invoicing and Ashley Reed's sales numbers.  (See S. Ressler Decl. ¶ 20; S. Ressler Dep. (J. Dunne Decl. Ex. 3) at 62:3-20; 2007 Cannatella Deposition at 160:6-161:25 (J. Dunne Decl. Ex. 6).)  At these meetings Ashley Reed was lead to believe that if Fendi found any problems with the documents Ashley Reed provided they would contact Ashley Reed.  (S. Ressler Decl. ¶20-22).

**Response to No. 8:**  Disputed.  It is uncontroverted that the records of Cinque Piu S.r.l. show that Ashley Reed was never a customer of that company.  (Fabbri Decl. ¶ 35; Defs. 56.1 Reply ¶ 153).  Although defendants produced documents that give the appearance of being packing lists issued by Cinque Piu S.r.l to Ashley Reed (*see* Cannatella Dep. at 160 (Genecin 5/13/09 Supp. Decl. Ex. 29)), it remains uncontroverted that none of the pages is a genuine document of Cinque Piu S.r.l.  (Fabbri Decl. ¶¶ 44-47).

Fendi also disputes defendants' Statement No. 8 insofar as it implies that Fendi led defendants to believe, or that they had any reasonable and good faith basis or believing, that they could continue selling counterfeit Fendi-branded products following the meetings in 2001.  (*See* Cannatella Dep. at 162-63, 167 (Genecin 5/13/09 Supp. Decl. Ex. 29); S. Ressler Dep. at 104-05 (Genecin 5/13/09 Supp. Decl. Ex. 30)).

9.      After these meetings in 2001, Fendi did not contact Ashley Reed regarding allegations of counterfeit Fendi goods until the initiation of this current dispute in late 2005.  (S. Ressler Decl. ¶ 21).

**Response to No. 9:**  Undisputed that Fendi did not contact ARTI until 2005, but disputed insofar as this statement implies that defendants were led to believe by Fendi that they could continue selling counterfeit Fendi-branded products following the meetings in 2001.  (*See* Cannatella Dep.

at 162-63, 167 (Genecin 5/13/09 Supp. Decl. Ex. 29); S. Ressler Dep. at 104-05 (Genecin 5/13/09 Supp. Decl. Ex. 30)).

      10.    Ashley Reed relied on Fendi's silence in continuing their business activity in the secondary market for Fendi-branded goods.  (S. Ressler Decl. ¶ 22).

**Response to No. 10:**  Fendi objects to this statement, which states a legal conclusion.  Moreover, insofar as defendants purport to use this statement for their affirmative defenses to establish that Fendi consented—either expressly or impliedly—to defendants' continual sales of counterfeit Fendi-branded products since 2001, it is insufficient to establish prejudice as a matter of law. *See, e.g., Imagineering, Inc. v. Van Klassens, Inc*., 851 F. Supp. 532, 252-53 (S.D.N.Y. 1994) (defendant failed to prove prejudice from claims that it continued to manufacture and advertise its goods, expanded the product line, and hired additional employees because "to show prejudice . . . defendants must show more than 'the simple fact that the business continued during the delay'") (quoting *Cuban Cigar Brands N.V. v. Upmann Int'l, Inc*., 457 F. Supp. 1090, 1098 (S.D.N.Y. 1978), *aff'd* 607 F.2d 995 (2d Cir. 1979)).

      11.    Ashley Reed's documents reflected total sales of Fendi branded goods of $5,034,269.  (Donohue Decl. Ex. 3).

**Response to No. 11:**  Undisputed that the documents produced by defendants reflect total sales of Fendi-branded products of $5,034,269.  (Donohue Decl. Ex. 3; Defs. 56.1 Reply ¶ 133).  This statement is disputed, however, insofar as it implies that defendants' total sales of Fendi-branded products is limited to $5,034,269.  The total known sales of infringing products in this case is $9,995,196.  (Donohue Decl. ¶ 12, Ex. 3).  Documents obtained in discovery from defendants' customers reveal an *additional* $4,960,927 in sales not disclosed by defendants.  (Donohue Decl. Ex. 3).

