IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————————————————————
FENDI ADELE S.R.L.,                                          )
FENDI S.R.L., and                                            )
FENDI NORTH AMERICA, INC.,                                   )         ECF CASE
                                                             )
                              Plaintiffs,                    )
                                                             )
                v.                                           )
                                                             )
                                                             )
546332 BC LTD., d/b/a  COLTON                                )
INTERNATIONAL and                                            )         CIVIL ACTION NO.
HOWARD COLTON,                                               )         06-CV-7084(JGK)(MHD)
                                                             )
                              Defendants,                    )
                                                             )
                and                                          )
                                                             )
                                                             )
546332 BC LTD., d/b/a COLTON                                 )
INTERNATIONAL,                                               )
                                                             )
        Defendant/Counterclaim-Plaintiff,                    )
                                                             )
                v.                                           )
                                                             )
FENDI ADELE S.R.L., FENDI S.RL., FENDI                       )
NORTH AMERICA, INC.,    FENDI, S.A.,                         )
LVP BV and LVMH MOET HENNESSY –                              )
LOUIS VUITTON, S.A. and LVMH FASHION                         )
GROUP AMERICAS, INC.                                         )
                                                             )
                Counterclaim-Defendants.                     )
———————————————————————————  )

## DECLARATION OF HOWARD COLTON

1.       I, Howard Colton, am president, sole director and sole shareholder of defendant,

546332 BC LTD., d/b/a Colton International (hereinafter referred to as "Colton International" or

"Colton").  Colton International is a third-party defendant in "Fendi" Civil Action No. 06-CV-

7084(JGK)(MHD) ("Action No. 1").  In that action, the three "Fendi" plaintiffs have asserted claims for trademark infringement/trademark counterfeiting, trademark dilution, and unfair competition against Burlington Coat Factory Warehouse Corp. and Cohoes Fashions, Inc. (hereinafter "BCF") based upon BCF's sale of allegedly unauthorized Fendi-branded goods. BCF filed a third-party complaint seeking indemnity against its suppliers of Fendi-branded goods, including Colton International.

2.      In addition, Colton International along with me individually, are defendants in Civil Action No. 06-CV-7084(JGK)(MHD) ("Action No. 6").  There, Fendi asserts claims trademark infringement / trademark counterfeiting under the Lanham Act, trademark dilution under the Lanham Act and New York state law, and unfair competition/passing off under the federal and New York law.

3.      This declaration is being submitted in for the following purposes:

(a)      In opposition to Fendi's motion for summary judgment in Action No. 6;

(b)      In opposition to BCF's motion for partial summary judgment of indemnification in Action No. 1 and in support of Colton International's motion to dismiss BCF's third-party complaint pursuant to Fed.R.Civ.P. 12(b)(1), (3) and/or (6) or, in the alternative, for summary judgment dismissing BCF's third-party complaint pursuant to Fed.R.Civ.P. 56(b);

(c)      In support of my motion to dismiss Fendi's complaint pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56(b) dismissing Fendi's complaint - to the extent it seeks to impose personal liability on me;

(d)      In support of defendants' motion pursuant to Fed.R.Civ.P. 56(b) for partial summary judgment on their affirmative defense of laches, holding that Fendi is not entitled to a recovery of monetary damages due to its delay in filing suit; and

(e)      In support of defendants' motion to strike the trial testimony of Fendi's witness, Leonardo Minerva.

4.      I have firsthand knowledge of the facts stated herein and would testify to these facts if called upon to do so at the trial of this matter.

## A.      <u>The Business of Colton International.</u>

5.      I am a citizen and resident of Canada and have no residence in the United States. I am the president, sole director and sole shareholder of defendant, Colton International.

6.      Colton International was founded in or about 1998.  In Canada, registered corporations are given generic names in the form of a corporate number.  "546332 BC" is the corporate number given to the company.  Although 546332 BC, Ltd. is its formal name, the company has always done business under the name "Colton International."

7.      Colton International is an international trading company that has served since its formation as a purchasing agent for its clients.  Colton International does not generally deal as a merchant in the sale of goods and has only infrequently purchased goods "on spec" without prior requests for those goods from its clients.  Colton International's clients consist of retailers of name-brand sporting goods, designer clothing and footwear, designer accessories, and, at times, foods.[1]

8.      For example, Colton International has for years been involved in the importation of authentic, Italian-made designer goods on behalf of its clients.  Such goods have included but are not limited to Fendi-branded women's clothing, sunglasses, men's and women's shoes, and various types of men's and women's accessories (handbags, carrying cases, wallets and belts).

---

[1] For the past several years, Colton International has had only a single client, redacted., a leading online retailer of designer goods, which operates the website redacted. redacted. is a publicly-traded company that trades under the symbol redacted.  Since 2006, Colton International has served as buying agent for redacted.

3

**B.**     **Fendi-Branded Goods are Widely Available on the Secondary Market.**

9.     Colton International locates sources for the aforementioned goods on the open

market.  The source of such goods is often the trademark owner itself.  However, Colton

International also locates secondary sources for such goods in what has become to be known as

the "secondary market" (also called the "parallel market").  Goods purchased in the secondary

market are those that have already been sold by the trademark owner to its choice of retailers

and/or distributors in a given market.  These retailers and distributors frequently re-sell the goods

to other retailers and/or distributors, thereby creating a market that is "secondary" or "parallel"

to that created by the trademark owner itself.

10.     Authentic Italian-made designer goods are frequently traded in the secondary

market in the United States.  Such goods are in all respects genuine and their importation and

sale is entirely legitimate and lawful.  However, the secondary market is defined by goods that

are somehow diverted from the channel of trade intended by the trademark owner.

11.      As is well known in the trade, luxury goods manufacturers (including Fendi)

often object to the sale of their goods in the secondary market because such goods are often

diverted from the high-priced retail market desired by the trademark owner and sold at

substantial discounts by "off price" (i.e. discount) retailers such as Wal Mart, Burlington Coat

Factory, Filene's Basement and Annie Sez – all of which are (or were) defendants in these

consolidated actions.  The sale by "off price" retailers of current Fendi-branded goods at

discount prices is perceived by Fendi to anger the premium retail stores where companies like

Fendi would prefer their products to be sold.

12.     The secondary market is created when products such as Fendi-branded leather

goods are sold by Fendi to retailers in Europe and in other places around the world at prices

4

below that at which the same goods are sold by Fendi to retailers in the United States.  As a result, price disparities result between the same goods sold in Europe (or elsewhere) and in the United States; and a legitimate international trade in these goods results.

