Gerard F. Dunne
Law Offices of Gerard F. Dunne, P.C.
Attorney For Defendants
156 Fifth Avenue, Suite 1223
New York, New York  10010
Tel.: 212-645-2410
Attorney for Defendants

UNITED STATES DISTRICT COURT    ECF CASE
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
FENDI ADELE S.R.L., FENDI S.R.L.  :
and FENDI NORTH AMERICA      Civil Action No.
               :
     Plaintiffs,        06 CIV 0243 (RMB)(MHD)
               :
   vs.
               :
ASHLEY REED TRADING, INC.
SCOTT RESSLER         :
and JAMES RESSLER
               :
   Defendants.
-----------------------------------------------------x

**DEFENDANTS' REQUEST FOR RECONSIDERATION OF THE DECISION GRANTING SUMMARY JUDGMENT DISMISSING DEFENDANTS' AFFIRMATIVE DEFENSES OF LACHES AND ACQUIESCENCE**

**I. PRELIMINARY STATEMENT**

    The Defendants, Ashley Reed Trading, Inc., Scott Ressler and James Ressler (collectively "Ashley Reed"), in the above-captioned matter hereby request reconsideration of the Decision & Order filed and entered in the above captioned case on February 16, 2010 (hereinafter "the Decision"), pursuant to Local Civil Rule 6.3.  In particular, Ashley Reed requests reconsideration of the facts and law relevant to the dismissal of Defendants' affirmative defenses of laches of acquiescence.

1

## II.     MOTION FOR RECONSIDERATION STANDARD

"A motion for reconsideration is appropriate where a court overlooks 'controlling decisions or factual matters ... and which, had they been considered, might have reasonably altered the result before the court.'" *In re Terrorist Attacks on September 11, 2001,* 392 F. Supp. 2d 539, 573 (SDNY 2005)*; quoting Range Road Music, Inc. v. Music Sales Corp.*, 90 F.Supp.2d 390, 392 (S.D.N.Y.2000); see also *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir.1995).

## III.    THE FEBRUARY 16, 2010 DECISION OVERLOOKS RELEVANT FACTS AS TO THE 2001 MEETINGS BETWEEN ASHLEY REED AND FENDI'S ATTORNEY, ANTHONY CANNATELLA SUBSEQUENT TO THE 2001 CEASE AND DESIST LETTER.

It is not disputed that in 2001 Fendi served a cease and desist letter on Ashley Reed, charging Ashley Reed with marketing counterfeit Fendi-branded goods. However, it is also not disputed that subsequent to the 2001 cease and desist letter, on multiple occasions, Ashley Reed and their attorney at the time, Brett Meyer, met with Fendi's attorney, Anthony Cannatella. Though the cease and desist letter clearly charged Ashley Reed with counterfeiting, Ashley Reed contested such charges from the outset, and met with Fendi's attorney in a good-faith effort to resolve the matter.     See *Defendants' Statement of Material Facts as to Which There are Genuine Disputes* ¶ 6-10; *Declaration of Scott Ressler In Opposition to Plaintiffs' Motion for Summary Judgment* ("S. Ressler Decl.") ¶ 19-21; See also *Declaration of Joseph Dunne In Opposition to Plaintiffs' Motion for Summary Judgment* ("J. Dunne Decl.") Ex. 4.

During the 2001 meetings Fendi was provided with documentation including Ashley Reed's sourcing documentation as well as their sales report showing over $1.5 Million in sales of Fendi-branded goods sold by Ashley Reed. Ashley Reed was led to

believe by Anthony Cannatella, that should Fendi find any problems with the documentation, Fendi (or Mr. Cannatella) would contact Ashley Reed. No further communication occurred until the initiation of the current suit, more than 4 years later. (See *Defendants' Statement of Material Facts as to Which There are Genuine Disputes* ¶ 6-10; *S. Ressler Decl.* ¶ 19-21; See also *J. Dunne Decl.* Ex. 4.)

It is respectfully submitted that, the Decision, in repeatedly stating that Ashley Reed was put on notice and informed that the Fendi-branded goods they were selling were counterfeit in 2001, overlooks the meetings and assurances given by Mr. Cannatella to Ashley Reed after the 2001 cease and desist letter.

