UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
FENDI ADELE S.R.L., FENDI S.R.L., and      :
FENDI NORTH AMERICA, INC.,                 :
                                           :
            Plaintiffs,                     :
                                           :
      -against-                            :      Case No.:  06-CV-0243 (RMB)(MHD)
                                           :
ASHLEY REED TRADING, INC.,                 :
SCOTT RESSLER and                          :
JAMES RESSLER,                             :
                                           :
            Defendants.                     :
-------------------------------------- X

**PLAINTIFFS' MEMORANDUM OF LAW IN FURTHERANCE OF THE REPORT AND
RECOMMENDATION FOR WHICH THIS CASE WAS REFERRED BY THE
DISTRICT COURT ON FEBRUARY 16, 2010**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

ISSUES PRESENTED............................................................................... 1

STATEMENT OF FACTS ........................................................................ 1

ARGUMENT .............................................................................................. 5

    POINT I ................................................................................................ 5

    DEFENDANTS' SALES OF COUNTERFEITS WERE WILLFUL ............................ 5

        A. Willful Violation of the Trademark Laws is Established by Proof that
the Defendant was on Inquiry Notice but Failed to Investigate................ 5

        B. Scott Ressler's Testimony Concerning Lorenzo Bandinelli Does Not
Raise a  Disputed Issue of Fact Concerning Defendants'
Willfulness ............................................................................................ 6

        C. The Record Shows Conclusively that Defendants Were on Inquiry
Notice .................................................................................................... 8

            1. Defendants Ignored Fendi's Cease-and-Desist Letter ................................... 8

            2. Defendants Returned Their Fendi Branded Goods to Their Suppliers .......... 9

            3. Defendants Did Not Retain Supplier Invoices Addressed to Ashley
Reed ................................................................................................... 11

            4. Defendants Produced Documents that Were Not Genuine.......................... 12

            5. Defendants Declined to Represent that They Had the Legal Right to
Sell  Fendi Branded Merchandise ........................................................ 12

    POINT II ............................................................................................... 13

    DEFENDANTS SHOULD BE REQUIRED TO DISGORGE THEIR
PROFITS FROM SALES OF COUNTERFEIT FENDI BRANDED
PRODUCTS.......................................................................................... 14

    POINT III.............................................................................................. 15

    DEFENDANTS' PROFITS FROM THEIR SALES OF FENDI BRANDED
GOODS ARE ESTABLISHED BY UNCONTROVERTED EVIDENCE ............. 15

    POINT IV.............................................................................................. 17

    PLAINTIFFS ARE ENTITLED TO RECOVER TREBLE DAMAGES AND
THEIR ATTORNEYS' FEES ................................................................ 17

    POINT V ............................................................................................... 18

    PLAINTIFFS ARE ENTITLED TO PREJUDGMENT INTEREST ....................... 18

    CONCLUSION...................................................................................... 20

## TABLE OF AUTHORITIES

# Cases

*Arista Records, Inc. v. Beker Enterprises, Inc.*,
   298 F. Supp. 2d 1310 (S.D. Fla. 2003) ....................................................................... 8

*Banjo Buddies, Inc. v. Renosky*,
   399 F.3d 168, 171 (3d Cir. 2005) .............................................................................. 14

*Burberry Ltd. v. Designers Imps., Inc.*,
   2010 U.S. Dist. LEXIS 3605, at *25 (S.D.N.Y. Jan. 19, 2010) ....................... 5, 6, 11

*Cartier, Inc. v. Sardell Jewelry, Inc.*,
   294 F. App'x 615 (2d Cir. 2008) ............................................................................... 11

*Crown Awards, Inc. v. Discount Trophy & Co., Inc.*,
   564 F. Supp. 2d 290 (S.D.N.Y. 2008) ....................................................................... 18

*Dallas Cowboys Football Club, Ltd. v. Am.'s Team Props., Inc.*,
   616 F. Supp. 2d 622 (N.D. Tex. 2009) ........................................................................ 8

*Diplomatic Man v. Nike, Inc.*, No. 08 Civ. 139,
   2009 U.S. Dist. LEXIS 29343, 2009 WL 935674, at *5 (S.D.N.Y. Apr. 7, 2009) ................. 18

*Elvis Presley Enters. v. Capece*,
   141 F.3d 188 (5th Cir. 1998) ...................................................................................... 8

*Fendi S.A.S. Di Paola Fendi E Sorelle v. Cosmetic World, Ltd.*,
   642 F. Supp. 1143 (S.D.N.Y. 1986) .......................................................................... 17

*Ford Motor Co. v. Cross*,
   441 F. Supp. 2d 837 (E.D. Mich. 2006) ...................................................................... 9

*George Basch Co. v. Blue Coral, Inc.*,
   968 F.2d 1532 (2d Cir. 1992) .................................................................................... 13

*Gucci America, Inc. v. Duty Free Apparel, Ltd.*,
   315 F. Supp. 2d 511 (S.D.N.Y. 2004) .................................................................... 6, 11

*Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*,
   955 F.2d 1143 (7th Cir. 1992) .................................................................................... 5

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*,
   80 F.3d 749 (2d Cir. 1996) ........................................................................................ 13

*Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*,
  378 F. Supp. 2d 448, 254 n.13 (S.D.N.Y. 2005)..........................................................................5

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
  04 Civ. 5316, 2007 U.S. Dist. LEXIS 31632 at *13 (S.D.N.Y. April 24, 2007) ) ...................18

*Louis Vuitton Malletier & Oakley Inc., v. Veit*,
  211 F. Supp. 2d 567 (E.D. Pa. 2002) ........................................................................................9

*Louis Vuitton S.A. v. Lee*,
  875 F.2d 584 (7th Cir. 1989) ....................................................................................................5

