UNITED STATES DISTRICT COURT                   ECF CASE
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------x
FENDI ADELE S.R.L., FENDI S.R.L.      :
and FENDI NORTH AMERICA                         Civil Action No.
                                      :
          Plaintiffs,                          06 CIV 0243 (RMB)(MHD)
                                      :
          vs.                         :
                                      :
ASHLEY REED TRADING, INC.
SCOTT RESSLER                         :
and JAMES RESSLER
                                      :
          Defendants.
-----------------------------------------------x


**DEFENDANTS' MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFFS'
MEMORANDUM OF LAW IN FURTHERANCE OF THE REPORT AND
RECOMMENDATION FOR WHICH THIS CASE WAS REFERRED**


Gerard F. Dunne
Law Offices of Gerard F. Dunne, P.C.
156 Fifth Avenue, Suite 1223
New York, New York  10010
Tel.: 212-645-2410
Jerry.dunne@dunnelaw.net
*Attorney for Defendants*

## **Table of Contents**

I.    Preliminary Statement ........................................................................... 1

II.   Summary of the Argument ...................................................................... 1

III.  Argument ............................................................................................... 2

      A.    The Summary Judgment standard requires that all
            inferences be drawn in favor of the non-moving party............................. 2

      B.    A finding of willfulness is required for an award of
            defendants' profits................................................................................. 3

      C.    Willful Blindness is a subjective standard.................................................. 4

      D.    Defendants did not believe that they were dealing in
            counterfeit Fendi-branded products ........................................................ 5

            1.    A legal gray market exists for Fendi-branded goods,
                  and defendants believed that they purchased
                  legitimate gray market Fendi-branded goods...................................... 5

            2.    Ashley Reed investigated the authenticity of all
                  Fendi-branded goods before purchasing, and
                  accordingly, believed that the Fendi-branded
                  goods they purchased were authentic.................................................. 6

                  a.    Fendi's memorandum mischaracterizes Judge
                        Berman's statement in the February 16 Decision
                        regarding "mere speculation and conjecture"........................... 6

                  b.    Ashley Reed believed that it purchased genuine
                        Fendi-branded products directly from Fendi
                        subcontractor factories and distributors ................................. 7

                  c.    Ashley Reed believed it purchased genuine Fendi-
                        branded products from secondary sources based
                        on inquiries made by Ashley Reed prior to
                        purchasing goods on the gray market ..................................... 8

            3.    Fendi mischaracterizes the law and the findings of fact
                  regarding Ashley Reed's bad faith, and even if all
                  such facts were true, they simply create possible inferences
                  and are inappropriate for a finding of willfulness
                  on summary judgment ................................................................... 11

         a.     The 2001 Cease and Desist letter is
insufficient to establish willfulness ...................................... 11

         b.     Ashley Reed explicitly provided Filene's
Basement with a guarantee that the products
they sell are "not counterfeit." ............................................ 12

         c.     Ashley Reed is small company, which explains
the return of goods to their suppliers, and
the incomplete records of Ashley Reed............................... 13

E.     Even if an accounting is found to be appropriate, Fendi has
Presented no evidence of counterfeiting prior to 2005, and
accordingly any accounting should not include any such goods ................ 14

F.     Ashley Reed's sales did not total the amount claimed
by Fendi's expert, and their profits are not to be
measured as their total sales........................................................ 15

G.     Prejudgment Interest and Attorneys' Fees are not
appropriate in this case, and the amount of Attorney Fees
relies on new evidentiary submissions, and is not part of
the current report and recommendation, and thus is not
properly before this court ......................................................... 16

H.     Conclusion .............................................................................. 18

**Table of Authorities**
## Cases

*Aedes De Venustas v. Venustas Int'l, LLC,*
   2008 WL 4735223, *2 (S.D.N.Y. 2008) ....................... 3

*Am. Int'l Group, Inc. v. London Am. Int'l Corp.,*
   664 F.2d 348 (2d Cir. 1981) ....................... 19

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ....................... 2, 3

*A Touch of Class Jewelry Co. v. J.C. Penney Co.,*
   2000 WL 1224804, at *1 (E.D. La. 2000) ....................... 4, 9

*Brown v. Quiniou,*
   744 F. Supp. 463 (S.D.N.Y. 1990) ....................... 2, 19

*Burberry Ltd. and Burberry USA v. Designers Imports, Inc.,*
   2010 WL 199906, *5 (S.D.N.Y. 2010) ....................... 4, 19

*Calvin Klein Jeanswear v. Tunnel Trading,*
   2001 WL 1456577 (S.D.N.Y.2001) ....................... 3

*Century 21 Real Estate LLC v. Bercosa Corp.,*
   666 F. Supp. 2d 274, 298-299 (EDNY 2009) ....................... 18

*Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,*
   902 F.2d 174 (2d Cir.1990) ....................... 2

*Design Solange, Ltd. v. Lane Bryant, Inc.,*
   205 F.3d 1322 (2d Cir. 2000) (unpublished) ....................... 4

*George Basch Co. v. Blue Coral, Inc.,*
   968 F.2d 1532, 1537, 1540 (2d Cir.1992) ....................... 3, 4

