Gerard F. Dunne
Law Offices of Gerard F. Dunne, P.C.
Attorney For Defendants
156 Fifth Avenue, Suite 1223
New York, New York  10010
Tel.: 212-645-2410
Attorney for Defendants

UNITED STATES DISTRICT COURT                ECF CASE
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------x
FENDI ADELE S.R.L., FENDI S.R.L.   :
and FENDI NORTH AMERICA                      Civil Action No.
                                   :
         Plaintiffs,                         06 CIV 0243 (RMB)(MHD)
                                   :
         vs.
                                   :
ASHLEY REED TRADING, INC.
SCOTT RESSLER                      :
and JAMES RESSLER
                                   :
         Defendants.
-----------------------------------------------x


**DEFENDANTS' REPLY TO PLAINTIFFS OPPOSITION TO REQUEST FOR RECONSIDERATION OF THE DECISION GRANTING SUMMARY JUDGMENT DISMISSING DEFENDANTS' AFFIRMATIVE DEFENSES OF LACHES AND ACQUIESCENCE**


**I.     PRELIMINARY STATEMENT**

The Defendants, Ashley Reed Trading, Inc., Scott Ressler and James Ressler (collectively "Ashley Reed"), in the above-captioned matter hereby submit this reply regarding their request for reconsideration of the Decision & Order filed and entered in the above captioned case on February 16, 2010 (hereinafter "the Decision"), Docket Entry No. 120.

## II. DISCUSSION

### A. The Decision overlooks the allegations of Ashley Reed as to the final end-result of the 2001 discussions.

In Fendi's opposition, they misunderstand the alleged relevant facts of Ashley Reed with regard to the 2001 meetings. Ashley Reed does not deny that at the onset of the various discussions Fendi charged Ashley Reed with counterfeiting, and the Decision clearly addressed such facts.

However, it is Ashley Reed's testimony that the meetings ended without affirmative charges of counterfeiting or even a basis for such charges. Fendi has offered no evidence to suggest otherwise, and the Decision overlooks these facts.

In fact, Fendi has completely failed to show a single response to the letter of Brett Meyer attached as Exhibit 4 to the *J. Dunne Decl.*

Though the facts of *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 67 (2d Cir. 2002), do differ, the key element is that a Cease and Desist letter in and of itself is not enough to automatically discard a defense of Laches or Acquiescence. Also, for example, see *New Line Cinema Corp. v. Russ Berrie & Co.*, 161 F. Supp. 2d 293, 300-01 (S.D.N.Y. 2001), where, though in the context of willfulness, the court discussed the need for a plaintiff to substantiate its claims made in a cease and desist letter.

The 2001 Cease and Desist letter was not ignored by Ashley Reed, instead they responded promptly and in good-faith. However, other than categorically stating that Ashley Reed's goods were counterfeit at the onset of the dispute, Fendi provided no concrete basis for such claims when challenged, such as production of an actual counterfeit bag of Ashley Reed, and tellingly, such a bag has still not been produced — presumably because such a bag did not exist in 2001. In fact, in these meetings Ashley

Reed was informed that goods purchased on the secondary market that originating from authorized sources are in fact genuine and legal for Ashley reed to sell. *S. Ressler Decl.* ¶ 19-22.

Further, not only did Fendi fail to provide Ashley Reed with an actual counterfeit bag, Ashley Reed provided substantial documentation including invoices from their suppliers evidencing the authenticity of the goods and a profit report, and Ashley Reed was instructed by Fendi Attorneys that they would be in touch should any problems with the documentation arise. After receiving the documents, Fendi was silent until the beginning of this litigation, 4 years later. *J. Dunne Decl.*, Ex, 4; S. *Ressler Decl.* ¶ 19-22.

