UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

FENDI ADELE S.R.L., FENDI S.R.L., and : 
FENDI NORTH AMERICA, INC., :
:
            Plaintiffs, :
:
                                          :     Case No.:  06-CV-0243 (RMB)(MHD)
     -against- :
:
ASHLEY REED TRADING, INC., :
SCOTT RESSLER and :
JAMES RESSLER, :
:
            Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**PLAINTIFFS' PARTIAL OBJECTION TO MAGISTRATE JUDGE DOLINGER'S
REPORT AND RECOMMENDATION FILED AUGUST 12, 2010 (DOC. 143)**

Richard L. Mattiaccio (RM 4764)
Victor Genecin (VG 9733)
Steven Skulnik (SS 7821)

SQUIRE, SANDERS & DEMPSEY L.L.P.
30 Rockefeller Plaza, 23rd floor
New York, NY  10112
(212) 872-9800

*Attorneys for Plaintiffs*
FENDI ADELE S.r.l., FENDI S.r.l., and
FENDI NORTH AMERICA, INC.

**Preliminary Statement**

On February 16, 2010, this Court granted partial summary judgment for Fendi, holding

defendants liable, *inter alia*, for trademark counterfeiting under the Lanham Act, and referring

the matter to Magistrate Judge Dolinger:

> for a determination as to the appropriateness of an accounting of
> Defendants' profits and, if warranted, an assessment of Plaintiffs'
> damages.[1]

On August 12, 2010, Magistrate Judge Dolinger filed a Report and Recommendation

(Doc. 143)(the "*R&R*") in which he concluded that:

> the evidence easily suffices to justify a finding that defendants'
> willfulness has been established beyond triable dispute.[2]

He recommended an award of treble damages and interest for defendants sales' made

during and after 2005, but, despite the fact that summary judgment establishing defendants'

liability had already been granted by this Court, recommended that summary judgment not be

awarded in connection with defendants' sales prior to 2005,[3] and that "plaintiffs' claims pre-

dating 2005 and their request for an accounting of defendants' profits from that period be tried

before a jury."[4].  Fendi objects to these recommendations, which exceed the scope of the referral

and purport to decide anew an issue already litigated, and decided by this Court, on the motion

for summary judgment.

---

[1]     *Fendi Adele S.r.l. v. Ashley Reed Trading, Inc.*, 2010 U.S. Dis. LEXIS 13934 at*59-60 (S.D.N.Y. Feb. 16, 2010)(Doc. 116)(the "*February 16 Decision*").

[2]     *R&R* at 18, *see also R&R* at 30-41.

[3]     *R&R* at 30.

[4]     *R&R* at 57.

Fendi also takes issue with the Magistrate Judge's recommendations that interest be awarded only on defendants' profits from their sales, and not on the trebled damages amount;[5] and that "an award of plaintiffs' costs and reasonable attorneys' fees be postponed until the final resolution of plaintiffs' claims."[6]

## Argument

### POINT I

### THIS COURT'S DECISION HOLDING DEFENDANTS LIABLE FOR COUNTERFEITING IS THE LAW OF THE CASE

Defendants vigorously argued the question whether Fendi had established defendants' liability for counterfeiting for the years earlier than 2005 in their opposition to Fendi's summary judgment motion.[7]  Indeed, defendants asserted that *they* were entitled to summary judgment on this point.[8]  Plaintiffs briefed the issue in their Reply Memorandum.[9]  At oral argument, defendants' counsel contradicted his written submission and asserted that his clients did not seek summary judgment.[10]

In the *February 16 Decision*, the Court observed that defendants' proffer in support of their claim to have purchased genuine Fendi branded goods in the 'gray market' was a tissue of guesses, suggestions and suppositions, and that their defense amounted to "mere speculation or

---

[5]     *R&R* at 52.

[6]     *R&R* at 55, 57.

[7]     *See* Defendants' Memorandum of Law in Support of their Response in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 97)("Def. Opp'n) at 4-6.

[8]     *Id*. at 6.

[9]     *See* Plaintiffs' Reply Memorandum in Support of their Motion for Summary Judgment (Doc. 105) at 4-6.

