UNITED STATES DISTRICT COURT       ECF CASE
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
FENDI ADELE S.R.L., FENDI S.R.L.   :
and FENDI NORTH AMERICA           Civil Action No.
                             :
          Plaintiffs,        06 CIV 0243 (RMB)(MHD)
                             :
          vs.
                             :
ASHLEY REED TRADING, INC.
SCOTT RESSLER                 :
and JAMES RESSLER
                           :
          Defendants.
-----------------------------------------------------x

## DEFENDANTS' OBJECTIONS & COMMENTS TO THE REPORT & RECOMMENDATION

Gerard F. Dunne
Law Offices of Gerard F. Dunne, P.C.
156 Fifth Avenue, Suite 1223
New York, New York  10010
Tel.: 212-645-2410
Jerry.dunne@dunnelaw.net
Attorney for Defendants

# Table of Contents

I.   Preliminary Statement ............................................................................ 1

II.  Summary of the Argument .................................................................... 1

III. Objections and Comments ..................................................................... 2

A.   The Summary Judgment standard requires that all
     inferences be drawn in favor of the non-moving party.............................. 2

B.   Willful Blindness is a subjective standard................................................. 5

C.   Defendants did not subjectively believe that they were
     dealing in counterfeit Fendi-branded products ........................................... 6

     1.   A legal gray market exists for Fendi-branded goods,
          and defendants believed that they purchased
          legitimate gray market Fendi-branded goods.................................... 6

     2.   The R&R incorrectly assumes the credibility
          Of all of Fendi's testimony ............................................................. 7

     3.   Ashley Reed investigated the authenticity of all
          Fendi-branded goods before purchasing, and
          accordingly, believed that the Fendi-branded
          goods they purchased were authentic ............................................... 9

          a.   Ashley Reed's testimony with regard to their inspection
               Procedures are factual allegations based on their own
               personal knowledge, not "mere speculation and
               conjecture"............................................................................. 9

          b.   Ashley Reed believed that it purchased genuine
               Fendi-branded products directly from Fendi
               subcontractor factories and distributors .............................. 10

          c.   Ashley Reed believed it purchased genuine Fendi-
               branded products from secondary sources based
               on inquiries made by Ashley Reed prior to
               purchasing goods on the gray market ................................... 11

     4.   The findings of fact regarding Ashley Reed's bad faith
          require drawing inferences in favor of Fendi, and are
          inappropriate for a finding of willfulness on summary
          judgment ........................................................................................ 13

          a.   The 2001 Cease and Desist letter is
               insufficient to establish willfulness ....................................... 13

b.     Ashley Reed explicitly provided Filene's
Basement with a guarantee that the products
they sell are "not counterfeit." ............................................ 14

c.     Ashley Reed is small company, which explains
the return of goods to their suppliers, and
the incomplete records of Ashley Reed............................... 15

D.     Even if an accounting is found to be appropriate, Fendi has
presented no evidence of counterfeiting prior to 2005, and
accordingly any accounting should not include any such goods ............... 17

E.     Ashley Reed's sales did not total the amount claimed
by Fendi's expert, and their profits are not to be
measured as their total sales....................................................... 18

IV.     Conclusion ...................................................................................... 19

## Table of Authorities

### Cases

*Am. Int'l Group, Inc. v. London Am. Int'l Corp.*,
664 F.2d 348 (2d Cir. 1981) ................................................................. 20

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................. 4, 12

*A Touch of Class Jewelry Co. v. J.C. Penney Co.*,
2000 WL 1224804, at *1 (E.D. La. 2000) ....................................... 6, 11

*Brown v. Quiniou*,
744 F. Supp. 463 (S.D.N.Y. 1990) ................................................ 4, 20

*Burberry Ltd. and Burberry USA v. Designers Imports, Inc.*,
2010 WL 199906, *5 (S.D.N.Y. 2010) ........................................... 5, 20

*Calvin Klein Jeanswear v. Tunnel Trading*,
2001 WL 1456577 (S.D.N.Y.2001) ...................................................... 4

*Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*,
902 F.2d 174 (2d Cir.1990) .................................................................. 4

*Hard Rock Café Licensing Corp. v. Concession Services Incorporated*,
955 F.2d 1143, 1149 (7th Cir. 1992) ........................................... 5, 6, 11

*Island Software & Computer Serv. v. Microsoft Corp.*,
413 F.3d 257, 260-65 (2d Cir.2005) ....................3, 4, 5, 6, 11, 12, 15, 16

*Johnson & Johnson Consumer Companies, Inc. v. Aini*,
540 F.Supp 2d. 374 (E.D.N.Y 2008) ....................................15, 16, 20, 21

*K Mart Corp. v. Cartier, Inc.*,
486 U.S. 281, 281, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988) ................ 7

*Lipton v. Nature Co.*,
71 F.3d 464, 472-73 (2d Cir.1995) .....................................3, 4, 5, 12, 16

*Louis Vuitton, S.A. v. Lee*,
875 F.2d 584, 590 (7th Cir.1989) ........................................................ 5

*Murphy Door Bed Co., Inc., v. Interior Sleep Systems, Inc.*,
874 F.2d 95, 103 (2d. Cir. 1989) .....................................................2, 19

*New Line Cinema Corp. v. Russ Berrie & Co.*,
161 F. Supp. 2d 293,300-01 (S.D.N.Y. 2001) ................................ 5, 14

*Polymer Tech. Corp. v. Mimran*,
　　975 F.2d 58, 61 (2d Cir.1992) ................................................................. 7

*Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc.*,
　　256 F.Supp. 399, 404 (S.D.N.Y.1966) ................................................. 10

*Splunge v. Shoney's, Inc.*,
　　97 F.3d 488, 491 (11th Cir. 1996) ................................................... 6, 11

*United States v. Adair*,
　　951 F.2d 316, 319 n.6 (11th Cir. 1992) ................................................. 6

*United States v. Rem*,
　　38 F.3d 634, 643-44 (2d Cir.1994) ....................................................... 4

*W.E. Bassett Co. v. Revlon, Inc.*,
　　435 F.2d 656, 665 (2d Cir.1970) ..................................................... 2, 19

**Treatise**

*J. Thomas McCarthy*,
　　5 McCarthy on Trademarks and Unfair Competition § 29:46 (4th ed.2007).......... 7

## I.  PRELIMINARY STATEMENT

The Defendants, Ashley Reed Trading, Inc., Scott Ressler and James Ressler (collectively "Ashley Reed") in the above-captioned matter hereby object to the August 12, 2010 Report and Recommendation of the Honorable Judge Dolinger ("R&R.")

In summary, the Magistrate Judge determined issues of credibility against Ashley Reed and relied upon his judgement to find willfulness as a fact finder, and did not resolve inferences in favor of Ashley Reed.

## II.  SUMMARY

Genuine issues of fact exist as to Ashley Reed's willful conduct, the extent of Ashley Reed's counterfeiting activity, as well as the amount of profits Ashley Reed made from said activity.  Accordingly, summary judgment is not appropriate on these issues.

The law of this Circuit and, as the Magistrate Judge noted, of this case is clear, a finding of willfulness, or in the least, willful blindness, is required to award an accounting of Ashley Reed's profits.  (See Decision and Order of February 16, 2010, Docket Entry No. 132, (hereinafter the "February 16 Decision"), p. 32-33.)

In finding willfulness, the R&R relies on drawing inferences against the non-moving party, and rejecting the credibility of Defendants' testimony while accepting the credibility of Plaintiff's testimony.  The law requires all inferences from the evidence be drawn in the non–movant's favor; and issues of credibility may not be determined at this stage of the litigation.  Accordingly, Ashley Reed respectfully disagrees with the R&R as to the appropriateness of a finding of wilfulness on summary judgment.

Fendi has offered no justification for an award of all of Ashley Reed's profits dating back to 2001.  Twenty examined bags were found to be counterfeit.  All of the twenty examined bags of Ashley Reed that were found to be counterfeit (hereinafter the "Examined Bags,") were purchased in a relatively narrow window in 2005.  Accordingly,

Ashley Reed agrees with the determination that trial is required in order to determine the counterfeit nature of the Fendi-branded products sold by Ashley Reed prior to 2005.

Lastly, Ashley Reed has disputed the profit calculations of Fendi's expert, provided testimony regarding costs and overhead that should be deducted, as well as offering the court production of tax documents and profit records, should an accounting be necessary.  Ashley Reed has disputed the numbers of Fendi, and has requested an inquest to determine the correct profits of Ashley Reed should such a calculation be necessary.

Submitting voluminous confidential documents and declarations needed to resolve valid disputes to assess costs on summary judgement was not considered appropriate. However, the documents and testimony that were submitted surely established that there is a genuine dispute.  Further, as the Second Circuit stated in *Murphy Door Bed Co., Inc., v. Interior Sleep Systems, Inc.*, 874 F.2d 95, 103 (2d. Cir. 1989), "even if [Defendant] does not offer evidence of his costs (as he has not heretofore), the court should estimate them based on the evidence before it." See also *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 665 (2d Cir.1970) (in determining defendants' profits for purposes of trademark liability, defendant entitled to deduct overhead, operating expenses and income tax from net sales.)

Accordingly, Ashley Reed respectfully disagrees with the R&R as to the appropriateness of awarding Fendi the gross sales as profits as measured by the sales calculations of Fendi without anyy deductions for reasonable, necessary, and obvious costs.

## III.  OBJECTIONS AND COMMENTS

### A.    The summary judgment standard requires that all inferences be drawn in favor of the non-moving party

The R&R does not apply the appropriate standard for summary judgment as set out by the Second Circuit with regard to the inferences made in concluding that Ashley Reed acted wilfully.  The R&R acknowledges that:

> "[a] finder of fact could rely on [Scott Ressler's] testimony, if credited, to establish defendants' assertion that they dealt in merchandise with valid trademarks, although as we note the pertinent factual claims in Ressler's testimony have been disputed by plaintiffs."
> (See R&R p. 23)

The Magistrate Judge essentially determined whether or not he could rely on  the credibility of the testimony provided by Ashley Reed simply by finding as fact the competing claims stated by Fendi.  As just one example, the Magistrate Judge on page 39 of the R&R did not credit defendants' claims that they engaged in side-by-side comparisons, and simply relied upon claims by Fendi that it is "very, very obvious" that the quality of the leather of the bag sold by Ashley Reed is lower than that of the genuine Fendi bags, or that one could "easily see" that the outside of the bag sold by Ashley Reed is a different color from genuine Fendi bags.

Such competing claims are at the heart of the dispute, and such a determination is dependent on what testimony is "credited" by the trier of fact.  The Magistrate Judge did not examine the bags involved, but simply decided to discredit the testimony of Ashley Reed based on Fendi's testimony alone.

