UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
FENDI ADELE S.R.L., FENDI S.R.L., and    :
FENDI NORTH AMERICA, INC.,               :
                                         :
       Plaintiffs,                       :
                                         :    Case No.: 06-CV-0243 (RMB)(MHD)
  -against-                             :
                                         :
ASHLEY REED TRADING, INC.,               :
SCOTT RESSLER and                        :
JAMES RESSLER,                           :
                                         :
      Defendants.                         :
---------------------------------------- X

**PLAINTIFFS' ANSWER TO DEFENDANTS' OBJECTIONS (DOC. 145)
AND TO DEFENDANT JAMES RESSLER'S OBJECTIONS (DOC. 146)
TO MAGISTRATE JUDGE DOLINGER'S AUGUST 12, 2010
<u>REPORT AND RECOMMENDATION (DOC. 143)</u>**

                       Richard L. Mattiaccio (RM 4764)
                       Victor Genecin (VG 9733)
                       Steven Skulnik (SS 7821)

                       SQUIRE, SANDERS & DEMPSEY L.L.P.
                       30 Rockefeller Plaza, 23rd floor
                       New York, NY  10112
                       (212) 872-9800

                       *Attorneys for Plaintiffs*
                       FENDI ADELE S.r.l., FENDI S.r.l., and
                       FENDI NORTH AMERICA, INC.

**Preliminary Statement**

Undeterred by this Court's holding that "[n]one of Defendants' speculations or conjecture includes evidence that the 'gray market' was the source" of their counterfeit goods,[1] Defendants now proffer two additional iterations of their 'gray market' defense.  In their jointly-filed Objections and Comments to the Report and Recommendation, they recycle the assertion that they "purchased genuine Fendi branded products directly from Fendi subcontractor factories and distributors."[2]  Then, in James Ressler's Objections to Magistrate Judge's Report and Recommendation, James Ressler asserts that he personally purchased genuine Fendi branded goods directly from Fendi-authorized factories and through agents of Fendi.[3]  More than two years after the close of discovery in this case and nearly two years after the resolution of the criminal case that caused him to plead his Fifth Amendment right against self-incrimination in his deposition, James Ressler, the party defendant who remained silent through summary judgment and the subsequent proceedings before the Magistrate Judge, has suddenly found his voice.  The James Ressler Declaration should be stricken.

In any event, both sets of Objections suffer from the fatal flaw noted by this Court on summary judgment:  for each of Defendants' known customers, the record contains the exact dates of sales, the specific quantity of each style that was delivered, and the precise prices paid, but not one item in Defendants' nearly $10 million in documented sales can be tied to any supplier.  Indeed, Defendants concede that "Ashley Reed cannot trace any particular bag to a

---

[1]  *Fendi Adele S.r.l. v. Ashley Reed Trading, Inc.*, 2010 U.S. Dis. LEXIS 13934 at*40 (S.D.N.Y. Feb. 16, 2010)(Doc. 116)(the "*February 16 Decision*").

[2]  Doc. 145 at 10.

[3]  Doc. 146 & 146-1.

single source."[4] Their defense thus amounts to no more than the assertion of a free-floating belief in the authenticity of their merchandise that does not raise a disputed issue of fact concerning either their state of mind or the extent of their dealings in counterfeits.

## Argument

### POINT I

### THIS COURT SHOULD ADOPT THE MAGISTRATE JUDGE'S RECOMMENDATION THAT DEFENDANTS BE HELD TO HAVE ACTED WILLFULLY AND REQUIRED TO ACCOUNT FOR THEIR PROFITS

Magistrate Judge Dolinger's conclusion that "there is no triable dispute regarding the willfulness of defendants' infringement of plaintiffs' trademarks in 2005 and 2006"[5] is based upon careful enumeration of the evidence that establishes defendants' willful blindness.[6] After summarizing the facts elucidated by this Court on the subject,[7] the Magistrate Judge proffers the following supplemental findings:

- Defendants were "on notice of the existence of counterfeit Fendi goods in the marketplace based on the 2001 cease-and-desist letter [they] received from plaintiffs;[8]

- Defendants were generally aware of the risk that products [they] sold might be counterfeit, based on prior lawsuits that other merchandisers had

---

[4]   Doc. 145 at 9.

