```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
FENDI ADELE S.R.L., FENDI
S.R.L. and FENDI NORTH AMERICA,  :

                  Plaintiffs,    :    REPORT & RECOMMENDATION

          -against-             :    06 Civ. 0243 (RMB)(MHD)

ASHLEY REED TRADING, INC., SCOTT :
RESSLER and JAMES RESSLER,
                                 :
                  Defendants.
--------------------------------x
TO THE HONORABLE RICHARD M. BERMAN, U.S.D.J.
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/16/11
```

Plaintiffs Fendi Adele S.r.l., Fendi S.r.l. and Fendi North America ("Plaintiffs" or "Fendi") are designers, manufacturers and importers of branded Fendi bags, and own the trademarks and other intellectual property rights associated with Fendi merchandise. Fendi Adele S.R.L. v. Filene's Basement, Inc., 696 F.Supp.2d 368, 372-73 (S.D.N.Y. 2010). In this case, plaintiffs sued Ashley Reed Trading, Inc., and its co-owners and corporate officers, James Ressler and Scott Ressler, on claims of having distributed counterfeit Fendi products in violation of the Lanham Act, 15 U.S.C. §§ 1051 et seq., section 360-1 of the New York General Business Law and New York common law. We will briefly set forth the procedural history of the case, and then address what we hope will be the final issues.

Procedural History

In plaintiffs' complaint, they contended that defendants had infringed their registered trademarks through the sale of counterfeit merchandise, in violation of 15 U.S.C. § 1114(1)(a), had falsely designated the origin of those products, in contravention of 15 U.S.C. § 1125(a), and had infringed upon plaintiffs' famous marks, in violation of 15 U.S.C. § 1125(c). (Compl., ¶¶ 41-45, 54-58, 67-74). Pursuant to 15 U.S.C. § 1117(a), plaintiffs sought relief in the form of an accounting and disgorgement of defendants' profits, compensation for their own damages, and reimbursement of their costs and attorneys' fees. (Id. at ¶¶ 46, 59, 75). Plaintiffs also sought treble damages, in the form of three times the greater of defendants' profits or their own damages, prejudgment interest on those damages, and attorneys' fees under 15 U.S.C. § 1117(b). (Id. at ¶¶ 47, 60, 76). Finally, plaintiffs requested injunctive relief pursuant to 15 U.S.C. § 1116(a) and § 1125(c), and destruction of the infringing goods under 15 U.S.C. § 1118. (Id. at ¶¶ 52, 53, 65, 66, 81). Defendants filed an answer, which they later amended, in which they asserted affirmative defenses, including plaintiffs' acquiescence, laches, unclean hands and the invalidity of plaintiffs' trademarks, and also sought a jury trial. (Am. Answer, ¶¶ 94-97).

This case was consolidated for discovery with five other pending actions that had been initiated by plaintiffs. In March 2009, following the completion of discovery, plaintiffs moved for summary judgment, seeking dismissal of all of defendants' affirmative defenses and relief on all of their own claims, including their requests for injunctive relief and an accounting of defendants' profits. After briefing and oral argument on plaintiffs' motion, it was granted in part and denied in part. Specifically, defendants' affirmative defenses were dismissed, and plaintiffs were granted summary judgment on defendants' liability for trademark counterfeiting and false designation of origin under the Lanham Act, trademark dilution under the Lanham Act and New York statutory law, and unfair competition under New York common law. Fendi Adele S.R.L. v. Ashley Reed Trading, Inc., 2010 WL 571804, *8-17 (S.D.N.Y. Feb. 16, 2010). The District Court also awarded plaintiffs injunctive relief in the form of a prohibition on defendants "purchasing, offering, or selling any item bearing the word 'Fendi' or any of the Fendi Marks without [p]laintiffs' written permission." Id. at *18.

Insofar as plaintiffs sought an accounting of defendants' profits and treble damages on those profits, however, the court denied the motion "without prejudice," id. at *20, observing that

3

"there may still be issues of fact and/or credibility that bear on [d]efendants' willfulness in connection with [p]laintiffs' application for an accounting." Id. at *19. The court then referred the case to me to conduct further proceedings to determine plaintiffs' entitlement to an accounting and the extent of any monetary relief for "plaintiffs' damages". Id. at *20.

We interpreted this statement as a directive to determine whether plaintiffs were entitled to summary judgment on the question of willfulness (a necessary predicate to an award of damages equal to triple defendants' profits), and, if so, to assess the amount of damages to which defendants were entitled. (Report & Recommendation dated July 30, 2010, at pp. 8-9).[1] We also noted that "the decision of the District Court in this case is predicated on the assumption that willfulness is a requirement for an award of infringer's profits" (id. at 17), and found that "the evidence easily suffices to justify a finding that defendants' willfulness has been established beyond triable dispute." (Id. at 17-18).