12. The additional "incremental sales" calculations made by Fendi's expert were done using unreliable documents. (See response to No. 134 above; See S. Ressler Decl. ¶ 26 & 29 Dunne Decl. ¶ 4.)

**Response to No. 12:** Disputed. There is no support for the statement that the analysis of James J. Donohue, C.P.A., C.V.A., Fendi's expert witness, was based on unreliable documents. Defendants offer no evidence to refute Donohue's analysis or methodology, and they cannot rationally explain why the documents relied upon by Donohue are inadmissible or unreliable. Defendants' statement also ignores the critical fact that Donohue's analysis of defendants' additional sales of $4,960,927 was necessitated by defendants' own failure to maintain adequate records and to produce complete records in discovery. (Defs. 56.1 Reply ¶ 130; *see also id.* at ¶¶ 131-32). Any doubt about the extent of infringement created by defendants' poor recordkeeping is held against them. *See Chesa Int'l, Ltd. v. Fashion Assoc.*, 425 F. Supp. 234, 238 (S.D.N.Y. 1977) ("[W]hen a party frustrates proof of damages, either by withholding facts or through inaccurate record keeping, any doubts about the actual assessment of damages will be resolved against that party, and the fact-finder may calculate damages at the highest reasonably ascertainable value."); *Aris Isotoner, Inc. v. Dong Jin Trading Co., Inc.*, 17 U.S.P.Q.2d 1017, 1022 (S.D.N.Y. 1989) ("[I]f the actual sales cannot be precisely determined, the court may resolve any doubts against the defendant in calculating profits, particularly if the uncertainty is due to the defendant's inadequate recordkeeping or failure to produce documentary evidence.").

13. Ashley Reed's factor, Rosenthal and Rosenthal, LLC, was paid directly by Ashley Reed's customers and thus had records of the payments made by Ashley Reed's customers for goods purchased from Ashley Reed. The records of Rosenthal and Rosenthal, LLC were made

available to Fendi, and Fendi chose not to inspect such records.  (See G. Dunne Decl. ¶ 3; S. Ressler Decl. ¶ 26-27.)

**Response to No. 13:**  Disputed.  Fendi served a third party subpoena on Rosenthal and Rosenthal, LLC, which produced summary records of defendants' account from which it was not possible to identity the specific goods to which payments related.  It was not Fendi's obligation to move to compel further production, as defendants imply.  Defendants could have obtained the records from their factor if they believed that those records supported a lower income figure.

14. Ashley Reed has produced an Expert Report from Neal Bressler regarding the method that will be used to calculate Ashley Reed's Fendi-based profits.  Ashley Reed has also produced detailed accounting documents outlining specific costs that can be associated with Ashley Reed's sale of Fendi-branded goods that would be used in such a calculation.  (See J. Dunne Decl. ¶ 2-3; also see Fendi's No. 136 and the corresponding response to No. 136 above.)

**Response to No. 14:**  Disputed.  Defendants have not put forward any evidence of their costs, and their damages expert, Neil Bressler, proffered no calculations whatsoever concerning deductions to be taken from sales.  (*See* Expert Report of Neil Bressler (Genecin 2/27/09 Decl. Ex. 8, Docket No. 9)).  Indeed, defendants do not set forth any documentation or calculation of their costs.

New York, New York
May 13, 2009

Respectfully submitted,

SQUIRE, SANDERS & DEMPSEY L.L.P.

By _____
Richard L. Mattiaccio (RM 4764)
Victor Genecin (VG 9733)
Steven Skulnik (SS 7821)

1095 Avenue of the Americas, 31st Floor
New York, NY  10036
(212) 872-9800

*Attorneys for Plaintiffs*
FENDI ADELE S.r.l., FENDI S.r.l., and
FENDI NORTH AMERICA, INC.