13.     For my company's business, I have traveled to Italy on many occasions to purchase Italian-made leather goods, including Fendi-branded wearing apparel, footwear and leather goods and accessories.  I am very familiar with the various secondary sources of such goods.  There are many ways that genuine Fendi-branded goods enter the secondary market.  Some of these ways are as follows:

> (a)  "Fendi-Authorized Retailers" – Fendi sells its goods directly to many retailers in Europe who purchase an excess supply of such goods and, in turn, sell off that "excess" supply to Colton International.  Colton International has purchased Fendi-branded goods from dozens of Fendi-authorized retailers since 2000.  However, since 2005, Fendi-authorized retailers have been Colton International's only source of Fendi-branded goods;[2]
>
> (b)  "Eastern European/Third-World" Distributors/ Retailers – Fendi sells its goods in markets that are much poorer than European or North American markets and where the prices are far lower than charged to those reselling the goods in the United States.  International trading companies purchase goods from these retailers and resell them to other wholesalers on the open market;[3]
>
> (c)  "Fendi-Authorized Manufacturers" - Colton International has purchased Fendi-branded goods from the actual manufacturers of those goods.  All such sales were arranged and authorized by Fendi employees; and
>
> (d)  "Duty Free Channels" - Fendi acknowledges that it sells the Products directly into Duty Free channels around the world.  Retailers in this marketing channel regularly purchase excess goods and resell them to retailers and international trading companies on the open market.

---

[2]  Since 2006, all purchases of Fendi-branded made by Colton on behalf of its clients have been placed through redacted , Colton International's agent that regularly interacts with Fendi-authorized retailers on behalf of Colton International and other trading companies and retailers.

[3]  Over the years, Colton International has purchased many such goods from various wholesalers and trading companies.

**C.**    **Colton International's Purchases From Fendi-Authorized Retailers.**

14.    I have been advised that Fendi's accusations of counterfeiting are based largely on the allegation that various entities who supplied Fendi-branded goods to Colton International and other defendants in these consolidated lawsuits are not "authorized" Fendi distributors. However, this is an unacceptable fact on which to base an accusation as serious as trademark counterfeiting. I have direct and personal knowledge that for many years Fendi-authorized retailers in Italy, who purchase Fendi-branded goods directly from Fendi itself, sell current, excess and left-over Fendi-branded goods in their possession to other retailers all over the world and frequently sell fairly large quantities of Fendi-branded merchandise to international trading companies like Colton International who, in turn, sell such goods to retailers throughout the world. As a result, there has been for many years an extensive worldwide secondary market for Fendi-branded goods. Fendi's attempt to "prove" counterfeiting by arguing that Colton International and/or its suppliers are not "authorized" Fendi distributors is without basis.

15.    It is my understanding that Fendi has falsely alleged in this lawsuit that Fendi-branded merchandise sold by Colton International to various retailers in the U.S. is counterfeit. This is absolutely untrue. I can unequivocally state that all of the Fendi-branded merchandise purchased by Colton International from Fendi-authorized retailers is genuine and was purchased directly from retailers who buy such goods directly from Fendi.

16.    Over the past decade, Colton International has purchased many Fendi-branded goods on the secondary market in Italy. For instance, Colton International has purchased many Fendi-branded goods from dozens of Fendi-authorized retailers including redacted , redacted , and many others. Colton International has also purchased many Fendi-branded goods from international trading companies who purchased such goods from Fendi-

6

authorized retailers (including those named above).  As noted above, Fendi-authorized retailers
are those retailers who are direct customers of Fendi.

17.     Over the years, Colton International has purchased Fendi-branded goods from
many Fendi-authorized retailers in Italy.  In fact, I have verified through Colton International's
attorney that each of these retailers is a Fendi-authorized retailer.  Over two years ago I listed the
names of a few of the retailers from whom Colton International purchases Fendi-branded goods
to Colton International's attorney, who confirmed that each retailer I named was identified as a
Fendi customer by documents produced by Fendi itself during the course of this lawsuit.

18.     Colton International's purchase of Fendi-branded goods from Fendi-authorized
retailers is certainly not a violation of the trademark laws of the United States.  In fact, it is my
understanding that various Fendi witnesses have testified in this case that Fendi does not restrict
its authorized retailers from the resale of authentic Fendi-branded goods to anyone.

19.     Colton International's regular purchases of Fendi-branded goods from Fendi-
authorized retailers include women's handbags, wallets, sunglasses, women's and men's shoes,
belts, and men's accessories.  All such goods were purchased by Colton International from
retailers who buy these goods directly from Fendi.  All of the Fendi-branded goods sold by
Colton International and purchased by Colton International from Fendi-authorized retailers are
unquestionably genuine.

20.     In fact, for at least the past four years – and throughout the entire pendency of this
lawsuit -- the vast majority of Colton International's purchases of Fendi-branded goods have
been made on behalf of redacted .  All of the Fendi-branded goods purchased by Colton
International on behalf of redacted have been made available for sale to the public on the
website redacted .  In fact, Colton International is the only supplier of Fendi-branded

goods to redacted . Despite the availability for purchase on the internet at redacted of an extensive variety of Fendi-branded goods supplied by Colton International, Fendi has not introduced even a scintilla of evidence that any of those goods are counterfeit. Fendi brought this lawsuit in September 2006 and has had nearly three years to investigate the authenticity of Fendi-branded goods sold on redacted. Despite this, Fendi introduces absolutely no evidence that even a single item of Fendi-branded goods sold at redacted is counterfeit.

21. Nor does Fendi's summary judgment motion rely upon the examination or inspection of even a single piece of Fendi-branded goods that Colton International supplied to redacted – despite the fact that such goods have been readily available for purchase by anyone redacted redacted throughout the entire time this lawsuit has been pending. The absence of any such evidence is a tacit acknowledgement by Fendi of both the extensive secondary market for Fendi-branded goods and the authenticity of Fendi-branded goods sold by Colton International.

22. I also firmly believe that Fendi has, in actuality, examined Fendi-branded goods sold at redacted , and has determined that they are authentic goods. It is also my firm belief that Fendi has withheld this evidence from Colton International, from the other defendants in this case, and from the Court – and has falsely alleged that all of Colton International's sales of Fendi-branded goods are counterfeit.

23. Colton International submitted discovery requests to Fendi in this litigation in which Colton International sought information from Fendi about all inspections of Fendi-branded goods sourced by Colton International. Fendi did not provide Colton with even a single report as to any Fendi-branded goods that Colton purchased from Fendi-authorized retailers (through its agent, redacted ). Instead, Fendi seeks to rely in its motion upon Fendi-

branded goods it obtained from Burlington Coat Factory that it allegedly bought from Colton

before 2004 and which have there is an insufficient chain of custody connecting such goods

Colton International.

24.     In the highly unlikely event that Fendi and/or its lawyers did not actually acquire

and inspect any Fendi-branded goods that originated from Colton International and have been

sold at <span style="color:red">redacted</span>      , it is grossly irresponsible for Fendi to have taken the position on

summary judgment that all Fendi-branded goods sourced by Colton International of are

counterfeit goods.  If Fendi has inspected such goods and deemed them to be authentic, its

motion is frivolous to the extent it withholds such information and seeks a recovery of all

revenues earned by Colton International from the sale of goods Fendi knows to be authentic.

**D.     Colton International Verifies the Authenticity of all Fendi-Branded Goods.**

25.     In making purchases of Fendi-branded goods, Colton International does not

merely rely on representations made by its suppliers as to the authenticity of any goods offered

for sale.  Before acquiring any Fendi-branded goods, Colton International performs its own

costly investigation to determine the authenticity of any goods offered to it.