During the 4-year period, based on Fendi's silence and apparent acceptance of the documentation provided by Ashley Reed, Ashley Reed continued to invest substantial time, effort and resources in developing their business in the secondary market, including the acquisition of Fendi-branded goods. Fendi should not be rewarded for standing idly by, knowing that Ashley Reed is generating sales, and then come in 4-years later, when the sales have accumulated, and demand them as damages.

Further, by delaying for over 4-years Fendi effectively prejudiced Ashley Reed in the current litigation by reducing Ashley Reed's access to possible documents and witnesses, such as the documentation lost due to Ashley Reed's computer crash in late 2003 or early 2004. (See *S. Ressler Decl.* ¶ 25).

IV.  **THE ASSURANCES OF FENDI'S ATTORNEY, FOLLOWED BY FENDI'S SILENCE FOR MORE THAN FOUR YEARS WERE REASONABLY INTERPRETED BY ASHLEY REED AS AN ACTIVE REPRESENTATION THAT FENDI WOULD NOT ASSERT A CLAIM.**

The testimony of Scott Ressler regarding the meetings with Anthony Cannatella after the cease and desist letter create a genuine triable issue of fact as to the nature and details of these meetings, and the reasonableness of Ashley Reed's reliance on the

assertions of Mr. Cannatella.

In particular, the Decision states that "Defendants fail to adduce any evidence that Plaintiffs made assurances that they would not assert their rights in the Fendi Marks against Defendants" (*February 16, 2010 Decision & Order*, p. 14).  It is respectfully submitted that the Decision overlooks the testimony of Scott Ressler that at the 2001 meetings "[He] was further told by Fendi's attorney that if Fendi found any problems with the documentation, he would contact me."  (See *S. Ressler Decl.* ¶ 20.)

Under these circumstances, it is submitted that a reasonable juror could find it was reasonable for Ashley Reed to rely on Fendi's "silence as consent to its good faith offer of accommodation[.]"  *ProFitness*, 314 F.3d at 69; see also *Information Superhighway, Inc. v. Talk America, Inc, et al.,* 274 F.Supp.2d at 472; *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d at 704 (2d Cir.1970).

The elements for the defense of acquiescence, are that:  "(1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice."  *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 67 (2d Cir. 2002); *Times Mirror Magazines, Inc. v. Field & Stream Licenses Company, et al.*, 294 F.3d 383, 395 (2d Cir.2002); *Sun America Corp. v. Sun Life Assurance Co.*, 77 F.3d 1325, 1334 (11 Cir.1996).  Additionally, in the context of acquiescence, "the effect of [a] cease and desist letter" can be "ameliorated . . . by responding to the letter with a good faith proposal to change" the allegedly infringing conduct.  *ProFitness*, 314 F.3d at 68.

V.  **FENDI'S DELAY OF OVER FOUR YEARS WAS WITHOUT REASON, AND SHOULD, IN THE LEAST, PRECLUDE, AN AWARD OF MONETARY DAMAGES.**

Fendi has yet to offer a single reason for their delay of more than four years

between the 2001 cease and desist letter/meetings and the filing of the current suit, and simply rely on the 6-year statute of limitations to defeat the defense of laches. Such an unreasonable delay certainly, in the very least, is a relevant defense to the availability of monetary damages in the current suit for the Fendi-branded goods sold dating back to 2001.  It is respectfully submitted that the Decision overlooks the availability of the affirmative defense of laches as to the availability of monetary damages separate from the issue of liability.

Defendant's use of the equitable affirmative defense of laches is available not only under the question of liability, but also under the question of damages.  While laches originated as an "equitable" defense, it is clear that it applies to the "legal" remedy of money damages. *6 McCarthy on Trademarks and Unfair Competition* § 31:4; *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813 (7th Cir. 1999) ("[A]lthough laches is an equitable doctrine, courts increasingly apply it in cases at law in which plaintiffs seek damages."). The Lanham Act itself states that a plaintiff who has prevailed is entitled to monetary relief only "subject to the principles of equity." *Lanham Act* §35(a), 15 U.S.C.A. § 1117(a).