*Louis Vuitton S.A. v. Spencer Handbags Corp.*,
  765 F.2d 966 (2d Cir. 1985) ...................................................................................................18

*Microsoft Corp. v. Atek 3000 Computer Inc.*,
  2008 U.S. Dist. LEXIS 56689, 2008 WL 2884761, at *3 (E.D.N.Y. July 23, 2008) ...............8

*Microsoft Corp. v. Compusource Distributors*,
  115 F. Supp. 2d 800 (E.D. Mich. 2000) ...................................................................................9

*Microsoft Corp. v. Logical Choice Computers, Inc.*,
  2001 U.S. Dist. LEXIS 479, at *37 (N.D. Ill. Jan. 19, 2001) .................................................5

*Microsoft Corp. v. Marturano*,
  2009 U.S. Dist. LEXIS 44450 (E.D. Cal. May 27, 2009)..........................................................9

*Motorola, Inc. v. Abeckaser*,
  2009 U.S. Dist. LEXIS 29595 (E.D.N.Y. Apr. 8, 2009) ..........................................................8

*New York State Ass'n for Retarded Children, Inc. v. Carey*,
  711 F.2d 1136 (2d Cir. 1983)..................................................................................................18

*Nike, Inc. v. Top Brand Co.*,
  2005 U.S. Dist. LEXIS 42374, at *32 (S.D.N.Y. July 13, 2005) ...........................................14

*Polo Ralph Lauren, L.P. v. 3M Trading Co.*,
  1999 U.S. Dist. LEXIS 7913, at *11 (S.D.N.Y. Mar. 22, 1999) ............................................16

*Profitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*,
  314 F.3d 62  (2d Cir. 2002)......................................................................................................8

*Quick Tech., Inc. v. Sage Group PLC*,
  313 F.3d 338 (5th Cir. 2003) .................................................................................................14

*Rolex Watch US.A., Inc. v. Jones,*
  2002 WL 596354, *6 (S.D.N.Y. 2002)........................................................... 17

*Schneider Saddlery Co., Inc. v. Best Shot Pet Prods. Int'l,* LLC,
  2009 U.S. Dist. LEXIS 27227, at *64 (N.D. Ohio Mar. 31, 2009) ......................... 14

*Synergistic Int'l, LLC v. Korman,*
  470 F.3d 162 (4th Cir. 2006) ..................................................................... 14

*Tiffany Inc. v. eBay, Inc.,*
  2008 U.S. Dist. LEXIS 53359, at *141 (S.D.N.Y. July 14, 2008) ........................... 5

*Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing, Inc.,*
  2003 U.S. Dist. LEXIS 8788, at *48 (N.D. Ga. May 9, 2003) ............................... 6

## Statutes

15 U.S.C. §§ 1114(a) & 1125(a) ......................................................... 2, 14

15 U.S.C. § 1117(b) ................................................................... 1, 17, 19

15 U.S.C. § 1125(c) ......................................................................... 2

26 U.S.C. § 6622(a) ......................................................................... 19

26 U.S.C. § 6621(a)(2) ..................................................................... 19

26 U.S.C. § 6621(c) ......................................................................... 19

26 U.S.C. § 6621 (c)(3)(A) ................................................................. 19

1984 U.S.C.C.A.N. 3627, 3632 ............................................................. 19

N.Y. Gen. Bus. L § 360-1 ..................................................................... 2

## PRELIMINARY STATEMENT

Plaintiffs respectfully submit this Memorandum of Law in furtherance of the Report for which this case was referred to Magistrate Judge Dolinger by Judge Berman in the District Court's February 16, 2010 Decision and Order (Doc. 116)(2010 U.S. Dist. LEXIS 13934)(the "*February 16 Decision*").

## ISSUES PRESENTED

The District Court has asked this Court to report concerning whether there are still "issues of fact and/or credibility that bear on Defendants' willfulness in connection with Plaintiffs' application for an accounting," (*February 16 Decision* , 2010 U.S. Dis. LEXIS 13934 at *60), to provide "a determination as to the appropriateness of an accounting of Defendants' profits," (*id.*), and, "if warranted, an assessment of Plaintiffs' damages." (*Id.*)

Accordingly, the first question referred to this Court is whether the record establishes defendants' willfulness as a matter of law, as the record did in *Fendi Adele, S.r.l. v. Burlington Coat Factory Warehouse Corp.*, 2010 U.S. Dist. LEXIS 10628 (S.D.N.Y. February 8, 2010). If so, then defendants are subject to the penalties prescribed in 15 U.S.C. §1117(b), and the Court is asked to report and recommend the appropriate money judgment.

If, however, this Court should conclude that defendants' willfulness is not established as a matter of law, then the Court is asked to report and recommend whether defendants should nonetheless be required to disgorge their profits from their sales of counterfeit Fendi branded goods, and, if so, to report and recommend the appropriate amount of a judgment.

## STATEMENT OF FACTS

On February 16, 2010, Judge Berman granted summary judgment for plaintiffs and against defendants Ashley Reed Trading, Inc. ("Ashley Reed"), Scott Ressler, and James

Ressler[1] for trademark counterfeiting and false designation of origin in violation of 15 U.S.C. §§ 1114(a) & 1125(a), trademark dilution in violation of 15 U.S.C. § 1125(c) and N.Y. Gen. Bus. L § 360-1, and for unfair competition under the common law of New York.  The Court held that the twenty "Examined Items" -- Fendi branded items sold by defendants to Filene's Basement/RVI, Big M, Inc., Nordstrom's Rack and Saks Off Fifth -- are counterfeit.  (*February 16 Decision*, 2010 U.S. Dist. LEXIS 13934 at *12, *14-*15 and *40).[2]  The District Court also granted summary judgment for plaintiffs on defendants' affirmative defenses and held that plaintiffs were entitled to a permanent injunction.