*Green v. Torres,*
   361 F.3d 96, 98 (2d Cir. 2004) ....................... 18

*Hard Rock Café Licensing Corp. v. Concession Services Incorporated,*
   955 F.2d 1143, 1149 (7th Cir. 1992) ....................... 4, 5, 9

*Island Software & Computer Serv. v. Microsoft Corp.,*
   413 F.3d 257, 260-65 (2d Cir.2005) ....................... 4, 5, 9, 13

*Johnson v. Ga. Highway Express, Inc.,*
   488 F.2d 714, 717-19 (5th Cir.1974) ....................... 18

*King v. JCS Enterprises, Inc.,*
   325 F.Supp.2d 162, 166 (E.D.N.Y.2004) ....................... 18

*K Mart Corp. v. Cartier, Inc.,*
    486 U.S. 281, 281, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988) ................................ 5

*Life Services Supplements, Inc. v. Natural Organics, Inc.,*
    2007 WL 4437168, (S.D.N.Y. 2007) ........................................................ 3

*Lipton v. Nature Co.,*
    71 F.3d 464, 472-73 (2d Cir.1995) ........................................................ 13

*Louis Vuitton, S.A. v. Lee,*
    875 F.2d 584, 590 (7th Cir.1989) ........................................................ 4

*Luciano v. Olsten Corp.,*
    109 F.3d 111, 115 (2d Cir.1997) ........................................................ 17

*Mastercard Inter. Inc. v. First Nat. Bank of Omaha, Inc.,*
    2004 WL 326708 at *11 (S.D.N.Y.2004) ................................................ 3

*New Line Cinema Corp. v. Russ Berrie & Co.,*
    161 F. Supp. 2d 293,300-01 (S.D.N.Y. 2001) ................................... 4, 11

*Nike Inc. v. Top Brand Co.,* 2005
    U.S. Dist. Lexis 42374 (S.D.N.Y. 2005) ............................................... 3

*Polymer Tech. Corp. v. Mimran,*
    975 F.2d 58, 61 (2d Cir.1992) ........................................................ 6

*Quaratino v. Tiffany & Co.,*
    166 F.3d 422, 425 (2d Cir.1999) ........................................................ 18

*Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc.,*
    256 F.Supp. 399, 404 (S.D.N.Y.1966) ................................................ 10

*Splunge v. Shoney's, Inc.,*
    97 F.3d 488, 491 (11th Cir. 1996) ................................................... 4, 9

*United States v. Adair,*
    951 F.2d 316, 319 n.6 (11th Cir. 1992) ................................................ 5

## Treatise

*J. Thomas McCarthy,*
    5 McCarthy on Trademarks and Unfair Competition § 29:46 (4th ed.2007)..... 3, 5

## Statute

15 U.S.C. § 1117(b) ...................................................................... 16, 17

## I.  PRELIMINARY STATEMENT

The Defendants, Ashley Reed Trading, Inc. ("ARTI"), Scott Ressler and James Ressler (collectively "Ashley Reed"), in the above-captioned matter respond to the Memorandum of Law in Furtherance of the Report and Recommendation for Which this Case Was Referred of Plaintiffs, Fendi Adele S.r.l., Fendi S.r.l., and Fendi North America, Inc. (collectively "Fendi"), as set forth below.

## II.  SUMMARY OF THE ARGUMENT

Genuine issues of fact exist as to Ashley Reed's willful conduct, the extent of Ashley Reed's counterfeiting activity, as well as the amount of profits Ashley Reed made from said activity.  Accordingly, summary judgment is not appropriate on these issues.

The law of this Circuit and, more to the point, of this case, is clear, a finding of willfulness, or in the least, willful blindness, is required to award an accounting of Ashley Reed's profits.  See *Judge Berman's Decision and Order of February 16, 2010*, Docket Entry No. 132, (hereinafter the "February 16 Decision"), p. 32-33.  The actions of Ashley Reed were not done willfully, and at no time did the Ashley Reed defendants knowingly deal in counterfeit merchandise, or willfully turn a blind eye to that possibility.

Fendi's motion papers rely on overstating the facts held in the February 16 Decision, and drawing inferences in Fendi's favor.  Though Fendi states the correct standard for willful blindness, their arguments seek to lower the standard to one of negligence.

Further, even if a finding of willfulness was appropriate on Summary Judgment, Fendi has offered no justification for an award of all of Ashley Reed's profits dating back to 2001.  Twenty examined bags were found, by Judge Berman, to be counterfeit, and at

no point in the February 16 Decision does Judge Berman suggest that this finding equated to a finding that all Fendi-branded goods sold by Ashley Reed going back to 2001 were counterfeit.

All of the twenty examined bags of Ashley Reed that were found to be counterfeit (hereinafter the "Examined Bags"), were purchased in a relatively narrow window in 2005. However, Fendi was investigating Ashley Reed, including the purchasing and examining of Ashley Reed goods as far back as 2001, and Fendi has yet to offer a single counterfeit bag sold by Ashley Reed prior to 2005, nor have they offered a reason why no counterfeit bags purchased prior to the Examined Bags have been produced --- the only logical conclusion being that all Fendi-branded Ashley Reed goods purchased and examined by Fendi prior to the Examined Bags were found to be legitimate Fendi-branded goods. Accordingly, including such goods in an award of profits on summary judgment is unwarranted.