**B.     Fendi's failure to produce a single counterfeit bag sold by Ashley Reed prior to 2005 despite investigations dating back to 2001.**

The dismissal of both of Defendants' affirmative defenses of Laches and Acquiescence can have a strong impact on the damages in this case. Defendants wish to rely on, and believe they are entitled to, a two-prong defense at trial regarding their damages — either:

(1) in light of the known investigations of Fendi including the purchase of Ashley Reed goods going back to 2001, Fendi's failure to provide a single counterfeit bag from 2001-2005 can only be explained by one reason — that such a bag did not exist, and as such, this is strong evidence that Ashley Reed was selling genuine goods during that period, and accordingly profits from the period of 2001-2005 are not part of any possible damages in this suit; or

(2) despite having counterfeit bags in 2001, Fendi, without reason, delayed for over four years before bringing suit, and such a delay substantially prejudiced Defendants.

Though the Decision held that Fendi's delay was not unreasonable, Fendi has yet to provide a single reason why they delayed for four years if they in fact had counterfeit

goods. Defendants' are assuredly entitled to a jury trial to determine the reasonableness of Fendi's delay, particularly in light of the fact that Fendi was well aware that such a delay would allow the possible available damages, Ashley Reed's profits, to increase by millions of dollars during the delay.

Plaintiffs are entitled to delay in bringing suit, but such a delay is generally justified by Plaintiffs' need to establish its case. See *Profitness Phys. Therapy Ctr.*, 314 F.3d at 70 ("[A] plaintiff should not be obligated to sue until its right to protection has ripened such that plaintiff knew or should have known, not simply that defendant was using the potentially offending mark, but that plaintiff had a provable infringement claim against defendant.".) If Fendi in fact had counterfeit bags in 2001, their infringement claim had certainly ripened, and it is assuredly possibly that a reasonable jury could find that a delay of four years despite having provable claims was unreasonable.

And, as stated in Defendants' summary judgment opposition papers, though Defendants did not move for summary judgment, Fendi's failure to produce any evidence that Ashley Reed sold counterfeit Fendi-branded goods from 2001-2005, despite their investigations, is certainly telling.

Defendants have created a legitimate question of fact as to both of these possible defenses, and accordingly Defendants are entitled to preserve the availability to present both of the defenses to the jury.

### C. Ashley Reed did not act in bad-faith.

Fendi argues that this court has already held that Defendants acted in bad-faith. The court has suggested that there is evidence that reflects bad-faith (see *The Decision* n.11), however, the holding on page 26 and 27 of the Decision relies on the New York standard for bad-faith in an Unfair Competition setting, which simply requires that the goods are counterfeit. (see *The Decision* p. 26-27).

The reflective evidence of bad-faith noted in note 11 of the Decision, does indicate evidence that a jury could use to make a negative inference, however such an inference was not held in the Decision, nor would such an inference be appropriate on summary judgment. Even if such an inference is likely, it is inappropriate on summary judgment. See *Island Software & Computer Serv.*, 413 F.3d at 260-65 (2d Cir.2005) ("Nevertheless, at the summary judgment stage, although an inference of constructive knowledge or reckless conduct seems the better of the possible inferences that can be drawn, we must still draw all inferences in favor of the non-moving party"); citing *Lipton v. Nature Co.*, 71 F.3d 464, 472-73 (2d Cir.1995).

The testimony of Alberto Fabbri is subject to questions of credibility that cannot be resolved on summary judgment. It is Defendants' belief, and the record supports the claim, that Alberto Fabbri simply categorically denies the existence of the gray market, and any possible evidence of such is deemed inauthentic.

For example, Mr. Fabbri denied the existence of Duty Free channels for Fendi-branded goods, one of the more common sources of discounted high-end branded merchandise, and one of Ashley Reed's sources. As pointed out in *Defendants' Memorandum in Opposition to Summary Judgment*, Docket Entry No. 98, Fendi's own documents contradict Mr. Fabbri's claims regarding Fendi's Duty-Free distribution channels. (See *Id.* p. 6-7; *56.1 Response* ¶ 46, 48, 102, 153-156). Mr. Fabbri claims that after 2001, Fendi no longer sold into Duty-Free shops outside of North America, yet this is clearly contradicted by Fendi's own distribution charts (*56.1 Response* ¶ 46; *J. Dunne Decl.* Ex. 2).