[10]    *February 16 Decision*, 2010 U.S. Dis. LEXIS 13934 at*5, n. 1 (*quoting* Transcript of Proceedings, February 4, 2010 ("Hr'g. Tr."), at 20:22-21:7).

conjecture."[11]  Defendants' need to substitute guesswork for evidence is entirely the result of

their own conduct:  as the Court found, defendants discarded crucial financial records after as

little as one year,[12] and made a practice of discarding the invoices issued to them by their

suppliers of Fendi branded goods.[13]  They did nothing to document the side-by-side comparisons

they claimed to have conducted of goods purchased from secondary sources with those available

in Fendi stores,[14] and, after Fendi initiated this lawsuit, they returned all the Fendi branded goods

in their inventory to their suppliers.[15]  The Court held that defendants' speculation about possible

legitimate sources for their Fendi branded goods failed to raise a triable issue of fact concerning

the counterfeit nature of those goods, and stated:

> 'The plain language of the relevant statutes does not require that the
> plaintiff prove that a defendant committed the infringement in any
> particular amount, or with any amount of regularity. . . . [T]he amount of
> harm that the infringer inflicts goes to the amount of damages rather than to
> his liability for damages.'[16]

The Court referred the case to Magistrate Judge Dolinger for a report concerning whether

there are still "issues of fact and/or credibility that bear on Defendants' willfulness in connection

with Plaintiffs' application for an accounting," and a "determination as to the appropriateness of

an accounting of Defendants' profits."  The Court directed the Magistrate Judge, "if warranted,"

to provide "an assessment of Plaintiffs' damages."[17]

---

[11]     *February 16 Decision*, 2010 U.S. Dist. LEXIS 13934 at *39-43.

[12]     *Id*. at *58.

[13]     *Id*. at *16-17 (*citing* S. Ressler Dep. at 258:20-260:4) & *58-59 (*citing* S. Ressler Dep. at 566:3-19).

[14] *Id*.

[15]     S. Ressler Dep. at 124:6-13; *see February 16 Decision*, 2010 U.S. Dist. LEXIS 13934 at *16.

[16]     *February 16 Decision*, 2010 U.S. Dist. LEXIS 13934 at *43 (*quoting Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 290 (S.D.N.Y. 2003)).

[17]     *Id*. at 60.

Notwithstanding the clear limitation of the referral to the questions of willfulness and calculation of damages, defendants, in their submission to the Magistrate Judge, resuscitated their claim that the counterfeit nature of the Fendi branded goods they sold before 2005 had not been proved.[18] On the ground that the *February 16 Decision* "did not specify the period of defendants' infringement,"[19] the Magistrate Judge recommended that the Court hold a trial to determine whether they sold counterfeits in the earlier years.[20]

Such a trial would be superfluous. Once this Court held defendants liable for counterfeiting, there was no need to specify the time period of such dealings. In this context, we note that this Court held Filene's Basement liable for counterfeiting based on the Examined Items that were recovered from that company.[21] The Court knew that Filene's Basement bought Fendi branded goods from the Ashley Reed defendants in 2001[22] and 2003-2005,[23] and that the Examined Items were recovered from Filene's Basement in 2005 and later.[24] The Court did not specify the time period of Filene's Basement's infringement. Indeed, the Court held that there was no need to reach the question whether Fendi branded goods supplied by two other vendors, Summit and Bungar, were counterfeit, "[b]ecause Filene's liability is established by Filene's offering for sale (or sale) of the counterfeit Examined Items obtained from Ashley Reed."[25] In

---

[18]    Defendants' Memorandum of Law in Response to Plaintiffs' Memorandum of Law in Furtherance of the Report and Recommendation for Which this Case was Referred (Doc. 135) at 15.

[19]    *R&R* at 20.

[20]    *R&R* at 57.

[21]    *Fendi Adele, S.r.l. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 384-5 (S.D.N.Y. 2010).

[22]    *Id.* at 373.

[23]    *Id.* at 375.