This is clearly not proper on summary judgment.  See *Island Software & Computer Serv. v. Microsoft Corp*., 413 F.3d 257 (2d Cir.2005); *Lipton v. The Nature Company*, 71 F.3d 464, 472-73 (2d Cir.1995) ("Determinations of credibility are within the province of the jury and may not be resolved on summary judgment.")

The Magistrate Judge may not determine such credibility issues.  As noted more fully below, no matter how much it may seem the accused counterfeiter was willfully

blind, all inferences must still be drawn in his favor on summary judgment.  The Second

Circuit in *Island Software* also found the evidence for wilfulness of the accused

counterfeiter to be strong; but still reversed the determination of willfulness on summary

judgment when explanations were given by the accused counterfeiter that could possibly

undercut a finding of willfulness.

In resolving a motion for summary judgment, a court should assess whether there

are any genuine issues of material fact, while resolving ambiguities and drawing

reasonable inferences in favor of the non-moving party.  See *Island Software & Computer

Serv.*, 413 F.3d 257; *Lipton*, 71 F.3d at 472-73; *United States v. Rem*, 38 F.3d 634, 643-44

(2d Cir.1994); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986);

*Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 177 (2d

Cir.1990).

"In making this determination, the district court may not resolve issues of fact; it

may only ascertain whether such issues are present."  *Brown v. Quiniou*, 744 F. Supp.

463, 467 (S.D.N.Y. 1990).  Moreover, "[c]redibility determinations, the weighing of the

evidence, and the drawing of legitimate inferences from the facts are jury functions, not

those of a judge..."  *Anderson*, 477 U.S. at 255.

The R&R is replete with drawing inferences and resolving credibility disputes

against Ashley Reed.

As mentioned above, and as shown in detail below, numerous material facts are in

dispute, and if such factual inferences were made in favor of defendants, the non-moving

party, it is clear that summary judgment is not appropriate.  *Calvin Klein Jeanswear v.

Tunnel Trading*, 2001 WL 1456577 (S.D.N.Y.2001) ("The competing claims of Plaintiff's

witnesses and of Defendants' cannot be resolved on a motion for summary judgment.

Rather, they raise a genuine dispute with respect to an essential aspect of Plaintiff's claim

... and thus are more appropriately resolved by a jury...").

The R&R relies on negative inferences drawn regarding the subjective willful state of mind of the Ashley Reed Defendants, despite a lack of any conclusive evidence establishing that the conduct was in fact wilful.  See *Island Software & Computer Serv.*, 413 F.3d at 263 (finding summary judgment on willfulness inappropriate where there was no "conclusive evidence of actual knowledge.")  As the court in *Island Software & Computer Serv.* went on to state, "even in a case like the one before us, where the non-moving party does not traverse the evidence suggesting constructive knowledge of infringement, but only disputes the inferences to be drawn from that evidence, our standard of review requires that we decide in favor of the non-moving party." *Id*.

The law of this Circuit requires that a determination of subjective willfulness on summary judgment cannot be based on inferences, even if such inferences seem likely. *Id.* at 264 ("although an inference of constructive knowledge or reckless conduct seems the better of the possible inferences that can be drawn, we must still draw all inferences in favor of the non-moving party."); see also *Lipton*, 71 F.3d at 472-73.  The R&R does not adhere to the clear precedent of the Second Circuit.

**B.    Willful blindness is a subjective standard**

Willful blindness requires that a defendant suspected wrongdoing and deliberately failed to investigate.  See *Island Software & Computer Serv.*, 413 F.3d at 260-65; *New Line Cinema Corp. v. Russ Berrie & Co.*,161 F. Supp. 2d 293,300-01 (S.D.N.Y. 2001); *Burberry Ltd. and Burberry USA v. Designers Imports, Inc.*, Slip Copy, 2010 WL 199906, *5 (S.D.N.Y. 2010); *Hard Rock Café Licensing Corp. v. Concession Services Incorporated*, 955 F.2d 1143, 1149 (7th Cir. 1992); see also *Louis Vuitton, S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir.1989) (finding that willful blindness occurs when defendant fails to inquire further because he is afraid of what the inquiry might yield).

Importantly, willful blindness requires more than mere negligence.  See *Splunge v. Shoney's, Inc.*, 97 F.3d 488, 491 (11th Cir. 1996) (differentiating between actions flowing from negligence and those flowing from willful blindness); *A Touch of Class Jewelry Co. v. J.C. Penney Co.*, 2000 WL 1224804, at *1 (E.D. La. Aug. 28, 2000) (finding that negligence, and even gross negligence, are insufficient to support a finding of willful infringement or blindness).  "A showing of negligence or mistake is not sufficient to support a finding of willfulness or knowledge." *United States v. Adair*, 951 F.2d 316, 319 n.6 (11th Cir. 1992); see also *Hard Rock Café Licensing, Inc.*, 955 F.2d at 1149.

A negligence standard is an objective one --- "would a reasonably prudent [person] in the [defendant's] shoes have known that the [goods] were counterfeits?" *Id*. at 1151 n.5. In contrast, the willful blindness standard is a subjective one --- "what did [the defendant] suspect, and what did he do with his suspicion?" *Id*.  The standard, importantly, is not what "should" the defendant have known or suspected.