[5]   Report and Recommendation filed August 12, 2010 (Doc. 143) (the "*R&R*")at 40.

[6]   *R&R* at 33-41.

[7]   *Id*. at 31-32 (citing *February 16 Decision*, 2010 U.S. Dist. LEXIS 13934 at *46-7 n.11, *57-9 (defendants produced non-genuine packing lists and invoices that they claimed were provided by Fendi; defendants removed a warranty of Ashley Reed's legal right to sell Fendi branded merchandise from their contract with Filene's Basement; defendants returned their Fendi branded merchandise to their suppliers following the initiation of this lawsuit without examining the genuineness of those goods; defendants discarded crucial financial records after as little as one year; defendants did not maintain documentation from their suppliers or records of their purported side-by-side comparisons of their merchandise with genuine Fendi goods; defendants accepted "sanitized" invoices from their suppliers "that did not include the suppliers' names, thus signaling the questionable provenance of the items being provided.")

[8]   *Id*. at 33.  *See February 16 Decision*, 2010 U.S. Dist. LEXIS 13934 at *11-12 & 23-24.

-2-

filed or threatened . . . as well as criminal charges that had been brought against defendant James Ressler in connection with alleged counterfeiting activity;[9]

- Despite such awareness, Defendants "failed to determine the source of the bags that they sold in 2005;[10]

- Defendants returned their inventory of Fendi branded goods to their suppliers after the instant lawsuit was filed, and [e]ven if the suppliers . . . acted as intermediaries between defendants and the ultimate source of the merchandise, there is no indication in the record that defendants made any inquiries of these intermediaries as to the original source of the goods. This plainly represents willful blindness;"[11]

- Defendants' "suppliers frequently refused to provide defendants with invoices and other documentation bearing the suppliers' names, and in some cases refused to provide any paperwork to accompany the goods that defendants were purchasing;" despite the fact that "'for many decades Italian law has required that every seller of goods issue an invoice to each purchaser on a form regularly used by the seller for this purpose' and Fendi has complied with that requirement;"[12]

- Defendants "complied with requests from their suppliers to send payments to such locations as London, Switzerland and the British Virgin Islands, even though the goods that they were purchasing purportedly were being sent from Italy, and they did so without inquiring as to the basis for this routing;" the fact that defendants purchased from these suppliers "without inquiring about the cause for their desired anonymity and atypical business structures further indicates defendants' willful blindness;"[13]

- Defendants "frequently did not maintain records of their payments to their suppliers, including cancelled checks," and "often did not retain the shipping documents that accompanied the goods they received, including invoices;"[14]; and,

---

[9] *Id.*

[10] *Id.* at 33-34. *See February 16 Decision*, 2010 U.S. Dist. LEXIS 13934 at *43.

[11] *Id.* at 34.

[12] *Id.* at 35.

[13] *Id.*

[14] *Id.* at 37. *See February 16 Decision*, 2010 U.S. Dist. LEXIS 13934 at *16-17 (citing S. Ressler Dep. at 258:20-260:4) & *58-59 (citing S. Ressler Dep. at 566:3-19).

- Defendants "did not keep any records to document their purported purchases of genuine Fendi merchandise for the purpose of conducting side-by-side comparisons with the merchandise they were selling."[15]

The Magistrate Judge then addresses the question whether Scott Ressler's testimony concerning Lorenzo Bandinelli raises a factual dispute concerning Defendants' willfulness.[16] He reports that

> even if one were to credit Ressler's testimony that he met with Mr. Bandinelli and relied on his expertise as a Fendi inspector to determine the genuine nature of the merchandise that Ashley Reed intended to acquire, there is no competent evidence in the record to establish that the sources of Fendi branded merchandise identified by Mr. Bandinelli as genuine were responsible for supplying Ashley Reed the products that it sold in 2005 and 2006.[17]

Thus, the Magistrate Judge credits Scott Ressler's testimony, but reports that this testimony fails to raise a triable issue concerning Defendants' willfulness because they cannot tie Mr. Bandinelli to any of the goods that they actually bought and sold. Indeed, Defendants conceded before the Magistrate Judge, as they also did before this Court on summary judgment, their inability to specify the source of the merchandise they sold during this period, and, therefore, their inability to trace the goods to sources they claim were approved by Mr. Bandinelli.[18] In their Objections and Comments to the Report and Recommendation, Defendants again admit that "Ashley Reed cannot trace any particular bag to a single source."[19] Clearly, the Magistrate Judge is correct that no reasonable trier of fact could rely upon Scott Ressler's testimony about meetings with Mr.