In making that determination, however, we believed that "[t]he District Court did not specify the period of defendants'

_____

[1] This Report and Recommendation is not available on WESTLAW, but may be found at 2010 U.S. Dist. LEXIS 111057.

4

infringement, but rather premised its finding of defendants'
liability on the counterfeit nature of twenty Fendi-branded bags
and leather goods sold by defendants in 2005 and later determined
to have been counterfeit." (Id. at 20). We therefore examined
"whether plaintiffs have established defendants' liability for the
period proceeding their sale of these goods." (Id.). Ultimately, we
"conclude[d] that there are disputed factual issues pertaining to
whether defendants engaged in infringing activity prior to 2005,
and therefore [found] that plaintiffs' entitlement to [defendants']
profits from the period from 1999 to 2005 cannot be resolved as a
matter of law." (Id. at 21). We therefore recommended against
awarding summary judgment establishing defendants' liability prior
to 2005 (id. at 30), and observed that a jury trial should be held
to determine defendants' liability on plaintiffs' claims "for the
period prior to 2005, as well as the willfulness of any trademark
infringement in which the jury determines that the defendants
engaged," as well as, if necessary, the amount of defendants'
profits during that time. (Id. at 55-56). In light of this, we also
recommended that plaintiffs' request for costs and attorneys' fees
be denied "without prejudice to a renewal of the application upon
resolution of all of plaintiffs' claims." (Id. at 55).

As for defendants' conduct in 2005 and 2006, however, we found

5

that "defendants' counterfeiting during that period has been established" (id.), and after an analysis of the parties' submissions regarding defendants' willfulness during that period, we recommended that the court find that defendants' trademark infringement in 2005 and 2006 was willful as a matter of law, and award $10,486,542.00 in treble damages for that period. (See id. at 2-3, 30-50). We also recommended that plaintiffs be awarded prejudgment interest on defendants' profits (not their trebled damages) from 2005 and 2006, to be calculated from the date on which the complaint was served: January 25, 2006. (Id. at 51-54).

On October 19, 2010, the Court issued an order adopting in part and rejecting in part our Report and Recommendation. Fendi Adele S.R.L. v. Ashley Reed Trading, Inc., 2010 WL 4118104 (S.D.N.Y. Oct. 19, 2010). First, the Court accepted our conclusion "that there was ample evidence of Defendants' 'failure to discern the source of [Fendi] merchandise' despite being on notice of the existence of counterfeit Fendi goods in the marketplace since 2001 . . . and of Defendants' failure to maintain records of their receipt and sale of Fendi merchandise." Id. at *3 (quoting Report & Recommendation at 33, 35) (internal citation omitted). The Court agreed that "[t]his evidence justified 'a finding that [D]efendants' willfulness has been established beyond triable

6

dispute.'" Id. (quoting Report & Recommendation at 37 and citing cases). The Court also accepted our recommendation as to the accounting of defendants' profits in the 2005-2006 period and the award of $10,486,542.00 in treble damages for that period. It rejected our recommendation as to plaintiffs' claims for counterfeiting prior to 2005, however, stating that we had been referred only the "determination as to any 'issues of fact and/or credibility that bear on Defendants' willfulness,' 'the appropriateness of an accounting of Defendants' profits and, if warranted, an assessment of Plaintiffs' damages.'" Id. at *4 (quoting Ashley Reed, 2010 WL 571804, at *19-20). The Court further stated that "[t]he February 16, 2010 Decision resolved the question of Defendants' liability for counterfeiting," and rejected our recommendation as to the necessity of further fact-finding for the pre-2005 period. Id. (citing 28 U.S.C. § 636(b)(1) and cases). In light of that decision, the Court also rejected our recommendation to deny plaintiffs' request for costs and attorney's fees, and referred the matter back to me for "a determination of an award of costs and attorney's fees pursuant to 15 U.S.C. § 1117(b)." Id.

Fendi moved for reconsideration of the October 19, 2010 Order, arguing that they had established willfulness for all of defendants' sales, and that the Court should therefore award treble

7

damages on defendants' pre-2005 sales. Their motion was denied
(Order, Nov. 18, 2010), and we thereafter accepted submissions on
attorney's fees and costs, which we now address, as well as
briefing on whether an additional award of infringers' profits
should be made for the pre-2005 period.[2]


I. Plaintiffs' Request for Costs and Attorney's Fees


A. Legal Standards


We have been directed to recommend an award of costs and
attorney's fees pursuant to 15 U.S.C. § 1117(b), in light of the
Court's finding that defendants' conduct was willful. Ashley Reed,
2010 WL 4118104, at *4. Section 1117(b) states that, for willful
violations of section 1114(1)(a), "the court shall, unless the
court finds extenuating circumstances, enter judgment for three
times [defendant's] profits or [plaintiff's] damages, whichever