26.     With respect to Fendi-branded goods purchased from Fendi-authorized retailers

through international trading companies, I have personally visited each of the retailers of those

goods from whom purchases were made and inspected (1) the Fendi-branded goods they sell and

(2) original invoices from Fendi to each retailer.  In inspecting the Fendi-branded goods

themselves, I verify that the goods include all of the indicia of authenticity that can be found in

Fendi goods – including the nature and quality of the materials and workmanship, the presence

of all internal codes used by Fendi to deter counterfeiting, the coded authenticity cards contained

in each product, and the holograms contained in each product.  In inspecting the invoices, I can

9

readily see that they are original invoices of Fendi and itemize the goods purchased by Colton International.

27.    Yet, even that level of initial inspection does not satisfy Colton International's policy.  Since it began purchasing Fendi-branded goods, it has been Colton International's policy to verify the original source of such goods before making any purchases.  With respect to Fendi-branded goods purchased from Fendi-authorized retailers, I have personally accompanied such retailers (on behalf of Colton International) on buying trips to Fendi's showrooms to independently verify that each such retailer is, in fact, a Fendi-authorized retailer.  I have personally made many trips to Fendi showrooms for this purpose.  In fact, it is at Fendi's own showroom where Colton International usually places orders for Fendi-branded goods.  All such orders are placed by Colton International through these Fendi-authorized retailers in exchange for a commission to the retailer.  Colton International's purchasing of Fendi-branded goods is performed in this manner because Fendi only sells its goods to its own subsidiary, Fendi North America, Inc., for resale in the United States, and does not to my knowledge sell directly to any other U.S. retailer.

28.    When Fendi-branded goods are purchased by Colton International from Fendi-authorized retailers, Colton International is never provided with copies of invoices from Fendi reflecting its purchases of such goods.  Nor is Colton International provided with invoices from any of the Fendi-authorized retailers.  This is because Colton International is not the "direct" customer of Fendi *or* of any of the Fendi-authorized retailers from which it obtains Fendi-branded goods.  Instead, all of Colton International's relationships with Fendi-authorized retailers were been arranged by redacted , an Italian trading company.  Colton International's purchases of Fendi-branded goods are made through redacted , which

10

provides Colton International with sales records showing purchases from redacted   and
not from the Fendi-authorized retailers.  There is absolutely no merit to Fendi's contention that
the Fendi-branded goods sold by Colton International are counterfeit simply because Colton
International is not provided with copies of invoices showing that such goods originate from
Fendi.

**E.    Colton International's Purchases From Fendi-Authorized Manufacturers.**

29.    The majority of Fendi-branded goods acquired by Colton International on behalf
of its clients have been purchased from Fendi-authorized retailers in Italy.  However, on behalf
of its clients Colton International has also purchased Fendi-branded goods from Fendi-
authorized manufacturers.

30.    Namely, from the early 200s to about 2004, Colton International made purchases
of Fendi-branded goods directly from a Fendi-authorized manufacturer of such goods.  The
acquisition of designer goods from an authorized manufacturer is not at all uncommon.  I have
personal knowledge that factories authorized to make leather goods in Italy are often authorized
to sell excess goods and are often authorized to sell "seconds" (or rejected goods) to companies
at a discount for sale outside of Italy.

31.    In accordance with Colton International's above-stated policy, no Fendi-branded
goods would be purchased by Colton International based solely on the word of a supplier.
Before any Fendi-branded goods were purchased from any Fendi-authorized manufacturer, I
conducted an investigation on behalf of Colton International to verify the legitimacy of the
manufacturer and its right to sell Fendi-branded goods.

32.  In particular, during one of my many visits to Italy in the early 2000's (and perhaps
as early as 2000), a gentleman named Luigino Bottin, who was to my knowledge engaged in the

11

international trade of Italian-made designer goods, advised me that he was able to obtain excess and out-of-season Fendi-branded leather goods (handbags, wallets and keycases) at substantially reduced prices directly from Fendi-authorized sources. I advised Mr. Bottin that it would be necessary for me to verify the source of the goods before making any purchase.

33.     At the time, I was already aware that various retailers/wholesalers in Italy were selling Fendi-branded goods that they represented as having been purchased from Fendi-authorized manufacturers. Some of these retailers offered Colton International the opportunity to purchase such Fendi-branded goods. Because it was not possible for Colton International to independently verify the authenticity of the original source of these Fendi-branded goods these offers were rejected.[4]

34.     Mr. Bottin personally escorted me to a Fendi-owned distribution center in or near Florence, Italy. When we arrived at the distribution center, I noticed that it was a large warehouse with an attached "Fendi outlet store" or "factory store". Mr. Bottin and I entered the distribution center through the outlet store. Mr. Bottin introduced me to the manager of the facility, who advised me that his name was "Mario." I do not recall his last name. In fact, at this point, I am uncertain as to whether his name is Mario or Marco, although I will refer to him herein as Mario. I am advised by my attorney that Scott Ressler, principal of defendant Ashley Reed Trading, Inc., had a similar experience and has identified the Fendi manager as Mario.

35.     Although Mario spoke only broken English, I was able to communicate to him that Colton International had an interest in purchasing excess Fendi-branded goods on behalf of

---

[4]  One of these retailers/wholesalers was a company named Little Italy (or the like) which was run by a woman named Paola Donni. Although Colton International originally rejected Ms. Donni's offers, I later learned that Ms. Donni was a close personal friend of a Fendi inspector named Lorenzo Bandinelli, who provided Ms. Donni with information concerning the availability of excess quantities of Fendi-branded goods available for sale by the authorized manufacturers of these goods and authorized for sale by Fendi.

its United States clients, who were discount retailers. Mario advised me that he was able to provide a wide variety of excess or leftover Fendi-branded goods for resale in the United States.

36. In fact, Mario took Mr. Bottin and me for a tour of the warehouse section of the distribution center and advised me that Fendi could supply Colton International with large quantities of excess Fendi-branded goods. Mario provided me with photographs of Fendi-branded goods and freehand sketches of some such goods. Additional photographs of various goods on shelves throughout the warehouse were also taken. Copies of the photographs are attached hereto as **Exhibit A.** Copies of the sketches supplied to me by Mario are attached hereto as **Exhibit B**. All of these documents been produced to Fendi's attorneys during the course of this litigation.

37. After touring the warehouse, Mario conducted a meeting in a small office within the warehouse. In attendance at the meeting were me, Mr. Bottin, Mario, and Lorenzo Bandinelli, a Fendi inspector. During this meeting, Mario advised me that he could provide Colton International (through Mr. Bottin) with access to excess Fend-branded goods that Fendi permits its authorized manufacturers to sell. Mario identified Alessandro Rogai as one such manufacturer, and he provided Mr. Bottin with contact information including the address of Mr. Rogai's factory.