The extent of the defense of laches differs according to the relief sought. *4 Callmann on Unfair Comp.*, Tr. & Mono. §23:22 (4th Ed.). "Cases frequently arise where a court of equity will refuse the prayer of the complainant for an account of gains and profits, on the ground of delay in asserting his rights, even when the facts proved render it proper to grant an injunction to prevent future infringement." *McLean v. Fleming*, 96 U.S. 245, 257, 24 L. Ed. 828 (1877), followed in *Menendez v. Holt*, 128 U.S. 514, 9 S. Ct. 143, 32 L. Ed. 526 (1888); see also *Hermes Intern. v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104 (2d Cir. 2000).

The Supreme Court precedent has made it clear that a given set of facts showing

plaintiff's delay and resulting prejudice to defendant, though it may not bar the issuance of an injunction against future acts of infringement, it still may bar monetary recovery. *McLean*, 96 U.S. at 257, 1877 WL 18479 (1877).

In *Dial-A-Mattress Operating Corp. v. Mattress Madness*, 841 F. Supp. 1339 (E.D.N.Y.1994), recons. denied, 847 F. Supp. 18 (E.D.N.Y. 1994), Judge Platt summarized the relevant principles as follows:

> First, the defendant must prove actual or constructive knowledge of the infringing use and inexcusable delay in prosecuting the infringing party. Second, the defendant must prove the traditional elements of an estoppel defense, namely reasonable reliance upon plaintiff's action or inaction and a balance of the equities in the defendant's favor. … Proof of the former may bar some or all monetary damages but will not preclude the imposition of injunctive relief. … Proof of the latter is an affirmative defense to both legal and equitable relief. *Id*.

While New York's six year statute of limitations for fraud is used as the benchmark for determining whether a presumption of laches is proper, defendants are still free to make an affirmative showing of laches even if a shorter amount of time has elapsed. *Trs. of Columbia Univ. v. Columbia/HCA Healthcare Corp*., 964 F. Supp. at 751-52. A delay of over four-years certainly could be found to be unreasonable, particularly in light of Plaintiffs' failure to offer any justification for its delay. *Id*. (barring plaintiff's infringement action on the basis of laches after a three and a half year delay); *New Era Publ'n Int'l v. Henry Holt and Company, Inc*., 873 F.2d 576 (2d Cir.

1988) (affirming denial of injunction on the basis of laches after two year delay).

Further, as outlined by Judge Platt in *Dial-A-Mattress Operating Corp.* above, proof of the an unreasonable delay alone is sufficient for the Laches defense to survive for the purpose of precluding a monetary award. *Id*.

The testimony of Scott Ressler regarding the 2001 meetings after the cease and desist letter, creates a triable issue of fact as to what assurances Ashley Reed was given at these meetings. Ashley Reed was certainly prejudiced by their substantial expenditures spent in continuing to develop their gray market business based on the assertions of Mr. Cannatella resulting in millions of dollars in additional potential damages in the current suit, as well as the increased unavailability of relevant documents and witnesses. Accordingly, genuine material issues of fact exist as to Ashley Reed's affirmative defenses of laches and acquiescence.

## VI.   CONCLUSION

Though there was an initial cease and desist letter that put Ashley Reed on notice of the potential claims of Fendi, the subsequent meetings between Ashley Reed and Fendi's Attorney, Anthony Cannatella, reasonably led Ashley Reed to believe that they had, in good-faith, addressed the a charges made by Fendi. Further, Ashley Reed was led to believe that should Fendi disagree, they would contact Ashley Reed. Yet, after receiving the documentation from Ashley Reed, including reports of over $1.5Million in relevant sales, Fendi, without reason, failed to contact Ashley Reed until the initiation of this suit over four years later.

New York, New York
Dated:  March 2, 2010

Respectfully submitted,

   /s/ Gerard F. Dunne
Gerard F. Dunne (GD 3323)
Law Office of Gerard F. Dunne, P.C.
156 Fifth Avenue, Suite 1223
New York, NY  10010
212-645-2410; Fax:212-645-2435
*Attorney for Defendants, Ashley Reed Trading, Inc., Scott Ressler and James Ressler*