Notably, the Court held that defendants' claims that:  a) they were "involved in the lawful activity of importing into the United States and trading in 'gray market' products bearing prominent trademarks;" b) "Ashley Reed purchased genuine Fendi Products directly from the Fendi store in Italy;" and, c) "[a] large amount of Fendi products had been acquired from sources Fendi itself identified as genuine;" (*February 16 Decision*, 2010 U.S. Dis. LEXIS 13934 at *35), were "mere speculation or conjecture.  (*Id*. at *40-43).  The Court considered it to be "most significant," that defendants conceded that they are "**not sure exactly where** [the twenty counterfeit Examined Items] **came from**."  (*Id*. at *43)(*emphasis in original*)(*see also id*. at *6, n. 3).

On the question of willfulness, the Court noted the following undisputed facts:

---

[1]     "Scott Ressler and James Ressler are, respectively, the President and Vice President of Ashley Reed and each owns fifty percent of the company."  *Fendi Adele S.R.L*., 2010 U.S. Dist. LEXIS 13934, at *9.

[2]     Judge Berman is the second Judge in this District to hold that Ashley Reed sold counterfeit Fendi branded products.  *See Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 2010 U.S. Dist. LEXIS 10628, at *8 (S.D.N.Y. Feb. 8, 2010) ("[T]he items supplied by Ashley Reed were counterfeit.").

- Defendants continued to sell Fendi branded goods after plaintiffs sent them a cease and desist letter, (*February 16 Decision*, 2010 U.S. Dis. LEXIS 13934 at *11-12 & 23-24), and after the Resslers and their lawyer met with counsel for Fendi, who told them that the Fendi branded goods they were selling were counterfeit; (*id*. at *12);

- Defendants returned all Fendi branded goods in their inventory to their suppliers after this litigation commenced; (*id*. at *16 (citing S. Ressler Dep. at 124:6-13));

- Defendants did not keep invoices issued to Ashley Reed by suppliers of Fendi branded goods; (*id*. at *16-17 (citing S. Ressler Dep. at 258:20-260:4) & 58-59 (citing S. Ressler Dep. at 566:3-19));

- Defendants did keep, and produced, invoices purportedly issued by Fendi and addressed to Ashley Reed that are, in fact, not genuine; (*id*. at *46 n. 11);

- Defendants discarded crucial financial records after as little as one year;(*id*. at *58);

- Defendants did not maintain records to document their claim that they conducted side-by-side comparisons of the goods purchased from secondary sources with those available in Fendi stores; (*id*.);

- Defendants knew and understood that they could not give Filene's Basement the representation requested by Filene's Basement that they had legal right to sell the Fendi branded merchandise that they were offering to Filene's, and that the purchase and resale of this merchandise by Filene's would "not violate or infringe upon any existing contractual and/or Proprietary Rights owned by others."  (*Id*. at *19 & 46-47, n.11).

The Court was concerned, however, that "there may still be issues of fact and/or credibility that bear on Defendants' willfulness." (*February 16 Decision*, 2010 U.S. Dis. LEXIS 13934 at *58).  The focus of this concern is a single dispute.  Scott Ressler testified that a Fendi inspector named Lorenzo Bandinelli, whom Ressler met "two or three times," (*id*., (*quoting* S. Ressler Dep. at 83:4-86:9), had told him that "the goods that we [*i.e.*, Ashley Reed] were buying were authentic," (*id*. at *42 (*quoting* S. Ressler Dep., *loc. cit.*)).  Mr. Bandinelli, on the other hand, testified that he had never met either Scott or Jim Ressler, nor had ever heard their names

3

before he was deposed.  (*Id*. at \*59 (*quoting* Bandinelli Dep. at 45:5-23).  Plaintiffs respectfully submit that Scott Ressler's testimony concerning Mr. Bandinelli is irrelevant in view of the Court's holding that the defendants had offered no more than "mere speculation or conjecture" that Mr. Bandinelli had inspected and approved the Examined Items.  (*Id*. at \*42 (quoting S. Ressler Decl., ¶13)("I **suppose** these bags [*i.e.*, the Examined Items] were made by the factory I visited with Mr. Bandinelli.")(*emphasis in February 16 Decision*)).

Plaintiffs respectfully submit that the undisputed facts set forth in the *February 16 Decision* establish that there are no issues of fact or credibility that remain to be resolved concerning the willfulness of defendants' conduct, and that plaintiffs are entitled to a holding that defendants acted willfully in selling counterfeit Fendi branded goods.  Consequently, plaintiffs are entitled to judgment against defendants for three times defendants' profits from their sales of such goods, for plaintiffs' attorneys' fees, for prejudgment interest, and for the costs of this litigation.

The evidence of defendants' sales and profits, which is set forth in the Declaration of James J. Donohue dated February 19, 2009, (Doc. 91), is also undisputed.  On plaintiffs' motion for summary judgment, defendants admitted that the documents they produced reflect that they made sales of Fendi branded goods totaling $5,034,269.  (Defs. 56.1 Reply (Doc. 98) ¶ 133).  In addition, they did not contest the substance of the analysis provided by Mr. Donohue of documents obtained in discovery from defendants' customers, which reveal an additional $4,960,927 in sales.  (*Id*. ¶¶ 134-35).  Instead, they argued on summary judgment that Fendi's expert relied on inadmissible evidence, but they offered no evidence to refute his analysis or methodology.  Nor did they offer any legal authority, or even an explanation for their claim that the documents that he relied upon are inadmissible.  Defendants failed to put forward any

4

evidence of their costs in connection with the purchase and sale of their counterfeit goods. Consequently, Fendi is entitled to summary judgment for the total of Ashley Reed's sales of Fendi branded items in the amount of $9,996,196.