## III. ARGUMENT

### A. The Summary Judgment standard requires that all inferences be drawn in favor of the non-moving party

In resolving a motion for summary judgment, a court should assess whether there are any genuine issues of material fact, while resolving ambiguities and drawing reasonable inferences in favor of the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 177 (2d Cir.1990). "In making this determination, the district court may not resolve issues of fact; it may only ascertain whether such issues are present." *Brown v. Quiniou*, 744 F. Supp. 463, 467 (S.D.N.Y. 1990). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences

from the facts are jury functions, not those of a judge..." *Anderson*, 477 U.S. at 255.

As mentioned above, and as shown in detail below, numerous material facts are in dispute, and if such factual inferences were made in favor defendants, the non-moving party, it is clear that summary judgment is not appropriate. *Calvin Klein Jeanswear v. Tunnel Trading*, 2001 WL 1456577 (S.D.N.Y.2001) ("The competing claims of Plaintiff's witnesses and of Defendants' cannot be resolved on a motion for summary judgment. Rather, they raise a genuine dispute with respect to an essential aspect of Plaintiff's claim ... and thus are more appropriately resolved by a jury...").

**B.     A finding of willfulness is required for an award of Defendants' profits**

Despite the law of this case being clearly decided already by Judge Berman (See *February 16 Decision*, p. 32-33), and no motion for reconsideration being filed on this issue, Fendi persists in its argument that the 1999 Amendments to the Lanham Act have changed the willfulness requirement.

Although a few decisions in this Circuit support Fendi's position, such as *Nike Inc. v. Top Brand Co.*, 2005 U.S. Dist. Lexis 42374 (S.D.N.Y. 2005), cited by Fendi, more recent decisions from this Circuit have rejected Judge Wood's rationale in *Nike*. See, e.g., *Aedes De Venustas v. Venustas Int'l, LLC*, 2008 WL 4735223, *2 (S.D.N.Y. 2008); *Mastercard Inter. Inc. v. First Nat. Bank of Omaha, Inc*., 2004 WL 326708 at *11 (S.D.N.Y.2004); *Life Services Supplements, Inc. v. Natural Organics, Inc.,* 2007 WL 4437168, (S.D.N.Y. 2007).

Fendi's position has also been rejected by the leading treatise on Trademark Law. See *5 Thomas McCarthy*, McCarthy on Trademarks and Unfair Competition §30:62 (4th ed.2007) ("In fact, the 1999 amendment of Lanham Act § 35(a) was not intended to change the law by removing willfulness as a requirement for an award of profits in a

classic infringement case, but rather was meant to correct a drafting error when Congress intended to limit the recovery of damages in dilution cases.")

Moreover, the Second Circuit did address the willfulness requirement subsequent to the 1999 amendments.  See *Design Solange, Ltd. v. Lane Bryant, Inc.*, 205 F.3d 1322 (2d Cir. 2000) (unpublished) ("As to monetary relief, the jury was correctly charged on the well-settled law of this Circuit regarding monetary recovery, which requires either a finding of "wilful deception" (for an accounting of profits), or "actual consumer confusion or deception" (to recover damages)") (citing *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537, 1540 (2d Cir.1992).  The law in this Circuit is clear.  The fact that other circuits have held otherwise is completely irrelevant to this court.

### C.    Willful blindness is a subjective standard

Willful blindness requires that a defendant suspected wrongdoing and deliberately failed to investigate.  See *Island Software & Computer Serv. v. Microsoft Corp.*, 413 F.3d 257, 260-65 (2d Cir.2005); *New Line Cinema Corp. v. Russ Berrie & Co.*,161 F. Supp. 2d 293,300-01 (S.D.N.Y. 2001);  *Burberry Ltd. and Burberry USA v. Designers Imports, Inc.*, Slip Copy, 2010 WL 199906, *5 (S.D.N.Y. 2010)*; Hard Rock Café Licensing Corp. v. Concession Services Incorporated*, 955 F.2d 1143, 1149 (7th Cir. 1992); see also *Louis Vuitton, S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir.1989) (finding that willful blindness occurs when defendant fails to inquire further because he is afraid of what the inquiry might yield).

Importantly, willful blindness requires more than mere negligence.  See *Splunge v. Shoney's, Inc.*, 97 F.3d 488, 491 (11th Cir. 1996) (differentiating between actions flowing from negligence and those flowing from willful blindness); *A Touch of Class Jewelry Co. v. J.C. Penney Co.*, 2000 WL 1224804, at *1 (E.D. La. Aug. 28, 2000) (finding that

–4–

negligence, and even gross negligence, are insufficient to support a finding of willful infringement or blindness).  "A showing of negligence or mistake is not sufficient to support a finding of willfulness or knowledge." *United States v. Adair*, 951 F.2d 316, 319 n.6 (11th Cir. 1992); see also *Hard Rock Café Licensing, Inc.*, 955 F.2d at 1149.