In their Reply papers Fendi did not even attempt to explain or deny this contradiction. Further, even if all testimony of Mr. Fabbri is found to be reliable, and that some invoices provided to Ashley Reed were forgeries, the forgery was done by Ashley Reed's supplier as a means to deceive Ashley Reed, and Defendants are the victim, not

5

the culprit.

Note 11 of the Decision also points out that Ashley Reed deleted a portion of their supplier agreement with Filene's Basement which warrantied that Ashley Reed had the legal right to sell the merchandise. Such an action does not show Defendants' willfulness in selling counterfeit goods, in light of the warranties provided in paragraph 1(a) of the same agreement. Paragraph 1(a) explicitly provides a warranty that "the merchandise ordered below are *genuine and authentic goods* from the owner of the proprietary rights and are *not counterfeit.*" See Exhibit 9 to the *Declaration of Victor Genecin*, Docket Entry No. 90-3 (emphasis added); *Rule 56.1 Response,* ¶ 148.

As gray market distributors, Ashley Reed was unsure of their right to claim that they had the "legal right" to sell such goods, since they were not authorized by Fendi, and they did not wish to mislead their buyer into thinking that they were authorized distributors. However, by leaving paragraph 1(a) in the agreement they clearly established their intent to warranty, and their belief, that the goods were not counterfeit.

In fact, it is reasonable that a jury could find such an action indicative of Ashley Reed's good-faith. By deleting such a paragraph, they risked losing the potential business of Filene's Basement. However, despite such a financial risk, in the course of fair dealings, they wished to be forthright and make it abundantly clear to Filene's Basement that they were not authorized distributors of Fendi-branded goods. However, Ashley Reed clearly stood behind their belief in the authentic, non-counterfeit nature of the goods they were selling.

Ashley Reed is a small company. See *February 16 Decision*, p. 10, citing *Defs. S. Ressler Dep. Excerpts* at p. 566:3-19. At the onset of this suit Ashley Reed voluntarily ceased all sales of Fendi-branded goods, and as a small operation, they could not afford to leave goods sitting in a warehouse, and accordingly returned the goods for financial

6

reasons.

Further, even if a jury could draw a negative inference from their return of goods, and even if the negative inference is likely, such an inference is not proper for summary judgment. *Island Software & Computer Serv.,* 413 F.3d at 260-65 ("Nevertheless, at the summary judgment stage, although an inference of constructive knowledge or reckless conduct seems the better of the possible inferences that can be drawn, we must still draw all inferences in favor of the non-moving party"); citing *Lipton v. Nature Co.*, 71 F.3d 464, 472-73 (2d Cir.1995).

## V.     Conclusion

Fendi has yet to offer a basis for the claims made in their 2001 cease and desist letter, nor have they offered a single reason for their delay of more than four years between the 2001 cease and desist letter/meetings and the filing of the current suit, and simply rely on the 6-year statute of limitations to defeat the defense of laches.  Such an unreasonable delay certainly, in the very least, is a relevant defense to the availability of monetary damages in the current suit for the Fendi-branded goods sold dating back to 2001.  It is respectfully submitted that the Decision overlooks the availability of the affirmative defense of laches as to the availability of monetary damages separate from the issue of liability.

New York, New York                              Respectfully submitted,
Dated:  May 7, 2010

                                             /s/ Gerard F. Dunne
                                        Gerard F. Dunne (GD 3323)
                                        Law Office of Gerard F. Dunne, P.C.
                                        156 Fifth Avenue, Suite 1223
                                        New York, NY  10010
                                        212-645-2410; Fax:212-645-2435
                                        *Attorney for Defendants, Ashley Reed Trading,*
                                        *Inc., Scott Ressler and James Ressler*

7