[24]    *Id.*

[25]    *Id.* at 385 n. 15.

the Court's view, liability is established by any quantity of counterfeits, and "the amount of harm that the infringer inflicts goes to the amount of damages rather than to his liability."[26]

Similarly, Judge Sand held Burlington Coat Factory Warehouse Corporation liable for counterfeiting for sales of Fendi branded goods that included goods supplied by the defendants herein during 2000, 2004 and 2005.[27] Judge Sand's determination concerning goods supplied by the Ashley Reed defendants was predicated upon the same twenty Examined Items that this Court held to be counterfeit.[28] Judge Sand referred the *Burlington* case to Magistrate Judge Dolinger for "a report on the appropriate amount of damages, attorney's fees, prejudgment interest and costs."[29] The Magistrate Judge filed his Report and Recommendation in that case on August 9, 2010, just three days before he submitted the *R&R* herein.[30] In *Burlington*, the Magistrate Judge recommended that the defendant be required to disgorge all of its profits from sales of Fendi branded goods, including those supplied by Ashley Reed Trading, Inc. in years earlier than 2005.[31]

It is also noteworthy that Judge Sand held that the testimony of Scott Ressler, one of the defendants herein, did not support Burlington's allegation that Ashley Reed had purchased

---

[26]    *Id*. (*quoting Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 290 (S.D.N.Y. 2003)).

[27]    *Fendi Adele, S.r.l. v. Burlington Coat Factory Warehouse Corp.*, 2010 U.S. Dist. LEXIS 10628 (S.D.N.Y. Feb. 8, 2010).

[28]    *Id*. at *24.

[29]    *Id*. at *57.

[30]    Case No. 1:06-cv-00085 (LBS)(MHD), Doc. 355.

[31]    *Id*. at 7 n. 6, 9 ("We first address the calculation of defendants' profits from their sales of counterfeit Fendi products obtained from their five specified suppliers, which apparently occurred between 1993 and 2008.") and 39.

genuine Fendi branded goods from Fendi's manufacturers in "back door" transactions.[32]  Judge

Sand observed that

> At Scott Ressler's deposition, he did not testify that he purchased
> goods directly from Fendi manufacturers. He testified that he
> purchased St. John merchandise directly from the manufacturers
> but did not remember ever purchasing Fendi merchandise directly
> from the manufacturer.[33]

Magistrate Judge Dolinger, however, recommends that this Court hold that Mr. Ressler's

testimony -- the same testimony that he gave in this case, which was consolidated for discovery

with the *Burlington* and *Filene's Basement* cases -- raises a disputed issue of fact whether the

Ashley Reed defendants obtained Fendi goods from Fendi's manufacturers prior to 2005, and,

therefore, whether these defendants are liable for counterfeiting for the earlier years.[34]  The

Magistrate Judge is clearly in error.  Defendants' liability is established by the Examined Items.

The only remaining questions are those that this Court referred:  whether disgorgement of profits

is an appropriate remedy, and, if so, the appropriate measure of damages.

The Magistrate Judge concluded, based on his review of the evidence of defendants'

conduct from 2001 to 2006,[35] that defendants had failed to establish "a triable dispute about the

willfulness of their infringement.[36]  This conclusion, if adopted, establishes plaintiffs'

entitlement to disgorgement of defendants' profits.  On the measure of damages, the law is well

settled that, when liability for infringement has been proved, the burden shifts to the infringer "to

---

[32]     *Fendi Adele, S.r.l. v. Burlington Coat Factory Warehouse Corp.*, 2010 U.S. Dist. LEXIS 10628 at
*22 & n. 7.

[33]     *Id.* (*citing* Ressler Deposition at 433-34).

[34]     *R&R* at 27-30.

[35]     *Id.* at 30-38.

[36]     *Id.* at 38.

prove any proportion of his total profits which may not have been due to use of the infringing

mark."[37]  The Supreme Court has made clear that

> the burden is the infringer's to prove that his infringement had no
> cash value in sales made by him. If he does not do so, the profits
> made on sales of goods bearing the infringing mark properly
> belong to the owner of the mark. There may well be a windfall to
> the trademark owner where it is impossible to isolate the profits
> which are attributable to the use of the infringing mark. But to hold
> otherwise would give a windfall to the wrongdoer.[38]

The Magistrate Judge ignored this Court's *February 16 Decision*, and settled law, to

recommend that this Court reverse itself and conclude that there exists a disputed issue of fact

concerning whether items sold by defendants before 2005 were counterfeit.  In fact, the only

doubts in this case concerning the extent of defendants' dealings in counterfeits are caused by

defendants' practice of discarding their records, and, in particular, their supplier invoices.  When

a defendant

> frustrates proof of damages, either by withholding facts or through
> inaccurate record keeping, any doubts . . . will be resolved against
> that party, and the fact-finder may calculate damages at the highest
> reasonably ascertainable value.[39]

Counterfeiters' records often "deflate the level of counterfeiting activity actually engaged

in,"[40] and, if "actual sales cannot be precisely determined, the court may resolve any doubts

against the defendant in calculating profits, particularly if the uncertainty is due to the

---

[37]     5 MCCARTHY, J. THOMAS, McCarthy on Trademarks and Unfair Competition, §30:65 (2001).