Further, on summary judgment, willfulness cannot be proved by constructive knowledge of infringement, but must be proved by evidence of the infringer's actual knowledge.  See *Island Software & Computer Serv.*, 413 F.3d at 260-65 (2d Cir.2005) (district court finding of willfulness on summary judgment reversed by the Second Circuit where defendant repeatedly denied actual knowledge, and where the district court had accepted the plaintiff's evidence that showed a possible "reckless disregard" or "willful blindness" to the plaintiff's interest.)

**C.    Defendants did not subjectively believe that they were dealing in counterfeit Fendi-branded products.**

1.    A legal gray market exists for Fendi-branded goods, and defendants believed that they purchased legitimate gray market Fendi-branded goods.

Importation of diverted or gray market goods does not violate the trademark laws in the United States. *J. Thomas McCarthy*, 5 McCarthy on Trademarks and Unfair Competition § 29:46 (4th ed.2007); *K Mart Corp. v. CAshley Reeder, Inc*., 486 U.S. 281, 281, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988) ("A gray-market good is a foreign-manufactured good, bearing a valid United States trademark, that is imported without the consent of the U.S. trademark holder.")  Trademark law does not prohibit the sale of genuine goods, even if the goods are sold without the trademark owner's consent. *Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 61 (2d Cir.1992).

Ashley Reed has for years been involved in the lawful activity of importing into the United States and trading in "gray market" products bearing prominent trademarks. (See Declaration of Scott Ressler in Opposition to Fendi's Motion for Summary Judgment, Docket Entry No. 100, (hereinafter "S. Ressler Decl.") ¶ 2.  Fendi admittedly sells their products into numerous markets around the world, and such products often become available on the secondary market at reduced prices.  (See Defendants' Response to Plaintiffs' Rule 56.1 Statement, Docket Entry No. 98 (hereinafter "56.1 Response") ¶ 5, 7, 63, 99, 100, 102; See also Declaration of Joseph A. Dunne in Opposition to Motion for Summary Judgment, Docket Entry No. 102 (hereinafter, "J. Dunne Decl"). Ex. 2).

Ashley Reed believed that all of the Fendi-branded goods they purchased were legitimate grey market goods.  (See S. Ressler Decl.)

    2.    The R&R incorrectly assumes the credibility of all of Fendi's testimony

Throughout the R&R, testimony of Fendi is credited as undisputed fact for the purpose of summary judgment.  As discussed above, conclusions of credibility are not appropriate for Summary Judgment.  In the present case, Defendants have demonstrated that Fendi, in particular Alberto Fabbri, has submitted false statements, or at least

statement of questionable credibility.  Alberto Fabbri is an interested witness, and has shown that his testimony is simply that which will help Fendi's case the most.  For instance, Fendi's own documents contradict Mr. Fabbri's claims regarding Fendi's Duty-Free distribution channels.  (56.1 Response ¶ 46).  Mr. Fabbri claims that after 2001, Fendi no longer sold into Duty-Free shops outside of North America, yet this is clearly contradicted by Fendi's own distribution charts (56.1 Response ¶ 46; J. Dunne Decl. Ex. 2).

Such a blanket claim was made by Mr. Fabbri in Fendi's initial attempt to prove that the gray market did not even exist for Fendi goods.  Fendi is well aware that Duty Free shops are one of the avenues for gray market goods, and this was a clear self-serving statement made in the interest of advancing the argument.  A trier of fact would assuredly be reasonable in choosing to discredit the testimony of Mr. Fabbri based on such inconsistencies.

The R&R repeatedly credits Fendi's testimony as undisputed fact, such as: the invalidity of invoices provided by Ashley Reed's suppliers such as Cinque Piu based solely on the testimony of Alberto Fabbri (See R&R  p.31 and p.38 n.14;) and more egregiously, as discussed above, the R&R concludes, based solely on the testimony of Fendi, that "a rational fact finder could not credit defendants' claims that they engaged in side-by-side comparisons," because plaintiffs' testimony said that it is "very, very obvious" that the quality of leather was lower, and that one could "easily see" differences in color. (See R&R, p. 39).

Did the Magistrate Judge review the bags and make such comparisons?  No, he simply credited the testimony of plaintiffs as factual.  At trial, such bags would be placed in front of a trier of fact to allow them to decide what is obvious and easily seen.  And without making such comparisons, the Magistrate Judge could not possibly determine

what a trier of fact could reasonably conclude.

       3.      Ashley Reed investigated the authenticity of all Fendi-branded goods before purchasing, and accordingly, believed that the Fendi-branded goods they purchased were authentic.

          a.     Ashley Reed's testimony with regard to their inspection procedures are factual allegations based on its own personal knowledge, not "mere speculation and conjecture"

The R&R relies, in part, on the portion of the February 16 Decision which held that the factual claims of Ashley Reed were no more than mere speculation and conjecture, and that Defendants "failed to determine the source of the bags they sold in 2005." (See R&R p.33)

However, this overstates the February 16 Decision.  Though Ashley Reed may be speculating as to the source of a particular bag, such as the twenty Examined bags, Ashley Reed is not speculating as to what were the possible sources (i.e all sources they used in 2005,) and as to their own procedures they followed for every source they obtained goods from.  Though Ashley Reed cannot trace any particular bag to a single source, they can identify every source they purchased goods from, and the procedures they took to check the bags form each respective source.

Ashley Reed's failure to track an individual bag may speak to the availability of this evidence to refute the counterfeit nature of the Examined Bags, but does not address the evidence's value in determining Ashley Reed's state of mind when making such purchases.  See February 16 Decision, at p. 23 ("Defendants employ 'mere speculation and conjecture' that the Examined Items are not counterfeit.")