---

[15]    *Id*. at 37.

[16]    *See February 16 Decision*, 2010 U.S. Dist. LEXIS 13934 at *58-9.

[17]    *R&R* at 38.

[18]    *R&R* at 38, n. 16.

[19]    Doc. 145 at 9.

-4-

Bandinelli to conclude that Defendants' infringement was not willful.[20]

Against the Magistrate Judge's devastating marshalling of evidence demonstrating their willful blindness to the counterfeit nature of their merchandise, Defendants can allege only the most specious defects. They argue repeatedly that he improperly resolves credibility issues in favor of Fendi's witnesses because he relies on the testimony of Leonardo Minerva concerning the quality and appearance of Defendants' counterfeits to find that Defendants did not perform side by side comparisons with known genuine Fendi goods.[21] This argument completely misstates the Magistrate Judge's reasoning. Far from resolving a credibility dispute in favor of Fendi's witness or concluding that Defendants did not perform the side by side comparisons, the Magistrate Judge assumes that Defendants did in fact inspect the merchandise offered to them and compare it to items in the same styles purchased directly from Fendi. He then addresses the question whether a reasonable factfinder could conclude that the inspections and comparisons provided a basis for Defendants to believe their Fendi goods were genuine. In this context, the Magistrate Judge considers Mr. Minerva's unrebutted testimony that it is "very, very obvious" that the quality of the leather of the bag sold by Ashley Reed is lower than that of genuine Fendi bags, that Fendi never made a bag in the color and fabric combination of the bag sold by Ashley Reed, and that one can "easily see" that the outside fabric of the bag sold by Ashley Reed is a different color from genuine Fendi bags.[22] Minerva's unrefuted evidence of glaring differences between genuine Fendi products and Defendants' goods makes it impossible for a rational factfinder to conclude that Defendants' inspections gave them the confidence they now claim

---

[20]   *R&R* at 38.

[21]   Defendants' Objections and Comments (Doc. 145) at 3, 8, 11.

[22]   *R&R* at 39.

they had in their merchandise.[23]  Here again, as with Scott Ressler's testimony concerning Lorenzo Bandinelli, Defendants are undone, not because the Magistrate Judge did not believe them, but because their testimony, when it is believed, fails to raise any issue of fact.

Similarly, although James Ressler's Declaration should be stricken, if it were taken instead as true it would not change the record in this case.  James Ressler offers lengthy generalities concerning the secondary market in fashion goods, numerous irrelevancies concerning brands other than Fendi, and hearsay.  What he does not do is tether any of his claims to have purchased genuine Fendi goods to any of the Fendi branded products that Defendants purchased and sold.  Indeed, he does not even name the "factories" and "sub-factories for Fendi" that he claims sold Fendi branded goods to Defendants.[24]

Defendants also argue that willful blindness is "a subjective standard," and that plaintiffs must prove that Defendants had actual, not constructive, knowledge of the risk that they were selling infringing goods.[25]  Defendants misstate the law, and the case they cite, *Island Software & Computer Serv. v. Microsoft Corp.*,[26] does not support their argument, as it holds only that the facts of that case supported inferences in favor of the defendants as well as against them so that willfulness was not established as a matter of law.[27]  In *Island Software*, moreover, the Court of Appeals clearly stated that a defendant's state of mind can be shown by constructive proof:

> even in the absence of evidence establishing the infringer's actual
> knowledge of infringement, a plaintiff can still prove willfulness

---

[23]    *Id*.

[24]    Doc. 146-1 at ¶¶ 21-27.

[25]    Doc. 145 at 5-6.

[26]    413 F.3d 257 (2d Cir. 2005).

[27]    *Id* at 263-4.