---

[2] The parties undertook this additional briefing because of
their understanding that the District Court's October 2010
decision appeared to contain an ambiguity as to whether
plaintiffs should receive an award for the pre-2005 period; the
ambiguity flowed from the court's apparent finding that
infringement and willfulness in the earlier period were
established, despite its failure to make an award for that
period. (Tr., Dec. 2, 2010 Pre-Trial Conf., at 5-9; see also
Ashley Reed, 2010 WL 4118104, at *3-4).

amount is greater, together with a reasonable attorney's fee[.]"
Section 1117(a) also entitles the prevailing plaintiff to an award
of "the costs of the action" and, in "exceptional cases," its
"reasonable" attorney's fees. 15 U.S.C. § 1117(a). "When
willfulness has been established, courts consider the case to be
'exceptional' within the meaning of the statute and therefore award
attorneys' fees." Malletier v. Carducci Leather Fashions, Inc., 648
F.Supp.2d 501, 505 (S.D.N.Y. 2009) (citing cases). Plaintiffs are
therefore entitled to their reasonable attorney's fees.

"In this Circuit, a party seeking such an award of attorneys'
fees must support its request with contemporaneous time records
that show 'for each attorney, the date, the hours expended, and the
nature of the work done.'" Malletier, 648 F.Supp.2d at 506 (quoting
N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d
1136, 1148 (2d Cir. 1983). Those records at a minimum must
"identify the general subject matter" of the time that the attorney
spent. Hensley v. Eckerhart, 461 U.S. 424, 437 n.12 (1983). This
requirement is not satisfied by vague entries such as "conference
with" or "call to" a particular person. Connecticut Hosp. Ass'n v.
O'Neill, 891 F. Supp. 687, 690-91 (D. Conn. 1994) (citing, inter
alia, Hensley, 461 U.S. at 437; Grogg v. Gen. Motors Corp., 612 F.
Supp. 1375, 1380 (S.D.N.Y. 1985)). To determine the number of hours

that should be compensable, the court must initially look to the amount of time spent on each category of tasks, as documented by contemporaneous time records. See, e.g., New York Ass'n for Retarded Children, Inc., 711 F.2d at 1142-43, 1147. The court must then determine how much of that time was "reasonably" expended. "In calculating the number of 'reasonable hours,' the court must look to its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992) (quoting DiFilipo v. Morizio, 759 F.2d 231, 234 (2d Cir. 1985)). If the court concludes that portions of the expended time were not reasonably necessary to achieve the successful result obtained by the movant, it should reduce the time for which compensation is awarded. See, e.g., Hensley, 461 U.S. at 434-35; see also Seitzman v. Sun Life Assurance Co. of Canada, Inc., 311 F.3d 477, 487 (2d Cir. 2002). Such reductions are appropriate to account for plainly inefficient or duplicative work. See, e.g., Hensley, 461 U.S. at 433-35; Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 98 (2d Cir. 1997). In reducing a claim for time spent, the court may "use a percentage deduction 'as a practical means of trimming fat from a fee application.'" McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006) (quoting Kirsch v. Fleet St., Ltd., 148 F.3d 149,

173 (2d Cir. 1998)).

Once we have reviewed the submitted time records, our measurement of a fee award turns on our assessment of a "presumptively reasonable fee," Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008), an exercise that largely tracks the traditional "lodestar" analysis. In performing this assessment, we look to the amount of work, the skills of the attorneys, and the results achieved. See, e.g., Arclightz and Films Pvt. Ltd. v. Video Palace Inc., 303 F. Supp. 2d 356, 364 (S.D.N.Y. 2003) (citing N.A.S. Import, Corp. v. Chenson Enter., Inc., 968 F.2d 250, 254 (2d Cir. 1992)). This requires a calculation based on the amount of time reasonably required to do the job and a reasonable hourly rate. See Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992); OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc., 2010 WL 5538552, at *2 (S.D.N.Y. Dec. 6, 2010) (citing, inter alia, Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc., 246 F.3d 142, 146 n.3 (2d Cir. 2001)). "The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what a paying client would be willing to pay, the district court should . . . bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. Hence

11

we look to the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984); McDonald, 450 F.3d at 96; Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989). In meeting this requirement, the fee applicant bears the burden of proof, see, e.g., Blum, 465 U.S. at 896 n.11; Chambless, 885 F.2d at 1059, although the court may also take judicial notice of prevailing rates in its own legal community. See, e.g., McDonald, 450 F.3d at 96-97; Miele v. New York State Teamsters Conf. Pension & Retirement Fund, 831 F.2d 407, 409 (2d Cir. 1987). Moreover, the Second Circuit has recently cautioned that overhead is not a basis in itself for setting a higher or a lower fee, and that the court should look more broadly to what attorneys doing the sort of work at issue in the case will be likely to charge. See McDonald, 450 F.3d at 97 n.6; cf. In re Holocaust Victims Assets Litig., 2007 WL 805768, *31-35 (E.D.N.Y. March 15, 2007) (court seeks to approximate market rate for services provided).