38. In compliance with Colton International's verification policy, Mr. Bottin and I visited Mr. Rogai's factory and toured the factory with Mr. Rogai and Mr. Bandinelli. Messrs. Rogai and Bandinelli were aware that Colton International had an interest in purchasing excess Fendi-branded leather goods, and both assured me that Mr. Rogai's factory was authorized by Fendi to manufacture Fendi-branded products and to sell excess or rejected quantities of such goods. In fact, Mr. Rogai showed me current manufacturing orders and specifications that came

13

directly from Fendi.

39.     Based entirely on the assurances of Mario, Lorenzo Bandinelli, and Mr. Rogai, and my personal visit to Mr. Rogai's factory, a decision was made by Colton International to purchase Fendi-branded goods from Mr. Rogai.  That decision was also influenced by the fact that various companies - such as Little Italy, operated by Paola Donni - had for years been openly selling Fendi-branded goods at retail and wholesale that were obtained from the same source (based on invoices shown to me by Ms. Donni).[5]

40.     I cannot envision a circumstance under which purchasers such as Colton International and Ashley Reed Trading, Inc. could have taken greater care in the purchase of Fendi-branded goods for resale than that taken by Colton International.  The very employees of Fendi that were charged with the responsibility of selling leftover and Fendi branded goods at discount and inspecting the manufacturer of such goods orchestrated the sale of the goods, authorized their sale, verified the authenticity of the goods.  If, indeed, any of those Fendi-branded goods are not authentic, the defendants in these consolidated cases are not co-conspirators in trademark counterfeiting but are victims of a counterfeiting scheme orchestrated by Fendi's own employees and at least one of its authorized manufacturers.

41.     In its summary judgment motion, Fendi argues that its leather goods are produced by subcontractors under very tightly-controlled and rigorously-monitored circumstances.  Fendi also states in great detail that in order to control quality and prevent counterfeits, Fendi provides subcontractors with "kits" each containing only the precise number of pre-cut pieces of fabric, leather, and hardware items (buckles, clasps, rivets, and the like) needed to manufacture the

---

[5] After confirming the representations of Mario and Lorenzo Bandinelli concerning the authenticity of Allesandro Rogai's factory, Colton International also purchased a much smaller number of Fendi-branded goods on occasion from a few other suppliers that were all verified as authentic by Mario and Mr. Bandinelli and, in fact, referred to

precise number of items ordered by Fendi. Although this might be one way that Fendi has its

leather goods produced, or might be a relatively new way that such goods are being produced, it

is certainly not the only way that Fendi-branded goods have been manufactured.

42.    In fact, on both occasions that I visited the factory of Allesandro Rogai, there

were no "kits" being used to produce Fendi-branded goods. Instead, on both times I toured the

factory (once in the presence of Mr. Bandinelli), Fendi-branded goods were being manufactured

by fabric cut from large-sized rolls of jacquard fabric imprinted with Fendi's "FF" logo. I also

personally saw entire packages of the metal hardware used to assemble the goods, including

buckles and magnetic clasps imprinted with the Fendi name, rivets, zippers, and large quantities

of other materials used to manufacture the goods (including many different types of leather). I

personally witnessed Fendi-branded goods being manufactured using these items.

43.    I do not doubt that Fendi has recently undertaken efforts to more closely monitor

the work performed by the companies that manufacture its goods, such as by providing them

with "kits" containing only the specific number of items (including pre-cut fabrics) needed to

manufacture a specific number of goods ordered by Fendi. However, no such efforts were in

place at Mr. Rogai's factory on either of my visits.

44.    I have been advised that Lorenzo Bandinelli has been deposed in this case and has

denied any knowledge of Allesandro Rogai's sales to Ashley Reed and Colton International. In

fact, I have been further advised that he has denied much of what he was asked during his

deposition – including the denial of any knowledge of how Mr. Rogai (or any other Fendi-

authorized manufacturer) actually produces Fendi-branded goods. This is incredible and entirely

unworthy of belief. I have also been advised that shortly after the facts of Mr. Bandinelli's

---

Colton International by Mario and Mr. Bandinelli.

15

involvement in Mr. Rogai's sales of Fendi-branded goods to companies including Ashley Reed Trading, Inc. and Colton International, and within a week or so of his deposition in this case, Mr. Bandinelli was no longer employed by at Fendi.  This is certainly not surprising.  It is also interesting that early in his deposition Mr. Bandinelli identified Paola Donni as a "good friend" but during later questioning denied any knowledge of what she did for a living and stated that he had only seen her "a few times."

45.     Along with the representations of Mario, the manager of Fendi's international distribution center and outlet store in Florence, Italy (or, more correctly, in Incisa, Italy near Florence) and my inspection of Mr. Rogai's factory, Lorenzo Bandinelli's representations were relied on by Colton International and induced Colton International to purchase excess Fendi-branded goods from Mr. Rogai.  Mr. Bandinelli's denials are not only disputed by me and Mr. Ressler, but are also unworthy of belief.  I personally know Paola Donni to have been engaged in the sale of Fendi-branded merchandise since prior to Colton International began selling such merchandise. Ms. Donni made sales offers to me personally for the sale of Fendi-branded goods and invoices she showed me identified the source of those goods as the same Fendi-authorized manufacturer from which Colton International purchased such goods.

46.     In this case, both Mr. Ressler and I have separately testified under oath that we purchased Fendi-branded goods in exactly the same way; that two gentlemen employed by Fendi -- named Mario and Lorenzo Bandinelli -- were both involved in the sale of such goods to Colton International and Ashley Reed Trading, Inc.  We have also both testified about the nature of manufacturing conducted at the factory of Allesandro Rogai, in the presence of Fendi's inspector, Lorenzo Bandinelli, and we have both testified as to our personal knowledge o Paola Donni, who Mr. Bandinelli identified as his "good friend."  In fact, it is my understanding that

16

Scott Ressler was introduced to Lorenzo Bandinelli by his "good friend," Paola Donni.

47.     Under the foregoing circumstances, it is astonishing to me that Fendi has commenced and seeks to perpetuate this litigation – fully aware that its own employees were the vehicle behind the wrongdoing complained of.

48.     Notably, prior to testifying in this lawsuit, I had not spoken to or seen Scott Ressler for several years.  My testimony was in no way coached or coordinated.  It was only after I testified in June 2008 that my attorney, Bruce Katz, advised me that Scott Ressler testified about the same occurrences.

49.     Furthermore, at the conclusion of my deposition in June 2008, and in the presence of my attorney, Bruce Katz, Esq. and Carmine Castellano, Esq. (one of Burlington Coat Factory's attorneys), Fendi's attorney, Richard L. Mattiaccio, Esq., advised me that he couldn't wait to "get me on the stand" so that he cross examine me on the stand.  Holding in his hand the exhibit comprised of the sketches that I had just testified during my deposition were given to me by Mario, Mr. Mattiaccio told me that the sketches were "such crap" that nobody on the jury could possibly believe that they were from Fendi.