Plaintiffs' attorneys' fees and disbursements are documented in the Declaration of Richard L. Mattiaccio dated April 23, 2010, submitted herewith.  The total of these is $608,715.00 in fees and $81,302.47 in disbursements.

## ARGUMENT

### POINT I

### DEFENDANTS' SALES OF COUNTERFEITS WERE WILLFUL

**A.     Willful Violation of the Trademark Laws is Established by Proof that the Defendant was on Inquiry Notice but Failed to Investigate.**

Liability for willful counterfeiting under the Lanham Act does not require proof of actual knowledge that the goods involved were counterfeit.  It is sufficient for a plaintiff to demonstrate that the defendant recklessly disregarded the possibility that it was selling counterfeit products, that is, that the defendant was on inquiry notice concerning the authenticity of its goods, but failed to inquire.  *See Burberry Ltd. v. Designers Imps., Inc*., 2010 U.S. Dist. LEXIS 3605, at *25 (S.D.N.Y. Jan. 19, 2010); *Fendi Adele S.R.L.*, 2010 U.S. Dist. LEXIS 10628, at *34; *Tiffany Inc. v. eBay, Inc*., 2008 U.S. Dist. LEXIS 53359, at *141-*42 (S.D.N.Y. July 14, 2008) (citing *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc*., 955 F.2d 1143, 1149 (7th Cir. 1992)); *see also Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989).  The standard may be satisfied by direct evidence, circumstantial evidence, or presumption.  *See Microsoft Corp. v. Logical Choice Computers, Inc.*, 2001 U.S. Dist. LEXIS 479, at *37 (N.D. Ill. Jan. 19, 2001); *Lorillard Tobacco Co. v. Jamelis Grocery, Inc*., 378 F. Supp. 2d 448, 254 n.13 (S.D.N.Y. 2005).

As the Court observed in Gucci Am., Inc. v. Duty Free Apparel, Ltd.:

> Selling products acquired outside the customary chain of retail distribution and without the usual authenticating documentation is a high risk business. In the face of that risk, it was unreasonable for [defendant] to rely on the self-serving assurances of [the seller], or [defendants'] admittedly inexpert opinion about the authenticity of the goods.

315 F. Supp. 2d 511, 521-522 (S.D.N.Y. 2004)(internal quotation and citation omitted); *see also*

*Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing, Inc.*, 2003 U.S. Dist. LEXIS 8788,

at *48-*55 (N.D. Ga. May 9, 2003) (defendant "declined to ask questions and follow through");

*Burberry Ltd. v. Designers Imps., Inc*., 2010 U.S. Dist. LEXIS 3605, at *25 (S.D.N.Y. Jan. 19,

2010) (defendant "failed to investigate the bona fides of Burberry-branded goods it purchased for

sale").

**B.     Scott Ressler's Testimony Concerning Lorenzo Bandinelli Does Not Raise a Disputed Issue of Fact Concerning Defendants' Willfulness**

Two reasons compel the conclusion that no issue of fact or credibility is raised by Scott

Ressler's testimony that he purchased Fendi branded goods after they were inspected by Lorenzo

Bandinelli.  *First*, this testimony is irrelevant, as defendants were unable to tie any of the

Examined Items to goods allegedly inspected by Mr. Bandinelli.  *Second*, Scott Ressler's

testimony describes suspicious transactions that placed defendants on inquiry notice, and not

transactions that could have allayed their concerns.

In support of its conclusion that defendants are liable for trademark counterfeiting and

false designation of origin, the District Court held that defendants had failed to put forward

"evidence that the 'gray market' was the source of the twenty Examined Items," and that their

claims about their sources for Fendi branded goods -- including Scott Ressler's statement "I

suppose these bags [*i.e.*, the Examined Items] were made by the factory I visited with Mr.

Bandinelli" -- were "mere speculation or conjecture."  (*February 16 Decision*, 2010 U.S. Dis. LEXIS 13934 at *40-41).[3]  Thus, although Fendi and Mr. Bandinelli dispute Scott Ressler's testimony, this controversy is not relevant to the case.  Even assuming that defendants bought some Fendi branded goods on Mr. Bandinelli's advice, such goods did not include any of the counterfeits that are in evidence.[4]  As the District Court observed:

> Supposition does not create a genuine issue of material fact, instead it creates a false issue, the demolition of which is the primary goal of summary judgment.

(*February 16 Decision*, 2010 U.S. Dis. LEXIS 13934 at *43-44)(internal quotations and citation omitted).

Scott Ressler testified, moreover, that he believed at the time that Mr. Bandinelli received commissions for the business he delivered from the factories that sold Fendi goods to Ashley Reed.  (S. Ressler Dep. at 549).  Thus, he suspected that a Fendi inspector was accepting kickbacks for directing purchasers to factories whose goods he would then certify.  This was

---

[3]    Burlington Coat Factory also proffered Scott Ressler's testimony in support of a claim that genuine Fendi goods were available as a result of "back door" dealings, and Judge Sand held that his testimony did not support Burlington's position:

> At Scott Ressler's deposition, he did not testify that he purchased goods directly from Fendi manufacturers. He testified that he purchased St. John's merchandise directly from the manufacturers but did not remember ever purchasing Fendi merchandise directly from the manufacturer.

*Burlington Coat Factory Warehouse Corp.*, 2010 U.S. Dist. LEXIS 10628, at *22, n. 7 (citing Ressler Dep. at 433-34).