A negligence standard is an objective one --- "would a reasonably prudent [person] in the [defendant's] shoes have known that the [goods] were counterfeits?" *Id*. at 1151 n.5. In contrast, the willful blindness standard is a subjective one --- "what did [the defendant] suspect, and what did he do with his suspicion?" *Id*.  The standard, importantly, is not what "should" the defendant have known or suspected.

Further, on summary judgment, willfulness cannot be proved by constructive knowledge of infringement, but must be proved by evidence of the infringer's actual knowledge.  See *Island Software & Computer Serv.*, 413 F.3d at 260-65 (2d Cir.2005) (district court finding of willfulness on summary judgment reversed by the Second Circuit where defendant repeatedly denied actual knowledge, and where the district court had accepted the plaintiff's evidence that showed a possible "reckless disregard" or "willful blindness" to the plaintiff's interest.)

### D.    Defendants did not believe that they were dealing in counterfeit Fendi-branded products.

1.    A legal gray market exists for Fendi-branded goods, and defendants believed that they purchased legitimate gray market Fendi-branded goods.

Importation of diverted or gray market goods does not violate the trademark laws in the United States.  Thomas McCarthy, 5 *McCarthy on Trademarks and Unfair Competition* § 29:46 (4th ed.2007). *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 281, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988) ("A gray-market good is a foreign-manufactured good, bearing a valid United States trademark, that is imported without the consent of the

U.S. trademark holder.")  Trademark law does not prohibit the sale of genuine goods, even if the goods are sold without the trademark owner's consent.  *Polymer Tech. Corp. v. Mimran,* 975 F.2d 58, 61 (2d Cir.1992).

Ashley Reed has for years been involved in the lawful activity of importing into the United States and trading in "gray market" products bearing prominent trademarks. (See *Declaration of Scott Ressler in Opposition to Fendi's Motion for Summary Judgment*, Docket Entry No. 100, (hereinafter "*S. Ressler Decl.*") ¶ 2.  Fendi admittedly sells their products into numerous markets around the world, and such products often become available on the secondary market at reduced prices.  (See *Defendants' Response to Plaintiffs' Rule 56.1 Statement*, Docket Entry No. 98 (hereinafter "*56.1 Response*") ¶ 5, 7, 63, 99, 100, 102; See also *Declaration of Joseph A. Dunne in Opposition to Motion for Summary Judgment*, Docket Entry No. 102 (hereinafter, "*J. Dunne Decl*"). Ex. 2).

Ashley Reed believed that all of the Fendi-branded goods they purchased were legitimate grey market goods. See *S. Ressler Decl.*

    2.    Ashley Reed investigated the authenticity of all Fendi-branded goods before purchasing, and accordingly, believed that the Fendi-branded goods they purchased were authentic.

        a.    Fendi's memorandum mischaracterizes Judge Berman's statement in the February 16 Decision regarding "mere speculation and conjecture"

Fendi asserts that the February 16 Decision held that the factual claims of Ashley Reed were no more than "mere speculation and conjecture," including "[Ashley Reed's] claims that a) they were 'involved in the lawful activity of importing into the United States and trading in 'gray market' products bearing prominent trademarks;' b) 'Ashley Reed purchased genuine Fendi products directly from the Fendi Store in Italy;' and c) '[a] large amount of Fendi-branded had been acquired from sources Fendi itself identified as

Genuine.'" *Plaintiff's Memorandum of Law*, Docket Entry No. 132, p. 2.

This is a clear misstatement of Judge Berman's findings. The findings of Judge Berman explicitly speaks to the availability of this evidence to refute the counterfeit nature of the Examined Bags, Judge Berman does not address the evidence's value in determining Ashley Reed's state of mind when making such purchases. See *February 16 Decision*, at p. 23 ("Defendants employ 'mere speculation and conjecture' that the Examined Items are not counterfeit.")

However, with respect to the over-all business activity, and the alleged willful intent of Ashley Reed, their business practices are not speculation and conjecture, they are simply the claimed facts of Defendants, based on their personal knowledge of how Ashley Reed went about obtaining Fendi-branded merchandise.

As discussed in the sections below, Ashley Reed sought verification regarding the legitimacy of all Fend-branded goods they purchased. Even if Ashley Reed cannot trace the exact source of the Examined Bags, evidence that Ashley Reed attempted to ascertain the legitimacy of all goods they purchased is not only relevant, it is the crux of the issue of willfulness!

      b.    Ashley Reed believed that it purchased genuine Fendi-branded products directly from Fendi subcontractor factories and distributors

In 2004, Scott Ressler met Lorenzo Bandinelli, a quality inspector for Fendi at the time. Mr. Bandinelli took Scott Ressler to a factory in Italy where together they toured the factory and met with the owner. Mr. Ressler was shown work orders and specifications from Fendi for the manufacture of their goods, confidential documents the Resslers believed only a legitimate Fendi authorized manufacturer would have access to. Mr. Bandinelli. inspected the Fendi-branded products produced by the factory that had

offered goods to Ashley Reed, and confirmed that the Fendi products Ashley Reed was purchasing were genuine, and of first quality. Based on the assurances of Mr. Bandinelli and the documents shown establishing the factory was authorized by Fendi to manufacture Fendi-branded products, Ashley Reed purchased Fendi-branded goods. (See *February 16 Decision*, p. 34, citing *Defs. S. Ressler Dep. Excerpts* at p. 83:4-86:9; *S. Ressler Decl.* ¶ 8-10.)