[38]     *Mishawaka Rubber and Woolen Mfg. Co. v. S.S. Kresge Co.*, 315 U.S. 203, 206-07 (1942).  *See also Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 252 (1916)(owner of a trademark is entitled to all of the infringer's profits from its use of the mark).

[39]     See *Chesa International, Ltd. v. Fashion Associates, Inc.*, 425 F. Supp. 234, 238 (S.D.N.Y. 1977)"); *see also Aris Isotoner, Inc. v. Dong Jin Trading Co., Inc.*, 17 U.S.P.Q.2d 1017, 1022 (S.D.N.Y. 1989) (court may resolve doubts against the defendant in calculating profits, particularly if uncertainty is due to defendant's inadequate recordkeeping or failure to produce documentary evidence.")

[40]     *Polo Ralph Lauren, L.P. v. 3M Trading Co.*, 1999 U.S. Dist. LEXIS 7913, at *11 (S.D.N.Y. Mar. 22, 1999).

defendant's inadequate record-keeping or failure to produce documentary evidence."[41]  In cases

such as this one, moreover, courts are "forced to calculate damages based on indirect and

circumstantial evidence."[42]  The circumstantial evidence that defendants dealt all along in

counterfeit Fendi products could not be clearer:  although they discarded the invoices presented

by their actual suppliers, they maintained and produced invoices purportedly issued by Fendi,

bearing dates from every year from 1999 on, that are, in fact, not genuine.[43]

Plaintiffs respectfully request that this Court reject the Magistrate Judge's

recommendation that this Court hold a trial to determine the defendants' liability for

counterfeiting for the years preceding 2005 and that it reaffirm its *February 16 Decision*.

Plaintiffs further request that this Court adopt the Magistrate Judge's recommendation that

defendants be held to have acted willfully, and direct that that determination be applied to all of

defendants' sales of Fendi branded goods.  In addition, plaintiffs request that this Court adopt the

Magistrate Judge's recommendation that plaintiffs be held to have established defendants' sales

of Fendi branded goods, but that defendants have failed to establish their costs, so that the

amount to be disgorged by defendants herein is the total of their sales.[44]  That total is $9,996,196.

Accordingly, plaintiffs respectfully request that this Court direct that judgment be entered for

Fendi and against defendants for three times the total of defendants' sales, *i.e.*, $29,988,588.

---

[41]    *Aris Isotoner Inc. v. Dong Jin Trading Co.*, 1989 U.S. Dist. LEXIS 18446 (S.D.N.Y. Sept. 14, 1989) (Dolinger, M.J.).

[42]    *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 972-73 (2d Cir. 1985);

[43]    *February 16 Decision*, 2010 U.S. Dis. LEXIS 13934 at *46 n. 11.

[44]    *R&R* at 41-49.

## POINT II

### THE LANHAM ACT EXPLICITLY PROVIDES THAT
### PREJUDGMENT INTEREST BE CHARGED ON AWARDS OF TREBLE DAMAGES

Courts award prejudgment interest in counterfeiting cases on trebled profits.[45]  They do

so because 15 U.S.C. §1117(b) specifically provides that, in assessing damages for a violation of

15 U.S.C. §1114(a) in a case involving use of a counterfeit mark,

> the court shall, unless the court finds extenuating circumstances, enter
> judgment for three times such profits or damages, whichever amount is
> greater, together with a reasonable attorney's fee, if the violation consists
> of--
>
>   (1) intentionally using a mark or designation, knowing such mark or
> designation is a counterfeit mark (as defined in section 34(d) of this Act
> [15 USCS § 1116(d)]), in connection with the sale, offering for sale, or
> distribution of goods or services;
>
> [. . .]
>
> In such a case, the court may award prejudgment interest *on such amount*
> at an annual interest rate established under section 6621(a)(2) of the
> Internal Revenue Code of 1986, beginning on the date of the service of
> the claimant's pleadings setting forth the claim for such entry of
> judgment and ending on the date such entry is made, or for such shorter
> time as the court considers appropriate.