With respect to the over-all business activity, and the alleged willful intent of Ashley Reed, their business practices are not speculation and conjecture, they are simply the claimed facts of Defendants, based on their personal knowledge of how Ashley Reed went about obtaining Fendi-branded merchandise from the sources they dealt with.

And as a final note, Ashley Reed, though obtaining goods at discount prices, still paid as much as hundreds of dollars per item for Fendi-branded goods.  (See e.g J. Dunne Decl. ¶ 16, Ex. 12.)  Suspiciously low prices can be used as evidence toward an inference of willfulness, and it is certainly possible that a juror could draw the opposite inference in favor of Ashley Reed, since there is no reason why a supplier would pay such high prices for goods they knew to be counterfeit goods.  See e.g. *Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc*., 256 F.Supp. 399, 404 (S.D.N.Y.1966) (a suspiciously low price allows an inference of constructive knowledge of the illegitimacy of the product).

As discussed in the sections below, Ashley Reed sought verification regarding the legitimacy of all Fendi-branded goods they purchased.  Even if Ashley Reed cannot trace the exact source of the Examined Bags, evidence that Ashley Reed attempted to ascertain the legitimacy of all goods they purchased is not only relevant, it is the crux of the issue of willfulness!

> b.   Ashley Reed believed that it purchased genuine
>      Fendi-branded products directly from Fendi subcontractor
>      factories and distributors

In 2004, Scott Ressler met Lorenzo Bandinelli, a quality inspector for Fendi at the time.  Mr. Bandinelli took Scott Ressler to a factory in Italy where together they toured the factory and met with the owner.  Mr. Ressler was shown work orders and specifications from Fendi for the manufacture of their goods, confidential documents the Resslers believed only a legitimate Fendi authorized manufacturer would have access to.  Based on the assurances of Mr. Bandinelli and the documents shown establishing the factory was authorized by Fendi to manufacture Fendi-branded products, Ashley Reed purchased Fendi-branded goods.  (See February 16 Decision, p. 34, citing Defs. S. Ressler Dep. Excerpts at p. 83:4-86:9; S. Ressler Decl. ¶ 8-10.)

Though Fendi denies such involvement by one of their employees, such a denial is

a clear issue of credibility, and assuredly not appropriate for Summary Judgment.  (See February 16 Decision, p. 34.)

Further, Ashley Reed also purchased genuine Fendi Products directly from the Fendi store in Italy.  (See S. Ressler Decl. ¶ 11)

        c.    Ashley Reed believed it purchased genuine Fendi-branded products from secondary sources based on inquiries made by Ashley Reed prior to purchasing goods on the gray market

When purchasing goods on the gray market Ashley Reed did not simply rely on the assurances of the supplier, but reviewed the supplier's documentation for the suppliers' purchase of the goods (see February 16 Decision, p. 9, citing Defs. S. Ressler Dep. Excerpts at p. 258:20-260:4), and often conducted side-by-side comparisons of supplier's goods with Fendi-branded goods that Ashley Reed knew to be genuine.  (See February 16 Decision, p. 10-11, citing Defs. S. Ressler Dep. Excerpts at p. 269:15-270:10.)

Ashley Reed did not keep any record of the side-by-side comparisons, since these were onsite physical examinations, not done on paper, and the genuine Fendi-branded goods, purchased at full retail, were returned after the examination.  (See February 16 Decision, p. 10-11, citing Defs. S. Ressler Dep. Excerpts at p. 269:15-270:10.)  Mr. Ressler testified that he did not think maintaining such records was necessary.  As discussed above, when evaluating willful blindness it is not an objective "reasonable" standard of what Ashley Reed should have known and done, but a fully subjective standard as to what Ashley Reed knew and believed.  See *Island Software & Computer Serv.*, 413 F.3d at 260-65; *Splunge*, 97 F.3d at 491; *A Touch of Class Jewelry Co.*, 2000 WL 1224804, at *1; *Hard Rock Café Licensing, Inc.*, 955 F.2d at 1149.

Importantly, as mentioned above, the R&R (at p.39) blanketly rejects the testimony of Ashley Reed in favor of the testimony of Fendi in order to rule conclusively that Ashley Reed did not make such side-by-side comparisons.  Such decisions of credibility

are in the province of the jury, and assuredly are not appropriate for summary judgment. See *Anderson*, 477 U.S. at 255; *Island Software & Computer Serv*. 413 F.3d 257; *Lipton*, 71 F.3d at 472-73.

Ashley Reed acquired Fendi-branded goods through Hidea, a billing company in Lucern, Switzerland, that was offering genuine Fendi Products from manufacturers of Fendi bags, including Cinque Piu, and Ashley Reed inspected and often retained documents verifying such sources, and even turned over such documentation to Fendi's attorneys after Fendi sent a cease and desist letter in 2001.  (See S. Ressler Decl. ¶ 23). Again, as mentioned above, the R&R fully credits the testimony of Alberto Fabbri that all such documents were in fact invalid, despite the indicia of unreliability of Mr. Fabbri's testimony, as well as the fact that many of these documents were turned over in 2001, and no charges were made against Ashley Reed until nearly 5 years later.  A jury could certainly reasonably question the credibility of Mr. Fabbri based on such issues, and again, such credibility issues are not for summary judgment.