-6-

> by proffering circumstantial evidence that gives rise to an inference of willful conduct.[28]

In a more recent case, the Court of Appeals has further explained that a party exhibits willful blindness, moreover, when it has reason to suspect that infringement is occurring, but instead of investigating it "shield[s] itself from learning of the particular infringing transactions by looking the other way."[29] Defendants argue that the Court may consider only their conclusory assertions concerning their own thoughts. This argument has no basis in the law.

The facts, moreover, *as Defendants present them*, admit of no reasonable inference other than their willful blindness. If Defendants conducted the side-by-side comparisons they claim to have conducted, then the obvious differences between their goods and the known genuine Fendi products must have raised questions. If, as Scott Ressler testified, he believed that Lorenzo Bandinelli, a Fendi inspector, received commissions from factories in respect of their sales of Fendi branded goods to Ashley Reed,[30] then Mr. Ressler believed that Fendi's subcontractors were paying a Fendi inspector on the side for directing purchasers to them and certifying their goods. Mr. Ressler's own testimony, therefore, describes a suspicious transaction that placed defendants on inquiry notice concerning the genuineness of goods purchased in this way. Defendants, who had met with Fendi's counsel concerning Fendi's cease and desist letter,[31] certainly could have inquired of Fendi concerning the activities of Fendi's inspector. They did not do so.

Defendants, moreover, produced invoices ostensibly addressed by Fendi to Ashley Reed,

---

[28]  *Id.* (internal quotations and citations omitted).

[29]  *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 109 (2d Cir. 2010).

[30]  S. Ressler Dep. at 549.

[31]  *February 16 Decision*, 2010 U.S. Dis. LEXIS 13934 at *11.

showing handbags shipped to Ashley Reed.[32]  It is undisputed, however, that Defendants never purchased Fendi branded products directly from Fendi,[33] and Scott Ressler testified that Ashley Reed did not pay Fendi for the goods listed on the invoices.[34]  Defendants object to the testimony of plaintiffs' chief financial officer, Alberto Fabbri, that these documents are not genuine,[35] but his testimony is merely corroborative of facts that Defendants admit:  a supplier, or suppliers, of Ashley Reed gave Defendants documents that appear to be invoices from Fendi that charge Ashley Reed for purchases of Fendi branded goods, but Defendants knew that they were not buying the listed merchandise from Fendi, and knew that they were not going to pay Fendi. Defendants must have had questions about the authenticity of the goods sold to them by the person or persons who supplied these invoices.

Defendants' claim to have believed their goods were genuine is also belied by their failure to "maintain records of their payments to their suppliers, including cancelled checks," or to "retain the shipping documents that accompanied the goods they received, including invoices."[36]

Perhaps the clearest demonstration of Defendants' doubts concerning their Fendi branded goods is their removal from an agreement between Ashley Reed and Filene's Basement a

---

[32]  Plaintiffs' Exhibits 67, 69, 70, 71 and 72 (reproduced at Exhibits 4-8 to Fabbri Decl. (Doc. 92)); *see* S. Ressler Dep. at 485.

[33]  Defs. 56.1 Reply (Doc. 98), ¶149 (*see* S. Ressler Dep. at 97, 98 ("A. Right. They [Fendi] did not sell us the goods directly to us. We did not pay them for the merchandise.") & 433-434).

[34]  S. Ressler Dep. at 486, 488.

[35]  Fabbri Decl. (Doc. 92) ¶¶48-52.

[36]  *R&R* at 37.  *See February 16 Decision*, 2010 U.S. Dist. LEXIS 13934 at *16-17 (citing S. Ressler Dep. at 258:20-260:4) & *58-59 (citing S. Ressler Dep. at 566:3-19).

warranty that Ashley Reed "has the legal right to sell the Merchandise."[37] Clearly, Defendants would have given the requested warranty if they possessed the "subjective belief" that they now say they had in the authenticity of their goods.

Ultimately, however, all of Defendants' claims concerning their 'gray market' suppliers, their side by side examinations, their relationship with Lorenzo Bandinelli and their purchases from Fendi subcontractors, founder on the same shoal: they cannot, as they admit, trace a single item that they sold back to its source. This is true not only for the twenty Examined Items, but for every one of the sales of Fendi branded goods that they made. They cannot raise a disputed issue of fact concerning their willfulness.