We should also consider other relevant factors, including the fact that a reasonable paying client "might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with

the case," and those factors enumerated in <u>Johnson v. Ga. Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974), <u>abrogated on other grounds</u>, <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 92-93, 96 (1989).[3] <u>Arbor Hill</u>, 522 F.3d at 190.

Finally, we bear in mind that the court has "broad discretion" in assessing a party's fee application and "need not . . . scrutinize[ ] each action taken or the time spent on it." <u>Aston v. Sec'y of Health & Human Servs.</u>, 808 F.2d 9, 11 (2d Cir. 1986). As the Supreme Court has noted, "[a] request for attorney's fees should not result in a second major litigation." <u>Hensley</u>, 461 U.S. at 437.

---

[3] The twelve <u>Johnson</u> factors are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

<u>Arbor Hill</u>, 522 F.3d at 186 n.3 (quoting <u>Johnson</u>, 488 F.2d at 717-19).

13

B. <u>Plaintiffs' Attorneys and the Reasonableness of Their Rates</u>

Plaintiffs have provided the requisite contemporaneous time records in two separate submissions, which together reflect time spent by their attorneys and support personnel totaling 2,514.50 hours. (Decl. of Richard L. Mattiaccio, Esq., Apr. 23, 2010 ("Mattiaccio Decl."), at ¶ 4; Supp'l Decl. of Richard L. Mattiaccio, Esq., Jan. 7, 2011 ("Supp'l Mattiaccio Decl."), at ¶ 3).[4] This time was billed by attorneys at plaintiffs' original law firm, Pavia & Harcourt LLP, as well as their current firm, Squire, Sanders & Dempsey LLP. (Mattiaccio Decl. at ¶ 1, 5; Supp'l Mattiaccio Decl. at ¶ 3). Plaintiffs' application seeks reimbursement for these hours, for a total fee award of $915,374.25. (Supp'l Mattiaccio Decl. at ¶ 9).

Plaintiffs were primarily represented by Victor Genecin, Esq.,

_____

[4] Plaintiffs filed contemporaneous time records for the period from January 5, 2006 to February 28, 2010 along with their initial application for attorneys' fees. (<u>See</u> Mattiaccio Decl. at ¶ 4). These records reflect a total of "1868.7 hours of attorney and staff time amounting to fees of $608,715.50 . . . [which] is equal to a blended rate for all timekeepers of $326 per hour." (<u>Id.</u>). Plaintiffs filed contemporaneous time records for the period from March 1, 2010 to December 31, 2010 with their renewal of that application. (<u>See</u> Supp'l Mattiacio Decl. at ¶¶ 3, 7). These additional records reflect a total of "645.80 hours of attorney and staff time amounting to fees of $306,658.75." (<u>Id.</u> at ¶ 3).

a litigator with close to 30 years experience, including his prior representation of plaintiffs in a jury trial in this court. (Mattiaccio Decl. at ¶ 9). Plaintiffs were also represented by Richard L. Mattiaccio, Esq., an attorney with twenty-five years of experience representing Italian companies in litigation and arbitration proceedings relating to their American operations, including nearly fifteen years representing plaintiffs (id. at ¶ 7), and by Steven Skulnik, Esq., an attorney with twenty-six years of experience, including in intellectual property matters. (Id., Ex. 4 at pp. 6-7). They were assisted by other partners and principals at Squire Sanders, each of whom has significant litigation experience (see, e.g., id., Ex. 4 at pp. 8-12), as well as by associates, legal assistants, and law clerks.

The materials submitted in April, 2010 state that the plaintiffs' attorneys' "rates increased over time," but "the discounted hourly rates" of the three attorneys who billed "substantial time" on this matter peaked in 2009 at $550.00 per hour for Richard L. Mattiaccio, $450.00 per hour for Steven Skulnik and $400.00 per hour for Victor Genecin. (Mattiaccio Decl. at ¶ 4 n.1). These materials also note that the "standard rate" for each of these attorneys was substantially higher (for Mattiaccio, "$695[.00 per hour] in 2009 and $730[.00 per hour] in 2010," for

15

Skulnik, "$580[.00 per hour] in 2009 and $610[.00 per hour] in 2010," and for Genecin, "$540[.00 per hour], and $570[.00 per hour] in 2010."), and state that the "blended rate for all timekeepers" is "$326[.00] per hour."[5] (Id.). They do not, however, contain a summary of the hours and rates of the other attorneys who worked on this case, leaving us to sift through the attached time records to determine the rates (and, where pertinent, the qualifications) of those attorneys, before we evaluate the reasonableness of those rates. We note as well that the time records submitted in January, 2011 do not contain a summary of rates for the three lead attorneys on the case -- or any of the other attorneys whose work is reflected in the billing records -- and we therefore summarize those rates before evaluating their reasonableness.