50.     Yet, I was advised that within a few weeks after my deposition, Fendi produced (and designated as "confidential") some of the very same sketches that I had just recently produced and testified as having been given to me by Mario at the Fendi distribution center.  Moreover, I was also advised that during the deposition of Christiana Torre, Fendi's counsel designated precisely the same sketches, along with Ms. Torre's entire deposition transcript, as highly confidential and subject to the "attorneys' eyes only" designation.  Although I am not aware of who Ms. Torre is, or what her testimony was, I can only conclude that Ms. Torre testified that the sketches are internal documents prepared by Fendi employees and maintained

17

confidential by Fendi -- despite Mr. Mattiaccio's derogatory remarks at the conclusion of my

June 2008 deposition that the sketches are "crap," that nobody would believe them to be original

Fendi drawings, and that he couldn't wait to get me on the stand to cross examine me about

them. It has since been confirmed to me that the sketches are, in fact, documents prepared by

and maintained confidential by Fendi. If that is, in fact, so, it should be clear to Fendi and its

attorneys that the sketches were, in fact, given to me by Mario.

**F.** **Colton International Did Not Purchase or Sell Counterfeit Fendi-Branded Goods** .

51.     I am aware that Fendi has asserted that some Fendi-branded products sold by

Colton International are counterfeit. This is not, of course, the first time an owner of a luxury

brand has asserted that diverted goods are counterfeit. This has happened many times, and has

occurred twice in the history of Colton International. To support its claim that *all* Fendi-branded

goods purchased and sold by Colton International on behalf of its clients are counterfeit, Fendi

relies upon a small sample of six handbags purchased from Burlington Coat Factory in 2004 or

obtained by Fendi's counsel in this lawsuit from the inventory of Fendi-branded maintained

retained by Burlington Coat Factory when it removed all such goods from its shelves several

years ago.

52.     Fendi has claimed these six samples of Fendi-branded bags that were allegedly

purchased and resold by Colton International are counterfeit by examining the bags and noting

the bags differ from the quality standards of Fendi, or include leather tags attached to the bags

which have incorrect codes. Fendi also claims that the difficult-to-duplicate holograms

contained in two of these bags are authentic, but appear to have been removed from other bags

and stitched into the alleged counterfeits.

53.    Fendi's comparison is based entirely upon the testimony of Leonardo Minerva, which is of suspect credibility.  First of all, Mr. Minerva is the very individual who has purportedly testified that the manufacture of Fendi-branded goods is performed under such tightly-controlled and highly-regulated circumstances that the variations in quality found in the accused bags is likely the result of counterfeiting.  Mr. Minerva testified that Fendi-authorized manufacturers receive from Fendi only "kits" containing the precise number of components needed to assemble the specific number of bags ordered by Fendi from that manufacturer.  However, this is absolutely untrue.  As discussed above, I have personally witnessed a Fendi-authorized manufacturer producing Fendi-branded handbags using materials that are not contained in kits, but by cutting from large rolls of fabrics and leathers and taking hardware from large packages containing many pieces of such hardware.  This would more than amply explain why the quality of materials in some of the bags is different from the "quality" that Mr. Minerva would expect.

54.     Further, the fact that there are variations in quality and/or workmanship is something that must be expected.  Fendi uses a number of different manufacturers to produce the same models of its goods.  As the number of such manufacturers increases, so too do the variations in such goods from manufacturer-to-manufacturer.  Although Fendi might have now undertaken to minimize such variations by providing all of its manufacturers with kits containing pre-cut fabrics and hardware items, this has not consistently been the case.

55.    I have no firsthand knowledge as to why some of the bags examined by Fendi contain, as Fendi states, the wrong codes.  However, it is highly unlikely that this is due to counterfeiting.  A counterfeiter that wishes to duplicate authentic Fendi bags would also likely duplicate the codes contained inside the bag, so the bags were not appear to be counterfeit bags.

19

It is far more likely that the codes contained the bags were inadvertently misprinted. I have firsthand knowledge that the small leather goods manufacturers used by Fendi also produce goods for other designers, and also imprint codes into the goods. The device use to imprint such codes is adjustable and permits the code numbers to be changed to enable the stamping of different codes. It is entirely likely that the wrong codes are sometimes stamped into Fendi bags for this reason.

56. Furthermore, it is extremely important for the Court to be cognizant of the fact that the examination of the allegedly counterfeit Fendi-branded handbags in these consolidated cases has been performed by a Fendi employee that was not at all involved in the inspection of the Fendi-branded bags at their point of production by Fendi-authorized manufacturers. This is extremely significant. It is rather easy to critique the quality of materials and workmanship performed by another entity. However, all of the bags purchased by Colton International on behalf of its clients were deemed to have passed inspection by Fendi inspector, Lorenzo Bandinelli. Mr. Minerva's analysis of these bags as not satisfying Fendi's standards is not relevant. If the goods were deemed to have passed inspection by Mr. Bandinelli, who was hired specifically for that purpose, then they were, in fact, authorized Fendi-branded goods. Mr. Minerva's testimony cannot refute the highly questionable credibility of. Bandinelli.

57. Further, Mr. Minerva's testimony is also of suspect credibility in that Fendi has relied on it to demonstrate that Fendi-branded handbags are produced in kits. Yet, as described above, this is not so, or was not so on any of the occasions I visited Mr. Rogai.

58. In any event, Fendi's trademarks were legitimately applied to the goods purchased by Colton International on behalf of its clients, and the purchase of such goods after inspection by Lorenzo Bandinelli is perfectly legal, although unsettling to Fendi and its preferred

20

high-end retailers in the United States.

59.     Also, I note that Colton International also purchased on behalf of its clients Fendi-branded leather goods from a small number of other legitimate sources, including Euro Moda and Modo Oggi, which are both defendants in these consolidated actions.  Although Fendi's counsel alleges that all of the Fendi-branded goods sold by Colton International are counterfeit, Fendi's attorneys in this lawsuit have acknowledged some of these goods were genuine.  Colton International also purchased goods for its clients directly from Mario at the Fendi outlet and from other "Fendi" stores.  There is no question that such goods are authentic.

60.     As noted above, in support of its motion, Fendi alleges that Colton International sold counterfeit Fendi-branded goods based upon its analysis of six Fendi-branded handbags obtained from Burlington Coat Factory.  However, I dispute that any of those six handbags were supplied by Colton International.  Fendi's proof rests upon the existence of a procedure at Burlington Coat Factory whereby Fendi-branded goods are given an SKU number that is, in part, based upon the vendor of such goods.  However, the person who testified about that procedure has no personal knowledge of whether it was ever performed.  There is no evidence that any such procedure was followed as to the Fendi-branded goods sold to Burlington by Colton International.  Burlington Coat Factory had numerous sources of the same models of Fendi-branded bags - Colton International was only one such source.

61.     During my June 2008 deposition, I personally viewed one of the Fendi-branded bags supposedly sold to Burlington by Colton.  This was identified to me as Fendi's Exhibit 118.  One of the fabric components of that bag was somewhat out of alignment and the stitching did not look to me to be correct.  The bag did not appear to me to be a Fendi-branded bag that Burlington obtained from Colton International.  Although I did not personally inspect all details

21

of all of the Fendi-branded bags that Colton International obtained from Italy at that time, I examined one piece of each model of Fendi- branded bags. I also visually examined each shipment for obvious defects such as those. I do not believe that the handbag marked as Plaintiff's Exhibit 118 was sold to Burlington Coat Factory by Colton International. Nor has Fendi provided any evidence to confirm otherwise.