[4]    The Examined Items, it should be noted, came from the inventories of four separate customers of Ashley Reed -- Filene's Basement/RVI, Big M, Inc., Nordstrom's Rack and Saks Off Fifth.  (*February 16 Decision*, 2010 U.S. Dist. LEXIS 13934 at *12).  Defendants had caused their own inventory of Fendi branded goods to disappear.  (*Id.* at *16).  Not one of the Examined Items was genuine.  (*Id.* at *38).

clearly a corrupt transaction that placed defendants on inquiry notice concerning the genuineness of goods purchased in this way.  Defendants, who had met with Fendi's counsel concerning Fendi's cease and desist letter, (*February 16 Decision*, 2010 U.S. Dis. LEXIS 13934 at *11), certainly could have inquired of Fendi concerning the activities of Fendi's inspector, but they did not do so.

**C.    The Record Shows Conclusively that Defendants Were on Inquiry Notice**

**1.    Defendants Ignored Fendi's Cease-and-Desist Letter**

It is undisputed that Fendi wrote to Ashley Reed to demand that it cease and desist its sales of counterfeit Fendi products.  (*February 16 Decision*, 2010 U.S. Dist. LEXIS 13934, at *11-12).  Sales of counterfeits after receipt of a cease and desist letter are at the defendant's own risk because it is on notice of the plaintiff's objection.  (*Id.* at *26 (*citing Elvis Presley Enters. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998); *Dallas Cowboys Football Club, Ltd. v. Am.'s Team Props., Inc.*, 616 F. Supp. 2d 622, 634 (N.D. Tex. 2009)); *see also Profitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 68 (2d Cir. 2002).

Courts in this and other districts hold that sales of counterfeit goods after receipt of a cease and desist letter are willful as a matter of law.  *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.,* 2010 U.S. Dist. LEXIS 10628, at *35 (S.D.N.Y. Feb. 8, 2010) ("Burlington's continued sale of counterfeit goods after receiving the April 2004 cease and desist letter establishes willfulness in and of itself") (citing *Motorola, Inc. v. Abeckaser*, 2009 U.S. Dist. LEXIS 29595 (E.D.N.Y. Apr. 8, 2009) (following receipt of the cease-and-desist letter "no reasonable juror could conclude that defendants did not at the very least recklessly disregard the possibility that the goods were counterfeit"); *Microsoft Corp. v. Atek 3000 Computer Inc.*, 2008 U.S. Dist. LEXIS 56689, 2008 WL 2884761, at *3 (E.D.N.Y. July 23, 2008)  (defendant's

continued actions despite being apprised of its infringing conduct, were sufficient to find defendant's conduct willful); *Microsoft Corp. v. Marturano,* 2009 U.S. Dist. LEXIS 44450 (E.D. Cal. May 27, 2009); *Ford Motor Co. v. Cross,* 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006); *Arista Records, Inc. v. Beker Enterprises, Inc.,* 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003); *Louis Vuitton Malletier & Oakley Inc., v. Veit,* 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002); *Microsoft Corp. v. Compusource Distributors*, 115 F. Supp. 2d 800, 809 (E.D. Mich. 2000)).

### 2.     Defendants Returned Their Fendi Branded Goods to Their Suppliers.

At his first deposition, Scott Ressler testified that, after Fendi initiated this lawsuit, defendants returned their entire inventory of Fendi branded products to their suppliers, but had no records concerning these returns:

> Q.     With respect to the merchandise, the Fendi branded merchandise that's the subject matter of this litigation, did you have any inventory?
>
> A     No.
>
> Q.     You presently do not have any inventory?
>
> A.     No.
>
> Q.     Upon the initiation of the lawsuit did you have any inventory?
>
> A.     We might have had a little.  I think we returned it.
>
> Q.     Returned it to whom?
>
> A.     I'm not sure.
>
> Q.     So when the litigation was initiated, you took the merchandise, the Fendi brands of merchandise that you had in inventory, and you returned it?
>
> A.     Yes.
>
> Q.     The Fendi branded merchandise that you had in your possession that was in your inventory at the time the litigation was

initiated, were those handbags and accessories?

A.      Yes.

Q.      Were they the subject matter of the litigation that was involved in this case?

A.      Yes.

Q.      So you took product that was the subject matter of this litigation and you got rid of it?

A.      Returned it.

Q.      You got rid of it, you sent it back somewhere?

A.      Sent it back, yes.

Q.      Do you know how much merchandise that was?

A.      No, I don't.

Q.      Do you have records of that?

A.      I'm not sure.

(S. Ressler Dep. at 123-24; Defs. 56.1 Reply (Doc. 98) ¶¶ 137-38; *February 16 Decision*, 2010

U.S. Dist. LEXIS 13934, at *16).

    In addition, when Fendi sued Big M, Inc. (Annie Sez), defendants returned the Fendi

branded goods from that company to their supplier:

Q.      Do you recall that Annie Sez, at the time when Fendi sued them, had Fendi branded products in inventory?

A.      I do.

Q.      And do you recall that those products were ultimately sent back to Ashley Reed?

A.      Yes.  They returned them to me, and I returned them to my source.

Q.      Right.  Do you recall about when they returned them to you?

A.      No.  After the onset of the lawsuit.

> Q.     They were returned to you?
>
> A.     They returned them to me and I returned them to my source.

(S. Ressler Dep. at 592-93; Defs. 56.1 Reply (Doc. 98) ¶¶ 139-40).

During his second deposition, moreover, Scott Ressler admitted that, after the inception of this litigation, he returned Fendi branded products to Moda Oggi. (S. Ressler Dep. at 608). Moda Oggi supplied counterfeit Fendi branded products to Burlington Coat Factory. *Fendi Adele, S.r.l. v. Burlington Coat Factory Warehouse Corp.*, 2010 U.S. Dist. LEXIS 10628 at *27 (S.D.N.Y. February 8, 2010). In a recent decision in this District, Moda Oggi was described as "a known seller of counterfeit merchandise." *Burberry Ltd. v. Designers Imps., Inc.*, 2010 U.S. Dist. LEXIS 3605, at *14 (S.D.N.Y. Jan. 19, 2010).