Though Fendi denies such involvement by one of their employees, such a denial is a clear issue of credibility, and assuredly not appropriate for Summary Judgment. See *February 16 Decision,* p. 34,

In the alternative, Fendi attempts to argue that even if Mr. Ressler's story is true, the actions still indicate willfulness, since such a transaction should have put Ashley Reed on "Inquiry Notice." However, such an argument is moot, since Ashley Reed did inquire about the goods, as stated above. Other than obtaining documents that assured them that the factory was a legitimate Fendi factory, they also had Lorenzo Bandinelli inspect the goods and confirm that they were not counterfeit goods. Mr. Bandinelli was one of fewer than ten quality inspectors employed by Fendi, and Ashley Reed relied on his expertise and their belief that Mr. Bandinelli was among the most qualified individuals in the world for confirming that Fendi-branded goods were not counterfeit.

Further, Ashley Reed also purchased genuine Fendi Products directly from the Fendi store in Italy. (See *S. Ressler Decl.* ¶ 11)

      c.    Ashley Reed believed it purchased genuine Fendi-branded products from secondary sources based on inquiries made by Ashley Reed prior to purchasing goods on the gray market

When purchasing goods on the gray market Ashley Reed did not simply rely on the assurances of the supplier, but reviewed the supplier's documentation for the suppliers'

purchase of the goods (see *February 16 Decision*, p. 9, citing *Defs. S. Ressler Dep. Excerpts* at p. 258:20-260:4), and often conducted side-by-side comparisons of supplier's goods with Fendi-branded goods that Ashley Reed knew to be genuine.  See *February 16 Decision*, p. 10-11, citing *Defs. S. Ressler Dep. Excerpts* at p. 269:15-270:10.

Ashley Reed did not keep any record of the side-by-side comparisons, since these were onsite physical examinations, not done on paper, and the genuine Fendi-branded goods, purchased at full retail, were returned after the examination.  See *February 16 Decision*, p. 10-11, citing *Defs. S. Ressler Dep. Excerpts* at p. 269:15-270:10. And Mr. Ressler testified that he did not think maintaining such records was necessary.  As discussed, above, when evaluating willful blindness it is not an objective "reasonable" standard of what Ashley Reed should have known and done, but a fully subjective standard as to what Ashley Reed knew and believed.  See *Island Software & Computer Serv.*, 413 F.3d at 260-65; *Splunge*, 97 F.3d at 491; *A Touch of Class Jewelry Co.*, 2000 WL 1224804, at *1; *Hard Rock Café Licensing, Inc.*, 955 F.2d at 1149.

Ashley Reed acquired Fendi-branded goods through Hidea, a billing company in Lucern Switzerland, that was offering genuine Fendi Products from manufacturers of Fendi bags, including Cinque Piu, and Ashley Reed inspected and often retained documents verifying such sources, and even turned over such documentation to Fendi's attorneys after Fendi sent a cease and desist letter in 2001.  (See *S. Ressler Decl.* ¶ 23).

In 2002 Ashley Reed purchased genuine Fendi-Branded goods from Zucker's Gifts in New York.  Fendi does not deny that through 2001, Fendi sold to Duty-free shops worldwide, and the documents show that they in fact continued to sell to Duty-free shops world-wide through 2006.  (See *Fendi's Rule 56.1 Statement*, Docket Entry No. 89, ¶ 46, *J. Dunne Decl.* Ex. 2.)  Zucker's Gifts showed Ashley Reed invoices indicating that such

goods were purchased from the Duty Free Shop in Guam in late 2001, and it was explained to Ashley Reed that these genuine goods became available from the Duty Free Shop in Guam due to the large decrease in tourism to the United States from Japan following the "9/11 " attacks.  (See *S. Ressler Decl.* ¶ 24; *J. Dunne Decl.* Ex 12-13).

A large amount of Fendi products had been acquired from sources Fendi itself identified as genuine.  In 2004 Ashley Reed also bought extensive amount of goods from a company known as Moda Oggi which acquired at least some Fendi goods from legitimate sources.  Ashley Reed demanded and inspected invoices of Moda Oggi, showing the goods came from legitimate channels, and often Ashley Reed was able to retain copies of such documents.  Numerous such invoices were produced in this litigation, and, importantly, in this suit the attorneys for Fendi have acknowledged that at least some of these goods were genuine.  (See *J. Dunne Decl.* ¶ 17 and 18, and Exs. 14 and 15.)  Though, as Fendi points out in their papers, Moda Oggi has since been found to be a seller of counterfeit merchandise, such findings were not made until 2010, and certainly is irrelevant as to Ashley Reed's state of mind in 2004.

And as a final note, Ashley Reed, though obtaining goods at discount prices, still paid as much as hundreds of dollars per item for Fendi-branded goods.  See e.g *J. Dunne Decl.* ¶ 16, Ex. 12.  Suspiciously low prices can be used as evidence toward an inference of willfulness, and it is certainly possible that a juror could draw the opposite inference in favor of Ashley Reed, since there is no reason why a supplier would pay such high prices for goods they knew to be counterfeit goods.  See e.g. *Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc.*, 256 F.Supp. 399, 404 (S.D.N.Y.1966) (a suspiciously low price allows an inference of constructive knowledge of the illegitimacy of the product).