Thus, the statute permits the Court to assess prejudgment interest on defendants' trebled

profits and plaintiffs' attorneys' fees from the date the complaint was filed.  The Magistrate

Judge, however, has recommended that prejudgment interest be awarded "only on defendants'

profits from their sales of infringing merchandise . . . instead of on the full trebled profit

---

[45]     *See Reebok Int'l, Ltd. v. Su Youn Pak*, No. 87-CV-2727, 1990 US Dist. LEXIS 7929 at *5 & *7
(S.D.N.Y. June 28, 1990); *General Motors Corp. v. Phat Cat Carts, Inc.*, 504 F. Supp. 2d 1278, 1291
(M.D. Fla. 2007); *Ford Motor Co. v. Kuan Tong Ind. Co. Ltd.*, 697 F.Supp.1108, 1109 & 1110 (N.D. Cal.
1987).

award."[46]

Fendi respectfully submits that an award of interest on the full trebled damages amount is

appropriate in this case.  Defendants, financed by their insurance carrier, have engaged in

protracted litigation in this Court, based on defenses that are, as this Court found, based on

"mere speculation or conjecture."[47]  Such prolonged and groundless resistance, which continues

to this day, amply justifies the award of interest upon defendants' trebled profits.  The purpose of

the prejudgment interest provision of 15 U.S.C. § 1117(b) is "to ensure that the injured party is in

fact made whole by the relief he or she is granted, and to discourage dilatory tactics in litigation

under this Act."[48]

## POINT III

### ANY PARTIAL JUDGMENT SHOULD INCLUDE AN AWARD OF ATTORNEYS' FEES AND COSTS

In view of his recommendation that the question of defendants' liability for counterfeiting

for the years preceding 2005 be tried to a jury, the Magistrate Judge recommended that the

question of an award of plaintiffs' reasonable attorneys' fees and costs be deferred until all of

plaintiffs' claims have been resolved.[49]  If the Court sustains Fendi's objection to the

recommendation that a trial be had, then it can proceed immediately to a determination of fees

and costs.  If, however, the Court should adopt the Magistrate Judge's recommendation

---

[46]     *R&R* at 51-2.

[47]     *February 16 Decision*, 2010 U.S. Dist. LEXIS 13934 at *39-43.

[48]     *See* S. Rep. No. 98-526 , at 14 (1984), reprinted in 1984 U.S.C.C.A.N. 3627, 3632 (emphasis added).  Plaintiffs are unlikely to be made whole without an award of interest on their trebled damages because defendants profits that should be disgorged herein are well in excess of the coverage limits of their insurance; the terms of their policies, however, provide that awards of prejudgment interest are to be paid by the insurer in addition to the amounts covered by the policy limits.

[49]     *R&R* at 55.

concerning the years prior to 2005, then it will enter partial judgment against defendants for their willful counterfeiting in 2005 and 2006.  At that point, after nearly five years of litigation, plaintiffs are clearly entitled to judgment for their fees and costs.  Interim awards of fees and costs are clearly necessary in a case such as this, in which defendants have sought to delay the final result for as long as possible.

## CONCLUSION

For the reasons set forth above, plaintiffs respectfully request:

That the Court reaffirm its determination in the February 16 Decision that defendants are liable for counterfeiting for all of their sales of Fendi branded goods, and accordingly, deny that part of the *R&R* that recommends that the issue of defendants' sales made before 2005 be tried to a jury;

That the Court adopt that part of the *R&R* that recommends that defendants' sales be held willful as a matter of law, and extend that holding to all of defendants' sales of Fendi branded goods;

-12-

That the Court direct that defendants be ordered to pay to plaintiffs treble damages of

$29,988,588;

That the Court direct that defendants be ordered to pay to plaintiffs prejudgment interest

on the treble damages amount; and,

That plaintiffs be awarded their reasonable attorneys fees and costs.


New York, New York
September 29, 2010

Respectfully submitted,

SQUIRE, SANDERS & DEMPSEY L.L.P.

By _____
    Richard L. Mattiaccio (RM 4764)
    Victor Genecin (VG 9733)
    Steven Skulnik (SS 7821)
    30 Rockefeller Plaza, 23rd floor
    New York, NY  10112
    (212) 872-9800
    *Attorneys for Plaintiffs*
    FENDI ADELE S.r.l., FENDI S.r.l., and
    FENDI NORTH AMERICA, INC.

NEWYORK/133285.7

-12-