In 2002 Ashley Reed purchased genuine Fendi-Branded goods from Zucker's Gifts in New York.  Fendi does not deny that through 2001, Fendi sold to Duty-free shops worldwide, and the documents show that they in fact continued to sell to Duty-free shops world-wide through 2006.  (See Fendi's Rule 56.1 Statement, Docket Entry No. 89, ¶ 46, J. Dunne Decl. Ex. 2.)  Zucker's Gifts showed Ashley Reed invoices indicating that such goods were purchased from the Duty Free Shop in Guam in late 2001, and it was explained to Ashley Reed that these genuine goods became available from the Duty Free Shop in Guam due to the large decrease in tourism to the United States from Japan following the "9/11" attacks.  (See S. Ressler Decl. ¶ 24; J. Dunne Decl. Ex 12-13).

A large amount of Fendi products had been acquired from sources Fendi itself identified as genuine.  In 2004 Ashley Reed also bought extensive amount of goods from

a company known as Moda Oggi which acquired at least some Fendi goods from legitimate sources. Ashley Reed demanded and inspected invoices of Moda Oggi (also doing business as "Euro Moda,") showing the goods came from legitimate channels, and often Ashley Reed was able to retain copies of such documents. Numerous such invoices were produced in this litigation, and, importantly, in this suit the attorneys for Fendi have acknowledged that at least some of these goods were genuine. (See J. Dunne Decl. ¶ 17 and 18, and Exs. 14 and 15.) Though, Moda Oggi has since been found to be a seller of counterfeit merchandise (not Fendi), such findings were not made until 2010, and certainly are irrelevant as to Ashley Reed's state of mind in 2004.

4. The findings of fact regarding Ashley Reed's bad faith require drawing inferences in favor of Fendi, and are inappropriate for a finding of willfulness on summary judgment .

a. The 2001 Cease and Desist letter is insufficient to establish willfulness

The 2001 Cease and Desist letter was not ignored by Ashley Reed. Ashley Reed responded, including multiple subsequent meetings with Fendi's attorneys. Other than categorically stating that Ashley Reed's goods were counterfeit, Fendi provided no concrete basis for such claims, such as an actual counterfeit bag of Ashley Reed, and tellingly, as discussed above, such a bag has still not been produced, presumably because such a bag did not exist in 2001. In fact, in these meetings Ashley Reed was informed that goods purchased on the secondary market that originated from authorized sources are in fact genuine and legal for Ashley Reed to sell. (See S. Ressler Decl. ¶ 19-22.)

Though, in some cases, the sale of counterfeit goods after receipt of a cease and desist letter can be found willful as a matter of law, such a determination is based on the substantiated merits of the charges in the Cease and Desist letter. In such instances the court found the cease and desist letter was factual substantiated, and accordingly, served

as probative evidence of wilfulness, however such a determination is a matter of fact, not law.  See e.g. *New Line Cinema Corp. v. Russ Berrie & Co.*, 161 F. Supp. 2d 293, 300-01 (S.D.N.Y. 2001) ("It is a stretch to label defendant's infringement willful where the plaintiff was asked to provide concrete support for its claim of infringement...").

In the current case, as discussed throughout the summary judgment papers, Ashley Reed met with Fendi in 2001, and other than charging counterfeiting, Fendi provided no physical sample or evidence to support its claim, and upon receiving documentary counter-evidence from Ashley Reed, Fendi remained silent for nearly five more years. (See S. Ressler Decl.  ¶ 19-22.)

At most, such a cease and desist letter put Ashley Reed on inquiry notice, and as discussed above, Ashley Reed did inquire about the purchase of Fendi-branded goods before purchases were made.

        b.     Ashley Reed explicitly provided Filene's Basement with a guarantee that the products they sell are "not counterfeit."

Though Ashley Reed deleted a portion of their supplier agreement which warrantied that Ashley Reed had the legal right to sell the merchandise, such an action does not show Defendants' willfulness in selling counterfeit goods, in light of the warranties provided in paragraph 1(a) of the same agreement.  Paragraph 1(a) explicitly provides a warranty that "the merchandise ordered below are *genuine and authentic goods* from the owner of the proprietary rights and are *not counterfeit*."  (See Exhibit 9 to the Declaration of Victor Genecin, Docket Entry No. 90-3 (emphasis added); Rule 56.1 Response, ¶ 148.)

As gray market distributors, Ashley Reed was unsure of their right to claim that they had the "legal right" to sell such goods, since they were not authorized by Fendi, and they did not wish to mislead their buyer into thinking that they were authorized

-14-

distributors.  However, by leaving paragraph 1(a) in the agreement they clearly

established their intent to warranty, and their belief, that the goods were not counterfeit.

In fact, it is reasonable that a Jury could find such an action indicative of Ashley

Reed's good-faith.  By deleting such a paragraph, they risked losing the potential business

of Filene's Basement.  However, despite such a financial risk, in the course of fair

dealings, they wished to be forthright and make it abundantly clear to Filene's Basement

that they were not authorized distributors of Fendi-branded goods.  However, Ashley

Reed clearly stood behind their belief in the authentic, non-counterfeit nature of the goods

they were selling.

> c.    Ashley Reed is a small company, which explains the return of
> goods to their suppliers, and the incomplete records of Ashley
> Reed.

Ashley Reed is a small company.  (See February 16 Decision, p. 10, citing Defs. S.

Ressler Dep. Excerpts at p. 566:3-19.)  As the Second Circuit pointed out in *Island*

*Software & Computer Serv.*, 413 F.3d at 263, a Jury could conclude that  a small company

may justifiably act in some instances with less prudence than a more financially secure

larger company.