## POINT II

## DEFENDANTS' PROFITS ARE ESTABLISHED BY UNCONTROVERTED EVIDENCE

The Magistrate Judge reports that plaintiffs "have demonstrated beyond triable dispute" that Defendants made sales totaling $3,495,514.00 in Fendi-branded goods in 2005 and 2006 and that defendants "have failed to establish a triable dispute as to their costs attributable to their sale and distribution of the infringing merchandise."[38] Accordingly, the Magistrate Judge recommends that the amount of Defendants' profits to which plaintiffs are entitled be set at $3,495,514.00.[39] Defendants object that Fendi's expert "relied on at least some unreliable data when calculating sales," namely, documents obtained from customers of Ashley Reed.[40]

Defendants' document production, as they conceded on summary judgment, shows total

---

[37] *See February 16 Decision*, 2010 U.S. Dis. LEXIS 13934 at *46-7 n. 11(*citing* Pl. 56.1 ¶¶ 146-148; Def. 56.1 ¶¶ 146-148).

[38] *R&R* at 47-8.

[39] *Id.* at 48.

[40] Doc. 145 at 18.

sales of Fendi branded products for the years 2004-2006 of $5,034,269.[41]  They therefore cannot object to the Magistrate Judge's report that their own records show sales of Fendi branded goods of $3,198,934.00 in 2005 and of $211,480 in 2006.  As the Magistrate Judge reports, Fendi's expert supplemented the 2005 total with an additional $85,100 in sales found in Defendants' customers' records, but found no supplemental records for 2006.  Accordingly, Defendants' Objection to the *R&R*'s calculation of their sales is limited to the $85,100 in purchases from Ashley Reed reported by Defendants' customers that do not appear in Defendants' records.

The only doubts in this case concerning the extent of defendants' dealings in counterfeits are caused by defendants' practice of discarding their records, and, in particular, their supplier invoices.  It is well-established that

> when a party frustrates proof of damages, either by withholding facts or through inaccurate record keeping, any doubts . . . will be resolved against that party, and the fact-finder may calculate damages at the highest reasonably ascertainable value.

*Chesa International, Ltd. v. Fashion Associates, Inc.*, 425 F. Supp. 234, 238 (S.D.N.Y. 1977)"); *see also Aris Isotoner, Inc. v. Dong Jin Trading Co., Inc.*, 17 U.S.P.Q.2d 1017, 1022 (S.D.N.Y. 1989) (court may resolve doubts against the defendant in calculating profits, particularly if uncertainty is due to defendant's inadequate recordkeeping or failure to produce documentary evidence.").

Defendants' sales are clearly the proper measure of the amount they should disgorge.

---

[41] Def. 56.1 Resp. (Doc. 98), ¶133.  *See also* Declaration of James Donohue Decl. ("Donahue Decl.") Ex. 3) (Doc. 91) (filed under seal).

## CONCLUSION

For the reasons set forth above and in Plaintiffs' Partial Objection,[42] plaintiffs respectfully request:

That the Court reaffirm its determination in the *February 16 Decision* that defendants are liable for counterfeiting for all of their sales of Fendi branded goods, and accordingly, deny that part of the *R&R* that recommends that the issue of defendants' sales made before 2005 be tried to a jury;

That the Court adopt that part of the *R&R* that recommends that defendants' sales be held willful as a matter of law, and extend that holding to all of defendants' sales of Fendi branded goods;

---

[42] Doc. 144.

That the Court direct that defendants be ordered to pay to plaintiffs treble damages of $29,988,588;

That the Court direct that defendants be ordered to pay to plaintiffs prejudgment interest on the treble damages amount; and,

That plaintiffs be awarded their reasonable attorneys fees and costs.

New York, New York
October 12, 2010

Respectfully submitted,

SQUIRE, SANDERS & DEMPSEY L.L.P.

By *[signature]*

Richard L. Mattiaccio (RM 4764)
Victor Genecin (VG 9733)
Steven Skulnik (SS 7821)
30 Rockefeller Plaza, 23rd floor
New York, NY  10112
(212) 872-9800
*Attorneys for Plaintiffs*
FENDI ADELE S.r.l., FENDI S.r.l., and
FENDI NORTH AMERICA, INC.

NEWYORK/133833.3
100743.00005