The January, 2011 submission contains contemporaneous billing records for work done on this litigation between March 1, 2010 and December 31, 2010. (See Supp'l Mattiaccio Decl. at ¶ 3). In these records, plaintiffs' attorneys' billing rates rose to $600.00 per hour for Richard L. Mattiaccio (see id. at Ex. 1, p.1), $550.00 per

---

[5] We note that a rate of $326.00 per hour for 1868.70 hours -- the amount of time for which a fee award was sought in April, 2010 (see Mattiaccio Decl. at ¶ 4) -- actually amounts to a fee of $609,196.00, not the fee of $608,715.50 requested in those materials. (Id.).

hour for Steven Skulnik (see id. at Ex. 1, p.2), and $470.00 per hour for Victor Genecin. (See id.). Plaintiffs were also represented during that time by Lewis F. Murphy, Esq., a partner with a billing rate of $690.00 per hour (see id. at Ex. 1, pp. 2, 24), Gary P. Timin, Esq., a partner with a reduced billing rate of $575.00 per hour (see id. at Ex. 1, pp. 6, 24), and Peter A. Zisser, Esq., an of-counsel with a billing rate of $580.00 per hour. (See id. at Ex. 1, pp. 14, 24). These attorneys were assisted by associates who billed approximately $200.00 per hour (see, id. at Ex. 4, pp. 6, 25), and legal assistants and law clerks whose time was charged at approximately $150.00 per hour. (See id. at Ex. 4, p. 25).

Having determined the hourly rates charged by plaintiffs' attorneys and support staff, we now turn to an evaluation of their reasonableness. Defendants object that plaintiffs have not provided sufficient evidence to show that these hourly rates are commensurate with the rates charge by New York attorneys with comparable experience that have been approved in other intellectual property cases within the Southern District. (Defs.' Mem. of Law at 3). We find, however, that the rates charged by Fendi's attorneys are commensurate with, and perhaps even lower than, the rates charged by attorneys with comparable experience performing

17

comparable work in this district. See, e.g., Therapy Prods., Inc. v. Bissoon, 2010 WL 2404317, *5 (S.D.N.Y. Mar. 31, 2010) (approving hourly rates for New York-based intellectual property litigation firm of $490.00 to $580.00 for partners, $295.00 to $430.00 for associates, and $170.00 to $200.00 for paralegals); Union of Orthodox Jewish Congregations of Am. v. Royal Food Distrib. LLC, 665 F. Supp. 2d 434, 437 (S.D.N.Y. 2009) (approving partner and associate rates of $735.00 and $445.00, respectively); GAKM Res. LLC, 2009 WL 2150891, at *8 (finding hourly rates of $600.00 to $650.00 reasonable for partners specializing in intellectual-property litigation); Diplomatic Man, Inc. v. Nike, Inc., 2009 WL 935674, *5-6 (S.D.N.Y. Apr. 7, 2009) (finding hourly rates of $650.00 for a partner and $200.00 for a paralegal in a New York firm to be reasonable); Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC, 2009 WL 466136, *6 (S.D.N.Y. Feb. 25, 2009) (approving hourly rates between $205.00 and $235.00 for paralegal work); Malletier v. Dooney & Bourke, Inc., 2007 WL 1284013, *4 (S.D.N.Y. Apr. 24, 2007) (awarding $700.00 per hour to experienced attorney in trademark litigation). Therefore, we do not recommend any reduction in the hourly rates charged by plaintiffs' attorneys.

C. <u>The Reasonableness of the Hours Billed</u>

We now turn to an evaluation of the reasonableness of the hours spent by plaintiffs' attorneys on the instant suit. Defendants have numerous objections to the reasonableness of these hours. First, defendants contend that the redaction of certain entries in the submitted time records makes it impossible to evaluate the reasonableness of the claimed hours and the relevance of the tasks to the case at hand. (Defs.' Mem. of Law at 3-4). We agree that in many instances the redaction of plaintiffs' attorneys' time records prevents a determination of the reasonableness of those hours. For example, several entries describe the time spent by attorneys as "legal research of", with the remainder of the description redacted. (<u>See</u>, <u>e.g.</u>, Mattiaccio Decl., Ex. 1 at pp. 3, 5, 18, Ex. 2 at pp. 12, 15, 17, 37-38; Mattiaccio Supplemental Decl., Ex. 1 at pp. 5-6, 8). Other entries indicate that attorneys spent time drafting or revising a particular document, with the description of the document entirely redacted. (<u>See</u>, <u>e.g.</u>, Mattiaccio Decl., Ex. 2 at pp. 3-4, 6-8; Mattiaccio Supplemental Decl., Ex. 1 at pp. 9-11). Likewise, other entries refer to attorneys attending conferences and drafting e-mails, with the subject matter of the conferences and correspondence completely redacted. (<u>See</u>, <u>e.g.</u>, Mattiaccio Decl.,

19

Ex. 2 at pp. 6, 9, 15-17; Mattiaccio Supplemental Decl., Ex. 11 at pp. 9-11). It is impossible to determine the reasonableness of the hours spent on these items without more information.