62. The credibility and recordkeeping of Burlington Coat Factory is highly suspect. At the time it purchased Fendi-branded goods from Colton International, Burlington Coat Factory was under a 1987 Court Order, or injunction, that prevented it from selling any Fendi-branded goods without Fendi's written permission. Further, Burlington Coat Factory not only continued selling Fendi-branded goods despite the injunction, but was found by the court to have deficiencies in its recordkeeping methods. Due to the deficiencies in its internal recordkeeping procedures, Burlington Coat Factory continued to sell Fendi-branded goods even during the pendency of this lawsuit, and for a significant period of time after having advised Fendi and the Court that it stopped selling such goods years earlier. Moreover, Burlington Coat Factory advised the Court, based upon a review of its records, that it only started selling Fendi-branded goods in or about 2002 - after having forgotten about the 1987 injunction. However, even representation, which was based upon a review of its records, was false because other records maintained by Burlington Coat Factory revealed that had actually started selling Fendi-branded goods, in violation of the injunction, in the early 1990's.

**G. Colton Disclaimed the Warranty that Burlington Coat Factory Seeks to Enforce.**

63. Furthermore, Burlington Coat Factory concealed the existence of the Consent Injunction from Colton International and its other suppliers. Having done that, Burlington Coat Factory cannot now seek to enforce a boilerplate warranty and indemnification clause contained

in its standard form Purchase Order.  By seeking to enforce that clause, Burlington Coat Factory

is attempting to impose contractually liability on Colton International for its own unlawful and

unauthorized sale of Fendi-branded goods in violation of a Court Order.  Burlington Coat

Factory knew that it was prohibited from the sale of Fendi-branded goods without Fendi's

written permission. Thus, it cannot have possibly relied upon a boilerplate warranty clause

contained in the small print of its standard form Purchase Order.  Stated otherwise, the

boilerplate warranty clause did not in any way induce Burlington Coat Factory to purchase

Fendi-branded goods from Colton International.

     64.     Moreover, Colton International expressly disclaimed Burlington Coat Factory's

request for indemnification.  In connection with its business, Colton International does not

warrant any goods or enter into indemnification agreements with retailers.  Colton International

is not a merchant dealing in goods, but in the service of locating sources for such goods.

     65.     On one occasion, Burlington Coat Factory requested that Colton agree to

indemnify it for any claims of trademark infringement arising from Burlington Coat Factory's

sales of such goods.  Colton International denied this request.  Colton International purchases

goods based upon client requests and specifications and does not agree to bear responsibility for

the sale of those goods by its clients.

     66.     More specifically, in 2003 Burlington Coat Factory requested Colton

International to provide it with a letter of release authorizing BCF to resell Fendi-and Prada-

goods.  Burlington Coat Factory also requested Colton International to execute an

indemnification agreement.  However, in a letter dated October 10, 2003, to Burlington Coat

Factory (annexed hereto as **Exhibit C**), Colton International confirmed its earlier-stated verbal

denial that it could not provide a letter of release from Fendi and that it was unable to execute an

indemnification agreement.[6]  Further, the presence of a warranty in Burlington Coat Factory's standard form Purchase Orders also prompted me to explain to Burlington Coat Factory on a previous occasion that the only warranty extending to the goods purchased by Burlington Coat Factory was a money-back guarantee in the event the goods were defective.  Colton International would not agree to the indemnification provision of Burlington Coat Factory's Purchase Order. This is precisely why I wrote to Burlington Coat Factory to disclaim that provision.

        67.     Although there are exceptions to this, Colton International is neither a vendor nor merchant engaged in the sale of goods.  Colton International is a buying agent engaged in the locating and acquiring goods sold by its clients.  In connection with its business as a buying agent, Colton International established relationships with various retailers including Burlington Coat Factory and inquired from those clients as to the nature and type and brand of goods it was interested in purchasing.  Burlington Coat Factory expressed an interest in acquiring Italian-made designer goods from brands such as Prada and Fendi.  In response to this request, Colton International undertook to locate legitimate sources of off-price Prada and Fendi goods. Although this is the general nature of Colton International's relationship with its clients, there are exceptions.  When I first became aware of a source of off-price Fendi goods in Italy, I arranged for the purchase of a quantity of such goods.  However, with minor exceptions, Colton International has remained consistent in its business as a buying agent and does not maintain any inventory of the goods it purchases for its clients. Indeed, Burlington executives traveled with me to Italy to visit some of the sources of the goods it was purchasing.

---

[6]  Colton International believed that Fendi would not provide a letter of release because it objected to the sale of its goods by discount retailers such as Burlington Coat Factory.  Further, I had earlier explained to Burlington Coat Factory's purchasing agent that Colton International was not in the financial position to voluntarily enter into an indemnify agreement with a multi-billion dollar corporation such as Burlington Coat Factory.

68.     Although the Colton International's transactions are typically documented as the sales of goods, this is merely done for accounting purposes at the request of clients and does not reflect the true nature of Colton International's business activities as a purchasing agent. Purchases made by Colton International are made at the request and on behalf of its clients. Thus, Colton International is not a dealer in Fendi-branded goods but is a buying agent that purchases goods to fulfill client demands.

H.     **Colton International is not a Willful Infringer.**

69.     Colton International does not trade in counterfeit goods and has a strict policy of verifying the authenticity of the goods it purchases – and the authenticity of the sources from which it purchases such goods.  In fact, Colton International did not begin to purchase Fendi-branded goods for resale until it was able to personally verify the legitimacy of the sources of those goods.

70.     Despite this, Fendi seeks for this Court to conclude that by I and Colton International are willful infringers.  In support of this, Fendi asks the Court to ignore that allegedly counterfeit goods purchased by Colton International were made by a Fendi-authorized manufacturer and authorized for sale to Colton International by *two separate Fendi employees.* Instead, Fendi asks the Court to focus its attention on evidence that it claims reveals bad faith on the part of Colton International.

71.     For instance, Fendi relies upon the fact that Colton International responded to Burlington Coat Factory's request for evidence of authenticity of the Fendi-branded goods it supplied to Burlington with "Fendi" invoices that Fendi claims to be "fake".