The fact that defendants returned their inventory to their sources without investigating its authenticity is clear evidence of willfulness. (*February 16 Decision*, 2010 U.S. Dist. LEXIS 13934, at *47-8, n. 11 (citing *Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 F. App'x 615, 621 (2d Cir. 2008)); *see also Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511 (S.D.N.Y. 2004)(defendants acted willfully because they returned their remaining inventory for credit, rather than confront their supplier with Gucci's accusation of counterfeiting).

### 3.     Defendants Did Not Retain Supplier Invoices Addressed to Ashley Reed

The District Court observed that "Scott Ressler testified that Defendants did not always keep invoices issued to Ashley Reed by its direct suppliers." (*February 16 Decision*, 2010 U.S. Dist. LEXIS 13934, at *16). Nor did defendants record what they paid for goods. (S. Ressler Dep. at 615). Indeed, "[a]t oral argument, defendants' counsel conceded that Defendants are 'not sure exactly where these bags came from.'" *Id*. at *6, n.3. Failure to keep and disclose complete

records of purchases and sales is probative of willfulness.  *Christian Dior Couture, S.A. v. Fred's Int'l Handbags*, 2002 U.S. Dist. LEXIS 778 (S.D.N.Y. Jan. 17, 2002).

### 4.    Defendants Produced Documents that Were Not Genuine

It is further undisputed that defendants never purchased Fendi branded products directly from Fendi.  (Defs. 56.1 Reply (Doc. 98), ¶149)(*see* S. Ressler Dep. at 97, 98 ("A. Right. They [Fendi] did not sell us the goods directly to us. We did not pay them for the merchandise."), 433-434)).  Plaintiffs' Exhibits 67, 69, 70, 71 and 72, however, are invoices ostensibly issued by Fendi to Ashley Reed for handbags shipped to Ashley Reed.  (S. Ressler Dep. at 485)(*see* Exhibits 4-8 to Fabbri Decl. (Doc. 92)).  Alberto Fabbri, plaintiffs' chief financial officer, testified that these documents are not genuine.  (Fabbri Decl. (Doc. 92) ¶¶48-52); and Scott Ressler testified that Ashley Reed did not pay Fendi for the goods listed on these invoices.  (S. Ressler Dep. at 486, 488).  The Court noted Scott Ressler's testimony, when deposed by plaintiffs' counsel, that, although defendants did not always keep invoices issued to Ashley Reed by the company's direct suppliers, they kept the "Fendi" invoices because "we felt that was more important in case we ever had a problem with somebody like you."  (*February 16 Decision*, 2010 U.S. Dist. LEXIS 13934, at *17 (*quoting* S. Ressler Dep. at 258:20-260:4), *see also id.* at *46-7, n.11)).  Defendants offered no evidence that they conducted any inquiry concerning the authenticity of the goods supplied by the person or persons who gave them these invoices.

### 5.    Defendants Declined to Represent that They Had the Legal Right to Sell Fendi Branded Merchandise.

In Fendi Adele, S.r.l. v. Filene's Basement, this Court found that:

> a standard-form document, titled "Purchase Order-Specific Agreement," [. . .]was prepared by Filene's and signed by Ashley Reed on June 12, 2003, and [. . .] represents an agreement by Ashley Reed to defend Filene's in the event of litigation. In its

> original form, the document contained certain representations to
> the effect that the vendor had the legal right to sell the items and
> that [their] purchase by Filene's "will not violate or infringe upon
> any existing contractual and/or Proprietary Rights owned by
> others." Significantly, when Ashley Reed signed this agreement in
> connection with its sale of handbags and small leather goods, it
> deleted these warranties from the agreement.

*Fendi Adele, S.r.l. v. Filene's Basement, Inc.*, 2009 U.S. Dist. LEXIS 32615 at *15 (S.D.N.Y.

March 24, 2009) (*adopted in* Doc. 145).  This Court noted that the "altered state" of the

document "strongly suggested that Filene's was on at least inquiry notice as to the genuineness

of the Fendi products supplied by Ashley Reed," *id*. at *16, and "is highly suggestive of

knowledge on the part of Filene's as to the suspect nature of the goods received from Ashley

Reed." *Id*. at *17.  *A fortiori*, the alteration of the document demonstrates that Ashley Reed, and

James Ressler, who altered the document before signing it, were clearly on inquiry notice

concerning the genuineness of their Fendi branded goods.  The District Court held that

defendants' bad faith was shown by the fact that, as defendants acknowledged, "James Ressler

removed from an agreement between Ashley Reed and Filene's Basement a warranty that 'Seller

[*i.e.*, Ashley Reed] has the legal right to sell the Merchandise."  (*February 16 Decision,* 2010

U.S. Dist. LEXIS 13934, at *46-7, n.11).

## POINT II

## DEFENDANTS SHOULD BE REQUIRED TO DISGORGE THEIR PROFITS FROM SALES OF COUNTERFEIT FENDI BRANDED PRODUCTS

In cases decided prior to the 1999 amendment of the trademark laws, the Second Circuit

held that "bad faith" is a prerequisite to requiring an infringing  defendant to disgorge its profits.

*George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1540 (2d Cir. 1992)); *Int'l Star Class

Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749, 753 (2d Cir. 1996).  Since the

1999 amendment, however, "willfulness is a prerequisite only when recovery of profits is sought

for a violation of section 1125(c) -- which prescribes remedies for dilution of famous marks."

*Nike, Inc. v. Top Brand Co.*, 2005 U.S. Dist. LEXIS 42374, at *32 (S.D.N.Y. July 13, 2005).