-10-

3.   Fendi mischaracterizes the law and the findings of fact regarding Ashley Reed's bad faith, and even if all such facts were true, they simply create possible inferences, and are inappropriate for a finding of willfulness on summary judgment .

a.   The 2001 Cease and Desist letter is insufficient to establish willfulness

The 2001 Cease and Desist letter was not ignored by Ashley Reed.  Ashley Reed responded, including multiple subsequent meetings with Fendi's attorneys.  Other than categorically stating that Ashley Reed's goods were counterfeit, Fendi provided no concrete basis for such claims, such as an actual counterfeit bag of Ashley Reed, and tellingly, as discussed above, such a bag has still not been produced, presumably because such a bag did not exist in 2001.  In fact, in these meetings Ashley Reed was informed that goods purchased on the secondary market that originated from authorized sources are in fact genuine and legal for Ashley Reed to sell.  *S. Ressler Decl.*  ¶ 19-22.

Fendi mischaracterizes the law when they state that "this and other districts hold that sales of counterfeit goods after receipt of a cease and desist letter are willful as a matter of law."  The opinions cited by defendant engaged in a factual inquiry, and found the cease and desist letter, in those specific cases, served as probative evidence of wilfulness, however such a determination is a matter of fact, not law.  See e.g *New Line Cinema Corp. v. Russ Berrie & Co.*, 161 F. Supp. 2d 293, 300-01 (S.D.N.Y. 2001) ("It is a stretch to label defendant's infringement willful where the plaintiff was asked to provide concrete support for its claim of infringement...").

Further, not only did Fendi fail to provide Ashley Reed with an actual counterfeit bag, Ashley Reed provided substantial documentation including invoices from their suppliers evidencing the authenticity of the goods and a profit report, and Ashley Reed was instructed by Fendi Attorneys that they would be in touch should any problems with

-11-

the documentation arise.  After receiving the documents, Fendi was silent until the beginning of this litigation, nearly 5 years later. *S. Ressler Decl.*  ¶ 19-22.

At most, such a cease and desist letter put Ashley Reed on inquiry notice, and as discussed above, Ashley Reed did inquire about the purchase of Fendi-branded goods before purchases were made.

> b.      Ashley Reed explicitly provided Filene's Basement with a guarantee that the products they sell are "not counterfeit."

Though Fendi points to the factual finding that Ashley Reed deleted a portion of their supplier agreement which warrantied that Ashley Reed had the legal right to sell the merchandise, such an action does not show Defendants' willfulness in selling counterfeit goods, in light of the warranties provided in paragraph 1(a) of the same agreement. Paragraph 1(a) explicitly provides a warranty that "the merchandise ordered below are *genuine and authentic goods* from the owner of the proprietary rights and are *not counterfeit.*"  See Exhibit 9 to the *Declaration of Victor Genecin*, Docket Entry No. 90-3 (emphasis added); *Rule 56.1 Response,* ¶ 148.

As gray market distributors, Ashley Reed was unsure of their right to claim that they had the "legal right" to sell such goods, since they were not authorized by Fendi, and they did not wish to mislead their buyer into thinking that they were authorized distributors.  However, by leaving paragraph 1(a) in the agreement they clearly established their intent to warranty, and their belief, that the goods were not counterfeit.

In fact, it is reasonable that a Jury could find such an action indicative of Ashley Reed's good-faith.  By deleting such a paragraph, they risked losing the potential business of Filene's Basement.  However, despite such a financial risk, in the course of fair dealings, they wished to be forthright and make it abundantly clear to Filene's Basement

that they were not authorized distributors of Fendi-branded goods.  However, Ashley Reed clearly stood behind their belief in the authentic, non-counterfeit nature of the goods they were selling.

> c.    Ashley Reed is a small company, which explains the return of goods to their suppliers, and the incomplete records of Ashley Reed.

Ashley Reed is a small company.  See *February 16 Decision*, p. 10, citing *Defs. S. Ressler Dep. Excerpts* at p. 566:3-19.  At the onset of this suit Ashley Reed voluntarily ceased all sales of Fendi-branded goods, and as a small operation, could not afford to leave the goods sitting in a warehouse, accordingly returned the goods for purely financial reasons.

Further, even if a jury could draw a negative inference from their return of goods, and even if the negative inference is likely, such an inference is not proper for summary judgment.  *Island Software & Computer Serv.,* 413 F.3d at 260-65 ("Nevertheless, at the summary judgment stage, although an inference of constructive knowledge or reckless conduct seems the better of the possible inferences that can be drawn, we must still draw all inferences in favor of the non-moving party"); citing *Lipton v. Nature Co.*, 71 F.3d 464, 472-73 (2d Cir.1995).