At the onset of this suit Ashley Reed voluntarily ceased all sales of Fendi-branded

goods, and as a small operation, could not afford to leave the goods sitting in a

warehouse, and accordingly returned the goods for purely financial reasons.

This is not like the EDNY case that the R&R relies on, *Johnson & Johnson*

*Consumer Companies, Inc. v. Aini*, 540 F.Supp 2d. 374 (E.D.N.Y 2008), where the

Defendants simply destroyed their inventory, and no possible good-faith explanation

could be provided for destroying relevant evidence.  Yet, even in *Johnson & Johnson*

*Consumer Companies, Inc*., the court did not draw a conclusive inference on this fact,

stating that "[w]hile the court declines, at this time, to explicitly draw an adverse

inference based on this self-professed destruction of obviously relevant evidence, Defendants' action, nonetheless, holds some sway in the court's consideration of whether Defendants acted in bad faith." *Id*. at 392.

Further, even if a jury could draw a negative inference from their return of goods, and even if the negative inference is likely, such an inference is not proper for summary judgment. *Island Software & Computer Serv*., 413 F.3d at 260-65 ("although an inference of constructive knowledge or reckless conduct seems the better of the possible inferences that can be drawn, we must still draw all inferences in favor of the non-moving party"); citing *Lipton v. Nature Co.*, 71 F.3d 464, 472-73 (2d Cir.1995).

Ashley Reed's records are incomplete.  However, though Ashley Reed "did not *always* keep" all of their invoices, they did often retain them.  (See February 16 Decision, p. 9-10, citing Defs. S. Ressler Dep. Excerpts at p. 258:20-260:4.) (emphasis added). Again this is explained by Scott Ressler as a factor of running a small company with minimal staff and space. *Id*.  Ashley Reed did produce over 1,500 invoices from Ashley Reed to its customers, as well as hundreds of supplier invoices.  Further, numerous documents were lost due to a computer crash in early 2004.  (See Rule 56.1 Response ¶ 141.)

When possible, Ashley Reed also maintained and produced representative documentation indicative of the documents they examined and received, and they believed that such documents established the availability of authentic goods to their supplier, and thus the authenticity of the goods they were purchasing, and hundreds of such documents were produced in this litigation.  However, such documentation is not complete because suppliers often redacted source details and refused to turn over copies of such documents.  Such actions however are normal practice as gray market sources are valuable, and a supplier turning over all of their source information is likely to lose

business because customers like Ashley Reed can now go directly to that source. The suppliers are likely to show just enough so that, along with visual inspection of their products, it will allow a buyer to be confident that the goods are legitimate. The R&R (at p. 35-36), conclusively rejects any possible explanations for Ashley Reed's acceptance of this documentation, and again inappropriately draws all inferences against Ashley Reed.

Ashley Reed has produced hundreds of invoices obtained from it's suppliers to verify authentic sources for the goods, including for instance Cinqui Piu, whom Ashley Reed believed to be a direct affiliate of Fendi, Duty Free shops, and Euro Moda,(See Rule 56.1 Response ¶ 152 - 156). Though some of the invoices supplied to Ashley Reed by their suppliers have been later claimed to be forgeries, such claims are simply based on the testimony of Fendi, and even if true — no evidence has been presented that Ashley Reed knew the documents were forgeries or had any reason to suspect they were. If they were forgeries, and this cannot be assumed on summary judgment, Ashley Reed was the victim of any such forgeries, not the culprit.

Again, perhaps such document deficiencies can create an inference that a jury may make, however such inferences are not appropriate for a finding of willfulness on summary judgment.

> **E.     Even if an accounting is found to be appropriate, Fendi has presented no evidence of counterfeiting prior to 2005, and accordingly any accounting should not include any such goods.**

The Examined Bags are the sole basis for the finding of defendants' counterfeiting, and it is undisputed that all of the Examined Bags were purchased in 2005, or retrieved from Ashley Reed's customer's (Filene's Basement) warehouse in 2007. (See 56.1 - Defendants' Statement of Material Facts as to Which There are Genuine Disputes, Docket Entry No. 98, ¶ 5.) It is well documented that Fendi has been investigating defendants since late 2000, and in fact had purchased or caused to be

purchased Fendi-branded goods from Ashley Reed as far back as late 2000, yet no allegedly counterfeit items from prior to 2005 have been offered.  (*Id*. at ¶ 6-10;  S. Ressler Decl. ¶ 19-21; See also J. Dunne Decl. Ex. 4.)

Not only is there a lack of evidence to support a finding that Ashley Reed's goods were counterfeit prior to 2005, the lack of evidence combined with the known investigations of Fendi going back to 2001 is evidence to support a finding by a jury that goods prior to 2005 were not counterfeit.

Accordingly, Ashley Reed agrees with the R&R with respect to the counterfeit nature of goods prior to 2005.

### F.   Ashley Reed's sales did not total the amount claimed by Fendi's expert, and their profits are not to be measured as their total sales.

The R&R incorrectly states that Ashley Reed provided no justification for rejecting the calculations of Fendi's expert, James Donohue.  Fendi's expert relied on at least some unreliable data when calculating sales and therefore a genuine issue of fact remains as to Ashley Reed's sales.

The expert relied on un-reliable documents, as opposed to the invoicing records on file at Ashley Reed's factor Rosenthal & Rosenthal, LLC.  (56.1 Response ¶ 131,132,134-136; See also The Declaration Gerard F. Dunne, Docket Entry No. 99, ¶ 3.)