Second, defendants contend that the claimed hours should be reduced to reflect the fact that this case was consolidated with five other cases for discovery purposes, and they claim that they should not be fully charged with discovery expenses more properly divided among the defendants in the consolidated cases. (Defs.' Mem. of Law at 4-5). We do not agree, however, that this provides sufficient reason to strike or reduce the hours submitted in the current time records, as it is apparent that plaintiffs' time records reflect expenses that are directly attributable to this case -- for example, the depositions of the Ressler defendants (see Mattiaccio Decl. at Ex. 2, pp. 24-25) -- or expenses that have already been divided among the consolidated cases. (See, e.g., Mattiaccio Decl. at Ex. 2, pp. 24, 51). Indeed, plaintiffs confirm that their billing records related to discovery were "divided among the defendants by plaintiffs' counsel in their time recordation" (Pls.' Reply Mem. of Law at 3), and defendants have submitted no evidence that would lead us to question this representation.

Finally, defendants contend that plaintiffs' decision to have

20

three lead attorneys and several additional attorneys work on this case led to unnecessary duplication of efforts. They therefore request that "any time entries pertaining to internal conferences among Fendi's multiple attorneys be stricken, and that for all judicial proceedings, conferences and depositions, entries for only one attorney be considered." (Defs.' Mem. of Law at 5). "Ample authority supports reduction in the [fee award] for overstaffing as well as for other forms of duplicative or inefficient work." Seigal v. Merrick, 619 F.2d 160, 164 n. 9 (2d Cir. 1980) (citing Johnson, 488 F.2d at 717). However, "[t]he use of multiple attorneys is not unreasonable per se." Handschu v. Special Servs. Div., 727 F.Supp.2d 239, 251 (S.D.N.Y. 2010) (quoting Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp., 599 F.Supp. 509, 518 (S.D.N.Y. 1984) (internal brackets removed)). In complex litigation multiple attorneys will often be required to work together, and we do not believe that the mere fact that plaintiffs' attorneys attended conferences together and sometimes discussed the case amongst themselves is sufficient to show unreasonable duplication of efforts and reduce an award of attorney's fees. See, e.g., Seigal, 619 F.2d at 164 ("We would be more reluctant than the district court to deprive a lawyer of the aid of even one associate in conferences or court appearances when, as here, he was often confronted with a bevy of hostile lawyers for the multiple parties

21

on the other side[.]"); Handschu, 727 F.Supp.2d at 252 ("At times
in this protracted case the participation of all five Class Counsel
was appropriate and productive."). "Indeed, division of
responsibility may make it necessary for more than one attorney to
attend activities such as depositions and hearings. Multiple
attorneys may be essential for planning strategy, eliciting
testimony or evaluating facts or law." Williamsburg Fair Hous.
Comm., 599 F.Supp. at 518 (citing cases). This is particularly true
where multiple defendants' attorneys attended the same conferences
at which, defendants now claim, attendance by multiple plaintiffs'
attorneys was unnecessarily duplicative. Id. ("The defendants' use
of multiple attorneys may have, in itself, contributed to the
plaintiffs' need for representation by more than one attorney.")
(citing Seigal, 619 F.2d at 164); see also Pls.' Reply Mem. at 4
(stating that a conference attended by three of plaintiffs'
attorneys was also "attended by two lawyers from defendants' law
firm, three in-house lawyers from defendants' insurance carrier,
and outside counsel for defendants' insurance carrier.")). Hence
the only reduction in plaintiffs' claimed fees that we see as
appropriate reflects plaintiffs' excessive redaction of their
billing records.

In lieu of accepting plaintiffs' offer to review unredacted

22

versions of their attorneys' voluminous time records in camera, we recommend that plaintiffs' request for attorneys' fees be reduced by fifteen percent to account for the claimed hours that are accompanied by insufficient descriptions. In light of the Supreme Court's admonition that a fee request should not result in a "second major litigation," we adopt this across-the-board percentage reduction instead of engaging in a detailed analysis of the tasks and hours listed in the billing records. See Hensley, 461 U.S. at 437; Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 541 (S.D.N.Y. 2008) (applying across-the-board percentage reduction to account for excessiveness of fees as opposed to addressing each individual objection). Indeed, the Second Circuit has noted that courts are not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items" in attorneys' time records. Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). We thus recommend that plaintiffs' requested fee award be reduced by $137,306.14, which amounts to fifteen percent of plaintiffs' request for $915,374.25, in lieu of engaging in a line-by-line, in camera review of unredacted copies of plaintiffs' attorneys' time records.

In sum, we recommend that plaintiffs be awarded $778,068.11 in attorneys' fees.