72.     However, the allegedly "fake" Fendi invoices are claimed to be "fake" only because Fendi's witness could not locate the originals in Fendi's records.  No other reason is

25

given.  Furthermore, the allegedly fake invoices were not prepared by Colton International or me.  Nor were they prepared with the participation of myself or Colton International.  Colton International requested one of its suppliers of Fendi-branded goods for actual Fendi invoices showing that Fendi was the source of the Fendi goods it sold that were purchased from direct Fendi customers.[7]  The invoices received by Colton International in response to this request were provided to Burlington Coat Factory.  I vigorously dispute Fendi's claim that these invoices are "fake" and believe that the allegation that the invoices are "fake" is likely due to a lack of accurate recordkeeping by Fendi and/or sales made by Fendi for which no records were purposely kept.[8]

73.     Moreover, Fendi also criticizes Colton International because the invoices allegedly received from Mr. Bottin do not match Colton International's orders.  However, the purpose of the invoices that Colton International received from Mr. Bottin was not to identify the source of a particular bag, but to illustrate the legitimacy of Colton International's sources of Fendi-branded goods.  Furthermore, Fendi acknowledges that at least one of the invoices received by Colton International from Mr. Bottin is, in fact, a genuine Fendi invoice reflecting the sale of Fendi-branded goods to a direct Fendi customer in Italy.  Even if the other invoices were "fake," as Fendi alleges (and which is vigorously disputed), the admittedly genuine invoice

---

[7] Obviously, "Fendi" invoices could not be obtained for any of the goods that were manufactured by Allesandro Rogai since Fendi did not sell those goods to any of its customers.  Thus, the only Fendi invoices that could be obtained were those that related to purchases of Fendi-branded goods from retailers who purchased such goods directly from Fendi.

[8] Since two Fendi employees and an authorized Fendi subcontractor duped me (and others, including Ashley Reed Trading, Inc.) into believing that Mr. Rogai was authorized to sell directly to Colton International (along with Ashley Reed and likely others), it would not be surprising to learn that the same (or other) Fendi employees were engaged in similar activities, including sloppy recordkeeping.  Furthermore, the same individual who testified that the invoices are "fake" also falsely testified that Fendi does not sell leftover goods at discounted prices (*see* statement No. 82 in Fendi's Rule 56.1 statement, which states that Fendi does not sell leftover goods at discount prices and purports to be based upon the testimony of Fendi's witness, Alberto Fabbri.  This is entirely untrue, Fendi operates a number of outlet stores across the United States (and elsewhere) at which leftover Fendi-branded

demonstrates that at least some of Colton International's sources of Fendi-branded goods were legitimate.[9]

74.     Fendi also seeks for the Court to find that any infringement by Colton International, and me personally, was willful based upon the fact that the letter of authenticity ("the Minerva Letter") sent by Colton International to Fendi's counsel is also a "fake."  (see color copy attached hereto as **Exhibit D**).  However, the Minerva letter was received by Colton International in precisely the same way as the above-described Fendi invoices – from one of Colton International's European suppliers, Luigino Bottin, who acted as an agent, or intermediary between Colton International and the actual sources of some of the Fendi-branded goods purchased by Colton International from various sources.  Colton International did not prepare the letter or participate in its preparation.  Colton International merely asked Mr. Bottin to have Fendi verify the authenticity of a particular handbag that BCF sent it.  I reasonably believed that the letter is authentic because it is printed on Fendi stationery having Fendi's letterhead, and is in the same unique and difficult-to-find yellow/orange official color used by Fendi for its business cards and stationery.

75.     Fendi also asks the Court to find willful infringement based upon Colton International's failure to produce during the discovery phase of this litigation a copy of a letter sent to Mr. Bottin by Colton International enclosing a handbag sent to him for inspection by Fendi and requesting him to have Fendi verify its authenticity.  However, the letter that was sent to Mr. Bottin accompanying the handbag was not a letter that was prepared by Colton

---

goods are sold at discounted prices every day.  Mr. Fabbri also falsely stated that Fendi does not sell to duty free shops.
[9] Fendi oddly criticizes Colton International (at No. 42 of its Rule 56.1 Statement) for failing to obtain documents revealing the "ultimate source" of Fendi-branded goods purchased directly from Mario at the Fendi outlet in Italy. Obviously, Fendi itself is the ultimate source of goods sold at its own outlet store.

International.  Instead, it was a copy of the very letter that Burlington Coat Factory sent to
Colton International requesting that Colton International verify the authenticity of the bag – and
that letter was most certainly produced by Colton International during the discovery phase of this
litigation.[10]

76.     Fendi also argues that Colton International's failure to follow up with Mr. Bottin
after it received a letter from Fendi's counsel asserting that the Minerva letter was a fake is
evidence of willfulness.  However, the contrary is true.  Immediately upon receiving the letter in
which Fendi's counsel claimed that the Minerva letter was a fake, Colton International at my
instruction *immediately* suspended all purchases of Fendi-branded goods that were either directly
or indirectly made through Mr. Bottin.  Colton International has never again purchased even a
single item from any of these sources.

77.     Fendi also attempts to convince the Court that Colton International's conduct was
less than innocent because Colton International has not produced in discovery the actual Fendi-
branded handbag that it sent to Mr. Bottin in Italy for examination.  During this case, I
erroneously believed that the handbag in question was in the possession of Kieran Bridge,
Colton International's Canadian counsel.  However, Mr. Bridge has advised me that the bag is
not in his possession.  Upon further investigation, I learned that the bag was not returned from
Italy to Mr. Bridge, or to Colton International.  My contrary belief is due to the fact that the
Minerva letter indicates that the bag will be returned.  I erroneously assumed that it was returned
and remained in Mr. Bridge's possession, along with the Minerva letter itself.  Notably, the
Minerva letter was kept in Mr. Bridge's possession since 2005 because Fendi's counsel was

---

[10]  Fendi's desperate attempts to have this Court imply willfulness into its conduct even includes the ridiculous
criticism that Colton International failed to produce in discovery a copy of the "FedEx" label accompanying the
package which was sent by Colton International.  The failure to retain a copy of a FedEx label from 2004 cannot

formally invited by to personally inspect the letter at his office. Although Fendi's counsel demanded the right to inspect the original Minerva letter in 2004, it ignored this invitation - which was extended twice.

78.     Fendi also alleges that Colton International's selloff of its then-existing inventory of Fendi-branded goods reveals bad faith and justifies a finding of willfulness. However, Fendi greatly exaggerates its claim. Colton International has not for years maintained any inventory of goods. Although it did sell off some Fendi-branded goods during its lengthy exchange of correspondence with Fendi's counsel in 2004-2005, it stopped purchasing Fendi-branded goods from any of the same sources once Fendi advised it that the Minerva letter was "fake."

79.     Indeed, this is confirmed by Fendi's own expert report, which shows that Colton International's sales volume of Fendi-branded goods for the entire year of 2005 was about 1/10[th] that of its 2004 sales volume of Fendi-branded goods. The "selloff" complained of by Fendi's counsel extended to only a small handful of pieces of goods. Furthermore, many of the Fendi-branded goods in the possession of Colton International at the time were not obtained from Allesandro Rogai and were, instead, purchased from Fendi-authorized retailers. Fendi's accusations of counterfeiting related to only one bag and not Colton International's entire supply of Fendi-branded goods, many of which were, again, purchased from authorized retailers. Furthermore, Fendi never once complained of any of Colton's sales to Loehmann's and I reasonably believed that the allegations of counterfeiting extended to only a limited number of bags purchased from a single source.

80.     Fendi also argues that Colton International should be charged with willful infringement because it was aware that its activities were risky - since it purchased Fendi-

---

form the basis for a finding of willfulness.

branded goods outside the customary channels of trade. This argument fails to take into account that Fendi's own employees sanctioned Colton's International's activities. Colton International's conduct most certainly does not constitute willful blindness.