Although the District Court granted summary judgment for Fendi and against Ashley Reed and

the Resslers for trademark dilution, it also granted summary judgment for Fendi and against

these defendants for trademark counterfeiting and false designation of origin in violation of 15

U.S.C. §§1114(a) & 1125(a).  No showing of willfulness is necessary to recover profits under

these sections.  *Id.*  Indeed, the three United States Courts of Appeals that have addressed this

issue in light of the 1999 amendment to the Lanham Act have held that bad faith is no longer

required.  *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006); *Banjo Buddies,*

*Inc. v. Renosky*, 399 F.3d 168, 171, 174 (3d Cir. 2005); *Quick Tech., Inc. v. Sage Group PLC*,

313 F.3d 338, 347-49 (5th Cir. 2003); *see also Schneider Saddlery Co., Inc. v. Best Shot Pet*

*Prods. Int'l*, LLC, 2009 U.S. Dist. LEXIS 27227, at *64-*66 (N.D. Ohio Mar. 31, 2009) ("[a]ll

of the appellate courts that have considered this issue following the 1999 amendments have

expressly dispensed with the requirement of bad faith.").

     In *Nike*, Judge Wood held that willfulness functions as an equitable consideration in

determining whether to order disgorgement of profits.  2005 U.S. Dist. LEXIS 42374 at *25-6.

Courts are thus vested with discretion under principles of equity to consider whether the

disgorgement remedy is appropriate in each case.

     Whether the requirement of bad faith is still in effect, or whether defendants' intent is,

instead an equitable consideration, it is clear that defendants should be required to disgorge their

profits.  As the Court held in the February 16 Decision:

> The record in this case also reflects Defendants' bad faith because
> Alberto Fabbri, Plaintiffs' chief financial officer, testified that he
> examined several invoices produced by Defendants purporting to
> be issued to Fendi or its suppliers, some dated as early as 1999,

> and that he determined that these invoices are not genuine. . . .
> Further evidence of bad faith includes: Defendants'
> acknowledgment that in 2003 James Ressler removed from an
> agreement between Ashley Reed and Filene's Basement a warranty
> that "Seller [*i.e.*, Ashley Reed] has the legal right to sell the
> Merchandise," . . . and Defendants' acknowledgment that, without
> investigating the genuineness of the Fendi-branded merchandise in
> their inventory after this lawsuit was initiated, they returned that
> merchandise to its sources . . . .

2010 U.S. Dist. LEXIS 13934, at *46 n.11 (citation omitted).  Defendants have certainly

proffered no evidence from which their good faith might be inferred.  (*Id.* at *46.) Accordingly,

disgorgement is appropriate.

Regardless, therefore, whether plaintiffs have demonstrated that treble damages are

warranted, this Court in its discretion should order defendants to disgorge their illicit profits from

the sale of Fendi branded products.


### POINT III

### DEFENDANTS' PROFITS FROM THEIR SALES OF FENDI BRANDED GOODS ARE ESTABLISHED BY UNCONTROVERTED EVIDENCE

Defendants' document production reflected total sales of Fendi branded products of

$5,034,269. (Declaration of James Donohue Decl. ("Donahue Decl.") Ex. 3) (Dkt. 91) (filed

under seal).  In discovery, documents obtained from customers of Ashley Reed reveal an

additional $4,960,927 in sales not disclosed by defendants. (Donohue Decl. Ex. 3). Defendants

cannot dispute that they made $9,995,196 in sales of Fendi branded handbags and small leather

goods. (*Id.*).  In fact, defendants did not put forward any evidence of their costs, and their

damages expert, Neil Bressler, made no calculations whatsoever concerning deductions to be

taken from sales.  The entirety of his expert report states as follows:

> My resume is attached as Exhibit A, and for the past 29 years I
> have been a Certified Public Accountant. From approximately
> 2003, 1 have been the accountant for Ashley Reed Trading.

The calculation of the profit earned by Ashley Reed Trading, Inc. for the sale of Fendi products in any particular year would commence by determining the sales of Fendi product less any returns and allowances.  From this amount one would deduct the cost of acquiring the goods. This would include the cost of merchandise, duty, and freight. The net balance would represent the gross profit margin earned on sales.  Generally accepted accounting principals [sic] would necessitate determining the amount of the company's overhead to apply in order to determine the final or net profit or loss for each year.  Examples of overhead would include salaries, rent, and warehousing costs as contained in the company's tax return and financial statements.

The ratio of Fendi sales to total sales for the same year should then be multiplied by the total overhead for that year to determine this amount. Subtracting this overhead from the gross margin would then yield the net profit or loss for each year.

There are no articles written by myself nor have I been asked to testify in court during the past four years.

My rate of compensation for the work performed in this matter is $350 per hour.

(Defs. 56.1 Reply (Doc. 98) ¶136).

The only doubts in this case concerning the extent of defendants' infringing activity are the result of defendants' poor recordkeeping.[5]  Counterfeiters' records are often "nonexistent, inadequate or deceptively kept in order to willfully deflate the level of counterfeiting activity actually engaged in . . . ."  *Polo Ralph Lauren, L.P. v. 3M Trading Co.*, 1999 U.S. Dist. LEXIS 7913, at *11 (S.D.N.Y. Mar. 22, 1999).  In such cases, courts "must rely on less certain methods of proof" and may be "forced to calculate damages based on indirect and circumstantial

---

[5]     *See Chesa*, 425 F. Supp. at 238 ("[W]hen a party frustrates proof of damages, either by withholding facts or through inaccurate record keeping, any doubts . . . will be resolved against that party, and the fact-finder may calculate damages at the highest reasonably ascertainable value."); *Aris Isotoner, Inc. v. Dong Jin Trading Co., Inc.*, 17 U.S.P.Q.2d 1017, 1022 (S.D.N.Y. 1989) ("the court may resolve any doubts against the defendant in calculating profits, particularly if the uncertainty is due to the defendant's inadequate recordkeeping or failure to produce documentary evidence.").

evidence." *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 972-73 (2d Cir. 1985). In this case, because defendants failed to maintain adequate records and to produce complete records in discovery, (Defs. 56.1 Reply ¶¶ 130-32), plaintiffs' expert comprehensively analyzed defendants' unlawful sales from their incomplete records and from the records of their known customers.  His analysis went beyond what courts typically might require in similar cases.  Fendi is entitled to summary judgment for the total of Ashley Reed's sales of Fendi branded items in the amount of $9,996,196.