Ashley Reed's records are incomplete, however Fendi overstates the fact when they say "Defendant did not keep invoices issued to Ashley Reed." Ashley Reed "did not *always* keep" all of their invoices, but they did often retain them.  See *February 16 Decision*, p. 9-10, citing *Defs. S. Ressler Dep. Excerpts* at p. 258:20-260:4. (emphasis added).  Again this is explained by Scott Ressler as factor of running a small company with minimal staff and space. *Id*.  Further, numerous documents were lost due to a computer crash in early 2004.  See *Rule 56.1 Response* ¶ 141.  However, Ashley Reed

maintained and produced representative documentation indicative of the documents they examined and received, and they believed that such documents established the availability of authentic goods to their supplier, and thus the authenticity of the goods they were purchasing, and numerous such documents were produced in this litigation.

Ashley Reed has produced numerous invoices obtained from it's suppliers to verify authentic sources for the goods, including for instance Cinqui Piu, whom Ashley Reed believed to be a direct affiliate of Fendi, Duty Free shops, and Euroa Moda,(*See Rule 56.1 Response* ¶ 152 - 156).  Though some of the invoices supplied to Ashley Reed by their suppliers have been later determined to be forgeries, Ashley Reed was the victim of any such forgeries, not the culprit.

Again, perhaps such document deficiencies can create a an inference that a jury may make, however such inferences are not appropriate for a finding of willfulness on Summary Judgment.

> **E.   Even if an accounting is found to be appropriate, Fendi has presented no evidence of counterfeiting prior to 2005, and accordingly any accounting should not include any such goods.**

The Examined Bags are the sole basis for the finding of defendants' counterfeiting, and it is undisputed that all of the Examined Bags were purchased in 2005, or retrieved from Ashley Reed's customer's (Filene's Basement) warehouse in 2007. (See *56.1 - Defendants' Statement of Material Facts as to Which There are Genuine Disputes*, Docket Entry No. 98,  ¶ 5.)  It is well documented that Fendi has been investigating defendants since late 2000, and in fact had purchased or caused to be purchased Fendi-branded goods from Ashley Reed as far back as late 2000, yet no allegedly counterfeit items from prior to 2005 have been offered.  *Id*. at ¶ 6-10;  *S. Ressler Decl*. ¶ 19-21; See also *J. Dunne Decl*. Ex. 4.)

-14-

Accordingly, not only is there a lack of evidence to support a finding that Ashley Reed's goods were counterfeit prior to 2005, the lack of evidence combined with the known investigations of Fendi going back to 2001 provide more evidence to support a finding by a jury that goods prior to 2005 were not counterfeit.

In the alternative, Defendants have sought reconsideration of the dismissal of their affirmative defense of Laches.  Should it be the case that Fendi did in fact have counterfeit bags in 2001, they have brought fourth no reason for waiting over four years to file suit against defendants, other than to simply wait for the damages to increase. Fendi should not be rewarded for standing idly by,  knowing that Ashley Reed is generating sales, and then come in four years later, when the sales have accumulated, and demand them as damages

**F.**    **Ashley Reed's sales did not total the amount claimed by Fendi's expert, and their profits are not to be measured as their total sales**.

Fendi incorrectly states that Ashley Reed provided no justification for rejecting the calculations of their expert, James Donohue. Fendi's expert relied on unreliable data when calculating sales and therefore a genuine issue of fact remains as to Ashley Reed's sales.

The expert relied on un-reliable documents, as opposed to the invoicing records on file at Ashley Reed's factor Rosenthal & Rosenthal, LLC.  (*56.1 Response* ¶ 131,132,134-136; See also *The Declaration Gerard F. Dunne*, Docket Entry No. 99, ¶ 3.) Importantly, Fendi's expert did not distinguish between sales made during the time the bags Mr. Minerva examined were sold by Ashley Reed (2005 and later), and sales in a prior time period when acknowledged genuine goods were sold (pre-2005).  As mentioned above, Fendi has offered no evidence of counterfeiting activity prior to 2005. (*J. Dunne Decl.* ¶ 19)

-15-

Further, Donohue used unreliable documents that included purchase orders (See *Declaration of James Donohue,* Docket Entry No. 91 (*"Donohue Decl."*), ¶ 19 and ¶ 24 (Filed Under Seal)).  A purchase order is subject to product availability and does not necessarily represent a quantity of goods that was in fact purchased and shipped.

The report used by Donohue in regard to Saks 5th Avenue is inaccurate.  The report was created and titled by Saks "Fendi Receipts Reports..." (See *J. Dunne Decl.* ¶ 4).  However, Donohue admits that the report contained "Fendi and non Fendi SKUs." (*Donohue Decl.* ¶ 23).  Donohue admits that he was aware that the report alleging to be Fendi Receipts was, in at least one aspect, not reliable.  Yet, Donohue states he "manually reviewed each SKU and identified the Fendi Style Numbers."  (*Donohue Decl.* ¶ 23).  Donohue does not disclose how he has the knowledge to separate such style numbers, nor has he given any reason for his assumption that the report was reliable despite the clear indicia of non-reliability. See *Rule 56.1 Response,* ¶134.

Further, plaintiff simply ignores the documents provided by Ashley Reed when they state that "defendant has offered no documentation of its expenses."  Ashley Reed has produced numerous documents as well as testimony regarding their costs to be deducted when calculating their profits, including cost of goods, salaries and overhead expenses.  (See *S. Ressler Decl.* ¶ 28-29; *J. Dunne Decl.* ¶ 2-4; *56.1 Response* ¶ 136; *56.1 - Defendants' Statement of Material Facts as to Which There are Genuine Disputes* ¶ 5).