Donohue used unreliable documents that included purchase orders (See Declaration of James Donohue, Docket Entry No. 91 ("Donohue Decl."), ¶ 19 and ¶ 24 (Filed Under Seal)).  A purchase order is subject to product availability and does not necessarily represent a quantity of goods that was in fact purchased and shipped.

The report used by Donohue in regard to Saks 5th Avenue is inaccurate.  The report was created and titled by Saks "Fendi Receipts Reports..." (See J. Dunne Decl. ¶ 4).  However, Donohue admits that the report contained "Fendi and non Fendi SKUs."

(Donohue Decl. ¶ 23).  Donohue admits that he was aware that the report alleging to be Fendi Receipts was, in at least one aspect, not reliable.  Yet, Donohue states he "manually reviewed each SKU and identified the Fendi Style Numbers."  (Donohue Decl. ¶ 23). Donohue does not disclose how he has the knowledge to separate such style numbers, nor has he given any reason for his assumption that the report was reliable despite the clear indicia of non-reliability. (See Rule 56.1 Response, ¶134.)

Importantly, Fendi's expert did not distinguish between sales made during the time the bags Mr. Minerva examined were sold by Ashley Reed (2005 and later), and sales in a prior time period when acknowledged genuine goods were sold (pre-2005).

Further, plaintiff simply ignores the documents provided by Ashley Reed when they state that "defendant has offered no documentation of its expenses."  Ashley Reed has produced numerous documents as well as testimony regarding their costs to be deducted when calculating their profits, including cost of goods, salaries and overhead expenses.  (See S. Ressler Decl. ¶ 28-29; J. Dunne Decl. ¶ 2-4, ¶ 16, & Ex. 12; 56.1 Response ¶ 136; Defendants' Statement of Material Facts as to Which There are Genuine Disputes ¶ 5).  As mentioned above, "even if [Defendant] does not offer evidence of his costs (as he has not heretofore), the court should estimate them based on the evidence before it." *Murphy Door Bed Co., Inc.,*, 874 F.2d at 103; *W.E. Bassett Co. v. Revlon, Inc*., 435 F.2d at 665.

If an accounting is to be held, defendants have requested an inquest to deal with the many evidentiary issues involved and the reasonableness of any such a calculations.

## IV.  CONCLUSION

Ashley Reed has submitted evidence to create a sufficient question of fact as to the wilfulness of their conduct, and the R&R ignores the contrary evidence that Defendants have presented and draws impermissible inferences against the non-moving party.

-19-

Even if such a determination is made, Fendi is clearly not entitled to the full sum they have requested, as the expert report of Mr. Donohue is unreliable, and evidence of Ashley Reed's expenses and costs has been completely ignored.

It is requested, that should an accounting be awarded, such an accounting must include a cut-off date regarding the relevant profits. At that time we request a separate hearing regarding the actual calculations, so that Fendi can present their evidence of Defendant's sales as of the relevant date, and Ashley Reed can present the relevant costs as rebuttal to be deducted as of the same date.

However, in the present case, a finding of willfulness is certainly not appropriate on summary judgement. It has long been established that the issue of whether infringement was willful is generally a question of fact for the jury. See *Am. Int'l Group, Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 353 (2d Cir. 1981) ("issues such as good faith are singularly inappropriate for determination on summary judgment"); *Brown v. Quiniou*, 744 F. Supp. 463, 473 (S.D.N.Y. 1990) (same). When willfulness is found on summary judgment, the defendants generally failed to provide any facts in opposition to the claim of willfulness, or willful blindness.

For instance, in the recent *Burberry* decision, the defendant himself testified that he purchased goods from "anonymous internet vendors", and "did not always question his vendors about the source of their Burberry merchandise." *Burberry Ltd.*, Slip Copy, 2010 WL 199906, at *5. Further, the defendants were violating a prior settlement agreement with Plaintiff. *Id.* at *9.

In *Johnson & Johnson Consumer Companies, Inc.*, 540 F.Supp 2d. 374, relied on in the R&R, the defendants admitted that they believed they were purchasing stolen goods from a factory through 2002. However, the factory had ceased operating in 1997, and the court found that "after the factory closed down, Defendants no longer had any reason to

-20-

believe that the products they were receiving...were genuine." *Id.* at 391.  Further, as mentioned above, the Defendants did not return their goods, but destroyed them, and the court could not "see any reason why certain of the Defendants would destroy their products...except to conceal their wrongdoing." *Id*. at 392.

Ashley Reed has continuously testified that they conducted investigations prior to every purchase, including side-by-side comparisons of the goods, inspection of invoices showing the goods authenticity, and in some case even having someone they believed to be one of the most qualified individuals in the world, a Fendi quality inspector, inspect the goods to ensure their authenticity.  Further, they have offered testimony to counter any negative inferences that may be drawn, and the jury could find these facts to be reliable and indicative of an innocent intent, and choose not to draw any such inferences.

A finding of willfulness based on the subjective standard of willful blindness is clearly inappropriate for summary judgment.

New York, New York                           Respectfully Submitted,
Dated:  September 29, 2010

                                             /s/   Gerard F. Dunne
                                             Gerard F. Dunne
                                             Law Offices of Gerard F. Dunne, P.C.
                                             156 Fifth Avenue, Suite 1223
                                             New York, New York  10010
                                             Tel.: 212-645-2410
                                             Jerry.dunne@dunnelaw.net
                                             Attorney for Defendants