23

D. Recommendation as to Costs

Plaintiffs have sought $88,657.35 in costs associated with the litigation. They have supported their application with invoices documenting their expenses. (See Mattiaccio Decl., Exs. 2, 3; Supp'l Mattiaccio Decl., Exs. 1, 2). Defendants have not objected to this aspect of plaintiffs' application, and we view plaintiffs' documented expenses to be reasonable. Therefore, we recommend that plaintiffs be awarded $88,657.35 in costs incurred in this matter.

II. Remaining Issues

In the interest of completeness, we turn our attention to one final issue. Plaintiff has been awarded treble damages on defendants' profits for the period from 2005-2006. See Ashley Reed, 2010 WL 4118104, at *3. In our July 30, 2010 Report & Recommendation, we did not recommend any award of damages for the pre-2005 period, given our finding that defendants' willfulness for that period could not be established as a matter of law. Instead, we recommended that a jury trial be held on the issue of defendants' willful infringement during that period, with the jury to award damages based on their finding of willfulness. (See Report & Recommendation at pp. 8-9 ("Should the jury determine that

plaintiffs are entitled to the remedy of an accounting of defendants' profits prior to 2005, the jury should also determine the amount of those profits.")). The District Court, however, stated that defendants' infringement for that period had been "established as a matter of law in this Court's February 16, 2010 [d]ecision." Ashley Reed, 2010 WL 4118104, at *3. (citing Ashley Reed, 2010 WL 571804, at *15). It also stated that the evidence "justified 'a finding that [D]efendants' willfulness has been established beyond triable dispute,'" given defendants' failure to maintain records and the fact that defendants were "on notice of the existence of counterfeit Fendi goods in the marketplace since 2001." Id. (citing Report & Recommendation at 35, 37). It therefore ruled that defendants' willfulness had been established as a matter of law, and granted plaintiffs summary judgment on this point.

As plaintiffs point out, however, in rejecting that portion of our recommendation, the Court did not enter any award of damages for the period from 2001-2005. This leaves us with a seemingly inconsistent result: it has been "established beyond triable dispute," id., that defendants willfully infringed plaintiff's trademarks through the sale and distribution of counterfeit goods for a four-year period from 2001 through 2004, but plaintiff has not been awarded any damages for that period. This appears to run

25

afoul of the Lanham Act's command that, when a violation is established, "the plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). It also conflicts with the Act's command that, where a willful violation has occurred, "the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee[.]" 15 U.S.C. § 1117(b). While further inquiry into damages for this period is not strictly within the scope of our most recent referral, we respectfully believe that such an inquiry is not only necessary to full resolution of this matter, but also required by law, and is within the scope of the referral contained in the District Court's February 19, 2010 Order. Therefore, in an effort to resolve all remaining issues in this matter, we briefly examine plaintiffs' damages prior to 2005.

"A plaintiff must prove that an infringer acted with willful deception before the infringer's profits are recoverable by way of an accounting." Ashley Reed, 2010 WL 571804, at *7 (quoting Bambu Sales, Inc. v. Ozak Trading, Inc., 58 F.3d 849, 854 (2d Cir. 1995)). Since "[d]efendants' willfulness has been established beyond triable dispute," id., we believe that plaintiffs are

26

entitled to an accounting and the disgorgement of defendants'
profits on their sales of counterfeit Fendi goods dating from 2001-
2004.[6]

     As we noted in our previous Report and Recommendation, in the
context of an accounting proceeding, "the plaintiff shall be
required to prove defendant's sales only; defendant must prove all
elements of cost or deduction claimed." (Report & Recommendation at
41 (quoting 15 U.S.C. § 1117(a)). The plaintiff is entitled to
receive all of the defendant's profits from its proven sales of
infringing goods, "unless the defendant can show 'that the
infringement had no relationship' to those earnings." George Basch
Co., 968 F.2d at 1539 (quoting Mishawaka Mfg. Co. v. S.S. Kresge
Co., 316 U.S. 203, 206 (1942)). "[I]f 'the [defendant's] actual
sales cannot be precisely determined, the court may resolve any
doubts against the defendant in calculating profits, particularly

---

[6] Plaintiffs urge us to recommend an award based on
defendants' sales beginning in the year 2000, rather than 2001.
These sales total $9,995,196.00, and plaintiffs request that they
be awarded treble damages on the entire amount, for a total award
of $29,985,588.00, plus prejudgment interest in the amount of
$2,932,836.96. We note, however, that the District Court pointed
to evidence of defendants' awareness of the existence of
counterfeit goods "since 2001." Ashley Reed, 2010 WL 4118104, at
*3. We are therefore unable to discern any basis on which to
recommend an award of damages based on disgorgement of
defendants' sales during the year 2000, which totaled $43,515.
(See Decl. of James J. Donohue, Feb. 18, 2009, at Ex. 3).