81.     Fendi also argues that my conduct, and that of Colton International, constitutes willful infringement because I was indicted in Italy in 2004 "for having conspired to commit, and committed, the crimes of counterfeiting and commerce in leather goods with counterfeit trademarks" in a criminal counterfeiting case involving the Fendi, Gucci and other brands. However, the *five-year-old* Italian indictment referred to by Fendi in its Rule 56.1 statement has not been advanced due to the absence of any evidence that I engaged in any such conspiracy -- and the existence of compelling evidence that Colton International's purchase of Fendi-branded goods on behalf of its clients was lawful and was, in fact, arranged by employees and agents of Fendi.

**I.      Colton International Was Prejudiced by Fendi's Delay.**

82.     In 2001, Colton International's client, Loehmann's, was served by Fendi with a cease-and-desist letter complaining that Loehmann's was selling counterfeit Fendi-branded goods. Since Colton International was a supplier to Loehmann's, this was a matter of great concern to me.

83.     However, Brett Meyer, Esq., Colton International's attorney at the that time, met on at least two occasions in New York City with Fendi's attorney (former lead counsel in this case, Anthony Cannatella, Esq.) to discuss this matter. Scott Ressler, president of Ashley Reed Trading, Inc. was also in attendance at these meetings, since Ashley Reed's headquarters is in Manhattan. Although I did not attend because my office and residence are in Canada, my attorney was present.

84.     I was advised that at these meetings Colton International was known to Mr. Cannatella to be a supplier of Fendi-branded goods to Loehmann's.  In fact, Mr. Ressler has confirmed this.  At the time, Mr. Meyer, Colton International's attorney, advised me that Mr. Cannatella advised that Fendi-branded goods that had been produced by a Fendi-authorized manufacturer were legitimate products and that Fendi would not take any action as to any such products.

85.     Subsequent to these meetings in 2001, neither Fendi nor its attorneys (including Mr. Cannatella) did not in any way contact Colton International.  It was not until mid-2004, three years later, that Colton International received a letter from Burlington Coat Factory stating that Fendi questioned the authenticity of a Fendi bag allegedly purchased by Burlington from Colton International.  At that time, Colton International began communicating with Fendi's counsel concerning the authenticity of Fendi-branded goods sold by Colton International.

86.     It was not until mid-2006 – a full *five years* after being aware that Colton International was a supplier of Fendi-branded goods that it purchased from, *inter alia*, Fendi-authorized manufacturers, that Fendi commenced this action against Colton International.

87.     Based on Fendi's silence, (not to mention the participation of Fendi employees Mario and Lorenzo Bandinelli), Colton International felt confident that it was purchasing authentic Fendi-branded goods from authorized Italian sources.

88.     Colton International was severely prejudiced by Fendi's delay.  As discussed above, once Fendi wrote to Colton International alleging that the Minerva letter was "fake," Colton International immediately suspended all purchases of Fendi-branded goods from its existing sources.  Although Fendi was aware that Colton International was a supplier of Fendi-branded goods to Loehmann's in 2001, it advised Colton International that its sales of Fendi-

31

branded goods from Fendi-authorized manufacturers was not objectionable. Had Fendi taken a contrary position at that time, Colton International would have certainly suspended any further purchases from any of the same sources in 2001 rather than 2005. Instead, relying upon the representations of Fendi's employees and its lead counsel, Anthony Cannatella, Colton International not only continued its activities but substantially grew its business in Fendi-branded goods.

89.     Further, by waiting until 2006 to bring suit against Colton International, Fendi ensured further prejudice in terms of this lawsuit. Notably, Fendi sued Loehmann's in 2003 and neither Fendi nor Loehmann's sought in any way to bring Colton International into that case. For that reason also, Colton International was assured that the Fendi-branded goods it sold were genuine. However, by waiting until 2006 to sue Colton International, Fendi ensured that Colton International would be prejudiced by not having access to the discovery materials in the Loehmann's case and by having difficulty in locating witnesses. Notably, I have attempted to locate Paola Donni, Maralena Coradeli of Hidea, Luigino Bottin, Allesandro Rogai, Lorenzo Bandinelli and Mario (or Marco). I have been unable to locate any these witnesses to assist in this case. Moreover, due to Fendi's five-year delay, relevant Colton International documents have been discarded, Colton International's accountants have changed and its PC systems have crashed and been entirely replaced on not one but two occasions over the past six years. The prejudice that has befallen Colton International due to Fendi's extensive delay prevades every aspect of this case.

## J.     Erroneous Statements Contained in Fendi's Rule 56.1 Statement.

90.     Fendi's Rule 56.1 statement is replete with factual misstatements. For instance, it seeks to argue that I have many contacts with New York and regularly visited NYC to make

sales calls to Colton International's New York clients. This is untrue. Although I visited the New York City offices of Burlington, I did not do so to make sales but merely to meet Nancy Mair and Joan Goldstein, the purchasing agents employed by Burlington Coat Factory, which was already a client of Colton International. While in New York, I stayed in a hotel room. Although I have, on occasion, met with customers socially in my hotel suite and often have in my possession a small number of samples of designer goods, I do use my hotel room as a showroom. Nor does the Colton International website (www.coltoninternational.com) state that Colton International has a presence in New York. "New York" was included in the website because, at the time, Colton International had an independent sales agent, Marion Youkilis, who resided and worked in New York City. Colton International has no New York presence. It has no office, property, or assets of any kind in New York.

91.     Fendi also argues that Marion Youkilis was "hired" as an employee of Colton International. This is untrue. Marion was retained by Colton International as an independent sales agent whose responsibilities include handling the accounts of Colton International's clients in the New York tri-state area, including Burlington Coat Factory, Loehmann's, and others.

92.     Nor was my testimony conflicting or inconsistent. During my deposition in June 2008, I was instructed to testify from memory about specific purchases and sales of Fendi-branded goods by Colton International from 2001 through 2004. Not unexpectedly, my ability to recall the details of these specific purchases without the benefit of reviewing Colton International's extensive records was somewhat limited. However, while my ability to recall details of specific purchases and sales from seven years earlier might have been limited, it would not have been limited if I had the opportunity to review the approximately 3,500 documents produced by Colton International during discovery in advance of my deposition. I could not

recall the relevance of a few documents I was questioned about during my deposition in June 2008. However, this should not be surprising since the sales complained of by Fendi date back at least five years.

     93.    Nor is it true that Colton International's purchases of Fendi-branded goods were "cash" transactions. Colton International has never made a single purchase of Fendi-branded goods for cash. Italian manufacturers and wholesalers frequently use Swiss bank accounts because the tax rate in Italy is extremely high. This is an extremely common practice in Italy and it is not unusual for Colton International to have made payments for any kind of goods to Swiss bank accounts held by its suppliers. However, Colton International has never bought goods for resale from a supplier in exchange for cash.

     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: May 13, 2009
     Vancouver, Canada                    Howard Colton

34