## POINT IV

## PLAINTIFFS ARE ENTITLED TO RECOVER TREBLE DAMAGES AND THEIR ATTORNEYS' FEES

Section 35(b) of the Trademark Act provides:

> In assessing damages under subsection (a) of this section, the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation of section 1114(1)(a) of this title. . . that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark. .. in connection with the sale, offering for sale, or distribution of goods or services.

15 U.S.C. § 1117(b).  Under this subsection, "federal courts are expected, and not merely authorized, to enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee." *Fendi S.A.S. Di Paola Fendi E Sorelle v. Cosmetic World, Ltd.*, 642 F. Supp. 1143, 1147 (S.D.N.Y. 1986); see also *Rolex Watch US.A., Inc. v. Jones*, 2002 WL 596354, *6 (S.D.N.Y. 2002).

Plaintiffs have proffered proof of their attorneys' fees in the form of their lawyers' contemporaneous records of time spent and work performed, specifying, for each attorney, the

date, the hours expended, and the nature of the work done.[6]  *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  The hourly rates applied in this case are well within the range of those that have been recently been approved in this District for lawyers of similar experience.  Although rates increased over time, the discounted hourly rates for the three experienced New York attorneys who recorded substantial time to this matter reached their peak in 2009-2010 at $550 (Mattiaccio, as compared to a standard rate of $695 in 2009 and $730 in 2010), $450 (Skulnik, as compared to a standard rate of $580 in 2009 and $610 in 2010), and $400 (Genecin, as compared to a standard rate of  $540 in 2009 and $570 in 2010).  The blended rate for all timekeepers over the life of this matter is $326.00 per hour.  *Compare, e.g.*, *Louis Vuitton Malletier v. Dooney & Bourke, Inc*., 04 Civ. 5316, 2007 U.S. Dist. LEXIS 31632 at *13 (S.D.N.Y. April 24, 2007)( awarding up to $700 per hour)(Dolinger, M.J.); *Diplomatic Man v. Nike, Inc.*, No. 08 Civ. 139, 2009 U.S. Dist. LEXIS 29343, 2009 WL 935674, at *5 (S.D.N.Y. Apr. 7, 2009)(awarding up to $650 per hour); *Crown Awards, Inc. v. Discount Trophy & Co., Inc.*, 564 F. Supp. 2d 290, 297-98 (S.D.N.Y. 2008) (awarding up to  $520 per hour).

## POINT V

## PLAINTIFFS ARE ENTITLED TO PREJUDGMENT INTEREST

The Lanham Act permits the Court to assess prejudgment interest on defendants' trebled profits and plaintiffs' attorneys' fees from the date the Complaint was filed.  The Court has

---

[6]     The entries have been redacted in order to mask privileged material and work product that may reveal plaintiffs' strategy if this litigation must continue.  If the Court should wish to examine plaintiffs' counsel's unredacted time records *in camera*, these will be made available upon the Court's request.

discretion whether to award interest, but, if it does so, the statute mandates a rate established in 26 U.S.C. § 6621(a)(2), *i.e.*, a federal rate for underpayment of income taxes.

Plaintiffs respectfully submit that the proper rate is the one specified for a "large corporate underpayment," defined as an underpayment exceeding $100,000. 26 U.S.C. § 6621 (c)(3)(A). This rate is equal to the Federal short term rate plus 5 percentage points. 26 U.S.C. § 6621(c). Defendants' liability is far in excess of the federal threshold of $100,000 for imposition of the higher rate. In addition, the Internal Revenue Code mandates that, in computing the amount of any interest required to be paid, "such interest and such amount shall be compounded daily." 26 U.S.C. § 6622(a).

Defendants' conduct amply justifies the award of interest upon their trebled profits and plaintiffs' attorneys' fees. The purpose of the prejudgment interest provision of 15 U.S.C. § 1117(b) is "to ensure that the injured party is in fact made whole by the relief he or she is granted, *and to discourage dilatory tactics in litigation under this Act.*" *See* S. Rep. No. 98-526, at 14 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3627, 3632 (emphasis added).

## CONCLUSION

For the reasons set forth above, plaintiffs respectfully request:

That defendants be found to have engaged in willful acts of counterfeiting;

Defendants be ordered to disgorge $9,995,196.00 in sales of Fendi branded handbags and small leather goods;

Plaintiffs be awarded treble damages, attorneys fees, interest and costs.


New York, New York
April 23, 2010

Respectfully submitted,

SQUIRE, SANDERS & DEMPSEY L.L.P.

By _____
    Richard L. Mattiaccio (RM 4764)
    Victor Genecin (VG 9733)
    Steven Skulnik (SS 7821)

    30 Rockefeller Plaza, 23rd floor
    New York, NY  10112
    (212) 872-9800

    *Attorneys for Plaintiffs*
    FENDI ADELE S.r.l., FENDI S.r.l., and
    FENDI NORTH AMERICA, INC.

NEWYORK/127483.6