> **G.    Prejudgment Interest and Attorneys' Fees are not appropriate, and the amount of Attorneys' Fees was not raised on Summary Judgment, relies on new evidentiary submissions, and is not part of the current report and recommendation, and thus is not properly before this court**.

For the reasons set forth above, a finding of willfulness on summary judgment is not appropriate in this case.  Under Section 35(b) of the Lanham Act, the language is clear, and an award of prejudgment interest and attorneys' fees requires a showing that

the violation "consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark..." 15 U.S.C. § 1117(b). Clearly absent a finding of willfulness, an award of prejudgement interest and/or attorneys' fees is not appropriate under Section 35(b).

However, even if the court does find an award of attorneys' fees is warranted, the amount of such an award is assuredly not properly before this court. The February 16 Decision referred this case for a determination of the appropriateness of a finding of willfulness, as well as damages, however the referral speaks nothing about determining the amount of attorneys' fees. *February 16 Decision*, p.35 Order.

Even more to the point, the amount of attorney fees was not briefed on summary judgement. In fact, in the original summary judgment brief of plaintiffs, they themselves state that, "Plaintiffs are therefore entitled to costs and attorneys' fees and respectfully request that the Court direct a hearing to fix the amount of such an award." *Plaintiff's Memorandum of Law in Support of Summary Judgement*, Docket Entry No. 88, p.19, point VI.

Clearly, Plaintiff did not intend to place the issue of the amount of attorneys fees before the court on summary judgment, but instead requested a factual hearing should such an award be granted. Defendants, accordingly request the same at this time.

Further, the evidence presented in the Declaration of Richard Mattiaccio is not properly on the record, and the re-opening of the record to submit evidence regarding such calculations should not permitted at this time. If the court does wish to allow the record to be re-opened, Defendants request 30-days to submit additional rebuttal evidence on the *Lodestar* issues regarding the reasonableness of not only the rates, but each of the itemized charges included. See *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d

-17-

Cir.1997); *King v. JCS Enterprises, Inc.*, 325 F.Supp.2d 162, 166 (E.D.N.Y.2004); citing *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004); *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir.1999).  And as stated above, Defendant's further request a factual hearing regarding the reasonableness of any such a calculation.

Lastly, such a calculation is not appropriate until after a damage calculation.  The relief sought versus the final relief granted, as a means to measure "the amount involved and the results obtained," is certainly relevant to any fee calculation.  *Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 298-299 (EDNY 2009); citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974).

## H.    Conclusion

Fendi's motion papers simply ignore any of the contrary evidence that defendants have presented, be it testimonial or documentary.  Ashley Reed has submitted evidence to create a sufficient question of fact as to the wilfulness of their conduct.

Even if such a determination is made, Fendi is clearly not entitled to the full sum they have requested, as goods prior to 2005 have not been found counterfeit, the expert report of Mr. Donohue is unreliable, and evidence of Ashley Reed's expenses and costs has been completely ignored.

It is requested, that should an accounting be awarded, such an accounting must include a cut-off date regarding the relevant profits.  At that time we request a separate hearing regarding the actual calculations, so that Fendi can present their evidence of Defendant's sales as of the relevant date, and Ashley Reed can present the relevant costs as rebuttal to be deducted as of the same date.

However, in the present case, a finding of willfulness is certainly not appropriate on summary judgement.  It has long been established that the issue of whether

-18-

infringement was willful is generally a question of fact for the jury.  See *Am. Int'l Group, Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 353 (2d Cir. 1981) ("issues such as good faith are singularly inappropriate for determination on summary judgment"); *Brown v. Quiniou*, 744 F. Supp. 463, 473 (S.D.N.Y. 1990) (same).  When willfulness is found on summary judgment, the defendants generally failed to provide any facts in opposition to the claim of willfulness, or willful blindness.

For instance, in the recent *Burberry* decision cited by plaintiffs, the defendant himself testified that he purchased goods from "anonymous internet vendors", and "did not always question his vendors about the source of their Burberry merchandise." *Burberry Ltd.*, Slip Copy, 2010 WL 199906, at *5. Further, the defendants were violating a prior settlement agreement with Plaintiff. *Id*. at *9.

Ashley Reed has continuously testified that they conducted investigations prior to every purchase, including side-by-side comparisons of the goods, inspection of invoices showing the goods authenticity, and in some case even having someone they believed to be one of the most qualified individuals in the world, a Fendi quality inspector, inspect the goods to ensure their authenticity.

A finding of willfulness based on the subjective standard of willful blindness is clearly inappropriate for summary judgment.

New York, New York
Dated:  May 7, 2010

Respectfully Submitted,

/s/   Gerard F. Dunne
Gerard F. Dunne
Law Offices of Gerard F. Dunne, P.C.
156 Fifth Avenue, Suite 1223
New York, New York  10010
Tel.: 212-645-2410
Jerry.dunne@dunnelaw.net
*Attorney for Defendants*

-19-