if the uncertainty is due to the defendant's inadequate record-keeping or failure to produce documentary evidence.'" <u>U.S.A.</u> <u>Famous Original Ray's Licensing Corp. v. Tisi's Pizza and Pasta Inc.</u>, 2009 WL 4351962, *3 (S.D.N.Y. Dec. 1, 2009) (quoting <u>Chloe v. Zarafshan</u>, 2009 WL 2956827, *5 (S.D.N.Y. Sept. 15, 2009)). <u>Accord</u> <u>Chesa Int'l, Ltd. v. Fashion Assocs., Inc.</u>, 425 F. Supp. 234, 238 (S.D.N.Y. 1977) (noting the "well-known and ancient doctrine that when a party frustrates proof of damages, either by withholding facts or through inaccurate record-keeping, any doubts about the actual assessment of damages will be resolved against that party, and the fact-finder may calculate damages at the highest reasonably ascertainable value") (citing, <u>inter alia</u>, <u>Westinghouse Elec. &</u> <u>Mfg. Co. v. Wagner Elec. & Mfg. Co.</u>, 225 U.S. 604, 620 (1912)). Nevertheless, "'some reasonable basis for computation [of defendant's profits] has to be used.'" <u>U.S.A. Famous Original Ray's Licensing Corp.</u>, 2009 WL 4351962, at *3 (quoting <u>Chloe</u>, 2009 WL 2956827 at *5).

In our July 30, 2010 Report & Recommendation, we concluded that plaintiffs had adequately established defendants' sales of Fendi-branded goods through the declaration of James J. Donohue, and that defendants' objections to Mr. Donohue's calculations were without merit. (Report & Recommendation at 42-46). We also noted

that "[d]efendants have not introduced any evidence of their costs that can be attributed to the distribution and sales of the infringing Fendi-branded merchandise . . . [and a]s such, a reasonable fact-finder could not rely on [defendants'] assertions to deduct any costs from Ashley Reed's gross revenue from the sales of Fendi-branded merchandise. (<u>Id.</u> at 48 (citing <u>Hamil Am. Inc. v. GFI</u>, 193 F.3d 92, 107 (2d Cir. 1999)). We therefore find that plaintiffs have demonstrated beyond triable dispute that defendants' sales of counterfeit Fendi-branded goods in the period from 2001 to 2004 totaled $6,456,167.00 (<u>See</u> Decl. of James J. Donohue, Feb. 18, 2009, at Ex. 3), and that defendants have failed to establish a triable dispute as to their costs attributable to their sale and distribution of the infringing merchandise.

Plaintiffs seek an award of three times defendants' profits from their sale of infringing goods, as well as an award of prejudgment interest on that amount running from the date of service of their complaint, pursuant to 15 U.S.C. § 1117(b). As noted in our July 30, 2010 Report and Recommendation, "[d]efendants have not identified any 'extenuating circumstances' that would make an award of treble damages inappropriate, nor do we view the case as presenting any such unique considerations." We therefore recommend that plaintiffs be awarded $19,368,501.00, representing

29

trebled profits from defendants' infringement from 2001-2004, in addition to the $10,486,542.00 already awarded to reflect trebled profits from defendants' infringement in 2005 and 2006, for a total damages award of $29,855,043.00. We further recommend that, for substantially the same reasons as stated in our July 30, 2010 Report and Recommendation (see Report & Recommendation at 51-54) plaintiffs be awarded prejudgment interest in the amount of $3,024,705.72, which reflects simple interest on $9,951,681.00 (the total of defendants' profits, before trebling), calculated from January 26, 2006 to May 15, 2011, at the applicable federal short-term interest rate plus three percentage points for each quarter during the period, for a total award of $32,879,808.72 in damages and prejudgment interest.

## CONCLUSION

We respectfully recommend that plaintiffs be awarded their attorney's fees and costs, in the total amount of $866,725.46. We further recommend that, in light of the potentially inconsistent result arising from a ruling that defendants willfully infringed plaintiffs' trademarks from 2001-2006, but plaintiffs were entitled to damages only for the period from 2005-2006, the district court amend its judgment to award plaintiffs $32,879,808.72, representing

$29,855,043.00 in trebled damages and $3,024,705.72 in prejudgment interest on defendants' $9,951,681 in profits from their willful infringement of plaintiffs' trademarks.


Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. <u>See</u> <u>also</u> Fed. R. Civ. P. 6(a), 6(d). Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Richard M. Berman, Room 650, and to the chambers of the undersigned, Room 1670, U.S. Courthouse, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. <u>Small v. Sec'y of Health and Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 150-55 (1985), <u>reh'q</u> <u>denied</u>, 474 U.S. 1111 (1986).

Dated: New York, New York
      May 12, 2011


MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE


Copies of the foregoing Report and Recommendation have been mailed
today to:

Richard L. Mattiaccio, Esq.
Steven Skulnik, Esq.
Victor Genecin, Esq.
Squire, Sanders & Dempsey, L.L.P.
30 Rockefeller Plaza
New York, NY 10112

Gerard Francis Dunne, Esq.
Law Office of Gerard F. Dunne, P.C.
156 Fifth Avenue, Suite 1223
New York, NY 10010